UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Civil Action No. 5:23-cv-00349-D-RN

| | | |
|---|---|---|
| RONALD JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TOWN OF SMITHFIELD, MICHAEL SCOTT, in | ) | |
| his individual and official capacity as TOWN | ) | |
| MANAGER, TIMOTHY KERIGAN, in his | ) | |
| individual and official capacity as TOWN HUMAN | ) | |
| RESOURCES DIRECTOR, TERRY WEST, in his | ) | |
| individual and official capacity as TOWN POLICE | ) | |
| DEPT. LT., KEITH POWELL, in his individual and | ) | |
| official capacity as TOWN POLICE CHIEF, | ) | |
| MARLON LEE, in his individual and official | ) | |
| capacity as TOWN COUNCIL MEMBER, THE | ) | **MEMORANDUM OF LAW IN** |
| JOHNSTON COUNTY SCHOOL BOARD OF | ) | **SUPPORT OF MOTION TO** |
| EDUCATION, TODD SUTTON, in his individual | ) | **DISMISS OF DEFENDANT** |
| and official capacity as MEMBER and FORMER | ) | **JAMES R. LAWRENCE, JR.** |
| CHAIR, TERRI SESSOMS, in her individual and | ) | |
| official capacity as MEMBER, TERRY TIPPETT, | ) | |
| in his individual and official capacity as MEMBER, | ) | |
| MICHAEL WOOTEN, in his individual and official | ) | |
| capacity as MEMBER, LYN ANDREWS, in her | ) | |
| individual and official capacity as MEMBER and | ) | |
| CURRENT CHAIR, KAY CARROLL, in his | ) | |
| individual and official capacity as MEMBER, | ) | |
| KEVIN DONOVAN, in his individual and official | ) | |
| capacity as MEMBER, SUSAN DOYLE, | ) | |
| DISTRICT ATTORNEY of JOHNSTON COUNTY, | ) | |
| in her individual and official capacity, RICHARD | ) | |
| HOFFMAN, in his individual and official capacity, | ) | |
| BENJAMIN O. ZELLINGER, in his individual and | ) | |
| official capacity as Special Prosecutor, ANGIE | ) | |
| MCLEOD, JIMMY LAWRENCE, DAVID | ) | |
| MARSHBURN, and the ESTATE of JOSEPH | ) | |
| PRESTON, | ) | |
| | ) | |
| Defendants. | ) | |

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ivv

INTRODUCTION ............................................................................................................... 1

FACTUAL ALLEGATIONS ............................................................................................. 3

   I.     Detective Johnson Violates BOE Policy ............................................................. 3

   II.    Detective Johnson Accuses BOE Members and Attorney Lawrence of Wrongdoing ........ 3

   III.   Detective Johnson "Exposes" the Employee ...................................................... 4

   IV.  Independent Counsel for the BOE Questions Detective Johnson About His Texts ........... 5

   V.    Detective Johnson's Affair with McLeod ......................................................... 6

   VI.  Marshburn "Calls Out" Detective Johnson ....................................................... 8

   VII. Phillips Reports Detective Johnson's Attempted Interference in School Assignments of Phillips' Children .................................................................................................. 8

   VIII.The BOE, Smithfield and the D.A. Investigate Detective Johnson ..................................... 9

      A.   The BOE Investigates Detective Johnson ...................................................... 9

      B.   Smithfield Investigates Detective Johnson ................................................... 10

      C.   The D.A. Investigates Detective Johnson ..................................................... 10

STANDARD OF REVIEW ON MOTION TO DISMISS .......................................................... 12

ARGUMENT ...................................................................................................................... 13

I.    Detective Johnson's Claim of Intentional Infliction of Emotional Distress Should be Dismissed ...........................................................................................................13

II.   Detective Johnson's Claim of Tortious Interference with Contract Should be Dismissed 16

III.  Detective Johnson's Defamation Claim Should be Dismissed .........................................17

   A.   The Political Gain Question is Time-Barred and/or not Defamatory .......................... 19

   B.   The Investigatory Comment is not Defamatory............................................................ 20

IV.   Plaintiff's 42 U.S.C.A. § 1983 Conspiracy Claim Should be Dismissed .........................20

   A.   Detective Johnson Has Failed to Allege a Conspiracy to Commit First Amendment Retaliation ...................................................................................................................... 21

   B.   Detective Johnson Has Failed to Allege a Conspiracy to Commit Due Process Retaliation ...................................................................................................................... 22

CONCLUSION.................................................................................................................. 23

CERTIFICATE OF COMPLIANCE................................................................................ 24

CERTIFICATE OF SERVICE ........................................................................................ 24

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937 (2009) ................................................................. 13

*Audley v. Bishop*,
   133 N.C. App. 210, 515 S.E.2d 72 (1999) ........................................................... 15

*Baltimore Sun Co. v. Ehrlich*,
   437 F.3d 410 (4th Cir. 2006) ........................................................................... 21, 22

*Barrett v. Pae Gov't Servs., Inc.*,
   975 F.3d 416 (4th Cir. 2020) ................................................................................. 21

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 127 S. Ct. 1955 (2007) ............................................................. 12, 13

*Constantine v. Rectors & Visitors of George Mason Univ.*,
   411 F.3d 474 (4th Cir. 2005) ........................................................................... 21, 22

*Cramer v. Crutchfield*,
   648 F.2d 943 (4th Cir. 1981) ................................................................................. 23

*Craven v. Cope*,
   188 N.C. App. 814, 656 S.E.2d 729 (2008) ..................................................... 17, 20

*Daniels v. Metro Mag. Holding Co.*,
   179 N.C. App. 533, 634 S.E.2d 586 (2006) ..................................................... 18, 19

*Donovan v. Fiumara*,
   114 N.C. App. 524, 442 S.E.2d 572 (1994) ......................................................... 17

*Dove v. Harvey*,
   168 N.C. App. 687, 608 S.E.2d 798 (2005) ......................................................... 21

*Eastern Shore Mkts. v. J.D. Assocs. Ltd.*,
   213 F.3d 175 (4th Cir.2000) ................................................................................. 13

*Ellis v. N. Star Co.*,
   326 N.C. 219, 388 S.E.2d 127 (1990) ................................................................. 17

iv

*Erickson v. Pardus*,
 551 U.S. 89, 127 S. Ct. 2197 (2007) ......................................................................... 12

*Gaunt v. Pittaway*,
 135 N.C. App. 442, 520 S.E.2d 603 (1999) ............................................................. 18

*Hall v. Post*,
 323 N.C. 259, 372 S.E.2d 711 (1988) ...................................................................... 14

*Hinckle v. City of Clarksburg*,
 81 F.3d 416 (4th Cir. 1996) ....................................................................................... 20

*Holloway v. Wachovia Bank & Tr. Co.*,
 339 N.C. 338, 452 S.E.2d 233 (1994) ...................................................................... 15

