UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:23-cv-00349-D-RN

RONALD JOHNSON,

  Plaintiff,

  v.

TOWN OF SMITHFIELD, MICHAEL SCOTT, in his individual and official capacity as TOWN MANAGER, TIMOTHY KERIGAN, in his individual and official capacity as TOWN HUMAN RESOURCES DIRECTOR, TERRY WEST, in his individual and official capacity as TOWN POLICE DEPT. LT., KEITH POWELL, in his individual and official capacity as TOWN POLICE CHIEF, MARLON LEE, in his individual and official capacity as TOWN COUNCIL MEMBER, THE JOHNSTON COUNTY SCHOOL BOARD OF EDUCATION, TODD SUTTON, in his individual and official capacity as MEMBER and FORMER CHAIR, TERRI SESSOMS, in her individual and official capacity as MEMBER, TERRY TIPPETT, in his individual and official capacity as MEMBER, MICHAEL WOOTEN, in his individual and official capacity as MEMBER, LYN ANDREWS, in her individual and official capacity as MEMBER and CURRENT CHAIR, KAY CARROLL, in his individual and official capacity as MEMBER, KEVIN DONOVAN, in his individual and official capacity as MEMBER, SUSAN DOYLE, DISTRICT ATTORNEY OF JOHNSTON COUNTY, in her individual and official capacity, RICHARD HOFFMAN, in his individual and official capacity, BENJAMIN O. ZELLINGER, in his individual and official capacity as Special Prosecutor, ANGIE MCLEOD, JIMMY LAWRENCE, DAVID MARSHBURN, and the ESTATE of JOSEPH PRESTON,

  Defendants.

**BOE DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS**

Case 5:23-cv-00349-D-RN   Document 71   Filed 09/08/23   Page 1 of 34

# Table of Contents

Statement of the Case ........................................................................................... 4

Factual and Procedural Background ...................................................................... 5

   I.   Parties .............................................................................................................. 6

   II.   Action of BOE Defendants ........................................................................... 6

      A.   Censure 1: Recording Closed Sessions.................................................. .6

      B.   Censure 2: Attempting to Unlawfully Reassign the Children of a personal adversary

for personal reasons............................................................................................... .7

      C.   Censure 3: Inappropriate Text Messages ................................................... 9

      D.   Letter to District Attorney .......................................................................... 10

   III.   Criminal Investigations and Indictments .................................................... 10

   IV.   Declarations Filed by the BOE Defendants ................................................ 10

   V.   Procedural History ....................................................................................... 11

Standards of Review .......................................................................................... 11

   I.   Rules 12(b)(1) and 12(b)(2) on Governmental Immunity in North Carolina .................... 11

   II.   12(b)(6).......................................................................................................... 12

Argument ........................................................................................................... 13

   I.   The Federal Claims against BOE Defendants Do Not State Claims Upon Which Relief
May Be Granted..................................................................................................... 13

      A.   The First Amendment Retaliation Claim Fails ............................................. 13

      1. The BOE Defendants' actions are not "materially adverse actions" that could support a
1st Amendment retaliation claim............................................................................13

      2. Plaintiff's allegations do not support a plausible inference of causation between his
allegedly protected speech and the BOE's actions.................................................. …14

      3. The individual BOE Defendants are entitled to qualified immunity................… …16

      B.   Plaintiff's Section 1983 Conspiracy Claim Fails. ....................................... 18

      C.   Plaintiff fails to allege an underlying constitutional harm. ......................... 18

      1. Plaintiff's allegations do not meet the "weighty burden" required to plausibly allege a
civil conspiracy.........................................................................................................18

   II.   State Law Claims against BOE Defendants Should Be Dismissed on Immunity
Grounds. ................................................................................................................. 21

      A.   The BOE's participation in the NCSBT does not waive governmental immunity..... 21

      B.   All of the claims are excluded from coverage.............................................21

      C.   The BOE did not waive governmental immunity by acquiring excess liability
insurance because the excess agreement contains the same exclusions........................... .22

   III.   State Law Claims against BOE Defendants Should Be Dismissed for Failure to State a
Claim..................................................................................................................... 24

      A.   IIED Elements are Not met because investigating and censuring Plaintiff for his
admitted misconduct is not "extreme and outrageous."............................................ 24

B.      No Tortious Interference with Contract: No allegations of intentional inducement, no allegations of unjustified action. .......................................................................................... 25

    1. No inducement by BOE Defendants………………………………………………..25
    2. The BOE had ample justification for its actions…………………………………….. 26
C.      Defamation: Plaintiff admits to the truth of the statements in the censures and August 26 letter, and both enjoy an irrebuttable qualified privilege. ................................................. 28

Conclusion ........................................................................................................................................ 31

COME NOW Defendants Johnston County Board of Education (the "BOE"),[1] Todd Sutton, Terri Sessoms, Terry Tippett, Michael Wooten, Lyn Andrews, Kay Carroll, and Kevin Donovan (collectively, the "BOE Defendants"), through counsel and pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(6), and Local Civil Rules 7.1 and 7.2, and provide this brief in support of their Motion to Dismiss. (DE 67).

## STATEMENT OF THE CASE

Plaintiff, a current member of the Johnston County Board of Education who is presently facing five criminal charges for much of the conduct described in his Complaint, has put forward rambling accusations against the Board of Education he purports to serve as well as his fellow board members. Despite the sometimes incoherent and other times shocking nature of the allegations, the vast majority of the Complaint is wholly immaterial to the claims brought against the BOE Defendants. There are in fact only four actions taken by the BOE Defendants forming the basis for the claims—three official censures and a letter to the local District Attorney regarding potential criminal conduct.

Each censure and the letter were voted on by the Board's members in open session at a duly called meeting of the Board. All BOE Defendants acted in accordance with their ethical obligations to uphold public trust in the school system, their oaths to faithfully administer the school laws, and their responsibilities for the education of children in Johnston County. Now they are being sued for doing so.

---

[1] Plaintiff incorrectly names the Board in his caption as the "Johnston County School Board of Education."

Plaintiff was the only board member to vote against each of these four actions. He does not deny however that he engaged in the conduct which his fellow board members decided warranted censure—he instead challenges the consequences of his own choices.

The purpose of this memorandum is to clarify for the Court which allegations are pertinent to the claims against the BOE Defendants, and explain why none of the claims should proceed. The Complaint contains five claims against the BOE Defendants (two federal law claims and three state law claims):

(1) First Amendment Retaliation under Section 1983 (Count Eight)

(2) Civil conspiracy under Section 1983 (Count Fifteen)

(3) Intentional Infliction of Emotional Distress (hereinafter "IIED") (Count Twelve)

(4) Tortious Interference with Contract (Count Thirteen)

(5) Defamation (Count Fourteen)

All of the claims should be dismissed for failure to state a claim upon which relief may be granted under Rule 12(b)(6). The two federal claims also may be dismissed on grounds of qualified immunity under Rule 12(b)(6). Additionally, the state law claims should be dismissed under Rules 12(b)(1) or (2) because all of the BOE Defendants have governmental immunity that they have not waived.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken from the Complaint and some of its exhibits.[2] They are taken as true only for the purposes of BOE Defendants' Motion to Dismiss.

