**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. 5:23-cv-349-D-RN**

| | | |
|---|---|---|
| RONALD JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OF LAW** |
| | ) | **IN SUPPORT OF** |
| TOWN OF SMITHFIELD, MICHAEL | ) | **TOWN DEFENDANTS'** |
| SCOTT, in his individual and official | ) | **MOTION TO DISMISS** |
| capacity as TOWN MANAGER, | ) | |
| TIMOTHY KERIGAN, in his individual | ) | |
| and official capacity as TOWN HUMAN | ) | |
| RESOURCES DIRECTOR, TERRY | ) | |
| WEST, in his individual and official | ) | |
| capacity as TOWN POLICE DEPT. LT., | ) | |
| KEITH POWELL, in his individual and | ) | |
| official capacity as TOWN POLICE | ) | |
| CHIEF, MARLON LEE, in his | ) | |
| individual and official capacity as | ) | |
| TOWN COUNCIL MEMBER, THE | ) | |
| JOHNSTON COUNTY SCHOOL | ) | |
| BOARD OF EDUCATION, TODD | ) | |
| SUTTON, in his individual and official | ) | |
| capacity as MEMBER and FORMER | ) | |
| CHAIR, TERRI SESSOMS, in her | ) | |
| individual and official capacity as | ) | |
| MEMBER, TERRY TIPPETT, in his | ) | |
| individual and official capacity as | ) | |
| MEMBER, MICHAEL WOOTEN, in his | ) | |
| individual and official capacity as | ) | |
| MEMBER, and CURRENT CHAIR, | ) | |
| KAY CARROLL, in his individual and | ) | |
| official capacity as MEMBER, KEVIN | ) | |
| DONOVAN, in his individual and official | ) | |
| capacity as MEMBER, SUSAN DOYLE, | ) | |
| DISTRICT ATTORNEY of JOHNSTON | ) | |
| COUNTY, in her individual and official | ) | |

capacity, RICHARD HOFFMAN, in his )
individual and official capacity, )
BENJAMIN O. ZELLINGER, in his )
individual and official capacity as )
Special Prosecutor, ANGIE MCLEOD, )
JIMMY LAWRENCE, DAVID )
MARSHBURN, and the ESTATE of )
JOSEPH PRESTON. )
)
                    Defendants. )

Defendants Town of Smithfield, Michael Scott, in his individual and official capacity as Town Manager, Timothy Kerigan, in his individual and official capacity as Town Human Resources Director, Terry West, in his individual and official capacity as Town Police Lt., and Keith Powell, in his individual and official capacity as Town Council Member (hereinafter collectively referred to as the "Town Defendants), by and through counsel, and pursuant to Local Civil Rule 7.1(e), respectfully submits this Memorandum of Law in Support of Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## SUMMARY OF LEGAL ARGUMENT

Plaintiff's Complaint goes to great length to speculate about the existence of an alleged conspiracy to terminate his employment with the Town of Smithfield. However, Plaintiff admits that there were multiple public allegations made against him, including multiple public School Board censures, and that these were the foundation for the Town's investigation and eventual decision to terminate Plaintiff's employment. The truth is that the Town had legitimate non-discriminatory and non-retaliatory reasons for Plaintiff's termination related to his

conduct and nothing that Plaintiff has pled, or can plead, can overcome these reasons.

## STATEMENT OF ALLEGED RELEVANT MATERIAL FACTS

Plaintiff was hired by the Town of Smithfield (the "Town") on June 13, 2005 as a police officer, and became a detective in 2012. DE 1, ¶ 65. In 2016, Plaintiff ran for and was elected to a seat on the Johnston County Board of Education (the "School Board"). *Id.* at ¶ 66. While serving on the School Board, Plaintiff learned that the School Board's attorney, Jimmy Lawrence ("Lawrence"), was engaged in sexual harassment of a School Board employee, but he was unable to convince the School Board to act. *Id.* at ¶¶ 69-89. Eventually, Lawrence resigned. *Id.* at ¶ 90.

In the fall of 2020, Plaintiff began a relationship with a woman he met at various political events and School Board meetings, Angie McLeod. *Id.* at ¶ 92. On November 14, 2020, Plaintiff received oral sex from McLeod while he was driving down I-40. *Id.* at ¶ 107. Beginning in December 2020 and lasting for approximately nine months, Plaintiff and McLeod had a series of sexual encounters which Plaintiff contends were forced on him because McLeod threatened to tell his wife. *Id.* at ¶¶ 118, 129. Between September 2021 and December of 2021, McLeod did not attempt any sexual advances towards Plaintiff, but they remained in contact. *Id.* at ¶ 137. In January of 2022, McLeod began trying to convince Plaintiff to re-engage in their sexual relationship, again threatening to tell Plaintiff's wife. *Id.* at ¶ 139.

On May 8, 2022, Plaintiff began receiving harassing text messages from an unknown number, who he allegedly connected to McLeod based on her social media

activities. *Id.* at ¶ 143. On May 17, 2022, Plaintiff attended a Primary Election results party in which McLeod confronted Plaintiff and told him that she told her husband about their relationship and that she was going to have Plaintiff "handled." *Id.* at ¶¶ 144-147. She told Plaintiff that she was going to "get your little police department to handle you because you think you're somebody with your little superhero car and your little superhero muscles." *Id.* at ¶ 147.

In mid-May of 2022, Plaintiff notified his supervisor, Lt. Terry West ("Lt. West") about the text messages he had received. *Id.* at ¶ 148. Lt. West told Plaintiff that they should keep the matter between themselves, and not tell anyone else at the police department. *Id.* at ¶ 150.

On May 23, 2022, Plaintiff also told Johnston County School Superintendent Eric Bracey about the texts from McLeod. *Id.* at ¶ 152. That day, McLeod continued to text Plaintiff and his wife. *Id.* at ¶¶ 152-154.

On June 14, 2022, WRAL sent an information request regarding paperwork being filed against Plaintiff by McLeod for stalking and sexual harassment. *Id.* at ¶ 158. Upon receiving this request, Plaintiff contacted Lt. West, and Lt. West told Plaintiff he should get a protective order against McLeod before she got one against him because if she did, the police department would need to put him on leave. *Id.* at ¶ 159. Plaintiff contacted the Johnston County Sheriff's Office and informed them that McLeod was calling Plaintiff and his wife and sitting outside the building in which he worked. *Id.* at ¶ 161. Captain Kelly Garner said she would get the paperwork ready for Plaintiff to file. *Id.*

On June 15, 2022, Plaintiff met with Captain Garner, and she advised him of what he needed to do to get the order entered. *Id.* at ¶ 167. Captain Garner went with Plaintiff to the courthouse, where Judge Wells entered the order. *Id.* at ¶ 170. On June 23, 2022, a different district court judge called Plaintiff and told him to dismiss the protective order, which he did the next day. *Id.* at ¶ 177.

On June 24, 2022, Defendants Marshburn and Preston taped a Facebook Live event raising allegations of misconduct by Plaintiff. *Id.* at ¶¶ 178-187.

On June 27, 2022, the Smithfield Police Department began an investigation into the allegations of misconduct against Plaintiff. *Id.* at ¶ 225. The notice of investigation informed Plaintiff the investigation would be focused on 1) whether Plaintiff had used department equipment to investigate people in furtherance of Plaintiff's political career, and 2) whether Plaintiff had used department equipment in the commission of an extra-marital affair. *Id.* at ¶¶ 226-227.

On June 30, 2022, Defendants Marshburn and Preston posted another webcast accusing Plaintiff of misconduct, including that Plaintiff filed a 50C Order instead of a 50B Order because he was trying to hide the fact that he had a sexual relationship with McLeod. *Id.* at ¶ 230.

Plaintiff alleges that McLeod was interviewed by the police department on July 5, 2022 about her encounters with Plaintiff. *Id.* at ¶ 232. Also on July 5, 2022, Plaintiff was informed that he was being placed on administrative leave with pay due to the allegations which had been made against him. *Id.* at ¶ 233. Plaintiff alleges

that he was told that it did not matter whether he had engaged in an affair as long as it did not happen while Plaintiff was working and on duty. *Id.* at ¶ 240.