*Hudson v. Hudson*,
 287 N.C. App. 217 (2022) .......................................................................................... 15

*Iadanza v. Harper*,
 169 N.C. App. 776, 611 S.E.2d 217 (2005) ............................................................. 19

*Johnson v. Allen*,
 416 F. Supp. 3d 550 (E.D.N.C. 2018) ....................................................................... 21

*Kingsdown, Inc. v. Hinshaw*,
 2015 WL 1441826 (N.C. Super. Mar. 25, 2015) .............................................. 14, 15

*Martin v. Duffy*,
 858 F.3d 239 (4th Cir. 2017) ..................................................................................... 21

*Milkovich v. Lorain J. Co.*,
 497 U.S. 1, 110 S. Ct. 2695, 111 L. Ed. 2d 1 (1990) ............................................. 18

*Renwick v. News & Observer Pub. Co.*,
 310 N.C. 312, 312 S.E.2d 405 (1984) ...................................................................... 17

*Spirax Sarco, Inv. v. SSI Eng'g, Inc.*,
 122 F. Supp. 3d 408 (2015) ........................................................................................ 20

*Taube v. Hooper*,
 270 N.C. App. 604, 840 S.E.2d 313 (2020) ....................................................... 17, 19

*United Lab'ys, Inc. v. Kuykendall*,
 322 N.C. 643, 370 S.E.2d 375 (1988) ...................................................................... 16

*Waddle v. Sparks*,
 331 N.C. 73, 414 S.E.2d 22 (1992) ........................................................... 14

*Wall v. Gulledge*,
 1:22-cv-31, 2023 WL 2049550, at *11 (M.D.N.C. Feb. 16, 2023) ........................................... 21

## **<u>Statutes</u>**

42 U.S.C.A. § 1983 (West) ............................................................. 3, 20, 21, 22, 23

N.C. Gen. Stat. Ann. § 1-54(3) (2003) ...................................................... 19

N.C. Gen. Stat. Ann. § 14-27.4 ........................................................... 7

N.C. Gen. Stat. Ann. § 14-230 ........................................................ 9, 11, 12

N.C. Gen. Stat. Ann. § 14-118.4 .......................................................... 14

## **<u>Other Authorities</u>**

RESTATEMENT (SECOND) OF TORTS § 652D (1977) ....................................................... 14

Defendant James R. Lawrence, Jr. ("Attorney Lawrence"), by and through undersigned counsel, hereby submits this Memorandum of Law in support of his Motion to Dismiss Plaintiff's claims against him.

<u>INTRODUCTION</u>

Plaintiff Ronald Johnson, a former detective for Defendant Town of Smithfield ("Detective Johnson") and member of the Johnston County School Board of Education ("BOE"), claims that all nineteen Defendants (which include an ex-girlfriend, two Facebook "influencers," fellow BOE members, the police department and the district attorney's office) conspired against him in retaliation for "speaking out about matters of public concern" ("First Amendment Retaliation") and to violate his procedural due process rights ("Due Process Retaliation"). *See* Complaint ("Compl."), ¶ 132. Detective Johnson alleges there was a "symbiosis and interdependence" between Defendants as "seen in the facts showing communication and meetings between them and the similarity of allegations and publication of information." *Id.* at ¶ 133. This is the classic conclusory statement North Carolina courts have long held insufficient to survive a motion to dismiss - "parallel conduct does not suggest conspiracy" and a "conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." There is not a single *factual* allegation of *any* defendant agreeing with *any* other defendant at *any* time to support Detective Johnson's Retaliation claims.

In fact, the timeline set forth in Detective Johnson's Complaint reveals that, at a minimum, there is a far more plausible inference that *Detective Johnson* retaliated against those he perceived as adversaries. Detective Johnson's First Amendment Retaliation claim arises out of allegations he made on January 2, 2020 to the News & Observer ("N&O") of wrongdoing by the BOE and Attorney Lawrence. The first allegedly retaliatory act that might arguably have deterred Detective

1

Johnson from exercising his First Amendment rights is Smithfield's investigation (beginning on June 24, 2022) to determine whether he used department equipment to "dig up dirt" on people in furtherance of his political career. *See* Compl., ¶ 225. In the intervening 2 ½ years:

- after hearing on January 7, 2020 that Attorney Lawrence questioned if Detective Johnson went to the N&O for political gain, Detective Johnson "accompanied" an employee over the course of the next 3 days to a meeting with the Superintendent, an interview with the Johnston County Report and the D.A.'s office to discuss alleged harassment by Attorney Lawrence;

- Detective Johnson notified his supervisor that Defendant McLeod ("McLeod") was blackmailing/extorting him for sex *only after* he learned that she had filed a complaint against him with the school system;

- When McLeod began dating Detective Johnson's friend, Detective Johnson attempted to have his friend's special needs children re-assigned to a different school;

- Detective Johnson obtained a protective order against McLeod without disclosing that she was someone with whom he had been intimate (which would have resulted in the issuance of a domestic violence order);

- Detective Johnson threatened DeVan Barbour, IV, a candidate for political office, with disclosure of a recording of defamatory allegations weeks before a primary election if Mr. Barbour did not pressure McLeod into recanting her statements that she had an affair with Detective Johnson;

- Detective Johnson regularly, and secretly, recorded closed sessions of BOE meetings; and

- Detective Johnson asked others to help record friends and foes alike for leverage or to give him an advantage and purchased pre-paid phones for them to do so.

It is not Detective Johnson's exercise of his First Amendment Rights that is causing him trouble – it is his abuse of power to hurt others for his own benefit.

2

## I.    Detective Johnson Violates BOE Policy

Detective Johnson was elected to the BOE in November of 2016.  *See* Compl., ¶ 66.  At that time, Attorney Lawrence was the BOE's counsel.  *Id.* at ¶ 68.  In the 2 ½ years that followed, Detective Johnson never criticized Attorney Lawrence's legal services or professionalism.  Indeed, Detective Johnson must have considered Attorney Lawrence a friend as he sent Attorney Lawrence several texts unrelated to his role as the BOE's counsel.

For instance, on April 9, 2019, during a BOE meeting, Detective Johnson sent a text to Attorney Lawrence commenting on the appearance and desirability of a female school employee, who was friends with Detective Johnson ("Friend") ("Text 1").  *See* Compl., Exhibit 4, Attachment 1 (Affidavit of Ronald Johnson), pp. 1-2 and Attachment 2.  Text 1 read, in part, "She's wearing the hell out of that blue dress."  *Id.*  At the next BOE meeting, on May 14, 2019, Detective Johnson sent another text to Attorney Lawrence commenting on the appearance and desirability of his Friend ("Text 2").  *See* Compl., Exhibit 4, p. 2 and Attachment 2.