---

[2] On motion to dismiss, the Court may consider exhibits attached to the complaint when their authenticity is not challenged. *E.g.*, *Mason v. Mach. Zone, Inc.*, 851 F.3d 315, 317 n.2 (4th Cir. 2017). BOE Defendants do not challenge the authenticity of Exhibits 4, 8, 11, 12, 13, or 14 to Plaintiff's Complaint. BOE Defendants take no position as to the authenticity of the remaining exhibits.

## I.     Parties

Plaintiff is a former Smithfield detective and current member of the BOE. (Complaint, DE2 ("Compl.") ¶¶6–7, 30, 32). Plaintiff was first elected to the Board in 2016. (*Id.* ¶66). He is one of seven board members. (*Id.* ¶¶45–51, 310).

The Board is a body corporate under N.C. Gen. Stat. § 115C-40 and is responsible for supervising the public-school system in Johnston County. (*Id.* ¶43). The Board only has authority to act when a quorum of its members is present and it is in session. Pursuant to statutory directive, the Board has adopted a code of ethics to govern its members. (*Id.* ¶67); *see also* N.C. Gen. Stat. § 160A-86(a).

Defendants Sutton, Sessoms, Tippett, Wooten, Andrews, Carroll, and Donovan are current or past members of the BOE. (Compl. ¶¶45–51).

## II.     Action of BOE Defendants

There are four actions of the BOE Defendants described in the Complaint: two censures on August 24, 2022, (*id.* ¶¶ 113-114); a letter to the local District Attorney on August 26, 2022, (*id.* ¶22); and a third censure on October 9, 2022, (*id.* ¶309). All other actions by various BOE Defendants are part and parcel of the official actions taken by the BOE: authorization of the investigations (approved by the full BOE), votes of BOE members, and execution and delivery of the letter authorized by the BOE.

Each censure decision was based on the results of an investigation presented by outside counsel in a duly called open meeting of the BOE. The underlying investigations were authorized by Board Policy 2610. (*See* Compl., Ex. 8, DE2-8, at 11). Plaintiff now admits to the underlying conduct for all three censures. (Compl. ¶ 79 (admitting to a text exchange), ¶284 (admitting to interfering in a student reassignment issue), and ¶290 (admitting to recording a closed session)).

Plaintiff contests that this conduct justified censure, but the factual bases for the censures are undisputed in the Complaint.

### A.  Censure 1: Recording Closed Sessions

The first censure involved Plaintiff's improper recording of a closed-session meeting of the BOE. Following public accusations that Plaintiff had recorded portions of the BOE's closed sessions, the BOE directed that an investigation be conducted by outside counsel. (Ex. 8, DE 2-8, at 5).

Plaintiff told investigators in August 2022 that he "did not recall recording a closed-session meeting of the Board between April 2022 and June 2022," but he acknowledged "that he had recorded discussions among Board members on approximately ten occasions since January 2022." (Ex. 8, DE 2-8, at 6). Plaintiff *admitted in the Complaint to recording a closed-session* on May 31, 2022.  (Compl. ¶284).

The investigators concluded, based on Plaintiff's own admissions, that he had recorded board members without their consent and substantiated the allegations that Plaintiff recorded the May 31, 2022 closed session. (Ex. 8, DE 2-8, at 5, 8). Investigators concluded that Plaintiff's surreptitious recordings violated the BOE's Code of Ethics, which Plaintiff had previously signed. (*Id.*). Specifically, Plaintiff violated BOE Policy 2120(B)(7), which provides that board members will "not make secret recordings, in any format, on school system property, at school- or Board-related events or meetings, or otherwise connected to the business of the Board or the Johnston County Public Schools." (Ex. 8, DE 2-8, at 7, 9).

The investigators presented the results of this investigation at a special-called meeting on August 24, 2022, and the Board voted to censure Plaintiff based on the investigation results at that meeting. (Compl. ¶113).

## B.    Censure 2: Attempting to Unlawfully Reassign the Children of a Personal Adversary for Personal Reasons

The second censure was based on Plaintiff's attempt to reassign the children of a personal adversary from one school to another. On August 11, 2022, Defendant Sutton, the Board Chair at the time, received an email from a parent alleging that Plaintiff had attempted to reassign his two children to another school. (Compl. ¶287; Ex. 8, DE 2-8, at 11). The parent alleged that Plaintiff was seeking this transfer due to personal animus towards him, the father of the children. (Ex. 8, DE 2-8, at 12). The Board authorized an investigation by outside counsel. (Ex. 8, DE 2-8, at 11).

On August 18, 2022, investigators asked Plaintiff to answer questions about the alleged attempt to reassign the children, but Plaintiff refused to be interviewed. (Compl. ¶¶287-88). The principal at the school the children attended, however, told investigators that Plaintiff asked him to remove the children from the school as retribution and retaliation for a personal dispute Plaintiff had with the children's father. (Ex. 8, DE 2-8, at 12). After his interview, the principal called investigators to report that Plaintiff had contacted him inquiring about what the Principal said during his interview. (*Id.* at 13).

Plaintiff now admits to the underlying actions in question—that is, interfering in a school reassignment without the parents' consent. Plaintiff alleges that he "did not explain to the Tharrington Smith attorneys that his discussions with [the principal] were motivated by his concern about the welfare of the children…." (Compl. ¶290). But this statement is an admission that Plaintiff did indeed discuss the transfer of the children with the principal, inappropriate conduct in and of itself given Plaintiff's responsibilities to the BOE. (*Id.*).

The investigators concluded that Plaintiff "sought to interfere with the school assignment of two special education students for personal reasons." (Ex. 8, DE 2-8, at 13). They also concluded that Plaintiff's actions violated the BOE's Code of Ethics which requires members to "refrain from

using the board member's position on the board for personal or partisan gain." (*Id.*). The results of the investigation were presented to the Board on August 24, 2022, and the Board voted to censure Plaintiff at that open meeting. (Compl. ¶114; Ex. 8, DE 2-8, at 3).

### C.   Censure 3: Inappropriate Text Messages

Long before the two investigations and censures in 2022, there was a third investigation related to the conduct of the then-Board attorney Defendant Lawrence.  In January 2020, attorneys hired by the Board interviewed Plaintiff in connection with the Lawrence investigation and asked him about text messages between Plaintiff and Defendant Lawrence. (Compl. ¶¶87–89; Ex. 4, DE 2-4, at 2, 6–7, 12–14). In a subsequent affidavit provided to the Board's investigators, Plaintiff admitted to sending the messages. (Ex. 4, DE 2-4, at 6–7). Those messages stated the following:

> **April 9, 2019**
> Ron Johnson (RJ): She's wearing the hell out of that blue dress
> Jimmy Lawrence (JL): I'm glad you haven't lost your "vision"
> RJ: I'm feeling a relationship"
> JL: Is that all?
> RJ: I'm ready right now
> JL: You stay on ready
>
> **May 14, 2019**
> RJ: Open invitation to the one in the purple
> JL: Shame on you. She's a mother. Aside from that, I agree

(Ex. 4, DE 2-4, at 6–7, 12–14; Compl. ¶307).[3] The attorneys conducting the investigation later concluded that Plaintiff's texts violated several Board policies. (Ex. 4, DE 2-4, at 4–5).