The next day, on July 6, 2022, Plaintiff provided a note to the Town that he was suffering from "acute anxiety" and had been advised to remain out of work until July 29, 2022. *Id.* at ¶ 241. On July 13, 2022, Plaintiff was provided a new memo informing him that the administrative leave was without pay. *Id.* at ¶ 243. However, he was paid using accrued sick leave. *Id.* at ¶ 255. During his leave time, Plaintiff was told that he would need a doctor's note clearing him to return to work. *Id.* at ¶ 247. Plaintiff was informed that he was expected to cooperate with the ongoing investigation and to remain in contact with Lt. West. *Id.* at ¶ 248.

On July 14, 2022, Defendants Washburn and Preston published another webcast. *Id.* at ¶ 249. Plaintiff observed that a City Council member, Marlon Lee, "liked" the video at some point. *Id.* at ¶ 250. This is one of only two allegations referencing Defendant Lee's actions in Plaintiff's 111-page Complaint.

On July 27, 2022, Plaintiff's counsel sent a letter asserting that Plaintiff was being discriminated against because of his sex. *Id.* at ¶ 251.

On August 24, 2022, while Plaintiff was still on leave and unrelated to Plaintiff's employment with the Town, Plaintiff received two censures from the School Board. *Id.* at ¶ 291. These censures were related to Plaintiff's recording of a closed session meeting at which the School Board discussed taking an adverse action against a school employee based on her age and her disability, and Plaintiff's attempt

to tamper with the assignment of children in the district. *Id*. at ¶¶ 292-293. This information was made available to the public. *Id*.

On September 1, 2022, Plaintiff was interviewed by Lt. West as part of the Town's administrative investigation. *Id*. at ¶ 261. Plaintiff alleges Lt. West made comments indicating that he believed McLeod. *Id*. On September 7, 2022, Town Manager Michael Scott interviewed Plaintiff. *Id*. at ¶ 265. Plaintiff alleges that the scope of the administrative investigation expanded over time, and shifted to whether he had signed paperwork presented to him related to the protective order against McLeod while he was on patrol. *Id*. at ¶ 266.

On September 30, 2022, Lt. West interviewed Plaintiff again, and told him that he had perjured himself when taking out the protective order against McLeod because he had stated that the sexual contact with McLeod had not been consensual, and Lt. West did not believe Plaintiff's story. *Id*. at ¶ 267. He stated that Plaintiff should have filed a 50C order instead of a 50B. *Id*.[1]

Plaintiff contends that Defendants Marshburn and Preston posted webcasts that Plaintiff had been given the opportunity to resign or be terminated, and that he was on FMLA leave. *Id*. at ¶¶ 270-72.

At the conclusion of the Town's investigation, on October 5, 2023, Chief Powell wrote a recommendation for Plaintiff's termination, which was provided to Plaintiff in a meeting with Chief Powell and HR Director Tim Kerigan. *Id*. at ¶ 333. The memo noted that Plaintiff had been involved in an internal investigation due to

---

[1] Plaintiff contends his criminal attorney, who was not identified, has advised him that the order he obtained was appropriate. *Id*. at ¶ 268.

allegations made by a member of the public. *Id.* at ¶ 334. The memo stated that the investigation "revealed that Detective Johnson had been involved in a two-year affair (which Defendant Johnson alleged he was the victim of an ongoing sexual assault)." *Id.* at ¶ 335. The memo further stated that "during this time, it was alleged that Detective Johnson used Police Department equipment and that he misrepresented facts when obtaining a no contact order (50C) on the female involved in the affair." *Id.* at ¶ 337. The memo went on to say that, "due to the sexual relationship that had taken place with the female, the correct order would have been a (50B)." *Id.* at ¶ 342. The memo stated that, "as an experienced officer, Detective Johnson knew, or should have known, about the correct order." *Id.* at ¶ 344. Powell stated that Plaintiff's actions "bring discredit on him and his abilities to perform the duties of a law enforcement officer." *Id.* In addition to this, the memo stated, "Detective Johnson's outside involvement with the School Board has brought a negative light on the Department and the Town," and that his personal life had raised issues with his integrity. *Id.* at ¶¶ 346-48. Because Plaintiff's integrity and truthfulness had been called into question, the memo concluded that this had affected his ability to perform the duties of a police officer. *Id.* at ¶ 349.

The day after Chief Powell provided Plaintiff with notice of his recommendation for termination, on October 6, 2022, Plaintiff was again publicly censured for the third time in six weeks by the School Board. *Id.* at ¶ 309; DE 2 - 4. In this public posting, Plaintiff signed an affidavit in which he admitted to sending inappropriate texts of a sexual nature about a female school employee. DE 2 – 4.

Following Plaintiff's third censure from the School Board, Plaintiff sought a final decision on the recommendation for his termination from the Town Manager. DE 1 at ¶ 351. On October 12, 2022, Plaintiff met with Town Manager Scott. *Id.* at ¶ 355. In his final decision, on October 14, 2022, Town Manager Scott summarized the October 5 meeting with Plaintiff and Chief Powell. *Id.* at ¶ 352. Town Manager Scott upheld the recommendation for termination for violations of Section 37(b) of the Town Handbook and General Orders Section 201 of the Police Department General Orders, as well as in the recent news article from October 6, in which Plaintiff admitted to sending the inappropriate texts of a sexual nature. DE 1, ¶¶ 352-57, Exhibit 14.

On April 3, 2023, a true bill of indictment was issued against Plaintiff for felony extortion under N.C. Gen. Stat. § 14-118.4, which provides that, "any person who threatens or communicates a threat or threats to another with the intention thereby wrongfully to obtain anything of value or any acquittance, advantage, or immunity is guilty of extortion, and such person shall be punished as a Class F felon." *Id.* at ¶ 330. The indictment alleged that Plaintiff threatened DeVan Barbour, a candidate for political office, threatening to release a recording of defamatory allegations against Barbour if he did not pressure McLeod to recant her allegations that she had an affair with Plaintiff. *Id.* at ¶ 331.

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true 'to state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949-50. "Nor does a complaint suffice it if tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 557). While the court must accept all well-pleaded factual allegations as true and must construe the facts in the light most favorable to the plaintiff, a "pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). The Court does not credit allegations "that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (citation and quotation marks omitted). Nor does it accept allegations that are inconsistent with terms of a properly considered written document. *Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir. 2006).

I.   **THE CLAIMS AGAINST THE INDIVIDUAL TOWN DEFENDANTS IN THEIR OFFICIAL CAPACITIES ARE DUPLICATIVE TO THOSE ALLEGED AGAINST THE TOWN AND ARE THEREFORE SUBJECT TO DISMISSAL.**

Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Courts routinely hold that official capacity claims should be dismissed as duplicative when the underlying entity is also named as a defendant. *See, e.g., Ridpath v. Bd. Of Governors Marshall Univ.*, 447 F.3d 292, 307 n.13 (4th Cir. 2006); *Cravey v. Univ. of N. Carolina at Chapel Hill*, No. 1:17CV1014, 2018 WL

4471732, at *9 (M.D.N.C. Sept. 18, 2018). In this case, the claims brought against the individual Town Defendants in their official capacities are also brought against the Town of Smithfield. As such, the claims against the individual Town Defendants in their official capacities should be dismissed as duplicative.

## II.  PLAINTIFF'S ADA, TITLE VII, AND WRONGFUL DISCHARGE CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS SHOULD BE DISMISSED, AS THESE INDIVIDUALS WERE NOT PLAINTIFF'S EMPLOYER.

Individuals are not liable for ADA or Title VII violations. *See, Baird ex rel. Baird v. Rose,* 192 F.3d 462 (4th Cir. 1999) (Holding that an ADA retaliation claim could not go forward against individual defendants "[b]ecause Title VII does not authorize a remedy against individuals for violation of its provisions, and because Congress has made the remedies available in Title VII applicable to ADA actions."*);* *Jones v. Sternheimer,* 382 Fed. App'x 366, 368 (4th Cir. 2010) (Title VII and the ADA "do not provide for causes of action against defendants in their individual capacities"); *Cortes v. McDonald's Corp.,* 955 F.Supp. 531, 536–38 (1996) (finding that an individual may not be held personally liable as an "employer" under the ADA and dismissing plaintiff's ADA claim against an individual defendant); *Stephens v. Kay Mgmt. Co.,* 907 F.Supp. 169, 174 (1995) (noting that the ADA defines employer to mean an employing entity, not an individual and holding that "individuals who do not independently meet the ADA's definition of 'employer' cannot be held liable under the ADA in the making of employment decisions of a plainly delegable character"). Accordingly, Plaintiff's ADA and Title VII claims against the individual Town Defendants should be dismissed.