## II.    Detective Johnson Accuses BOE Members and Attorney Lawrence of Wrongdoing

A few months later, in July 2019, Detective Johnson purportedly learned that Attorney Lawrence was sexually harassing a BOE employee (the "Harassment Allegation").[2]  *See* Compl., ¶ 69.  On July 31, 2019, Detective Johnson reported the Harassment Allegation to the Superintendent, who told Detective Johnson he would take care of it.  *Id.*  Detective Johnson claims the employee did not want the BOE to know her identity and he did not want to "risk retaliation

---

[1] For purposes of this Motion only, Attorney Lawrence accepts as true Detective Johnson's allegations.

[2] Detective Johnson claims that additional incidents of harassment occurred on October 30, 2019 and November 15, 2019 but does not identify to whom or by whom.  *See* Compl., ¶ 79.  If Detective Johnson is implying that Attorney Lawrence was the offender, he is suggesting that Attorney Lawrence harassed person(s) *after* he, the BOE and the Superintendent became aware of the Harassment Allegation.  *Id.* at ¶¶ 69-72.

3

against the employee" so he proposed to the BOE that it adopt protocols governing Attorney Lawrence's behavior. *Id.* at ¶ 70. Detective Johnson sent a document entitled "Board Attorney Protocols" to each BOE member via email and text and let them know that "he would drop the issue" if Attorney Lawrence adhered to the protocols.[3] *Id.* at ¶ 71. Detective Johnson also lodged the following accusations against others:

- The Superintendent told BOE members that the district's chief finance officer had been directed to lie to the BOE and commissioners about the amount of money needed to cover a budget shortfall (the "Corruption Allegation"). *See* Compl., Exhibit 2, p. 3.

- A "high-ranking" school official tried to bribe Clayton High School principal Bennett Jones by promising him he could keep his job if he publicly blamed Detective Johnson as the "driving force" behind the investigation into how diplomas were issued at Clayton High School (the "Bribery Allegation"). *Id.*, Exhibit 2, p. 6.

- A BOE member had a conflict of interest because products were purchased from her employer's business (the "Conflict Allegation"). *Id.* at ¶ 75.

Detective Johnson was running for re-election to the BOE at the time these allegations were made. *See* Compl., Exhibit 2 (News & Observer article dated January 2, 2020), p. 6. Detective Johnson claimed he had proof of each of his allegations, and publicly accused school system employees of lying to cover up the Conflict Allegation. *Id.*

III. <u>Detective Johnson "Exposes" the Employee</u>

On January 7, 2020, Detective Johnson was purportedly told by the employee who had allegedly been harassed by Attorney Lawrence that Attorney Lawrence had asked her if Detective Johnson had gone to the newspaper for political gain ("Employee"). *See* Compl., ¶ 82. Despite his earlier "concern" of retaliation against her, the very next day Detective Johnson accompanied

---

[3] A few weeks later, after he sent the Board Attorney Protocols that had not been adopted, Detective Johnson brought his service weapon onto BOE property when attending a BOE meeting and, according to Detective Johnson, Attorney Lawrence improperly attempted to have him charged. *See* Compl., ¶ 72.

the Employee to a meeting with the Superintendent, during which the Employee made a complaint about Attorney Lawrence. *Id.* at ¶ 83. The following day, on January 9, 2020, the Johnston County Report published an article based on an interview with Detective Johnson (who showed the reporter screenshots of the attorney protocol texts to the BOE members) and the Employee, who described harassment by a "powerful and influential man." *Id.* at ¶ 84 and Exhibit 3. Although the Employee said she refused to file a police report out of fear, the very next day Detective Johnson accompanied the Employee to the office of Defendant Susan Doyle, the Johnston County District Attorney ("D.A. Doyle"). *Id.* at ¶ 85.

IV.   <u>Independent Counsel for the BOE Questions Detective Johnson About His Texts</u>

Approximately two (2) weeks later, on January 27, 2020, Detective Johnson was questioned by independent counsel for the BOE, Tharrington Smith, about his texts with Attorney Lawrence purportedly in connection with an investigation into whether Attorney Lawrence had harassed the Employee.[4] *See* Compl., ¶ 87. Immediately thereafter, Detective Johnson and his Friend had the following text exchange:

DJ:     I think I might've let you down too buddy, but it's been for months back.

DJ:     I am hoping you will laugh but I will understand if you get pissed with me.

Friend: Oh lord

Friend: Whaaaat is it?!?!

DJ:     I kind of want to explain in person or over the phone. I don't think it's a big deal but I said something almost a year ago

Friend: Okay, I'll call you when leave

DJ:     K.

---

[4] Detective Johnson now complains that Tharrington Smith did not consider the texts "to be sexual harassment at the time" but found them to be so in their subsequent investigation of him. *See* Compl., ¶¶ 88-89. There is a difference between an investigation into whether Detective Johnson's texts violated BOE policy and whether Attorney Lawrence's responses thereto constituted sexual harassment.

5

DJ:      If you call I can talk and you not respond
Friend: I can't [REDACTED]

DJ:      Call me when you leave

Friend: I will.  Trying to get out of here at 5

DJ:      Lol brah. . . the one day

Friend: Finally packing up

Friend: Will call you as soon as I'm heading out

DJ:      Meet at mayflower real quick

DJ:      I'm otw now

DJ:      You close

Friend: Otw

*See* Compl., Exhibit 4, p. 3 and Attachment 3.  Detective Johnson claims the meeting was not to discuss the texts but to provide his Friend with information about the sexual harassment case.[5] *Id.*, Exhibit 4, Attachment 1, p. 2.  However, at a subsequent BOE meeting, Detective Johnson sent a text directly to the Friend asking "[w]here's the blue dress" ("Text 3").[6]   *Id.*, Exhibit 4, Attachment 4 (Texts 1, 2 and 3 are collectively referred to hereinafter as the "Offensive Texts").

V.    Detective Johnson's Affair with McLeod

In the fall of 2020, Detective Johnson ran for, and won, re-election to the BOE.  *See* Compl., ¶ 91.  Detective Johnson, who was married at the time, began an affair with a campaign supporter, Defendant Angie McLeod ("McLeod"), who was also married at the time.  *Id.* at ¶¶ 92, 109. Detective Johnson claims that the affair began in November of 2020 when McLeod sexually

---

[5] The Friend claims that Detective Johnson told her that he and Attorney Lawrence had texted about her and what she was wearing at a BOE meeting the year before. *Id.*, Exhibit 4, p. 3.
[6] Unless Detective Johnson had told his Friend about Text 1, Text 3 would have made no sense to her.

assaulted him while he was driving her home.[7]  *Id.* at ¶¶ 101-08.  Detective Johnson claims he was

the victim of a First Degree Forcible Sexual Offense (N.C. Gen. Stat. Ann. § 14-27.4).[8]  *Id.* at ¶

108. Detective Johnson also claims that he had sexual encounters with McLeod between December

2020 and August 2021 because she threatened to tell his wife and her husband if he did not.  *Id.* at

¶¶ 116-18.  Although McLeod's sexual advances ceased for a few months, she attempted to restart

the relationship in January of 2022.  *Id.*  at ¶¶ 137-39.  When Detective Johnson refused, McLeod

began threatening to ruin his political career.  *Id.* at ¶¶ 143-47.