On October 6, 2022, the Board voted to censure Plaintiff a third time for his admitted conduct in sending the text messages above. (Compl. ¶309).

---

[3] Defendant Lawrence, the Board's outside counsel at the time, resigned his position as the Board's attorney on March 6, 2020. (Compl. ¶90).

**D. Letter to District Attorney**

After the BOE voted for the first two censures in August 2022, but before the third censure in October 2022, on August 24, the Board voted to ask Plaintiff to resign by noon on August 26, 2022, or a letter would be sent to the District Attorney inquiring about options for removal from office was an option. (Compl. ¶¶16, 301). On August 26, 2022, Defendant Sutton sent a letter to Defendant Doyle (the "August 26 Letter") stating that

> the Board voted for me to send a letter to you enclosing the investigative reports for your review and asking that you make a determination regarding whether the findings in these reports support his removal as Board member pursuant to GS 14-230 since the Board does not have the statutory authority to remove him.

(Ex. 8, DE 2-8, at 1; Compl. ¶301).

The BOE and its individual members, apart from these official actions taken to address Plaintiff's conduct as a member of the BOE, are not alleged to have taken any other actions related to Plaintiff.

**III. Criminal Investigations and Indictments**

Plaintiff was indicted on April 3, 2023, by a Johnston County grand jury on five separate counts: one count of Felony Extortion, three counts of Willfully Failing to Discharge duty, and one count of Felony Obstruction of Justice. (Compl. ¶¶325–31; Ex. 12, at 1-2). Only conduct mentioned in two of the counts (willfully failing to discharge duties) were included in the August 26 Letter; the other conduct described in the indictments is unrelated to the BOE Defendants. (Ex. 8, DE 2-8, at 1). These charges are still pending.

**IV. Declarations Filed by the BOE Defendants**

The BOE Defendants have filed two declarations in support of their Motion to Dismiss the state law claims on jurisdictional grounds. The Declaration of Stephen Britt ("Britt Decl."), (DE

68), explains the Board has not purchased or otherwise secured liability insurance coverage, but has entered into an agreement with the North Carolina School Boards Trust ("NCSBT"). (Britt Decl. ¶¶4-5). The Declaration of Melody Coons ("Coons Decl."), (DE 69), provides the coverage agreement between the Board and the NCSBT as well as an excess coverage agreement that covers claims over $150,000. Both of the agreements explicitly exclude coverage for the claims in the Complaint.

## V.  Procedural History

Plaintiff is still a member of the BOE. (Compl. ¶358). Plaintiff filed this suit on June 27, 2023. (DE 2). BOE Defendants now move to dismiss all claims against them.

## STANDARDS OF REVIEW

BOE Defendants move to dismiss the Complaint under Rules 12(b)(1), 12(b)(2), and 12(b)(6). (DE 67).

## I.  Rules 12(b)(1) and 12(b)(2) on Governmental Immunity in North Carolina

BOE Defendants' jurisdiction arguments are based on governmental immunity. "The North Carolina Supreme Court has not resolved whether governmental immunity challenges personal or subject matter jurisdiction." *Sutton v. Rockingham Cnty.*, No. 1:21CV95, 2022 WL 960460, at *2 (M.D.N.C. Mar. 30, 2022). Whichever standard is applied, the difference is likely immaterial. *Id* at *2.

"Under Rule 12(b)(1), a plaintiff must prove subject-matter jurisdiction." *Ortiz v. Vance Cnty. Sch., Admin. Unit*, No. 5:18-CV-91-D, 2019 WL 1940596, at *7 (E.D.N.C. Apr. 30, 2019). "In considering a motion to dismiss for lack of subject-matter jurisdiction, the court may consider evidence outside the pleadings without converting the motion into one for summary judgment." *Vlasaty v. Wake Cnty. Pub. Sch. Sys. Bd. of Educ.*, No. 5:17-CV-578-D, 2018 WL 4515877, at *6

(E.D.N.C. Sept. 20, 2018). "The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Richmond, Fredericksburg & Potomac R. Co.*, 945 F.2d at 768.Likewise, "[u]nder Rule 12(b)(2), a defendant must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016)

## II.     <u>12(b)(6)</u>

A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility means that the facts pled "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and mere recitals of the elements of a cause of action supported by conclusory statements do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When assessing the plausibility of a complaint, "'mere conclusory and speculative allegations' are insufficient, and a court 'need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013) "When evaluating a motion to dismiss, a court considers the pleadings and any materials 'attached or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011).

**ARGUMENT**

Plaintiff admits to the ethical misconduct for which he was censured and referred for investigation, yet all of his claims against the BOE Defendants are based exclusively on those actions. The federal claims should be dismissed for failure to state a claim, or alternatively on qualified immunity and intracorporate immunity grounds. The state law claims should be dismissed due to governmental immunity, or because they fail to state a claim.

**I.** **The Federal Claims against BOE Defendants Do Not State Claims Upon Which Relief May Be Granted.**

Plaintiff brings two claims against the BOE Defendants pursuant to 42 U.S.C. § 1983: one for First Amendment Retaliation (Count Eight), and one for civil conspiracy (Count Fifteen), both of which should be dismissed.

**A.** **The First Amendment Retaliation Claim Fails.**

Plaintiff alleges that the BOE Defendants' decisions to investigate, censure, and send their findings to the District Attorney violated the First Amendment because they were allegedly in retaliation for making statements about Board finances and sexual harassment. (Compl. ¶¶70–73).[4] This is not a viable claim.

In its recent unanimous decision, the Supreme Court set forth the test for gauging whether censure of a fellow board member of an elected board rises to the level of First Amendment retaliation. *Houston Cmty. Coll. Sys. v. Wilson*, 142 S. Ct. 1253 (2022). Plaintiff must ultimately establish two elements: (1) "that the government took a materially adverse action in response to his speech," and (2) that the action "would not have been taken absent the retaliatory motive."

---

[4] Plaintiff's Complaint begins renumbering paragraphs for the causes of action.

*Wilson*, 142 S. Ct. at 1260 (internal quotations omitted); *Shaw v. Foreman*, 59 F.4th 121, 130 (4th Cir. 2023).

Plaintiff's own allegations make clear that he will not be able to satisfy either element and, even if he could, the Individual BOE Defendants are entitled to qualified immunity.

### 1. The BOE Defendants' actions are not "materially adverse actions" that could support a First Amendment retaliation claim.