Likewise, to the extent Plaintiff is asserting a wrongful discharge claim in violation of North Carolina public policy against the individual Town Defendants, this claim also fails as a matter of law. *See McAdams v. N. Carolina Dep't of Com., Div. of Emp. Sec.*, 250 N.C. App. 823, 794 S.E.2d 556 (2016) (unpublished) (an employee may only bring a common law wrongful discharge claim against his employer and not against the employer's agents, such as coworkers and supervisors); *see also Su v. Matto*, No. 7:20-CV-210-BO, 2021 WL 2345349, at *8 (E.D.N.C. 2021); *Waters v. Collins Aikman Prods. Co.*, 208 F. Supp. 2d 593, 595 (W.D.N.C. 2002).

### III. PLAINTIFF'S TITLE VII CLAIMS AGAINST THE TOWN SHOULD BE DISMISSED AS PLAINTIFF HAS NOT ASSERTED SUFFICIENT FACTS TO SUPPORT A CLAIM.

Under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq., it is unlawful for any covered employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . .." 42 U.S.C. § 2000e-2(a)(1).

A plaintiff may establish such a violation of Title VII in two ways, either through direct evidence that illegal discrimination motivated an employer's selection decision, or under the burden-shifting pretext framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284-85 (4th Cir. 2004). Here, Plaintiff has alleged no direct evidence of discrimination. Thus, the Court should consider

Plaintiff's claims under the burden shifting framework. Pursuant to this framework, once the plaintiff establishes a prima facie case of a violation of Title VII, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for its employment action. *Merritt v. Old Dominion Freight*, 601 F.3d 289, 294 (4th Cir. 2010). Once the defendant demonstrates a legitimate, nondiscriminatory reason for its employment action, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the proffered reason was "not its true reason[ ], but [was] a pretext." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). While intermediate evidentiary burdens shift back and forth, the ultimate burden of persuasion that the defendant engaged in intentional discrimination remains at all times with the plaintiff. *See Reeves*, 530 U.S. at 146-47 ("The ultimate question is whether the employer intentionally discriminated, and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct.'") (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993)).

### A.     Plaintiff cannot establish a prima facie case of discrimination.

Absent direct evidence, the elements of a prima facie case of Title VII discrimination are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class. *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). While Plaintiff is not required to plead a

prima facie case to survive a motion to dismiss, he must still allege facts sufficient to "to satisfy the elements of a cause of action created by that statute." *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). Here, Plaintiff cannot do so. *See Boney v. Trustees of Cape Fear Only. Coll.*, 366 F.Supp.3d 756, 765 (E.D.N.C. 2019) ("However, empty allegations of a causal connection between an employee's sex and the alleged discrimination are insufficient to state a plausible claim.").

Plaintiff has not plausibly alleged that he was treated differently than similarly situated female employees. In *Coleman v. Maryland Court of Appeals*, 626 F.3d. 187 (2010), the plaintiff, a black male, was disciplined and dismissed for steering contracts to vendors in whom he had an interest. *Coleman*, 626 F.3d at 189. The Fourth Circuit held that he failed to state a claim for Title VII race discrimination when he made conclusory allegations that his dismissal was based on race, because a white employee with "outside business involvements" was not disciplined or dismissed. *Id.* at 190-91. The Fourth Circuit held that these allegations were insufficient to show a similarly situated comparator, where there were no allegations that the "outside business involvements" were improper, or that they reached a level of impropriety similar to the plaintiff's conduct. *Id.*

Here, Plaintiff does not set forth facts to establish that he was treated differently than female employees. The only female comparator alleged is a female officer who allegedly showed colleagues pictures and video of herself performing oral sex in September of 2007, nearly 15 years prior to the events at issue in this case,

which is not analogous to the conduct for which Plaintiff was terminated. DE 1 at ¶ 215. The other alleged comparators set forth in Plaintiff's complaint are all males. Plaintiff makes the conclusory allegation that Chief Powell, a male, made "abusive" comments to him because he was a male, and that Chief Powell and Lt. West, also a male, would have credited his account that he was the victim of sexual assault (over the course of lengthy sexual relationship with McLeod) if he had been female. *Id.*, Count 1 ¶ 3. Such conclusory assertions are not sufficient to establish that either Chief Powell or Lt. West treated Plaintiff any differently than a similarly situated female employee.

Likewise, Plaintiff has not stated a prima facie case of retaliation under Title VII. A "prima facie case of retaliation under Title VII" requires a plaintiff to prove "(1) that [h]e engaged in a protected activity, which includes complaining to [his] superior about sex discrimination or harassment; (2) that [his] employer took an adverse action against [him]; and (3) that there was 'a causal link between the two events.'" *Wilcox v. Lyons*, 970 F.3d 452, 460 (4th Cir. 2020). Here, Plaintiff's alleged protected activity occurred on July 27, 2022, when Plaintiff's counsel wrote a letter to the Town complaining that Plaintiff was being discriminated against due to his sex. DE 1, Count 1. Plaintiff's conclusory allegation that he was terminated because of the letter sent by Plaintiff's counsel on July 27, 2022 is not a factual allegation that is given credence by the court. *See e.g., Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) ("The Court does not credit allegations "that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."). Other than this

conclusory allegation, there are no facts alleged to support this allegation. As set forth above, the investigation began on June 29, 2022, after allegations had been made regarding Plaintiff misusing Smithfield Police Department equipment, having a sexual relationship with McLeod, and filing papers against McLeod. DE 1, ¶¶ 179-87, 225. On June 30, additional allegations were made public by Marshburn and Preston, namely that Plaintiff had improperly obtained a 50C order rather than a 50B order in an effort to hide the fact that he was having an affair with McLeod. *Id.* At ¶ 230. McLeod herself was interviewed at the Police Department on July 5, 2022. *Id.* At ¶ 231. All of these facts were learned as part of the investigation into Plaintiff's misconduct which began weeks before Plaintiff's counsel wrote a letter accusing the Town of discrimination. Plaintiff was ultimately terminated based on the evidence uncovered during the investigation, as set forth below. As Plaintiff was being investigated prior to requesting FMLA leave, and the Town had already uncovered much of the evidence that would ultimately lead to his termination, Plaintiff cannot establish any causal connection between his termination and the accusation by Plaintiff's counsel that the Town was discriminating against Plaintiff.

**B. There can be no reasonable inference that Plaintiff's termination was related to his sex or in retaliation for any conduct.**

Plaintiff's claims are subject to dismissal because the facts alleged in the Complaint establish a legitimate, non-discriminatory, and non-retaliatory reason for the decision to terminate Plaintiff's employment. Under the *McDonnell Douglas* framework, when a plaintiff establishes a prima facie case of

discrimination or retaliation, the burden shifts to the defendant to articulate a non-discriminatory reason for an adverse action. *See Yashenko v. Harrah's NC Casino Co.*, LLC, 446 F.3d 541, 551 (2006). If the defendant articulates such a reason, the burden shifts back to the plaintiff who then "bears the burden of establishing that the employer's proffered reason was pretextual. In the context of a motion to dismiss, "the question is not whether there are more likely explanations than discrimination, but rather whether defendant's proffered reason is so obviously an irrefutably sound and unambiguously nondiscriminatory and non-pretextual explanation that it renders plaintiff's claim of pretext implausible." *Smiley v. Ensystex II, Inc.*, No. 5:21-CV-253-FL, 2022 U.S. Dist. LEXIS 101676, at *12 (E.D.N.C. 2022) (internal quotations omitted).