In March 2022, Detective Johnson attempted to connect McLeod with Owen Phillips

("Phillips"), then a friend and his former co-worker.  *See* Compl., ¶ 141.  Detective Johnson heard

that McLeod began dating Phillips.  *Id.* at ¶ 142.

During the first week of May, 2022, Detective Johnson learned that McLeod had filed a

complaint against him with the school system.  *See* Compl., ¶ 274.  Only then did Detective

Johnson notify his supervisor about McLeod's alleged harassment.  *Id.* at ¶ 148.  McLeod's

harassment allegedly continued and, eventually, she told Detective Johnson's wife about the affair.

*Id.* at ¶¶ 153-54.  On May 16, 2022, Detective Johnson spoke with Principal Jones about how

school assignments were handled because he had become "concerned about the possible

mistreatment of Phillip's children."  *Id.* at ¶¶ 276-77.

---

[7] Notably, while Detective Johnson claims he "was afraid of crashing his car," rather than immediately pulling his car over, he allowed McLeod "to perform oral sex on him while [he] drove on Interstate 40 for approximately 3 or 4 minutes."  *See* Complaint, ¶ 107.
[8] Pursuant to N.C. Gen. Stat. Ann. § 14-27.4, which was repealed five (5) years before the affair, "(a) A person is guilty of a sexual offense in the first degree if the person engages in a sexual act: (1) With a victim who is a child under the age of 13 years and the defendant is at least 12 years old and is at least four years older than the victim; or (2) With another person by force and against the will of the other person, *and*: a. Employs or displays a dangerous or deadly weapon or an article which the other person reasonably believes to be a dangerous or deadly weapon; or b. Inflicts serious personal injury upon the other person or another person; or c. The person commits the offense aided and abetted by one or more other persons; (b) Any person who commits an offense defined in this section is guilty of a Class B1 felony.

On June 1, 2022, Detective Johnson received a text from McLeod stating: "I must assume you think this is going away but it is not. The package is almost complete with documentation that shows who you really are and will be turned over to various media outlets. It is all up to you." *Id.* at ¶ 156.

VI.    <u>Marshburn "Calls Out" Detective Johnson</u>

On June 24, 2022, Defendant David Marshburn ("Marshburn"), a candidate for Johnston County Sheriff at the time, alleged on Facebook live (the "Dave & Joe" show) that Detective Johnson had improperly used police equipment (*i.e.*, microphones, hidden cameras) to "dig up dirt" on many of the defendants and was "running around on his wife." *See* Complaint, ¶¶ 179-80, 182-83, 225. On August 8, 2022, Marshburn aired the Offensive Texts on the Dave & Joe show.[9]

VII.   Phillips Reports Detective Johnson's Attempted Interference in School
       <u>Assignments of Phillips' Children</u>

On August 11, 2022, the BOE received the following email from Phillips:

> I was made aware that School Board Member Ronald Johnson recently, within the last month or so, requested that [School Principal] remove my 2 Autistic children from [the School]. Johnson assumed they had some form of waiver to attend [the School]. I have waited to make contact until I confirmed this conversation, which I did today ([the principal] stated the conversation occurred and Johnson asked for a "favor," that favor being the removal of my children). Johnson has personal issues with me and I feel unethically used his position on the School Board to seek some form of revenge by harming my children. I believe this can be easily substantiated with a phone call to Principal [of the School].

*See* Compl., Exhibit 2, p. 1.

---

[9] According to Detective Johnson, on June 14, 2022, Marshburn also contacted WRAL and falsely told the network McLeod was filing paperwork against Detective Johnson for stalking and sexual harassment, prompting WRAL to make an inquiry to Smithfield's Public Information Officer. *See* Complaint, ¶¶ 158, 184-85. After confirming that this was not the case, and upon the advice of his superiors, Detective Johnson obtained a protective order against McLeod. *Id.* at ¶¶ 158-71, 239. Detective Johnson obtained a 50C no-contact order (issued when a "victim has suffered unlawful conduct committed by the respondent") rather than a 50B no-contact order (issued when a person has committed domestic violence against someone he/she is dating). *Id.* at ¶ 352.

VIII.   The BOE, Smithfield and the D.A. Investigate Detective Johnson

A.   The BOE Investigates Detective Johnson

Shortly after the Offensive Texts were aired on August 8th, Detective Johnson's Friend lodged a complaint with the BOE, which retained the law firm of Tharrington Smith to determine whether Detective Johnson's texts violated BOE policy.  *See* Compl, Exhibit 4, p. 1.  After interviewing Detective Johnson's Friend, questioning Detective Johnson, reviewing relevant texts and reviewing BOE policies, Tharrington Smith determined that the Offensive Texts demonstrated a lack of respect for Detective Johnson's Friend, a school employee who should never be the subject of such remarks, in violation of BOE policy.  *Id.* at p. 4.

Tharrington Smith was also asked to investigate the allegations that Detective Johnson recorded a closed session of a BOE meeting and improperly influenced the re-assignment of Phillips' children. *See* Complaint, ¶¶ 283-84, 287, Exhibit 8, p. 2.  With respect to the former, Detective Johnson, by his own admission, violated BOE policy by recording a closed session of a BOE meeting on May 31, 2022. *Id.* at ¶ 284, Exhibit 8, p. 3.  With respect to the latter, Tharrington Smith's investigation revealed that Detective Johnson had told the school principal that Phillips "had turned on him" and that reassignments for Phillips' children "would do him a solid." *Id.*, Exhibit 8, pp. 11-13.

The BOE voted to censure Detective Johnson on August 24, 2022 based on these investigations. *See* Compl., ¶ 291-94.  BOE Member Wooten also made a motion that Detective Johnson submit his resignation by August 26, 2022 or the BOE would refer the matter to D.A. Doyle for a determination of whether Detective Johnson's conduct violated N.C. Gen. Stat. Ann. § 14-230 ("Willfully failing to discharge duties").  *Id.* at ¶¶ 297, 300-02.  Detective Johnson did

not resign, and the matter was referred to D.A. Doyle, who assigned Defendant Hoffman ("Investigator Hoffman").  *Id.* at ¶ 312.