In *Wilson*, an elected official was censured by the elected body of which he was a member, and the Supreme Court found that the censure in and of itself could not be considered a materially adverse action. Mr. Wilson was one of nine elected trustees of the Houston Community College System. *Wilson*, 142 S. Ct. at 1257. Mr. Wilson made frequent public criticisms of his fellow board members, and sued them in court. Eventually, the board of trustees censured Mr. Wilson. In turn, Mr. Wilson sued the board for First Amendment Retaliation.

The Supreme Court rejected the very premise on which Plaintiff's claims against the BOE Defendants is based: a censure is not a "materially adverse action" prohibited by the First Amendment:

> we do not see how the Board's censure could qualify as a materially adverse action consistent with our case law. The censure at issue before us was a form of speech by elected representatives. It concerned the public conduct of another elected representative. Everyone involved was an equal member of the same deliberative body. As it comes to us, too, the censure did not prevent Mr. Wilson from doing his job, it did not deny him any privilege of office, and Mr. Wilson does not allege it was defamatory. At least in these circumstances, we do not see how the Board's censure could have materially deterred an elected official like Mr. Wilson from exercising his own right to speak.
> *Wilson* at 1261.

*Wilson* controls the case at bar on all material points. No material adverse action has been taken to support a First Amendment retaliation claim.

Likewise, the investigations into Plaintiff's underlying conduct cannot serve as the basis for Plaintiff's claim, nor can the August 26 Letter. The investigations by the Board and by the Town ultimately led to a criminal indictment, much of which has nothing to do with the BOE Defendants: taking steps to find out information is not in and of itself materially adverse under the First Amendment. *Conduct that "sets into motion" disciplinary action but is not the disciplinary action itself is not materially adverse. See e.g.*, *King v. City of New York*, 2023 WL 2398679 at *3 (2d Cir. 2023) (unpublished) (citing *Wilson*, 142 S. Ct. at 1253); *Paladino v. Seals-Nevergold*, No. 17-CV-538, 2020 WL 5544342, at *3 (W.D.N.Y. Sept. 15, 2020) ("[T]hough Paladino brings causes of action relating to the Board authorizing an investigation, his actions were open, publicly documented, and are not in dispute."). As the Fourth Circuit has said, "[i]t is difficult to fathom how a school and its administrators could be liable for investigating and taking disciplinary action for the legitimately inappropriate behavior to which [Plaintiff] has admitted in this case." *Penley v. McDowell Cnty. Bd. of Educ.*, 876 F.3d 646, 657-58 (4th Cir. 2017). It is equally difficult to fathom such liability in this case. Plaintiff cannot weaponize the First Amendment to silence the actions of his fellow elected officials based on his admittedly improper conduct.

### 2. Plaintiff's allegations do not support a plausible inference of causation between his allegedly protected speech and the BOE's actions.

Plaintiff also fails to plausibly allege that the actions "would not have been taken absent the retaliatory motive." *Wilson*, 142 S. Ct. at 1260. To succeed on his First Amendment claim, Plaintiff must demonstrate that "there was a causal relationship between his protected activity and the defendants' conduct." *Shaw*, 59 F.4th at 130 (quotations and citations omitted).

Plaintiff's own allegations make any inference of causation implausible.

Plaintiff alleges that the speech for which he was retaliated occurred in July 2019 when he raised concerns about a former BOE employee's behavior. (Compl. ¶69). Plaintiff first alleges that

former employee, Defendant Lawrence (not the BOE Defendants), immediately retaliated against him for that speech. (*Id.* ¶72). Plaintiff then claims that at some point **in 2019** he raised concerns about a conflict of interest with another board member. (*Id.* ¶75). Plaintiff lastly raised concerns **in January 2020** about alleged financial improprieties within the school system. (*Id.* ¶77; Ex. 2). Plaintiff does not allege any other potentially protected speech after the 2019 and 2020 statements, nor does he link with any plausible allegation the BOE's concerns about recording closed sessions and interfering in student assignment to that protected speech.

The recording and school transfer investigations began in August 2022, almost **three years** after Plaintiff engaged in the speech at issue and two years after the 2020 election. (*Id.* ¶281). This timeline is enough to make causation not plausible. Making causation even less plausible, the gap in timing is coupled with Plaintiff's own admissions to the conduct for which he was censured. Thus, the BOE had obvious, legitimate reasons for censuring Plaintiff, and it did so long after any of Plaintiff's alleged protected speech.

Under any theory, these allegations fail to establish the causation element. *Porter v. Bd. of Trs. of N.C. State Univ.*, 72 F.4th 573, 584 (4th Cir. 2023) (eight months too large to establish causation); *Thompson v. Dep't of Corr.*, No. CV1916391MASLHG, 2022 WL 18108399, at *5 (D.N.J. Dec. 30, 2022) (one-year too long); *Holden v. Wetzel*, No. 1:18-CV-237-SPB, 2021 WL 1090638, at *19 (W.D. Pa. Mar. 22, 2021).

Even if a censure could constitute a materially adverse action, the Complaint does not establish facts to support a retaliatory motive

### 3. The Individual BOE Defendants are entitled to qualified immunity.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Qualified immunity is a two-fold analysis: a defendant will have qualified immunity unless the plaintiff has alleged facts establishing both (1) the violation of a constitutional right and (2) that the right at issue was "clearly established" at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (later holding that this analysis need not be conducted in any particular order at 236). As described above, no violation of a constitutional right has occurred. Even if such a violation had occurred, however, such violation was not clearly established at the time the BOE Defendants acted.

In determining whether a right is clearly established, a court must consider whether it would be clear to a reasonable official that his or her "conduct was unlawful in the situation he confronted." *Henry v. Purnell*, 652 F.3d 524, 534 (4th Cir. 2011) (en banc).

No reasonable school board official would have considered an investigation, censure, and letter urging further investigation to be a violation of the First Amendment where the conduct violates the BOE's own code of ethics. Indeed, there was significant legal precedent that such conduct is not a violation of the First Amendment. *See, e.g.*, *Phelan v. Laramie Cnty. Community College Bd. of Trustees*, 235 F.3d 1243, 1248 (10th Cir. 2000); *Zilich v. Longo*, 34 F.3d 359, 364 (6th Cir. 1994). Indeed, *Wilson*—which is on all-fours with this case—was handed down on March 24, 2022, several months before the actions in question. If anything, *Wilson* would have put the BOE Defendants on notice that their actions were perfectly legal. Furthermore, each of the individual defendants acted in their official capacities in voting on the censures and letter to the

District Attorney: the Complaint does not allege that any single individual acted under color of state law without the express authority of the full BOE. In short, these individual defendants, in an effort to lawfully discharge their duties under clear precedent of the Supreme Court of the United States, are immune from the First Amendment claim.