Here, Plaintiff's Complaint establishes the legitimate non-discriminatory and non-retaliatory reasons for his termination that renders his Title VII claims implausible. One of the grounds for the termination of Plaintiff's employment was the recommendation received from Lt. West. DE 1, Exhibit 14. The recommendation set forth that Plaintiff had been involved in an extra-marital affair, during which time he was alleged to have used Police Department equipment and misrepresented facts when obtaining a no contact order. Specifically, it was determined that Plaintiff misrepresented facts when obtaining a 50C no contact order on McLeod. The investigation determined that Plaintiff should have known that the correct order to obtain was a 50B due to his sexual relationship with McLeod.

Chapter 50B addresses orders issued to protect against acts of domestic violence arising out of a "personal relationship." A "personal relationship" is defined, in relevant part, as a relationship wherein the parties are romantically involved over time and on a continuous basis during the course of the relationship. N.C. Gen. Stat. § 50B-1. On the other hand, "Chapter 50C addresses those situations *not* covered by Chapter 50B, where the parties are not in a 'personal relationship.'" *Russell v. Wofford*, 260 N.C. App. 88, 91-92 (2018). Chapter 50C provides a method of obtaining a no-contact order against another person when the relationship is not romantic, sexual, or familial. *See* N.C. Gen. Stat. §§ 50B-1(b), 50C-1(8)."). Chapter 50C expressly states that its protections are for "persons against whom an act of unlawful conduct has been committed by another person *not involved in a personal relationship* with the person *as defined in G.S. 50B-1(b)*." N.C.G.S. § 50C-1(8) (2017) (emphasis added). Plaintiff concedes in his complaint that he had a continuing sexual relationship with McLeod. DE 1, ¶ 118.

Further, Plaintiff alleges that Lt. West and Chief Powell believed McLeod that she and Plaintiff had been involved in a sexual relationship. *Id.* At ¶ 267. In fact, Plaintiff alleges that he had informed both Chief Powell and Lt. West that he and McLeod had sexually involved with each other. *Id.* At ¶ 239-40. Even if they were mistaken, which is denied, a mistaken belief that Plaintiff had engaged in dishonesty is a legitimate, non-discriminatory reason to terminate his employment. See e.g. *Jones v. General Electric Co.*, 1982 U.S. Dist. LEXIS 11884, *17-18 (1982) ("It is sufficient only that there be a good faith belief of infraction of a disciplinary

rule, even if it is later determined that the belief was mistaken."); *Haley v. Town of Wake Forest*, 2018 U.S. Dist. LEXIS 167662 (2018) (holding that defendants' mistaken belief that plaintiff had violated the sick leave policy was a legitimate, non-discriminatory reason for his discharge).

In his termination letter, Chief Powell also cites the allegations regarding Plaintiff's sexual harassment of a female school employee, which had been made public on October 6, 2022, and for which Plaintiff was censured by the School Board. *Id.* At ¶ 309, 357. Plaintiff had signed an affidavit admitting to sending these texts:

Plaintiff: She's wearing the hell out of that blue dress.

Defendant Lawrence: I'm glad you haven't lost your "vision."

Plaintiff: I'm feeling a relationship.

Lawrence: Is that all?

Plaintiff: I'm ready right now.

Lawrence: You stay on ready.

(DE 1, Exhibit 14)

Plaintiff: Open invitation to the one in purple.

Lawrence. Shame on you. She's a mother. Aside from that, I agree.

*Id.*

Plaintiff also admitted showing the text messages to the female in question. *Id.* Plaintiff was informed that his conduct in sending these text messages constituted detrimental personal conduct, which a violation of Article IX, Section 101 and 102 of the Smithfield Employee Handbook, which defines detrimental

conduct as "behavior of such a serious nature that the functioning of the Town may be or has been impaired, the safety of persons or property may be have been threatened, or the laws of any government may be or have been violated." (See Exhibit A). Among the examples provided are "harassment of an employee(s) and/or the public on the basis of sex or any other protected class." *Id.*

The Town of Smithfield is not required to continue to employee a law enforcement officer who they believe has been dishonest in court, who has admitted publicly to sending offensive and sexually explicit texts about a female school employee, and who the School Board of Johnson County had censured on multiple occasions. As the Fourth Circuit has recognized, "a police department's ability to protect the public depends on the public's trust that the police department will use its powers responsibly and adequately discipline officers who do not." *Crouse v. Town of Moncks Corner*, 848 F.3d 576, 589 (2017). These matters are legitimate, non-discriminatory, and non-retaliatory grounds for termination, and Plaintiff cannot plausibly establish that they are mere pretext for discrimination, certainly not related to his sex, or in retaliation for any protected conduct.[2] As such, these claims are subject to dismissal.[3]

---

[2] Plaintiff's entire retaliation complaint is predicated on a letter sent by his lawyer more than one month after Plaintiff was placed on administrative leave for conduct that ultimately led to his termination. It is not plausible that this July 27 letter was relevant whatsoever to the Town's decision to terminate Plaintiff's employment.

[3] To the extent Plaintiff is attempting to also allege sexual harassment, his Complaint fails to allege any of the conduct at issue was so severe or pervasive as to alter his working conditions. *See Ocheltree v. Scollon Productions, Inc.*, 335 F.3d 325, 331 (4th Cir. 2003).

## IV. PLAINTIFF'S ADA CLAIMS AGAINST THE TOWN ARE SUBJECT TO DISMISSAL FOR FAILURE TO STATE A CLAIM.

To advance a claim for ADA discrimination, a plaintiff must "produce evidence sufficient to demonstrate (1) he was a qualified individual with a disability; (2) he was discharged; (3) he was fulfilling his employer's legitimate expectations at the time of discharge; and (4) the circumstances of her discharge raise a reasonable inference of unlawful discrimination." *Rohan v. Networks Presentations LLC*, 375 F.3d 266 (4th Cir. 2004). The only allegations regarding Plaintiff's alleged disability are that he provided a doctor's note stating he was suffering "acute anxiety" and needed to remain out of work until July 28, 2022. DE 1, ¶ 241. The diagnosis was apparently made the day after Plaintiff was informed that he was being placed on administrative leave for potential misconduct. *Id.* Plaintiff contends that the Town discriminated against him because of his disability. DE 1, Count 3.

In order to state an ADA retaliation/interference claim, a plaintiff must show: "(1) he engaged in an activity that is statutorily protected by the ADA; (2) he was engaged in, or aided or encouraged others in, the exercise or enjoyment of ADA protected rights; (3) the defendant[] coerced, threatened, intimidated, or interfered on account of her protected activity; and (4) the defendant[] w[as] motivated by an intent to discriminate." *Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 550–51 (7th Cir. 2017); *see Kelly v. Town of Abingdon, Virginia*, 2020 WL 2553614, at *7 (W.D. Va. 2020).

Because Plaintiff did not inform anyone at the Town of an alleged disability until after being placed on leave, he cannot allege that the decision to place him on leaving pending an investigation into allegations of wrongdoing against him was because of his disability in any way. As set forth above, his termination was based on information learned during the course of this investigation. Because the Town had legitimate, non-discriminatory, and non-retaliatory reasons for terminating Plaintiff's employment, his ADA discrimination and retaliation claims are subject to dismissal.

## V. PLAINTIFF'S FMLA INTERFERENCE CLAIM SHOULD BE DISMISSED AS PLAINTIFF HAS NOT PLEAD SUFFICIENT FACTS TO ESTABLISH INTERFERENCE.

To make an FMLA interference claim, an employee must demonstrate "(1) he is entitled to an FMLA benefit; (2) his employer interfered with the provision of that benefit; and (3) that interference caused harm." *Okyere v. John Bean Techs. Corp.*, 2020 WL 7625237, at *2 (2020) (internal citations omitted).

Plaintiff contends that his rights under the FMLA were interfered with because he was placed on unpaid leave. DE 1, Count 5 ¶ 43. However, unpaid leave is permitted under the FMLA. See 29 USCS § 2612(c). The Town's Handbook specifically provides that FMLA leave "may be paid (coordinated with the Town's Vacation and Sick Leave policies), unpaid, or a combination of paid and unpaid."

See Exhibit A[4]. As such, Plaintiff's assertion that he was entitled to paid leave under both the Employee Handbook and federal law is simply incorrect.