B.    Smithfield Investigates Detective Johnson

On June 27, 2022, based on Marshburn's June 24th allegation of misuse of police equipment, [10] the Smithfield police department initiated an internal investigation against Detective Johnson.  *See* Complaint, ¶¶ 187, 230.  On July 5, 2022, McLeod was interviewed in the presence of her attorney (who was not Attorney Lawrence).  *Id.* at ¶ 232.  Later that day, Detective Johnson was informed that he was being placed on administrative leave with pay due to the allegations being made against him.  *Id.* at ¶¶ 233-35.  The following day, on July 6, 2022, Chief Powell met with Attorney Lawrence at his office after which Chief Powell, according to Detective Johnson, told his administrative assistant that Attorney Lawrence said he "had a lot more 's*&^'" on Detective Johnson and that "it was not going to end well."  *Id.* at ¶ 236.

On October 5, 2022, Chief Powell wrote an "Employee Dismissal Recommendation" and delivered it to Detective Johnson in a meeting with H.R. Director Kerigan.  *See* Complaint, ¶ 333. The recommendation was based on Detective Johnson's improper use of police equipment, misrepresentation of facts to obtain a protective order against McLeod and his BOE involvement, which "has brought a negative light on the Department and Town."  *Id.* at ¶¶ 335, 337, 346. Detective Johnson was ultimately terminated.  *Id.* at ¶ 357.

C.    The D.A. Investigates Detective Johnson

On August 26, 2022, the BOE forwarded Tharrington Smith's investigative results to the D.A. for a determination regarding whether the findings supported Detective Johnson's removal

---

[10] At different points in his Complaint, Detective Johnson blames various parties for the investigations and resulting impact on him including Chief Powell's "animus toward [him] because of his sex," Attorney Lawrence (who resigned 2 ½ years earlier) and the BOE as retaliation for the Corruption Allegations, Bribery Allegations and Conflict Allegations.  *See* Complaint, ¶¶ 229, 251, 289.

as a BOE member pursuant to N.C. Gen. Stat. Ann. § 14-230.  *See* Complaint, Exhibit 8.  On January 25, 2023, Investigator Hoffman obtained a search warrant for Detective Johnson's Clayton Fitness office and vehicle to seize electronic devices in connection with his investigation into Detective Johnson's recordings.[11]  *See* Compl., ¶¶ 316-17.  The search warrant states, *inter alia*, that Investigator Hoffman:

1. Interviewed numerous persons who confirmed meeting with Detective Johnson to discuss school board related information, during which Detective Johnson played recordings of school board closed sessions for them.  *See* Compl., Exhibit 11, p. 7, ¶ 5.

2. Interviewed McLeod, who told him that Detective Johnson asked her to help record other persons for leverage or to give him an advantage.  *Id.* at ¶ 6, p. 17, ¶ 5; p. 18, ¶ 7.  For example, Detective Johnson asked McLeod to "help him get Devan Barbour [who was then a political candidate] by recording him or by having sex with him."  *Id.*  Detective Johnson provided a prepaid phone to McLeod for this purpose shortly after October 24, 2021, which was confirmed by a text message from him to McLeod stating that he "will drop that phone off tomorrow."  *Id.* at p. 18, ¶ 7.  This was further confirmed b the email address used to activate the phone – rljohnson@smithfieldpd.org.  *Id.* at p. 20, ¶ 9.

3. Interviewed Devan Barbour who stated that, a little before the primary voting date (05/17/22), Detective Johnson called him, urging him to meet at Clayton Fitness, whereupon Detective Johnson played a recording for Mr. Barbour, which only Mr. Barbour could hear, wherein Detective Johnson claimed he had a recording of an "incident" between Mr. Barbour and McLeod and, to prevent publication of this recording, Mr. Barbour had to convince McLeod to provide a written statement that she lied about her affair with Detective Johnson.  *Id.* at p. 22, ¶ 13.  The date and time of the meeting was confirmed by a search warrant on Apple, Inc.  *Id.* at p. 24, ¶ 14.

4. Interviewed Phillips, Detective Johnson's former friend and colleague, who told Investigator Hoffman that Detective Johnson asked him to buy a prepaid phone and activate it because Detective Johnson had purchased too many in Smithfield.  *Id.* at p. 7, ¶ 6.

5. Discovered recordings of several past school superintendents and BOE members on Detective Johnson's work computer.  *Id.* at p. 8, ¶ 10.

---

[11] Included in the search warrant was i-phones issued by Smithfield, which Detective Johnson claims he lost.  *See* Complaint, ¶ 322.

6. Discovered information linking Detective Johnson's email to a social media account in a fictitious name and to other services not related to his employment with Smithfield. *Id.* at p. 8, ¶ 10.

7. Observed an i-Phone in Detective Johnson's Clayton Fitness office (matching the model and description provided to him by the Smithfield police department), which Detective Johnson removed while Investigator Hoffman went to obtain a search warrant. *Id.* at p. 17, ¶ 21. Three cell phones and five memory flash drives were found during Investigator Hoffman's search of Detective Johnson's vehicle. *Id.*

On April 3, 2023, a bill of indictment was presented and returned against Detective Johnson for: (1) a misdemeanor violation under N.C. Gen. Stat. Ann. § 14-230 for recording the May 31, 2022 BOE closed session; (2) a misdemeanor violation under N.C. Gen. Stat. Ann. § 14-230 for "failing to comply with a public records request" on November 10, 2022; and (3) a felony under N.C. Gen. Stat. Ann. § 14-118.4 (Extortion) for threatening Mr. Barbour with disclosure of a recording of defamatory allegations weeks before a primary election if Mr. Barbour did not pressure McLeod into recanting her statements that she had an affair with Detective Johnson. *Id.* at ¶ 327-31. Detective Johnson neglects to mention in his Complaint that this bill of indictment also included a misdemeanor violation under N.C. Gen. Stat. Ann. § 14-230 for attempting to have Phillips' special needs children transferred to another school as an act of personal retaliation and *a felony charge of obstruction of justice* for removing evidence related to the investigation from his office when he became aware that law enforcement was searching for his property at the office. *Id.*, Exhibit 12, p. 2.

## STANDARD OF REVIEW ON MOTION TO DISMISS

When ruling on a 12(b)(6) motion, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93–94, 127 S. Ct. 2197 (2007) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 127 S. Ct. 1955, 1964-65 (2007)).

Although complete and detailed factual allegations are not required, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) (*citing Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965). Similarly, the Court need not accept as true a plaintiff's "unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts. v. J.D. Assocs. Ltd.*, 213 F.3d 175, 180 (4th Cir.2000). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965 (citation omitted). Accordingly, to survive a Rule 12(b)(6) motion, a complaint must contain facts sufficient "to raise a right to relief above the speculative level" and to satisfy the Court that the claim is "plausible on its face." *Id.* at 570, 127 S. Ct. at 1974.

ARGUMENT

Detective Johnson blames everyone but himself for his censures, his dismissal from the Smithfield police department and his criminal indictment. His claims against Attorney Lawrence are: (1) Intentional Infliction of Emotional Distress; (2) Tortious Interference with Contract; (3) Defamation; and (4) Conspiracy in violation of 42 U.S.C.A. § 1983 (West). As shown below, each of these claims should be dismissed.