**B.     Plaintiff's Section 1983 Conspiracy Claim Fails.**

Plaintiff's other federal claim is for civil conspiracy under Section 1983. (Compl. ¶¶131–36). "To establish a civil conspiracy under § 1983, [plaintiffs] must present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [plaintiff's] deprivation of a constitutional right…." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996). Thus, Plaintiff must establish (1) that the BOE Defendants acted in concert to violate his rights, (2) some overt act was done to that end, and (3) that his rights were, in fact, violated. *Id.*; *Penley*, 876 F.3d at 658 (noting that under *Hinkle*, this burden is "weighty"). Plaintiff's civil conspiracy claim should be dismissed for failing to plausibly allege facts supporting the first or third elements.

**C.     Plaintiff fails to allege an underlying constitutional harm.**

Beginning with the third element, Plaintiff has failed to allege an underlying constitutional harm in the form of First Amendment Retaliation. *See supra*, ARGUMENT § I.A.[5] This failure is fatal to Plaintiff's civil conspiracy claim. *Washington v. Buraker*, 322 F. Supp. 2d 702, 715 (W.D. Va. 2004), *aff'd*, 407 F.3d 274 (4th Cir. 2005). Plaintiff's civil conspiracy claim should be dismissed on this ground alone.

---

[5] There is not one substantive allegation linking any of the BOE Defendants to the other alleged constitutional violations in the Complaint – i.e. Counts Seven against individual Town Defendants for First Amendment Retaliation and Count Nine against Defendants Doyle, Hoffman, and Zellinger for Due Process and Fourteenth Amendment violations.

### 1. Plaintiff's allegations do not meet the "weighty burden" required to plausibly allege a civil conspiracy.

Alternatively, Plaintiff's civil conspiracy claim should also be dismissed for failing to allege facts "reasonably lead[ing] to the inference that the defendants positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Penley*, 876 F.3d at 658 (quoting *Hinkle*, 81 F.3d at 421). Plaintiffs do not have to point to direct evidence of a conspiracy, but they "must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective.'" *Id.*

As an initial point, Plaintiff cannot rely on any conspiracy amongst the Individual BOE Defendants themselves or based on Lawrence's actions as the BOE attorney. As to actions amongst the Individual BOE Defendants, such a theory would be barred by the intracorporate conspiracy doctrine, recognizing that a corporate body cannot conspire with its agents because its agents' acts are the corporate acts. *See Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 352–53 (4th Cir. 2013);[6] *Nance v. City of Albemarle, North Carolina*, 520 F.Supp.3d 758, 801-02 (M.D.N.C. 2021) (applying intracorporate immunity doctrine in Section 1983 case); *Buschi v. Kirven*, 775 F.2d 1240, 1251-53 (4th Cir. 1985) (providing history of intracorporate conspiracy doctrine in civil rights context)

As for the BOE's former attorney, Plaintiff cannot rely on any actions allegedly taken by Defendant Lawrence to establish his civil conspiracy claim because Lawrence resigned his position on March 6, 2020. (Compl. ¶90). "Plaintiff's civil conspiracy and retaliation claims are both subject to the same three-year statute of limitations that applies to all § 1983 actions in North Carolina." *Duncan v. Pendergrass*, No. 1:19CV459, 2021 WL 11430607, at *9 (M.D.N.C. Apr.

---

[6] There are exceptions to the intracorporate immunity doctrine, but Plaintiff has not alleged any facts suggesting those exceptions would apply. *See Painter's Mill Grille*, 716 F.3d at 352–53.

13, 2021), *recommendation adopted,* No. 1:19-CV-459, 2021 WL 11430624 (M.D.N.C. May 20, 2021); *see also Epcon Homestead, LLC v. Town of Chapel Hill*, 62 F.4th 882, 886 (4th Cir. 2023). The statute of limitations has therefore run on any conspiracy linked by Lawrence's actions while working for the BOE.

With these two limits, the only allegations that can support Plaintiff's civil conspiracy claim include allegations of conspiracy between the Individual BOE Defendants and non-BOE other Defendants. Those allegations are scant.

There are no allegations plausibly supporting a conspiracy between the BOE and Prosecutors. The August 26 Letter did refer Plaintiff for investigation by the District Attorney, but he does not allege any subsequent communication between the two entities. In fact, Plaintiff's Indictment contains three additional charges unrelated to the August 26 Letter, suggesting a lack of communication between the District Attorney and the BOE Defendants.

As for a conspiracy between the BOE and the Town of Smithfield, although Plaintiff's allegations indicate the Town of Smithfield was aware of the BOE's censure of Plaintiff, that allegation is hardly sufficient to establish conspiracy. The censures were public. There is no other allegation linking any conduct of the BOE to the Town, leaving any employment decisions to the Town.

Finally, the Complaint is completely devoid of allegations suggesting any concerted action or conspiracy between the BOE Defendants and the private Defendants (Marshburn, Preston, and McLeod).

In sum, Plaintiff has fallen far short of his "weighty burden" in pleading facts leading to a reasonable inference that the BOE Defendants conspired to deprive Plaintiff of his civil rights.

* * * * * * * * * * * * * * * * * *

In conclusion, both of Plaintiff's federal claims against the BOE Defendants should be dismissed with prejudice.

## II.    State Law Claims against BOE Defendants Should Be Dismissed on Immunity Grounds.

The doctrine of governmental immunity bars suits against "the state, its counties, and its public officials sued in their official capacities." *Herring v. Winston-Salem/Forsyth Bd. of Educ*., 137 N.C.App. 680, 683, 529 S.E.2d 458, 461 (2000). "A county or city board of education is a governmental agency, and therefore may not be liable in a tort action except insofar as it has duly waived its [governmental] immunity from tort liability pursuant to its statutory authority." *Overcash v. Statesville City Bd. of Educ*., 83 N.C.App. 21, 22-23, 348 S.E.2d 524, 526 (1986). This immunity extends to the three state law claims asserted here. *See, e.g., Biggs v. Edgecombe Cnty. Public Schools Board of Education*, 2018 WL 4471742 at *8-10 (E.D.N.C., 2018) (IIED and defamation); *MB Realty Group, Inc. v. Gaston Cnty. Board of Education*, 2019 WL 2106081 at *4-5 (W.D.N.C., 2019) (tortious interference with contract).

The BOE participates in the North Carolina School Boards Trust ("NCSBT"). (Coons Decl. ¶3, Coverage Agreement at Exhibit A; Britt Decl. ¶4).  The BOE's participation in the NCSBT and its Coverage Agreement do not waive its immunity or the immunity of its members for tort claims. In addition, the coverage agreement excludes all three of the claims asserted here from coverage. (Coons Decl. Ex. A). The Board also participates in an excess agreement for claims from $150,000 to $1,000,000, but this excess coverage agreement expressly excludes Plaintiff's claims as well. (Coons Decl. Ex. B). The Board has not otherwise obtained insurance under N.C. Gen. Stat. §115C-42. (Britt Decl. ¶5). Therefore, the Board has not waived its governmental immunity.