Plaintiff further contends that his FMLA rights were interfered with because "Defendants" contacted him with regard to the ongoing investigation while he was on leave. *Id.* At ¶ 44. The FMLA does not define interference, 29 U.S.C. § 2615(a)(1). Likewise, the Fourth Circuit has not yet provided guidance on the question of when an employer's contact with an employee during an employee's FMLA leave crosses the line into impermissible interference. However, courts within the Fourth Circuit have recognized that "there is no reason to believe that the Fourth Circuit would deviate from the sensible principle that actionable interference is not triggered by contacts unrelated to work, or if related to work, amounting to no more than *de minimis* work-related contact." *Antekeier v. Lab. Corp. of Am.*, 295 F. Supp. 3d 679, 685 (2018).

In *Antekeier*, Plaintiff was contacted multiple times during his FMLA leave for various matters, including multiple requests for contact information, information about an account plaintiff had opened prior to taking leave, checking on Plaintiff's medical status and his return to work, and a holiday party. *Id.* The court held that, "these contacts clearly fall short of FMLA interference." *Id.* The plaintiff argued that "the FMLA requires an employer to avoid *any* contact with an employee

---

[4] The Fourth Circuit has held that "when a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'" *Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). Here, Plaintiff specifically references the Town's Employee Handbook, and relies on it for his FMLA claim. DE 1, ¶ 245-46.

on FMLA leave that might induce an employee to work," but the court held that "this proposition finds no support in either the text of the FMLA or FMLA case law." The court noted that there was no evidence that the plaintiff was asked to do any work while on leave, and noted that the contacts were either de minimis or not work related. *Id.* The court made clear that, "an employer cannot ask an employee to do work while he or she is on FMLA leave, but an employer may contact an employee to update an employee on events in the office or to ask the employee when he or she plans to return to work." *Id.*

Likewise, in *Smith v. UNC Health Care Sys.*, 2022 U.S. Dist. LEXIS 42247, *4-5 (2022), the Middle District of North Carolina rejected Plaintiff's claims of FMLA interference where Plaintiff was contacted multiple times during the course of her leave. The court noted that "although the Fourth Circuit has not addressed when an employer's contact with an employee during an employee's FMLA leave crosses the line into impermissible interference, actionable interference is not likely to be triggered by *de minimis* contact." *Id.* (*citing Antekeir*). The court found it significant that Plaintiff did not alter her leave because of those contacts. *Id.*

In the present case, Plaintiff presented his doctor's note stating that he needed leave on July 6, 2022, and the letter stated that he needed to be out of work until July 29, 2022. DE 1, ¶ 241. The only contact specifically alleged by Plaintiff during this time frame is the delivery of a letter on July 13, 2022. *Id.* At ¶ 243. Otherwise, Plaintiff only alleges that he was told on multiple occasions that he

would need a doctor's note to return to work, and that he should remain in touch with Lt. West while he was on leave. *Id.* At ¶¶ 247-48. Plaintiff does not allege that this prevented him from taking FMLA leave.

As the only contacts alleged by Plaintiff are de minimis, and did not require him to work or alter his FMLA leave, Plaintiff's assertion that the contacts with him during his leave amount to interference are unavailing, and this claim is subject to dismissal.

## VI. PLAINTIFF'S FMLA RETALIATION CLAIM SHOULD BE DISMISSED AS PLAINTIFF HAS NOT PLED SUFFICIENT FACTS TO ESTABLISH RETALIATION.

"FMLA claims arising under the retaliation theory are analogous to those derived under Title VII and so are analyzed under the burden-shifting framework of [*McDonnell Douglas*]." *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 550–51 (4th Cir. 2006); *see also Laing v. Fed. Express Corp.*, 703 F.3d 713, 717 (4th Cir. 2013). Here, Plaintiff cannot establish retaliation, because he cannot establish a causal connection. Plaintiff's conclusory allegation that he was terminated "because he complained of FMLA discrimination on July 27, 2022" is not a factual allegation that is given credence by the court. *See e.g., Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) Other than this conclusory allegation, there are no facts alleged to support this allegation. Plaintiff was placed on administrative leave on July 5, 2022, and presented a doctor's note stating that he needed leave on July 6, 2022. DE 1, ¶¶ 240-41. Plaintiff was being investigated prior to requesting FMLA leave, and, as set forth above, the Town had already uncovered much of the

evidence that would ultimately lead to his termination. As such, Plaintiff cannot establish any causal connection between his termination and his request for FMLA leave.

Further, as set forth above, Defendants had a legitimate non-discriminatory reason to terminate Plaintiff's employment, and Plaintiff cannot establish pretext. As such, Plaintiff's FMLA retaliation claim is subject to dismissal.

## VII. THE INDIVIUDAL TOWN DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY AS TO DEFENDANT'S FIRST AMENDMENT RETALIATION CLAIMS AND HIS FMLA RETALIATION CLAIMS.

"The doctrine of qualified immunity protects police officers and public officials from claims of constitutional violations 'for reasonable mistakes as to the legality of their actions.'" *Merchant v. Bauer*, 677 F.3d 656, 661 (4th Cir.), cert. denied, _ U.S. _ (2012) (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)). "Qualified immunity extends to protect officials 'who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful.'" *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (quoting *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir.) (en banc), cert. denied, _ U.S. _ (2011)); *accord Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012).

The purpose of qualified immunity is to "remove most civil liability actions, except those where the official clearly broke the law[.]" *Id.* Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Dunbar Corp. v. Lindsey*, 905 F.2d 754, 763 (4th Cir. 1990). Where it applies,

qualified immunity "bars § 1983 suits against government officers in their individual capacities." *Cloaninger v. McDevitt*, 555 F.3d 324, 330 (2009).

The qualified immunity analysis involves two inquiries: (1) whether the facts alleged, "[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a constitutional right," *Saucier*, 533 U.S. at 201; and (2) whether the right at issue "'was clearly established in the specific context of the case—that is, [whether] it was clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted.'" *Merchant*, 677 F.3d at 662 (4th Cir.) (citation omitted). The "two inquiries ... may be assessed in either sequence." *Id.* at 661–62; *accord Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The inquiry into whether a right was clearly established at the time that the challenged actions were taken is a pure question of law. *See, Harlow*, 457 U.S. at 818; *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992); *Siegert v. Gilley*, 500 U.S. 226, 231, 232 (1991); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.").

First Amendment

The individual Town Defendants are entitled to qualified immunity as to Plaintiff's First Amendment retaliation claims because the facts alleged do not support a claim that they took action which violated Plaintiff's rights. "To establish a free-speech claim under the First Amendment, plaintiff must establish (1) that

the speech or activity complained of was protected speech or activity, and (2) that this protected speech or activity was the 'motivating' or 'but for' cause of the adverse employment action taken against the plaintiff." *Munn-Goins v. Bd. of Trs. of Bladen Cmty. Coll.*, 658 F. Supp. 2d 713, 725 (E.D.N.C. 2009). "A three-step analysis is employed to determine whether a retaliatory action violates a public employee's right to free speech. First, the speech must relate to a matter of public concern. Second, the 'employee's interest in First Amendment expression must outweigh the employer's interest in efficient operation of the workplace.' Finally, there must be a causal connection between the protected speech and the retaliation; specifically, the protected speech must be a 'substantial factor' in the decision to take the retaliatory action." *Sheaffer v. County of Chatham*, 337 F. Supp. 2d 709, 718 (M.D.N.C. 2004). In *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274 (1977), the Supreme Court outlined the inquiry courts must use to determine whether a public employee was unconstitutionally discharged for exercising free speech rights. Under this inquiry the employee has the initial burden of demonstrating that his free speech was a "substantial" or "motivating factor" in the adverse employment decision. *Id.* at 287, 97 S.Ct. at 576; see also *Hughes v. Bedsole,* 48 F.3d 1376, 1387 (4th Cir. 1995); *McCollough v. Town of Southern Pines*, 2010 WL 3219351 (M.D.N.C. 2010).

At the outset, the claims against Defendants Kerigan and Lee are subject to dismissal because they are not alleged to have taken any adverse employment action against Plaintiff. *See e.g. B.R. v. F.C.S.B.,* 2023 U.S. Dist. LEXIS 40930, *43

(2023) (affirming dismissal of First Amendment retaliation claims against individual defendants who did not take any adverse actions against the plaintiff).