I.      Detective Johnson's Claim of Intentional Infliction of Emotional Distress Should be Dismissed

Detective Johnson asserts a claim of intentional infliction of emotional distress against, *inter alia*, Attorney Lawrence for "obtaining and posting on social media false information, defamatory information, accusations without basis in fact or law." *See* Compl., (Count XII) ¶ 111. Detective Johnson alleges, "upon information and belief," that Attorney Lawrence provided

13

Defendants Marshburn and Preston with Detective Johnson's Offensive Texts to be posted on Facebook Live. *See* Compl., ¶ 299.

The essential elements of a claim for intentional infliction of emotional distress are: (1) *extreme and outrageous conduct* by the defendant; (2) which is intended to and does in fact cause (3) *severe emotional distress*. *Kingsdown, Inc. v. Hinshaw*, No. 14 CVS 1701, 2015 WL 1441826, at *7 (N.C. Super. Mar. 25, 2015) (*quoting Waddle v. Sparks*, 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992) (citation omitted)). "Whether or not conduct constitutes extreme and outrageous behavior is initially a question of law for the court." *Id.* (quotation omitted). "To establish the essential element of extreme and outrageous conduct, the conduct must go beyond all possible bounds of decency and 'be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (quotation omitted). In the context of the publication of private "facts," as is arguably the case here, there must be an absence of legitimate public concern. *See Hall v. Post*, 323 N.C. 259, 264, 372 S.E.2d 711, 714 (1988).

> In determining what is a matter of legitimate public interest, account must be taken of the customs and conventions of the community; and in the last analysis what is proper becomes a matter of community mores. The line is to be drawn when the publicity ceases to be the giving of information to which the public is entitled and becomes a morbid and sensational prying into private lives for its own sake, with which a reasonable member of the public, with decent standards, would say that he has no concern.

*Id.* (*quoting* RESTATEMENT (SECOND) OF TORTS § 652d (1977), Comment h)).[12]

As an initial matter, it is not only rampant speculation but entirely implausible that, 2 ½ years after Detective Johnson's public accusations of sexual harassment against Attorney Lawrence, Attorney Lawrence would retaliate by providing the Offensive Texts (including his

---

[12] North Carolina does not recognize an independent tort of "publication of private facts," a species of invasion of privacy, because it is "duplicative or overlaps" with the tort of intentional infliction of emotional distress. *Hall*, 323 N.C. at 267, 372 S.E.2d at 716 (*i.e.*, "a morbid and sensational prying into [the plaintiff's private life] . . . for its own sake" which would be "highly offensive to a reasonable person" is necessarily "extreme and outrageous").

responses which do not reflect him in a favorable light) to anyone for the purpose of disclosing them. Attorney Lawrence did not accuse Detective Johnson of anything, provide false information to be posted or defame Detective Johnson in any way – the words in the Offensive Texts are Detective Johnson's own. Furthermore, sharing texts (in which Detective Johnson had no reasonable expectation of privacy) showing Detective Johnson objectifying women, while potentially having an effect on his campaign for re-election, can hardly be said to "go beyond all possible bounds of decency" or be seen as "utterly intolerable in a civilized community." *Kingsdown*, *supra* (plaintiff's allegations of mistreatment by management and wrongful termination insufficient to state claim for intentional infliction of emotional distress); *Audley v. Bishop*, 133 N.C. App. 210, 221, 515 S.E.2d 72, 80 (1999) (extreme and outrageous conduct not found where employer refused to certify employee's reports until he signed a non-compete, "contacted the police and caused embezzlement charges to be filed" against employee and "relayed negative and accusatory comments to [the employee's] creditors and potential clients"). Indeed, today's societal "customs and conventions" include posting public and personal information without evident topical relevance about political candidates and officeholders.

Further, in order to survive a motion to dismiss, a plaintiff must include allegations of severe emotional distress, which the Supreme Court has interpreted to mean:

> Any emotions or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so.

*Hudson v. Hudson*, 287 N.C. App. 217, ¶ 18 (2022) (*quoting Holloway v. Wachovia Bank & Tr. Co.*, 339 N.C. 338, 354-55, 452 S.E.2d 233, 243 (1994)). Although Detective Johnson alleges that

he suffered from anxiety, depression and PTSD,[13] he does not allege that publication of the Offensive Texts caused, or exacerbated, any one of these conditions.

This Court should dismiss Detective Johnson's claim against Attorney Lawrence for intentional infliction of emotional distress.

II.    Detective Johnson's Claim of Tortious Interference with Contract Should be Dismissed

Detective Johnson asserts a claim against, among others, Attorney Lawrence of tortious interference with contract. *See* Compl., (Count XIII) ¶¶ 118-22. In order to prevail on a claim for tortious interference with contract, a plaintiff must establish that: (1) a valid contract existed between the plaintiff and a third party that conferred upon plaintiff contractual rights against the third party; (2) the defendant was aware of the contract; (3) the defendant *intentionally induced* the third party not to comply with the contract; (4) the defendant did so *without justification*; and (5) actual injury to plaintiff resulted. *United Lab'ys, Inc. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988).

Detective Johnson bases his tortious interference claim on the following:

121.    The Town in fact relied upon Defendants Marshburn, Lawrence, Preston, and McLeod's allegations that Plaintiff obtained the wrong protective order against Defendant McLeod when terminating Plaintiff.

122.    In addition, the Town relied upon the censures instigated and ratified by Defendants BOE, Sutton, Sessoms, Tippett, Wooten, Andrews, Carroll, and Donovan when terminating Plaintiff.

*See* Compl., ¶¶ 121-122. The latter allegation does not pertain to Attorney Lawrence. And, while the former allegation identifies Attorney Lawrence, there are no underlying allegations that he commented at all on whether Detective Johnson had obtained the incorrect protective order against McLeod. Indeed, these events occurred more than 2 years after Attorney Lawrence had resigned

---

[13] *See* Compl., ¶¶ 14, 241, 260 and 264.

as counsel for the BOE. *See* Compl., ¶¶ 90, 267. There are no allegations that Attorney Lawrence was even aware of this incident or "intentionally induced" Smithfield to terminate Detective Johnson. Accordingly, Detective Johnson's claim for tortious interference with contract against Attorney Lawrence should be dismissed.