### A. The BOE's Participation in the NCSBT Does Not Waive Governmental Immunity.

North Carolina courts have repeatedly recognized that the purchase of coverage through participation in the NCSBT does not waive immunity because it does not qualify as liability insurance under the definition given in N.C. Gen. Stat. § 115C-42. *Barrett v. Bd. of Educ. of Johnston Cty.*, 13 F. Supp. 3d 502, 514 (E.D.N.C. 2014), *aff'd on other grounds*, 590 F. App'x 208 (4th Cir. 2014); *Willett v. Chatham Cty. Bd. of Educ.*, 176 N.C.App. 268, 269, 625 S.E.2d 900, 901–02 (2006). Thus, the BOE's participation in the NCSBT does not provide a waiver of immunity.

### B. All of the Claims are Excluded from Coverage.

Even if this Court were to construe the Coverage Agreement as constituting insurance, it explicitly excludes the claims brought by Plaintiff.

All claims brought by one board member against the other board members are excluded from coverage in Exclusion No. 30. (Coons Decl., Ex. B, at 8). Thus, there has been no waiver of immunity as to any claims against the current and former board members.

This leaves only the state law claims against the BOE itself, which have also been excluded:

- The IIED claim is excluded in Exclusion No. 28 of the Coverage Agreement. (*Id.* at 8).

- The tortious interference with contract claim is excluded through Exclusions No. 13 and 14. Because the tort of interference with contract requires intentional conduct and the Plaintiff's claims in this case are based on the censures themselves (intentional acts which Plaintiff claims were dishonest or at least violative of board policy), the exclusion for personal injury claims arising out of certain intentional acts (13) and the exclusion for claims arising out of violations of board policy (14) apply. (*Id.* at 6-7).

- The defamation claim is also excluded under Exclusion No 13. (*Id.*).

In short, all of the claims are excluded from the Coverage Agreement establishing clearly that governmental immunity will operate to bar all three of Plaintiff's state law claims.

**C.    The BOE Did Not Waive Governmental Immunity by Acquiring Excess Liability Insurance Because the Excess Agreement Contains the Same Exclusions.**

It is well-established law that the purchase of liability insurance alone does not waive governmental immunity unless the claim asserted by the plaintiff is actually covered by the insurance. *Bullard v. Wake Cty*., 221 N.C.App. 522, 527, 729 S.E.2d 686, 689 (2012) (citing *Patrick v. Wake Cnty. Dep't of Human Servs*., 188 N.C.App. 592, 596, 655 S.E.2d 920, 923 (2008); *Norton v. SMC Bldg., Inc.*, 156 N.C.App. 564, 569-70, 577 S.E.2d 310, 314- 15 (2003)). NCSBT entered into an excess multi-line reinsurance agreement with Safety National Casualty Corporation Insurance Company.   (Coons Decl. ¶4). Under the terms of the excess coverage agreement, coverage is available for any of NCSBT's covered losses after the full $150,000 of the NCSBT coverage is exhausted, up to $1,000,000. (*Id*.). Because the excess coverage agreement is a "contract of insurance" as defined by N.C. Gen. Stat. § 115C-42, the BOE will have waived governmental immunity with respect to any claims against it that are covered by the Excess Agreement and within the policy limits; but no claims are covered.

The Excess Agreement has the exact same exclusions that the Coverage Agreement has, providing in Paragraph 10: "Exclusions:      All exclusions contained in the Coverage Agreement and any additional exclusions listed in this Reinsurance Certificate and attached to the General Conditions apply to the coverage provided by this Reinsurance Certificate. " p. 1. Where there is no conflict between the Coverage Agreement with the NCSBT and the excess agreement in terms of exclusions, Plaintiff cannot show that the BOE waived governmental immunity. *Stacy v. Merrill*, 191 N.C.App. 131, 138, 664 S.E.2d 565, 569 (2008).

For all of these reasons, the three state law claims should be dismissed on immunity grounds.

## III.    State Law Claims against BOE Defendants Should Be Dismissed for Failure to State a Claim.

Even if the BOE Defendants had waived governmental immunity, the Complaint fails to state claims for IIED, tortious interference with contract, or defamation.

### A.    IIED Elements are Not met because investigating and censuring Plaintiff for his admitted misconduct is not "extreme and outrageous."

In order to make out an IIED claim, a plaintiff must prove: "(1) extreme and outrageous conduct by the defendant, (2) which is intended to cause and does cause (3) severe emotional distress to another." *Turner v. Thomas*, 369 N.C. 419, 427, 794 S.E.2d 439, 446 (2016) (quoting *Dickens v. Puryear*, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981)). Whether conduct is extreme or outrageous is a question of law. *Lenins v. K-Mart Corp.*, 98 N.C.App. 590, 599, 391 S.E.2d 843, 848 (1990).

"[E]xtreme and outrageous conduct is that which exceeds all bounds of decency tolerated by society, and is regarded as atrocious, and utterly intolerable in a civilized community[.]" *Id.* (internal quotations and citations omitted). This is a "'high threshold'." *Id.* (quoting *Dobson v. Harris*, 134 N.C.App. 573, 578, 521 S.E.2d 710, 715 (1999), *rev'd on other grounds*, 352 N.C. 77, 530 S.E.2d 829 (2000)). As such, liability does "not extend to mere insults, indignities, or threats." *Ortiz v. Vance Cnty. Sch., Admin. Unit*, No. 5:18-CV-91-D, 2019 WL 1940596, at \*9 (E.D.N.C. Apr. 30, 2019) (quoting *Hogan v. Forsyth Country Club Co.*, 79 N.C.App. 483, 493, 340 S.E.2d 116, 123 (1986)). Instead, "[i]n cases where North Carolina courts have found IIED claims actionable, the conduct has been extremely egregious, and involved sexual advances, obscene

language, and inappropriate touching." *Id.* (quoting *Bratcher v. Pharm. Prod. Dev., Inc.*, 545 F. Supp. 2d 533, 545 (E.D.N.C. 2008)).

Plaintiff's claim against the BOE Defendants for IIED is limited to the following theory:

Defendants Town, Scott, Kerigan, West, Powell, Lee, BOE, Sutton, Sessoms, Tippett, Wooten, Andrews, Carroll, Donovan, Doyle, and Hoffman, all ratified and adopted the actions of Defendants McLeod, Lawrence, Marshburn, and Preston by relying on them without any bona fide investigation or evaluation.

(Compl. ¶112). However, as the Complaint explains, the BOE Defendants did not rely on any hearsay; they hired attorneys to conduct a thorough investigation of Plaintiff's ethical violation. (*See generally* Ex. 8). Plaintiff now admits to the underlying conduct for which he was censured. (Compl. ¶¶284, 290, 307). The BOE's decision to censure one of its own for admitted conduct that violates the body's ethical guidelines cannot be extreme and outrageous conduct as a matter of law. *Westfall*, 2011 WL 4024663, at *9.; *cf. Nelson v. Hinman*, No. CIV. L-10-1816, 2012 WL 395119, at *10 (D. Md. Feb. 6, 2012), *aff'd,* 475 F. App'x 850 (4th Cir. 2012). The Complaint fails to state a claim for IIED.