Further, Plaintiff's alleged complaints about his own employment conditions, including his assertion that he was being harassed or discriminated against by his supervisors, do not amount to matters of public concern. "Personal grievances, complaints about conditions of employment, or expressions about other matters of personal interest do not constitute speech about matters of public concern." *Stroman v. Colleton County Sch. Dist.*, 981 F.2d 152, 156 (4th Cir. 1992). "If the court determines that the activity or speech does not involve a matter of public concern, the First Amendment analysis ends and plaintiff loses." *Munn-Goins*, 658 F. Supp. 2d at 726. Plaintiff's complaints regarding his own employment concerns do not constitute protected speech, as they are not matters of public concern.

Even if Plaintiff could establish that he spoke on a matter of public concern, and as a private citizen rather than as an employee, his free speech claims fail because he cannot establish a causal connection in the disciplinary action taken against him and any protected speech. In the First Amendment retaliation context, Plaintiff must present evidence that his speech was a "*substantial* or *motivating* factor*" behind the adverse action taken against him. *McCollough v. Town of Southern Pines*, No. 1:09 CV 192, 2010 WL 32195351 (M.D.N.C. Aug. 12, 2010) (Attached) (*citing Hughes v. Bedsole*, 48 F.3d 1376, 1387 (4th Cir. 1995) (emphasis in original)). "In the First Amendment retaliation context, the causal connection requires a heightened evidentiary showing relative to what is required in a Title VII

retaliation claim." *McCollough.* Mere proximity in time is not sufficient to show causation. *Id.* (citing *Wagner v. Wheeler,* 13 F.3d 86, 91 (4th Cir. 1993) ("Temporal proximity ... is simply too slender a reed on which to rest a Section 1983 retaliatory discharge claim.")).

Plaintiff's claim fails because there is no evidence of *any* causal connection between his alleged protected speech and the disciplinary action taken against him, much less evidence that his alleged protected speech was a substantial or motivating factor. Plaintiff alleges first that his protected speech was his opposition to alleged sexual harassment by Lawrence. DE 1, ¶ 58. Plaintiff alleges that these allegations became public in January of 2022, and the investigation into Plaintiff's alleged misconduct did not occur until June 29, 2022, which Plaintiff specifically alleges was based on allegations against him made publicly on June 27, 2022. DE 1, ¶ 187. As such, Plaintiff's own pleadings establish that his alleged opposition to alleged sexual harassment by Lawrence was not the "substantial or motivating factor" in the decision to investigate him, which subsequently led to his termination.

The other issues Plaintiff alleges he was retaliated for speaking out about were related to his role as a School Board member, including alleged hiding of funds by the School Board and age and disability discrimination by the School Board. Other than asserting in a conclusory manner that he was terminated for these matters, which are listed among several others (DE 1 ¶ 58), Plaintiff makes no effort to plead any facts establishing that these issues were a substantial and motivating factor for the decision to investigate and terminate his employment.

Rather, as set forth above, the facts alleged in Plaintiff's complaint establish that his employment was terminated for legitimate, non-retaliatory reasons.

For these reasons, Plaintiff cannot establish that any of the individual Town Defendants retaliated against him based on protected speech, much less that they violated any Plaintiff's clearly established rights by investigating him based on public accusation of misconduct and terminating his employment for the reasons set forth above. As such, the individual Town Defendants are entitled to qualified immunity as to Plaintiff's First Amendment claims against him.

FMLA

Plaintiff alleges that the Individual Defendants, excluding Defendant Lee who Plaintiff does not allege is an employer, attempted to contact Plaintiff regarding an ongoing internal investigation. As set forth above, this type of conduct is not clearly established to serve as a violation an FMLA rights. Accordingly, the Individual Defendants are entitled to qualified immunity as to Plaintiff's FMLA claims.

## VIII. PLAINTIFF'S WRONGFUL DISCHARGE CLAIM FAILS AS A MATTER OF LAW BECAUSE THE FACTS ALLEGED SHOW THAT PLAINTIFF WAS NOT TERMINATED FOR ANY REASON THAT VIOLATES PUBLIC POLICY.

As an employee of the Town of Smithfield, Plaintiff is an at-will employee. At-will employment means that an employee can "generally be discharged for arbitrary, irrational, indifferent or illogical reasons without any legal recourse." *Woods v. City of Wilmington*, 125 N.C. App. 226, 229, 480 S.E.2d 429, 432 (1997). "The discharge of an employee at will generally does <u>not</u> support an action for

wrongful discharge in this state." *Considine v. Compass Group USA, Inc.*, 145 N.C. App. 314, 317, 551 S.E.2d 179, 181 (2001) (emphasis added).

To state a claim for wrongful discharge in violation of public policy, an employee has the burden of pleading that his dismissal occurred for a reason that violates public policy. *Considine v. Compass Grp. USA, Inc.*, 145 N.C. App. 314, 317, 551 S.E.2d 179, 181, *affirmed per curiam*, 354 N.C. 568, 557 S.E.2d 528 (2001)). There must be "something more before [the Court] than mere speculation that an employee was fired for an improper purpose." *Id.* (citing *Brooks,* 95 N.C. App. at 237, 382 S.E.2d at 882; *see also Garner v. Rentenbach Constructors, Inc.,* 350 N.C. 567, 571, 515 S.E.2d 438, 441 (1999)). As set forth above, Plaintiff's contentions that Plaintiff was fired based on an improper purpose are all conclusory, and belied by the legitimate grounds established by Plaintiff's own factual allegations. As such, Plaintiff's claim for wrongful termination in violation of public policy fails as a matter of law and should be dismissed.

IX. **PLAINTIFF'S CLAIM FOR ABUSE OF PROCESS IS SUBJECT TO DISMISSAL FOR FAILURE TO STATE A CLAIM.**

"[A]buse of process is the misuse of legal process for an ulterior purpose. It consists in the malicious misuse or misapplication of that process after issuance to accomplish some purpose not warranted or commanded by the writ." *Fowle v. Fowle*, 263 N.C. 724, 728, 140 S.E.2d 398, 401 (1965). "Under North Carolina law, the essential elements of a claim for abuse of process are: (1) a prior proceeding was initiated by defendant to achieve an ulterior motive or purpose; and (2) once that proceeding was initiated, some willful act not proper in the regular prosecution of

the proceeding was committed." *Franklin*, No. 1:09CV199, 2010 WL 317804, at *5–6. Plaintiff does not specify who he is asserting this claim against, but the allegations relate solely to members of the School Board, and no allegations against the Town Defendants appear to attempt to establish a claim for abuse of process against them. In fact, it is specifically alleged that it was the District Attorney who has pursued the criminal charges against Plaintiff based on the allegations by the School Board. DE 1, ¶ 362. As such, Plaintiff's abuse of process claim against the Town Defendants are subject to dismissal for failure to state a claim.

## X. PLAINTIFF'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS IS SUBJECT TO DISMISSAL.

The essential elements of a claim for IIED are "(1) extreme and outrageous conduct by the defendant (2) which is intended to and does in fact cause (3) severe emotional distress." *Waddle v. Sparks*, 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992).

### A. Plaintiff has not sufficiently alleged severe emotional distress.

A showing of "severe emotional distress," as is needed for an intentional infliction of emotional distress claim, requires the establishment of a "type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so," such as neurosis, psychosis, chronic depression, or phobia. *Johnson v. Ruark Obstetrics and Gynecology Assocs.*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990). To survive a motion to dismiss, "the plaintiff must allege a medical condition recognized by North Carolina law, and, ultimately, must provide some verification that he or she actually suffers from such a condition as a result of the defendant's conduct." *McClean v. Duke Univ.*, 376 F.

Supp. 3d 585, 612–13 (M.D.N.C. 2019) (internal citations omitted); *see also Coffman v. Roberson*, 153 N.C. App. 618, 627-28, 571 S.E.2d 255, 261 (2002). Mere conclusory allegations that defendant caused plaintiff severe emotional distress does not satisfy this element. *Horne v. Cumberland Cty. Hosp. Sys., Inc.*, 228 N.C. App. 142, 149, 746 S.E.2d 13, 20 (2013) (plaintiff's allegation that defendant's actions were the "direct and proximate cause of [plaintiff]'s severe emotional distress," without any factual allegations regarding the type, manner, or degree of severe emotional distress plaintiff claimed to have experienced, failed to state a valid claim).