III.   Detective Johnson's Defamation Claim Should be Dismissed

Detective Johnson asserts a defamation claim against all defendants. *See* Compl., (Count XIV) ¶¶ 127-30. In order to state a claim for defamation, "a plaintiff must allege that the defendant caused injury to the plaintiff by making false, defamatory statements of or concerning the plaintiff, which were published to a third person." *Craven v. Cope*, 188 N.C. App. 814, 816, 656 S.E.2d 729, 731 (2008) (quotation omitted). Whether a statement is defamatory *per se* is a question of law. *See, e.g., Ellis v. N. Star Co.*, 326 N.C. 219, 224, 388 S.E.2d 127, 130 (1990). Slander *per se* is an oral communication to a third person which amounts to:

> (1)   An accusation that the plaintiff committed a crime involving moral turpitude; (2) an allegation that impeaches the plaintiff in his trade, business or profession; or (3) an imputation that the plaintiff has a loathsome disease.[14]

*Taube v. Hooper*, 270 N.C. App. 604, 609, 840 S.E.2d 313, 317 (2020) (quotation omitted). In reviewing whether a plaintiff has stated a claim, the allegedly defamatory statement "alone must be construed, stripped of all insinuations, innuendo, colloquium and explanatory circumstances. The [statement] must be defamatory on its face within the four corners thereof." *Id.* (*quoting Renwick v. News & Observer Pub. Co.*, 310 N.C. 312, 318-19, 312 S.E.2d 405 409 (1984)). "The question always is how would ordinary men naturally understand the [statement]." *Id.* (*quoting*

---

[14] Detective Johnson contends that oral statements allegedly attributable to Attorney Lawrence tended to subject him "to ridicule, contempt or disgrace." *See* Compl., ¶ 127. This does not rise to the level of slander *per se*. *See Donovan v. Fiumara*, 114 N.C. App. 524, 536, 442 S.E.2d 572, 579-80 (1994).

*Renwick*, 310 N.C. at 318, 312 S.E.2d at 409). Moreover, there are "constitutional limits on the type of speech" subject to a defamation action. *Daniels v. Metro Mag. Holding Co.*, 179 N.C. App. 533, 539, 634 S.E.2d 586, 590 (2006) (*quoting Milkovich v. Lorain J. Co.*, 497 U.S. 1, 16, 110 S. Ct. 2695, 2704, 111 L. Ed. 2d 1 (1990)). If a statement "cannot 'reasonably [be] interpreted as stating actual facts' about an individual [,]" it cannot be the subject of a defamation suit. *Id.* (*quoting Milkovich*, 497 U.S. at 20, 110 S. Ct. at 2706); *see also Gaunt v. Pittaway*, 135 N.C. App. 442, 448, 520 S.E.2d 603, 608 (1999) (citing *Milkovich* for the proposition that statements of opinion relating to matters of public concern which do not contain provable false connotations are constitutionally protected). "Rhetorical hyperbole and expressions of opinion not asserting provable facts are protected speech." *Id.* (*citing Milkovich*, 497 U.S. at 20, 110 S. Ct. at 2706). "Rhetorical hyperbole [. . .] might appear to make an assertion, but a reasonable reader or listener would not construe that assertion seriously." *Daniels*, 179 N.C. App. at 539–40, 634 S.E.2d at 590. In determining whether a statement can be reasonably interpreted as stating actual facts about an individual, courts "look to the circumstances in which the statement is made, specifically, whether the language used is loose, figurative, or hyperbolic language, as well as the general tenor of the [publication]. *Id.*

Statements allegedly attributable to Attorney Lawrence are:

- On January 7, 2020, Detective Johnson was purportedly told by the employee [Attorney Lawrence allegedly harassed] that Attorney Lawrence had asked her if Detective Johnson had gone to the [N&O]for political gain. *See* Compl., ¶ 82 (the "Political Gain Question").

- On July 6, 2022, Chief Powell met with Attorney Lawrence at his office after which Chief Powell, according to Detective Johnson, told his administrative assistant that Attorney Lawrence had said he "had a lot more 's*&^'" on Detective Johnson and that "it was not going to end well." *Id.* at ¶ 236 (the "Investigatory Comment").

18

A.    The Political Gain Question is Time-Barred and/or not Defamatory

Assuming, *arguendo*, that Attorney Lawrence asked the Political Gain Question of one person in 2020, Detective Johnson's defamation claim based on it is time-barred. *See* N.C. Gen. Stat. Ann. § 1-54(3) (2003); *see also Iadanza v. Harper*, 169 N.C. App. 776, 782, 611 S.E.2d 217, 222-23 (2005) ( "'To escape the bar of the statute of limitations, an action for libel or slander must be commenced within one year from the time the action accrues, G.S. 1–54(3), and the action accrues at the date of the publication of the defamatory words, regardless of the fact that plaintiff may discover the identity of the author only at a later date'") (quotation omitted). Here, the action accrued on January 7, 2020. Detective Johnson filed his Complaint on June 26, 2023, almost 2 ½ years after the limitation period expired.

Even if this claim was not time-barred, it is not defamatory. The Political Gain Question "construed, stripped of all insinuations, innuendo, colloquium and explanatory circumstances" is not defamatory on its face "within the four corners thereof." *Taube*, 270 N.C. App. at 609, 840 S.E.2d at 317. First, Attorney Lawrence posed a question, not a statement of fact, regarding Detective Johnson's motives for speaking with the N&O – it was not an actionable statement of fact. *Daniels,* 179 N.C. App. at 539, 634 S.E.2d at 590 (a question that cannot "reasonably [be] interpreted as stating actual facts" cannot "be the subject of a defamation suit"). Second, Detective Johnson may have gone to the newspaper believing all of his allegations to be true and nonetheless have intended to capitalize on this for political gain – a question regarding whether he did so does not impeach Detective Johnson either in his profession as a Detective or in his official capacity as a BOE member. There is nothing wrong with a political candidate drawing attention to what he believes are shortcomings within government. Accordingly, Detective Johnson's defamation claim against Attorney Lawrence based on the Political Gain Question should be dismissed.

19

B.     The Investigatory Comment is not Defamatory

Assuming, *arguendo*, that Attorney Lawrence commented to Chief Powell during an internal investigation that "it was not going to end well" for Detective Johnson, this is a statement of opinion about Detective Johnson's future that cannot not give rise to a defamation claim. *See, e.g., Spirax Sarco, Inv. v. SSI Eng'g, Inc.*, 122 F. Supp. 3d 408, 434 (2015) (statement that employee "would not be around for long" is a statement of opinion); *Craven v. Cope*, 188 N.C. App. 814, 818, 656 S.E.2d 729, 733 (2008) (statement in mailing that if elected, plaintiff "would raise your taxes to pay for new development" was a "political opinion and campaign assertion [ ] . . incapable of being actually or factually proven or disproven").

Further, assuming *arguendo*, that Attorney Lawrence told Chief Powell he "had a lot more 's*$^" on Detective Johnson, this statement is "loose, figurative, or hyperbolic language" that cannot be proven (*i.e.*, "a lot more s*$^" is a subjective opinion). Indeed, Chief Powell clearly did not take this comment literally, as Detective Johnson does not even allege that Chief Powell asked Attorney Lawrence to produce any "s*$^" on Detective Johnson. Accordingly, Detective Johnson's defamation claim against Attorney Lawrence based on the Investigatory Comment should be dismissed.