### B. No Tortious Interference with Contract: No allegations of intentional inducement, no allegations of unjustified action.

Plaintiff alleges that the BOE Defendants interfered with his terminable-at-will employment contract with the Smithfield PD. (Compl. ¶¶117–25). As with his other claims, Plaintiff fails to allege any facts supporting this allegation.

The tort of interference with contract requires: (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.

*United Labs, Inc. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988). Plaintiff fails to plead any facts supporting the third (inducement) or fourth (lack of justification) elements.

### 1.    No Inducement by BOE Defendants.

A plaintiff must present some evidence that the defendant(s) sought to intentionally induce the termination of their employment. *Id.* In *Esposito v. Talbert & Bright, Inc.*, the plaintiff, a former NCDOT employee, sued an engineering firm and one of its officers for tortious interference with his employment contract. 181 N.C.App. 742, 745, 641 S.E.2d 695, 697 (2007). The plaintiff was a project manager for a runway expansion, and the defendants were the engineering firm hired by the airport authority to consult on the project and one of the firm's officers. *Id.* at 743, 641 S.E.2d at 696. Defendants had complained to plaintiff's supervisor about ethical concerns and other issues. *Id.* Based partly on those complaints, but also other issues, NCDOT fired plaintiff, and plaintiff sued for tortious interference with contract.

The North Carolina Court of Appeals rejected the claim on inducement grounds, noting that "[d]efendants' allegations and problems with plaintiff were but one of six instances of unacceptable conduct upon which NCDOT based the termination of plaintiff's employment." *Id.* at 745, 641 S.E.2d at 697. Further, noted the Court, the plaintiff had "not produced any evidence indicating defendants actually sought the termination of plaintiff's employment with NCDOT." *Id.*

Plaintiff here is in a similar situation to the one in *Esposito*. He alleges his termination from the Smithfield Police Department was driven by issues other than the Board's censure and referral; it was the Facebook Live video posted on June 24, 2022, that led to an administrative investigation by the Smithfield Police Department. (Compl. ¶¶225–29). That posting, and the efforts of Defendants other than the BOE Defendants (occurring prior to the August 24, 2022 censures) were what allegedly led to Plaintiff's termination. (*Id.* ¶¶232, 267).

The Smithfield PD's subsequent decision to terminate Plaintiff was a product of that department's investigation, an investigation that commenced before the BOE's censures. (*See id.*

¶¶333–45.) The Smithfield PD termination letter made one reference to Plaintiff's activity on the BOE, (*see* Ex. 13, DE 2-13), but that was "one of [several] instances of unacceptable conduct upon which [the Smithfield Police Department] based the termination of [P]laintiff's employment." *Esposito*, 181 N.C.App. at 745, 641 S.E.2d at 697. The Town Manager's letter notes that he read about the Censures in the newspaper, not that he heard it from any BOE Defendant. (Ex. 14, DE 2-14, at 1).

In sum, Plaintiff has not made any allegations leading to the reasonable inference that the BOE Defendants induced his termination as a police officer.

### 2.     The BOE had ample justification for its Actions.

Whether an action is justified depends on "the circumstances surrounding the interference, the actor's motive or conduct, the interests sought to be advanced, the social interest in protecting the freedom of action of the actor, and the contractual interests of the other party." *Embree Const. Grp., Inc. v. Rafcor, Inc.*, 330 N.C. 487, 498, 411 S.E.2d 916, 924 (1992) (internal citations and quotations omitted). The justification element is not satisfied if "the act is done other than as a reasonable and *bona fide* attempt to protect the interest of the accused which is involved." *Barnard v. Rowland*, 132 N.C.App. 416, 426, 512 S.E.2d 458, 466 (1999) (quoting *Peoples Security Life Ins. Co. v. Hooks*, 322 N.C. 216, 220, 367 S.E.2d 647, 650 (1988)). Indeed, if an action is taken for a "legitimate purpose, the act is privileged." *Id.* (quoting *Peoples Security Life Ins. Co. v. Hooks*, 132 N.C.App. 216, 221, 512 S.E.2d 647, 650 (1988). "Reporting and investigating repeated complaints by [others] about a co-employee's work performance is a legitimate business interest." *Schwarz v. St. Jude Med., Inc.*, 270 N.C.App. 720, 730, 842 S.E.2d 119, 127 (2020).

The BOE Defendants were justified in investigating the allegations, issuing the censures, and sending the matter to the District Attorney for further investigation. Plaintiff himself admits

to the underlying conduct, conduct which violated several of the BOE's ethical guidelines. There is no stronger justification for the BOE's actions. *See id.*

      **C.**      **Defamation: Plaintiff admits to the truth of the statements in the censures and August 26 letter, and both enjoy an irrebuttable qualified privilege.**

In Count Fourteen, Plaintiff brings a defamation claim against the BOE Defendants. It fails as a matter of law for two reasons. First, the Censures and the August 26 Letter discuss conduct to which the Plaintiff admits—thus, they cannot be false. Second, to the extent the statements are defamatory, they enjoy a qualified privilege which the Plaintiff's allegations show he cannot overcome.

In order to make out a claim of defamation *per se,* a plaintiff must plausibly allege that: "defendant spoke or published base or defamatory words which tended to prejudice plaintiff in [his] reputation, office, trade, business or means of livelihood or hold plaintiff up to disgrace, ridicule or contempt; the statement was false; and the statement was published or communicated to and understood by a third person." *Robinson v. East Carolina University*, 329 F.Supp.3d 156, 183-84 (E.D.N.C. 2018) (quoting *Cummings v. Lumbee Tribe*, 590 F. Supp. 2d 769, 774 (E.D.N.C. 2008)). "And where the plaintiff is a public official, they must also prove that the defendant published the false statements with "actual malice." *Cannon v. Peck*, 36 F.4th 547, 559 (4th Cir. 2022).

Plaintiff does not specify what defamatory statements the BOE Defendants made. However, the only BOE statements that Plaintiff alleged occurred within the one-year statute of limitations are the Censures and the August 26 Letter. *Shaw v. Harris*, No. 5:12-CV-804-BR, 2014 WL 2805027, at *2 (E.D.N.C. June 20, 2014) (one-year statute of limitation for North Carolina defamation claims).

Regardless of whether the statements meet the definition of libel per se, Plaintiff cannot show they were untrue or that they were made with malice. Truth is an absolute defense to defamation. *Cannon*, 36 F.4th at 564 n.11; *Taube v. Hooper*, 270 N.C.App. 604, 612, 840 S.E.2d 313, 319 (2020). "Where plaintiff's own pleadings establish the truth of an allegedly defamatory statement, dismissal per Rule 12(b)(6) is proper."[7] *Taube*, 270 N.C.App. at 612, 840 S.E.2d at 319 (quoting *Holleman v. Aiken*, 193 N.C.App. 484, 496–97, 668 S.E.2d 579, 587–88 (2008)).