In this action, Plaintiff's Complaint fails to include any factual allegations that Plaintiff was subjected to "severe emotional distress," notwithstanding conclusory statements to that effect. DE 1, Count 12 ¶ 115. Aside from the blanket statement that Plaintiff has suffered severe emotional distress, Plaintiff fails to identify any type of "severe and disabling emotional or mental condition" that he suffers from as a result of any of the Town Defendants' alleged conduct. Because Plaintiff has not pled any identifiable severe emotional distress, his claims for intentional infliction of emotional distress should be dismissed. *See id; see also Waddle*, 331 N.C. at 83, 414 S.E.2d at 27; *May v. Durham*, 136 N.C. App. 578, 586, 525, S.E.2d 223, 230 (2000).

**B. Plaintiff Has Not Pled Extreme and Outrageous Conduct.**

To satisfy the essential element of extreme and outrageous conduct for intentional infliction of emotional distress claims, "the conduct must go beyond all possible bounds of decency, and 'be regarded as atrocious, and utterly intolerable in

a civilized community.'" *Wagoner v. Elkin City Schs' Bd. of Educ.*, 113 N.C. App. 579, 586, 440 S.E.2d 119, 123 (1994) (quoting *Daniel v. Carolina Sunrock Corp.*, 110 N.C. App. 376, 383, 430 S.E.2d 306, 310 (1993)). The standard is "a stringent one." *Jolly v. Acad. Collection Serv., Inc.*, 400 F. Supp. 2d 851, 866 (M.D.N.C. 2005). "The cause of action for intentional infliction of emotional distress is a last resort for calling to task (1) those who engage in primitive and uncivilized behavior in an attempt to impose their prurient will on others or (2) those in positions of authority and responsibility who allow such conduct to occur or continue. If courts were to permit such claims, absent a showing of conduct which exceeded bounds of common decency, the cause of action would be rendered meaningless." *Buckner v. Gen. Signal Tech. Corp.*, 163 F. Supp. 2d 617, 628 (W.D.N.C. 2000).

"North Carolina courts have been extremely reluctant to find actionable IIED claims in the employment context." *Efird v. Riley*, 342 F. Supp. 2d 413, 427 (M.D.N.C. 2004). "North Carolina courts have interpreted the extreme and outrageous requirement very stringently in employment actions by ruling for defendants as a matter of law despite evidence of arguably outlandish conduct." *Gray v. Laws*, 915 F. Supp. 747, 760 (E.D.N.C. 1994); *see also Allen v. City of Raleigh*, No. 5:13-CV-522-D, 2014 WL 840735, at *7 (E.D.N.C. Mar. 4, 2014) ("Stating a viable claim of intentional infliction of emotional distress under North Carolina law for conduct arising in the workplace is very difficult."); *Wilson v. Southern Nat'l Bank*, 900 F. Supp. 803, 811-12 (W.D.N.C. 1995) ("It is extremely rare to find conduct in the employment context that will rise to the level of

outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress.") (quotations omitted); *Bray v. Tenax Corp.*, 905 F. Supp. 324, 330 (E.D.N.C. 1995) ("In employment actions, North Carolina courts have been reluctant to find intentional infliction of emotional distress claims actionable."). In addition to the extreme rarity with which an intentional infliction of emotional distress claim can survive in the employment setting, such claims do not provide a remedy for "occasional acts that are definitely inconsiderate or unkind." *Hogan v. Forsyth Country Club. Co.*, 79 N.C. App. 483, 493, 340 S.E.2d 116, 123 (1986).

In this case, the Complaint provides no factual that the Town Defendants engaged in "extreme and outrageous conduct." Rather, the allegations establish that the Town investigated allegations of wrongdoing made by third parties against Plaintiff, and elected to terminate his employment as a result of that investigation.[5] Such conduct simply cannot be said to be "extreme and outrageous." As such, Plaintiff has also failed to plead that any of the Town Defendants' conduct was extreme and outrageous as is necessary for an IIED claim.

## XI.  PLAINTIFF'S CLAIM FOR DEFAMATION IS SUBJECT TO DISMISSAL.

North Carolina law requires defamation claims to meet "heightened pleading requirements." *Addison Whitney, LLC v. Cashion*, 2017 WL 5973019, at *5 (2017) (unpublished). Not only must a plaintiff "recite the defamatory statement verbatim

---

[5] In fact, the only allegation against Defendant Lee is that he liked a post on social media and was once seen walking with another Defendant. There can be no credible argument that this conduct was extreme and outrageous.

'or with sufficient particularity to enable the court to determine whether the statement was defamatory[,]'" *Id.* (quoting *Stutts v. Duke Power Co.*, 47 N.C. App. 76, 84, 266 S.E.2d 861, 866 (1980)), but "the relevant pleading must allege 'who said what to whom, as well as when and where the defamatory statements were made.'" *Id.* (quoting *Gosnell v. Reid*, No. 5:14CV179-RLV, 2015 WL 4508648, at *7, 2015 U.S. Dist. LEXIS 96878, at *21 (W.D.N.C. July 24, 2015), *aff'd by Gosnell v. Catawba Cty.*, 646 F. App'x 318 (4th Cir. 2016)). The plaintiff must also "state the time and place of the alleged defamatory communication." *Esancy v. Quinn*, 2006 WL 322607, at *4, 2006 U.S. Dist. LEXIS 8479, at *13 (W.D.N.C. Feb. 10, 2006); *see also* N.C. R. Civ. P. 9(f).

Here, Plaintiff does not attribute any particular statements to the Town Defendants, instead asserting generally "Defendants Town, Scott, Kerrigan, Powell, West, McLeod, Lawrence, Marshburn, Preston, BOE, Sutton, Sessoms, Tippett, Wooten, Andrews, Donovan, and Carroll made oral and written statements tending to impeach Plaintiff in his profession as a police detective and in his capacity as a School Board member and tending to subject Plaintiff to ridicule, contempt, or disgrace." DE 1, Count 14 ¶ 127. Plaintiff also asserts that "some of the statements were defamatory per se." *Id.* At ¶ 128. Plaintiff's complaint is entirely devoid of any specific statements, or any statements "*in haec verba*" made by any of the Town Defendants, much less to whom they were made or when they were made. As such, Plaintiff has failed to satisfy the requirement to plead a defamation claim with particularity as to the Town Defendants.

Further, because Plaintiff is an elected official, he is considered a public official for purposes of a defamation claim. See e.g., *State v. Taylor*, 379 N.C. 589, 597, 866 S.E.2d 740, 748 (2021). As a public official, Plaintiff must not only show that the alleged defamatory statement was false, but must also prove that the statement was "made with 'actual malice' - that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964). The actual malice requirement is a significant hurdle for a public official to clear in a defamation case. "A public official is not permitted to recover because his attacker is motivated by ill-will or even hatred, or because the speaker had a desire to injure the official." *Beckley Newspapers v. Hanks*, 389 U.S. 81, 82 (1967); *see also Garrison v. Louisiana*, 379 U.S. 64, 79 (1964) ("A mere showing that a publisher acted negligently is not sufficient to establish 'actual malice.'"). In the present case, Plaintiff has failed to allege any facts to support an inference that the Town Defendants made any statements that they knew or should have known were false. The court is not required to accept Plaintiff's conclusory allegations in this regard. See e.g., *Good Hope Hosp., Inc. v. N. Carolina Dept. of Health and Human Svcs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005) (courts reviewing complaints upon a motion under Rule 12(b)(6) are not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."). Plaintiff has not plead sufficient facts to establish that the Town Defendants made any

defamatory statements or acted with actual malice, and his defamation claims should be dismissed as a result.

Finally, to the extent any defamatory statements are alleged to have been made prior to June 27, 2022, such claims are barred by the statute of limitations. A defamation action must be brought within one year of the date it accrues, which is the date of publication. N.C. Gen. Stat. § 1–54(3); *see Gordon v. Fredle*, 206 N.C. 734, 175 S.E. 126 (1934).