IV.     Plaintiff's 42 U.S.C.A. § 1983 Conspiracy Claim Should be Dismissed

Plaintiff asserts a conspiracy claim under 42 U.S.C.A. § 1983 against all defendants. *See* Compl., Count XV. To state a claim for conspiracy under 42 U.S.CA. § 1983, Detective Johnson must plausibly allege "that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the] deprivation of a constitutional right." *Hinckle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996). "[W]here direct evidence of a meeting of the minds is lacking, the plaintiff 'must come forward with specific circumstantial

20

evidence that each member ... shared the same conspiratorial objective.'" *Wall v. Gulledge*, 1:22-cv-31, 2023 WL 2049550, at *11 (M.D.N.C. Feb. 16, 2023) (citations omitted). "[P]laintiff must plead facts amounting to more than parallel conduct and a bare assertion of conspiracy." *Id.* (quoting *Barrett v. Pae Gov't Servs., Inc.*, 975 F.3d 416, 434 (4th Cir. 2020) (internal quotations omitted)). Standing alone, "parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Id.* A plaintiff's "factual allegations must plausibly suggest agreement, rather than being merely consistent with agreement." *Id.*

Detective Johnson contends that all nineteen defendants conspired to commit First Amendment Retaliation and Due Process Retaliation. See Complaint ("Compl."), ¶ 132.

A. Detective Johnson Has Failed to Allege a Conspiracy to Commit First Amendment Retaliation[15]

In order to state a conspiracy claim based on First Amendment Retaliation under § 1983, Detective Johnson must allege: (1) he engaged in protected First Amendment activity, (2) the defendant took some action that *adversely affected his First Amendment rights*; (3) there was a causal relationship between his protected activity and the defendant's conduct; and (4) two or more defendants agreed to retaliate against him for exercising his First Amendment rights. *Johnson v. Allen*, 416 F. Supp. 3d 550, 563 (E.D.N.C. 2018) (quoting *Martin v. Duffy,* 858 F.3d 239, 249 (4th Cir. 2017))*; see also Constantine v. Rectors & Visitors of George Mason Univ.,* 411 F.3d 474, 499 (4th Cir. 2005). A plaintiff "suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights." *Id. (quoting Constantine*, 411 F.3d at 500); *see also Baltimore Sun Co. v. Ehrlich*, 437 F.3d 410,

---

[15] To the extent the Complaint can be construed as asserting a common law "claim" of conspiracy under North Carolina law it fails for the same reasons set forth herein. *See e.g., Dove v. Harvey*, 168 N.C. App. 687, 690-91, 608 S.E.2d 798, 801 (2005).

416 (4th Cir. 2006). A plaintiff must show that "defendant's conduct resulted in something more than a 'de minimis inconvenience' to [his] exercise of First Amendment rights." *Id.* (*quoting Baltimore Sun Co.*, 437 F.3d at 416*); see also Constantine*, 411 F.3d at 500.

Detective Johnson exercised his First Amendment rights on or about January 2, 2020 when he spoke with the N&O about the Corruption Allegation, the Bribery Allegation, the Harassment Allegation and the Conflict Allegation. *See* Compl, ¶ 81. Detective Johnson exercised his First Amendment rights again on or about January 9, 2020 when he spoke with the Johnston County Report about the Harassment Allegation. *Id.* at ¶ 84. There are no allegations that Attorney Lawrence took any, much less any adverse, action to inhibit Detective Johnson's exercise of his First Amendment rights before or after these interviews. Indeed, there are no allegations that any defendant took any adverse action for 2 ½ years (when, according to Detective Johnson, the BOE requested that Tharrington Smith investigate "allegations made against [Detective Johnson] in retaliation for" exercising his First Amendment rights), suggesting the allegations were lodged by BOE members or Attorney Lawrence. *Id.* at ¶ 281. In fact, the "allegations" were made by Detective Johnson's Friend and his former friend, Phillips. *See* Compl., Exhibits 4 and 8. Detective Johnson's Complaint is devoid of any plausible allegations, direct or circumstantial, that Attorney Lawrence conspired with any other defendant to take any adverse action against Detective Johnson that would "shut him up." Accordingly, Detective Johnson's conspiracy claim based on First Amendment Retaliation under § 1983 against Attorney Lawrence should be dismissed.

      B.    Detective Johnson Has Failed to Allege a Conspiracy to Commit Due Process Retaliation

Detective Johnson also claims that Defendants conspired to commit Due Process Retaliation. There are no allegations that Attorney Lawrence had an agreement with any defendant

to commit Due Process Retaliation by "improper use of process"[16] or "illegal searches and seizures." A single allegation that Attorney Lawrence has a "longstanding relationship" with Chief Powell fails to plausibly allege a "meeting of the minds" between Attorney Lawrence and Chief Powell (neither of whom were even involved in the referral to the D.A.'s office or the D.A.'s investigation) to commit Due Process Retaliation.

<u>CONCLUSION</u>

This Court should dismiss Detective Johnson's claims against Attorney Lawrence because: (1) allegedly providing Detective Johnson's Offensive Texts for publication on social media does not "go beyond all possible bounds of decency" or constitute conduct "utterly intolerable in a civilized community;" (2) there are no allegations supporting Detective Johnson's conclusory claim that Attorney Lawrence tortiously interfered with his contract with the Smithfield police department; (3) claims based on the "defamatory" statements attributable to Attorney Lawrence are time-barred and, even if not time-barred, are statements of opinion; and (4) Detective Johnson has not alleged any facts supporting his conclusory assertion that Defendants conspired to commit First Amendment Retaliation or Due Process Retaliation.

Respectfully submitted this the 25th day of August, 2023.

LEDOLAW

/s/ Michele A. Ledo
Michele A. Ledo
Bar No. 32166
227 Elm Street
Raleigh, NC 27601
(919) 835-1311
mledo@ledolaw.com
*Counsel for Defendant*
*James R. Lawrence, Jr.*

---

[16]Malicious prosecution and abuse of process cannot serve as the basis for a 42 U.S.C.A. § 1983 claim as they are common law torts, not the deprivation of some constitutional right. *Cramer v. Crutchfield*, 648 F.2d 943, 945 (4th Cir. 1981).

23

<u>CERTIFICATE OF COMPLIANCE</u>

This is to certify that the foregoing *Memorandum of Law in Support of Motion to Dismiss of Defendant James R. Lawrence, Jr.* complies with the applicable word limit of 8400 words or less as counted by Microsoft's word-processing software.

/s/ Michele A. Ledo

<u>CERTIFICATE OF SERVICE</u>

This is to certify that the undersigned has on this day served the attached *Memorandum of Law in Support of Motion to Dismiss of Defendant James R. Lawrence, Jr.* on all of the parties to this cause by this Court's ECF filing system.

/s/Michele A. Ledo

24