Plaintiff admitted that he recorded a closed session. (Compl. ¶284). He admitted that he sent the inappropriate text messages to Defendant Lawrence. (Ex. 4, DE 2-4, at 6–7). And he admitted that he discussed the reassignment of two students without their parents' consent. (Compl. ¶277; Ex. 8, DE 2-8, at 13). The Censures cited this admitted conduct and pointed out the black-and-white ethical policies each violated. (Ex. 8, DE 2-8, at 3–4). The August 26 Letter summarized the same information from the Censures and included the underlying reports—that letter was sent to the District Attorney following another vote of the BOE. (Ex. 8, DE 2-8, at 1). The District Attorney's investigation has resulted in a five-count indictment.

Additionally, even if the Censures or the August 26 Letter were defamatory, they are privileged statements, and Plaintiff's allegations make clear he cannot overcome that privilege.

"Qualified privilege is a defense for a defamatory publication." *Clark v. Brown*, 99 N.C.App. 255, 262, 393 S.E.2d 134, 138 (1990). If a qualified privilege is shown to exist, a plaintiff may only proceed if he "can prove both the falsity of the charge ***and*** that it was made with actual malice." *Bos. v. Webb*, 73 N.C.App. 457, 460, 326 S.E.2d 104, 106 (1985) (emphasis added).

---

[7] Though a state procedural rule, it is substantively compatible with the *Twombly*/*Iqbal* standard. *See El Omari v. Buchanan*, No. 22-55-CV, 2022 WL 4454536, at *3 (2d Cir. Sept. 26, 2022) (citing *Taube* with approval).

> A defamatory statement is qualifiedly privileged when made (1) on subject matter (a) in which the declarant has an interest, or (b) in reference to which the declarant has a right or duty, (2) to a person having a corresponding interest, right or duty, (3) on a privileged occasion, and (4) in a manner and under circumstances fairly warranted by the occasion and duty, right or interest.

*Walker v. Wake Cnty. Sheriff's Dep't*, 284 N.C.App. 757, 764, 877 S.E.2d 298, 304, *review allowed*, 883 S.E.2d 446 (N.C. 2023) (quoting *Clark*, 99 N.C.App. at 262, 393 S.E.2d at 138). "Whether the communication is privileged is a question of law…." *Phillips v. Winston-Salem/Forsyth Cnty. Bd. of Educ.*, 117 N.C.App. 274, 278, 450 S.E.2d 753, 756 (1994).

Statements are privileged when they are made by school officials during official meetings that have to do with potential misconduct. *See id.*; *White v. Sch. Bd. Hillsborough Cnty.*, No. 08-10922, 2009 WL 174944, at *4 (11th Cir. Jan. 27, 2009) (applying similar Florida law); *Badger v. Greater Clark Cnty. Sch.*, No. 4:03-CV-0101-SEB-WGH, 2005 WL 645152, at *8 (S.D. Ind. Feb. 15, 2005) ("Certainly, a school board has an interest and a duty to provide and maintain qualified personnel within the school corporation; thus, communications between and among board members relating to school personnel is protected by the qualified privilege…."); *see also Kinloch v. News & Observer Pub. Co.*, 314 F. Supp. 602, 606–07 (E.D.N.C. 1969), *aff'd*, 427 F.2d 350 (4th Cir. 1970); *Herndon v. Melton*, 249 N.C. 217, 217, 105 S.E.2d 531, 531 (1958) (applying qualified privilege to report of investigation into misconduct at a church).

Again, the only BOE statements that fall within the one-year statute of limitation are the Censures and the August 26 Letter. All of these statements had to do with the admitted unethical behavior of a fellow elected official in violation of the Board's Code of Ethics. They were each made after a vote of the BOE, in open session, where Plaintiff was allowed to participate. The August 26 Letter was sent to the District Attorney, an official with an obvious interest in

prosecuting criminal conduct. Plaintiff now faces five charges. The Censures and August 26 Letter meet all the criteria to qualify for privilege.

In sum, due to both governmental immunity and failure to state a claim, all three state law claims should be dismissed against the BOE Defendants.

## <u>CONCLUSION</u>

For these reasons, the Court should grant the Motion to Dismiss, and dismiss the Complaint against the Johnston County Board of Education and its current and former members.

Respectfully submitted, this the 8th day of September, 2023.

/s/ Elizabeth L. Troutman
James C. Adams, II
  N.C. State Bar No. 18063
jadams@brookspierce.com
Elizabeth Troutman
  N.C. State Bar No. 48236
etroutman@brookspierce.com
 William O. Walker IV
  N.C. State Bar No. 55200
wwalker@brookspierce.com
Brooks Pierce, PLLC
*Attorneys for BOE Defendants*
2000 Renaissance Plaza
230 North Elm St.
Greensboro, NC 27401
Telephone: (336) 373-8850
Fax: (336) 378-1001

## **CERTIFICATE OF WORD COUNT**

I hereby certify that the foregoing document complies with the word count limits established in Local Civil Rule 7.2(f). Specifically, the document contains 8,309 words, as counted in compliance with Local Civil Rule 7.2(f)(1).

/s/ Elizabeth L. Troutman
Elizabeth L. Troutman

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:23-cv-00349-D-RN

RONALD JOHNSON,

  Plaintiff,

  v.

TOWN OF SMITHFIELD, MICHAEL SCOTT, in his individual and official capacity as TOWN MANAGER, TIMOTHY KERIGAN, in his individual and official capacity as TOWN HUMAN RESOURCES DIRECTOR, TERRY WEST, in his individual and official capacity as TOWN POLICE DEPT. LT., KEITH POWELL, in his individual and official capacity as TOWN POLICE CHIEF, MARLON LEE, in his individual and official capacity as TOWN COUNCIL MEMBER, THE JOHNSTON COUNTY SCHOOL BOARD OF EDUCATION, TODD SUTTON, in his individual and official capacity as MEMBER and FORMER CHAIR, TERRI SESSOMS, in her individual and official capacity as MEMBER, TERRY TIPPETT, in his individual and official capacity as MEMBER, MICHAEL WOOTEN, in his individual and official capacity as MEMBER, LYN ANDREWS, in her individual and official capacity as MEMBER and CURRENT CHAIR, KAY CARROLL, in his individual and official capacity as MEMBER, KEVIN DONOVAN, in his individual and official capacity as MEMBER, SUSAN DOYLE, DISTRICT ATTORNEY OF JOHNSTON COUNTY, in her individual and official capacity, RICHARD HOFFMAN, in his individual and official capacity, BENJAMIN O. ZELLINGER, in his individual and official capacity as Special Prosecutor, ANGIE MCLEOD, JIMMY LAWRENCE, DAVID MARSHBURN, and the ESTATE of JOSEPH PRESTON,

  Defendants.

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served on all counsel of record via CM/ECF.

Respectfully submitted, this the 8th day of September, 2023.

/s/ Elizabeth L. Troutman
Elizabeth L. Troutman