## XII. PLAINTIFF'S § 1983bCONSPIRACY CLAIMS ARE SUBJECT TO DISMISSAL.

"To establish a conspiracy claim under § 1983, a plaintiff must present evidence that the defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in the deprivation of a constitutional right." *Penley v. McDowell Cty. Bd. of Educ.*, 876 F.3d 646, 658 (4th Cir. 2017) (alterations omitted) (quoting *Massey v. Ojaniit*, 759 F.3d 343, 357-58 (4th Cir. 2014)). This burden is "weighty." *Id.* (internal quotation marks omitted) (quoting *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996)). "While they need not produce direct evidence of a meeting of the minds, [plaintiffs] must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." *Hinkle*, 81 F.3d at 421. The evidence "must, at least, reasonably lead to the inference that [the defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Id.* "[R]ank speculation and conjecture" are not enough. *See id.* at 422. Plaintiff's allegations of a conspiracy amount to no more

than the "rank speculation and conjecture" that are insufficient to establish a claim. DE 1, ¶ 133. As set forth above, the allegations that were investigated by the Town Defendants were made publicly, and the Town did not violate Plaintiff's rights by investigating public allegations of wrongdoing against him, and taking action based on the results of that investigation.

Plaintiff's allegation that the Town allegedly participated in a conspiracy because it "refused to produce a copy of all documents in Plaintiff's personnel file in violation of N.C. Gen. Stat. § 160A-168" (DE 1, ¶ 361) is based on a misreading of that statute. While N.C. Gen. Stat. § 160A-168(c)(1) makes a personnel file "open to inspection" by the employee or his duly authorized agent, there is no provision of that statute that entitles Plaintiff to a copy of his file. Further, there are exceptions to what Plaintiff is entitled to inspect under N.C. Gen. Stat. § 160A-168(c1). As such, Plaintiff's assertion that the Town violated N.C. Gen. Stat. § 160A-168 by refusing to produce a copy of all documents in his personnel file is incorrect.

Plaintiff asserts the termination of his employment by the Town as part of an alleged conspiracy. To the extent Plaintiff is asserting a conspiracy among the Town Defendants, such a claim is foreclosed by the intracorporate conspiracy doctrine. The doctrine of intracorporate immunity holds that at least two persons must be present to form a conspiracy, and a corporation cannot conspire with itself, just as an individual cannot conspire with himself. *Buschi v. Kirven,* 775 F.2d 1240, 1251-52 (4th Cir. 1985). An allegation that a corporation is conspiring with its agents, officers or employees is tantamount to accusing a corporation of conspiring with

itself. *Id.* As such, "under North Carolina law, a municipality ordinarily cannot be a party to a conspiracy, and a municipality's employees therefore cannot be sued in their official capacities, because that is essentially a claim that the municipality itself has conspired." *Iglesias v. Wolford*, 539 F.Supp.2d 831, 836 (2008). Moreover, even where a municipality's employees are sued in their personal capacities, there can be no conspiracy if the actions complained of were taken in the course of the employees' official duties. *Id.* (citing *Oksanen v. Page Mem. Hosp.*, 945 F.2d 696, 702- 05 (4th Cir., 1991); *Buschi v. Kirven* at 1252). Plaintiff specifically alleges that each of the Town Defendants acted under the color of the laws of the State of North Carolina. (DE 1, ¶¶ 33-38). Moreover, in *Houpe v. City of Statesville*, 128 N.C. App. 334, 497 S.E.2d 82 (1998), the North Carolina Court of Appeals held that the actions of a city and its officials in investigating and disciplining a police officer is "encompassed within the rubric of 'governmental functions.'" *Id.* at 341, 87. As such, to the extent Plaintiff attempts to base his conspiracy on a conspiracy by the Town Defendants to terminate Plaintiff, these alleged actions fall under the scope of the Defendants' official duties, and cannot form the basis for a conspiracy claim. The intracorporate conspiracy doctrine bars conspiracy claims brought under § 1983. *See e.g. Nance v. City of Albemarle*, 520 F. Supp. 3d 758, 801 (2021).

Finally, because Plaintiff cannot establish any underlying constitutional violation, the claims for civil conspiracy must be dismissed as well. *See Nance*, 520 F. Supp. 3d at 801 ("This court has found that Plaintiffs have failed to plausibly allege First Amendment, Fifth Amendment Taking, or Fourteenth Amendment

procedural due process, equal protection, or substantive due process claims. Therefore, Plaintiffs' § 1983 civil conspiracy claim should be dismissed as well.")

For the reasons set forth above, Plaintiff's conspiracy claims against the Town Defendants are subject to dismissal.

### XIII. THE INDIVIDUAL TOWN DEFENDANTS ARE ENTITLED TO PUBLIC OFFICIAL IMMUNITY FOR THE STATE LAW CLAIMS ASSERTED AGAINST THEM.

In addition to the reasons set forth above, all of Plaintiff's state law claims against the Town Defendants individually are barred by public official immunity. The essence of the doctrine of public official immunity is that public officials engaged in the performance of their governmental duties involving the exercise of judgment and discretion, and acting within the scope of their authority, may not be held liable for such actions, in the absence of malice or corruption. *Price v. Davis,* 132 N.C. App. 556, 562, 512 S.E.2d 783, 787 (1999) (citation omitted); *Meyer v. Walls,* 347 N.C. 97, 489 S.E.2d 880 (1997).

As set forth above, Plaintiff cannot establish any legal wrongdoing, much less malice or corruption. As such, the individual Town Defendants are entitled to public official immunity.

### <u>CONCLUSION</u>

For the foregoing reasons, Town Defendants respectfully request that their Motion to Dismiss be GRANTED, and that Plaintiff's claims be DISMISSED WITH PREJUDICE.

This the 8th day of September, 2023.

**HARTZOG LAW GROUP LLP**

/s/ *Dan Hartzog Jr.*
DAN M HARTZOG, JR.
N.C. State Bar No. 35330
E-mail: dhartzogjr@hartzoglawgroup.com
DANIEL N. MULLINS
N.C. State Bar No. 48227
E-mail: dmullins@hartzoglawgroup.com
2626 Glenwood Avenue, Suite 305
Raleigh, NC 27608
Telephone: (919) 670-0338
Facsimile: (919) 714-4635
*Attorney for Defendants Town of Smithfield,*
*Michael Scott, Timothy Kerigan, Terry West,*
*Keith Powell, and Marlon Lee*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 8, 2023, I electronically filed the foregoing *Memorandum of Law* with the Clerk of Court using the CM/ECF system, which will send electronic notification to all registered CM/ECF participants.

Valerie Bateman
June K. Allison
valerie@newsouthlawfirm.com
june@newsouthlawfirm.com
*Attorneys for Plaintiff*

William O. Walker, IV
James C. Adams, II
Elizabeth L. Troutman
wwalker@brookspierce.com
jadams@brookspierce.com
etroutman@brookspierce.com
*Attorney for Defendants The Johnston County School Board of Education*

Elizabeth Curran O'Brien
eobrien@ncdoj.gov
*Attorney for Defendants Susan Doyle and Richard Hoffman*

Laura McHenry
lmchenry@ncdoj.gov
*Attorney for Defendant Benjamin Zellinger*

Michelle Ledo
mledo@ledolaw.com
*Attorney for James Lawrence*

David Marshburn
agentmarshburn@gmail.com
Pro se Defendant

This the 8th day of September, 2023.

                              **HARTZOG LAW GROUP LLP**

                              /s/ *Dan Hartzog Jr.*
                              DAN M HARTZOG, JR.
                              N.C. State Bar No. 35330
                              E-mail: dhartzogjr@hartzoglawgroup.com
                              DANIEL N. MULLINS
                              N.C. State Bar No. 48227
                              E-mail: dmullins@hartzoglawgroup.com
                              2626 Glenwood Avenue, Suite 305
                              Raleigh, NC 27608
                              Telephone: (919) 670-0338
                              Facsimile: (919) 714-4635
                              *Attorney for Defendants Town of Smithfield,*
                              *Michael Scott, Timothy Kerigan, Terry West,*
                              *Keith Powell, and Marlon Lee*