UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Civil Action No. 5:23-cv-349

RONALD JOHNSON,                      )
                                     )
            Plaintiff,               )
                                     )
    v.                               )
                                     )
TOWN OF SMITHFIELD, et al            )
                                     )
            Defendants.              )
                                     )

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTIONS TO DISMISS BY DEFENDANTS DOYLE AND HOFFMAN

Plaintiff Johnson, by and through undersigned counsel, hereby submits this memorandum in opposition to the motion to dismiss Plaintiff's claims filed against Defendants Doyle and Hoffman.

## STATEMENT OF ACTS ASSUMED TO BE TRUE RELATED TO DEFENDANT ZELLINGER

In June-July 2022, Defendants David Marshburn and Joseph Preston published on their social media sites allegations of misconduct against Plaintiff related to his reporting sexual harassment by the former school board attorney which was provided to them by Defendant Lawrence, his recording of school board meetings at which the school

board considered taking possibly illegal actions against school employees and with regard to school funds and based on these allegations[1] they made demands that he resign his school board position and that he be terminated as a police officer.

As a result of the information published by Defendants Marshburn and Preston, during this period of time, along with information provided by Defendants McLeod Barbour and Lawrence during the same period of time, the School Board pursued censures against Plaintiff based on the in an attempt to get him to resign his position on the school board. On August 24, 2022, one of the school board members, Defendant Wooten, made a motion which the board approved that Plaintiff resign his position by Friday, August 26, or the Board would pursue criminal arrest and prosecution of Plaintiff allegations for "misbehavior in office."  DE 247-298. The Board subsequently referred censures and their underlying investigations to the District Attorney, Defendant Doyle.

On August 26, 2022, Defendant Sutton transmitted a letter to Defendant Doyle which included the investigations and asking her to

---

[1] Other allegations reported on included Plaintiff having an extra-marital relationship with Defendant Angie McLeod Barbour and having sent untoward text messages about a female in the audience at a board meeting in 2018.  The text messages from 2018 were released by Defendant Lawrence in 2022 in retaliation for his being forced to resign in 2020, and the information about the relationship with Defendant Barbour was released by Barbour to multiple defendants in retaliation for Plaintiff breaking off the relationship.

"make a determination regarding whether the findings in these reports support [Plaintiff's] removal as Board member pursuant to GS 14-230." (DE1,¶301) In addition, the letter from the school board asked Doyle "review whether the circumstances that led to [Plaintiff's] suspensions with and without pay by the Smithfield Police Department, separately or combined with the results of the investigations, support his removal as a Board member pursuant to GS 14-230." (DE1, ¶302) Defendant Sutton explicitly admitted that the referral to the District Attorney for criminal prosecution was Plaintiff's refusal to resign his position as a school board member. (DE1, ¶303)

At some point, Defendant Doyle then sought the assistance of Defendant Zellinger, who along with Defendant Doyle's investigator, Defendant Hoffman, and they pursued the retaliatory actions of the school board and its members and executed search warrants, the results of which they used to charge Plaintiff with extortion, conspiracy to commit extortion, and obstruction of justice. (DE1, ¶¶4, 8-19, 43-57, 58-60, 61-64, 69-86, 87-91, 119, 129-130, 134, 143-161, 178-187, 188-93, 225-240, 247-249, 254-55, 260-273, 274-304, 306-07, 310-332, 333-357)

The statute under which the Board referred the censures for prosecution was N.C.G.S. 14-230 which criminalized (as a misdemeanor) the "willful[] fail[ure] to discharge [his] duties" and provided that upon proof that Plaintiff "willfully and corruptly omitted, neglected or refused to discharge any of the duties of his office, or willfully and corruptly violated his oath of office according to the true intent and meaning thereof," he could be removed by the General Court of Justice.[2]

Unable to rely only on N.C.G.S. §14-230, Defendants Doyle, Zellinger and Hoffman then in furtherance of the retaliatory motive of the school board and its members worked together and plotted to draft and execute search warrants designed to obtain some, really any, evidence of any other criminal behavior with which to charge Plaintiff and bolster their attempts to remove him from office and retaliate against him for his first amendment activity. Defendants Doyle, Zellinger and Hoffman worked together to prepare and execute multiple search warrants between December 8, 2022, and March 29, 2023, seizing

---

[2] Whether this statute is void for vagueness is not at issue in this case. Lytle v. Doyle, 326 F.3d 463, 468–69 (4th Cir. 2003) (citing *Giaccio v. Pennsylvania*, 382 U.S. 399, 402–403 (1966) (holding that the Fourteenth Amendment requires a state to provide citizens fair warning of the conduct that might subject them to criminal sanctions. . A law is unconstitutionally vague if it fails to provide the kind of notice that will enable citizens to conform their behavior to that law.) (also citing City of Chicago v. Morales, 527 U.S. 41, 58,(1999) ("[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes.")

multiple items of his personal property, including phones and computers and attorney-client communications to support their criminal charges which were initiated based on Plaintiff's first amendment activities as a school board member. Exhibits 1-3.

Notwithstanding the limited referral by the school board for investigation of a violation of N.C.G.S. § 14-230, the search warrants executed on December 9, 2022, also alleged that Plaintiff had engaged in extortion in violation of N.C.G.S. 14-118.4. (DE84-1) The affidavits themselves provide no probable cause to believe that Plaintiff had engaged in extortion or any of the other offenses with which Plaintiff was charged. They do however show the deep dive that law enforcement took into the tawdry local school board, city, and county politics involving "he said, she said" allegations along with shifting political alliances and the usage of criminal process to intimidate and pursue local political interests. (DE84-1) By March 29, 2023, and April 3, 2023, the date of the next round of search warrants, Defendants Doyle, Hoffman, and Zellinger had determined to double-down and add "felony obstruction of justice and conspiracy to commit extortion" and executed searches at Plaintiff's place of employment (DE84-2), Plaintiff's home and car (DE84-

2), and to conduct forensic evidence related to devices already seized by Defendants (DE84-3) related to the alleged crimes. Again, the affidavits are replete with evidence of the intent to retaliate against Plaintiff based on his first amendment activity.

Defendants Doyle and Hoffman concede in their memorandum that the search warrants were based on many allegations pertaining to for example, Plaintiff's recording of a school board closed session meeting which he states violates N.C.G.S. § 14-230. The statement that a recording of a closed session school board meeting violates the law is not a statement of fact, but a conclusion of law, with which Plaintiff disagrees. The irony of charging Plaintiff with extortion is not lost on Plaintiff. As recently stated by the North Carolina Court of Appeals, "[w]e hold that a charging instrument charging extortion need only apprise the charged party of the material elements of the offense of extortion: (1) that a wrongful demand was made with (2) the intent to demand something of value." *Matter of J.A.D.*, 2022-NCCOA-259, ¶ 24, 283 N.C. App. 8, 16, 872 S.E.2d 374, 382. In this case, the referral letter to the District Attorney itself made a "wrongful demand" with the intent of obtaining "something value;" the board and its individual members

sought to obtain Plaintiff's resignation in return for not referring him to the District Attorney for criminal prosecution for "misbehavior in office."

## STANDARD OF REVIEW ON MOTION TO DISMISS

Our Supreme Court has noted that "[f]ederal pleading rules call for 'a short and plain statement of the claim showing that the pleader is entitled to relief,' they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (quoting F.R.Civ.P. 8(a)(2)). The Court also noted that Rule 8(a)(2) in particular "indicates that a basic objective of the rules is to avoid civil cases turning on technicalities." *Id*. In fact, a plaintiff seeking damages for violations of constitutional rights need not even "invoke §1983 expressly in order to state a claim." *Id*.

Post-*Iqbal* and *Twombly*, the Fourth Circuit has held that "[t]o survive a motion to dismiss, a complaint must state "a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)), and all allegations in the complaint must be accepted as true and all reasonable inferences must be drawn in Plaintiff's favor. *Summers v. Altarum Inst.,*

*Corp.*, 740 F.3d 325, 328 (4th Cir. 2014). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Mays v. Sprinkle*, 992 F.3d 295, 299-300 (4th Cir. 2021)(quoting *Iqbal,* 555 U.S. at 663). In this case, Plaintiff's factual allegations about the involvement of Defendant Doyle and Hoffman in the criminal process are sufficient to raise a reasonable inference and make out a plausible claim that they are liable for violating Plaintiff's first amendment rights, along with other Defendants.

## ARGUMENT

### I. PLAINTIFF'S CLAIMS AGAINST DOYLE AND HOFFMAN IN THEIR OFFICIAL CAPACITY FOR PROSPECTIVE INJUNCTIVE RELIEF IS NOT A CLAIM AGAINST THE STATE FOR PURPOSES OF ELEVENTH AMENDMENT IMMUNITY AND THEY SHOULD NOT BE DISMISSED UNDER THE YOUNGER DOCTRINE.

A. Plaintiff's official capacity claims are not barred by the Eleventh Amendment.

Plaintiff specifically seeks "a preliminary and/or permanent injunction prohibiting Defendants, or any of them, from taking any punitive action against Plaintiff in response to Plaintiff's exercise of rights" (DE1, Claims for Relief, ¶6, p125) and "a preliminary and/or

permanent injunction prohibiting Defendants from taking any of Plaintiff's personal property and subjecting him to additional unlawful searches and seizures (DE1, Claims for Relief, ¶7, p125). Thus, Plaintiff seeks prospective injunctive relief against Defendants Doyle and Hoffman for future violations of his constitutional rights.

*Ex parte Young* authorizes "suits against state officers for prospective equitable relief from ongoing violations of federal law." *Lytle*, 240 F.3d at 408. "To determine whether the *Ex parte Young* doctrine is applicable, as the Supreme Court recently observed, a court "need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Franks v. Ross*, 313 F.3d 184, 197 (4th Cir. 2002) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (internal quotation and citation omitted)).

In this case, as Defendants Doyle and Hoffman admit, Plaintiff is still on the School Board. Thus, it is conceivable that the School Board could instigate future prosecutions against him out of continuing animus towards him based on his assertion of his First Amendment rights. *See, e.g., Michelle Antoine v. Johnston Co. Board of Education & Lyn*

*Andrews,* No. 5:23-cv-00508. As the *Will* court recognized, "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 1989) (citing *Kentucky v. Graham*, 473 U.S., at 167, n. 14 (1985) and *Ex parte Young*, 209 U.S. 123, 159–160 (1908)). Plaintiff's claims against Defendants Doyle and Hoffman in their official capacities for prospective injunctive relief are not subject to dismissal under Rule 12.

B. <u>The *Younger* doctrine does not require abstention in this case.</u>

As the Fourth Circuit has recently reaffirmed,

> [f]ederalism, a fundamental principle under our Constitution, requires that federal courts respect the sovereignty of their state counterparts. One way federal courts do this is through the doctrine of abstention. Under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), federal courts should abstain from exercising jurisdiction to consider matters related to ongoing state criminal proceedings.

*Air Evac EMS, Inc. v. McVey*, 37 F.4th 89, 93 (4th Cir. 2022). Defendant Doyle and Hoffman erroneously cast Plaintiff's complaint as an attempt to challenge the pending criminal charges against him, but Plaintiff's prayer for relief makes it clear that Plaintiff seeks prospective injunctive

relief against them and damages for past conduct taken in their individual capacities which violated his constitutional rights. Nonetheless, even if Plaintiff were seeking to stop the ongoing criminal prosecution, there is ample basis to do so under exceptions to *Younger* abstention.

While "abstention is an exception to the general rule that federal courts must decide cases over which they have jurisdiction," *McVey*, 37 F.4th at 96, abstention can be warranted if any of the *Younger* or *Middlesex* factors are present, *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 432 (1982) (ongoing state judicial proceeding, which raises important state interests, and whether that proceeding provides an "adequate opportunity" to make "constitutional challenges.") Nonetheless, even if the court considers both sets of facts and finds them applicable,

> *Younger* identifies three exceptions to the court's duty to abstain: (1) "bad faith or harassment" by state officials responsible for the prosecution; (2) a statute that is "flagrantly and patently violative of express constitutional prohibitions"; and (3) other "extraordinary circumstances" or "unusual situations."

*McVey*, 37 F.4ᵗʰ at 96 (citing *Younger,* 401 U.S. at 49-54 and *Nivens*, 444 at 241 and Richard H. Fallon, Jr. et al., *Hart and Wechsler's The Federal Courts and the Federal System* 1141–43 (7th ed. 2015).

In this case, there are sufficient facts alleged in the complaint upon which the Court could find "bad faith" and "harassment" by both the school board officials, the Town officials, the individual defendants Lawrence, Marshburn, Preston, and McLeod Barbour, and finally by Defendants Doyle and Hoffman (along with Defendant Zellinger) in using N.C.G.S. § 14-230 and the schools board's censures and investigations along with the adverse actions taken by the Town against Plaintiff to "jumpstart" the search warrants which were used to obtain information, including attorney-client communications, to finally indict Plaintiff on May 5, 2023 for criminal offenses wholly unrelated to whether he omitted, neglected, or refused to perform any of his duties as school board member.

Likewise, there is strong evidence, manifested precisely in this case by how it was used by Defendants, that N.C.G.S. § 14-230 is "a statute that is 'flagrantly and patently violative of express constitutional prohibitions.'" *Id.* Where actions taken unrelated to an official's

performance of his or her official duties can be used to trigger the use of the statute to attempt to remove the official from office when the official refuses to resign, and to justify a search warrant to dig up additional information related to other criminal offenses, the statute is surely suspect under the Constitution which protects individuals from arbitrary and capricious prosecution for unspecified conduct. *Cf.* N.C.G.S. §14-230 with N.C.G.S. §128-16 (contained in Article 2 of Chapter 128 entitled "Removal of Unfit Officers").

Finally, the *McVey* court considered the nature of the "extraordinary circumstances" justification for not abstaining and exercising federal jurisdiction. In reviewing the district court's findings that "extraordinary circumstances" justified federal jurisdiction, the Court noted that the "extensive communication" between the defendant Commissioner and the plaintiff's competitor suggested that the defendant had already prejudged the proceeding making it difficult to get a fair hearing and that the timing of the emails shows that the defendant had "tweaked" the case it brought against plaintiff to be able to prosecute plaintiff for violating state insurance laws. *Id.* at 101.

In this case, while Plaintiff cannot show without discovery the extent to which the various officials involved, the Town and its employees, the School Board and its members, and the individual defendants, were sharing information and engaged in a concerted effort to both terminate Plaintiff's employment and get him removed from the school board, there is a strong inference from the facts pled by Plaintiff, as well as from a review of the affidavits that all of the Defendants, including Defendants Doyle and Hoffman, were sharing as much information as possible in order to work together to retaliate against Plaintiff and favor those who can only be described as determined to harm him.

## II.  DEFENDANTS DOYLE AND HOFFMAN IN THEIR OFFICIAL CAPACITIES ARE NOT PERSONS UNDER §1983.

As stated above, the *Will* court recognized that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 1989) (citing *Kentucky v. Graham*, 473 U.S., at 167, n. 14 (1985) and *Ex parte Young*, 209 U.S. 123, 159–160 (1908)). Plaintiff's claims against Defendants Doyle and Hoffman in their

official capacities for prospective injunctive relief are not subject to dismissal under Rule 12.

## III. DEFENDANT DOYLE IS RESPONSIBLE FOR HER OWN ACTIONS AND NOT UNDER THE DOCTRINE OF RESPONDEAT SUPERIOR.

As the Fourth Circuit held,

> [t]here are three elements for establishing supervisory liability under § 1983:(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Jennings v. Univ. of N. Carolina at Chapel Hill*, 240 F. Supp. 2d 492, 502–03 (M.D.N.C. 2002)(citing *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.1994) (internal quotations omitted)). But resort to supervisory liability is not necessary on the facts alleged by Plaintiff and admitted by Defendants in their statement of facts. Defendants state explicitly the following:

- On August 26, 2022, Defendant Sutton wrote Defendant Doyle a letter asking her to make a determination whether Plaintiff's misconduct supported removal from the BOE. [DE 1, ¶ 301]

DE48, p6.

- Defendant Doyle did not respond, and assigned Defendant Hoffman to conduct an independent investigation of whether Plaintiff should be prosecuted for violation of N.C. Gen. Stat. § 14-230. [DE 1, ¶ 312, DE 2-11, p. 6, ¶ 2]

DE48, p7. Thus, Doyle admits that she assigned Hoffman the determination of whether Plaintiff should be prosecuted.

Under State law, "the elected District Attorney may, in his or her discretion and where otherwise permitted by law, delegate the prosecutorial function to others." *State v. Camacho*, 329 N.C. 589, 593–94, 406 S.E.2d 868, 871 (1991) (citing N.C.G.S. § 114-11.6 for the district attorney's authority to refer cases to a special prosecutor for the Department of Justice). In this case, Defendant Doyle clearly consented to and/or requested (to be determined in discovery) that Defendant Zellinger assist with the criminal prosecution of Plaintiff.

However, she remained "in charge of the prosecution" by providing the services of her detective Defendant Hoffman and by relying on him to make the determination as to whether Plaintiff should be prosecuted under N.C.G.S. §14-230. *Id.* As the Supreme Court noted in *Camacho,* " it is apparent that our Constitution and statutes give the District Attorneys of the State the exclusive discretion and authority to determine

whether to request—and thus permit—the prosecution of any individual case by the Special Prosecution Division" *Id.* (citing *State v. Loesch,* 237 N.C. 611, 75 S.E.2d 654 (1953) and *State v. Felts,* 79 N.C. App. 205, 210, 339 S.E.2d 99, 101–102, *disc. rev. denied*, 316 N.C. 555, 344 S.E.2d 11 (1986)(holding that "[t]he discretion to permit private prosecutors to appear when the District Attorney consents 'has existed in our courts from their incipiency'" and quoting *State v. Best*, 280 N.C. 413, 417, 186 S.E.2d 1, 4 (1972)).

When acting on behalf of the District Attorney as he is in this case, Defendant Hoffman, according to Defendant Doyle, was acting as the alter ego of Defendant Doyle, the District Attorney, who is acting on behalf of Johnston County. *See, e.g., Hartley v. Freeman,* No. 5:20-CT-3066-FL, 2021 WL 4447627, at *5 (E.D.N.C. Sept. 28, 2021)(dismissing district attorney of one county as defendant when plaintiff would be prosecuted in another county).

In addition, the Court has personal jurisdiction over a county district attorney and the attorney general who is solicited by the district attorney to prosecute and individual when Plaintiff pleads efforts by the district attorney and the attorney general, or here, Defendant Zellinger

acting on behalf of the Attorney General, to prosecute him. *Cf. Samson v. North Carolina,* No. 5:19-CV-443-BO, 2020 WL 6935469, at *4 (E.D.N.C. Nov. 24, 2020)(dismissing both district attorney and attorney general where plaintiff did not allege that either had threatened him with prosecution).

Of significant note here is the fact that the school board and its individual members initiated prosecution of Plaintiff under one statute, N.C.G.S. § 14-230 "Willfully failing to discharge duties" and yet the search warrants and ultimately whether at the behest of Defendant Doyle or Defendant Hoffman or Defendant Zellinger, or all three, Plaintiff was ultimately prosecuted not only under that statute, but also for extortion under N.C.G.S. §114-118.4 and "felony obstruction of justice" and "conspiracy to commit extortion." Defendant Zellinger and certainly Defendant Hoffman have no authority independent of Defendant Doyle to accomplish any prosecutions. As emphasized by the Supreme Court, the Attorney General is directed to appear in matters in which the State has an interest but is "given no authority to *prosecute* criminal cases upon own motion." *Camacho,* 329 N.C. at 595, 406 S.E.2d at 871 (citing N.C.G.S. § 114-2(1) (1987 & 1990 Cum. Supp.)(emphasis in

original). Thus, here, the authority to add the additional charges against Plaintiff was Defendant Doyle's alone and whether she delegated that authority to Defendant Hoffman or Defendant Zellinger does not mean that she can avoid her statutory responsibility for investigating and making the decision whether and for what to prosecute Plaintiff. Moreover, under the collective knowledge doctrine, "where law enforcement authorities are cooperating in an investigation, ... the knowledge of one is presumed shared by all." *Illinois v. Andreas,* 463 U.S. 765, 772 n. 5 (1983).

## IV. DEFENDANTS DOYLE AND HOFFMAN ARE NOT ENTITLED TO ABSOLUTE PROSECUTORIAL IMMUNITY FOR CLAIMS AGAINST THEM IN THEIR INDIVIDUAL CAPACITY.

As the Supreme Court has long recognized, official capacity lawsuits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978)). Plaintiff's §1983 claims alleging a violation of his first amendment and due process rights are

brought against Defendants Doyle and Hoffman in their individual capacity.

Here, the local school board officials had "final policy making authority" with respect to the censures and the subsequent search warrants and arrests and prosecutions based upon those censures. But Defendants Doyle and Hoffman (and Zellinger) have responsibility in their individual capacities for their actions which carried out the retaliatory motive of the School Board and they have their own independent authority for their malicious abuse of process which violated Plaintiff's due process rights.

In this case, in an abundance of caution, and as anticipated by *Kentucky v. Graham*, Plaintiff has sued all Defendants in their official and individual capacities. "In many cases, the complaint will not clearly specify whether officials are sued personally, in their official capacity, or both. 'The course of proceedings' in such cases typically will indicate the nature of the liability sought to be imposed." *Id.* (citing *Brandon v. Holt*, 469 U.S. 464, 469 (1985)).

Regardless, Plaintiff has alleged sufficient facts to show that Defendants Doyle and Hoffman, in their individual capacities, acted not

only as agents of Johnston County School Board, and its individual members, but also outside of the scope of their official duties and responsibilities when they were intimately involved in pursuing the threats made by the Board against Plaintiff, that if he did not resign, he would be subject to retaliatory arrest and prosecution.

The retaliatory actions of the local governments and its officials were explicit, that Plaintiff did not resign, they would institute criminal process to overturn the election in which the voters chose Plaintiff Johnson to serve on the school board. The United States Supreme Court has held paramount the need to "protect the integrity and reliability of the electoral process itself." *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983); *Accord Crawford v. Marion Co. Election Bd*, 553 U.S. 181, 204 (2008). To the extent that Defendants Doyle and Hoffman attempted to further the School Board's desire to remove Plaintiff from his elected school board position by bring criminal process to bear on Plaintiff, they are absolutely not entitled to absolute immunity for those actions.

A. Defendants Doyle and Hoffman are not entitled to Absolute Prosecutorial Immunity.

As discussed in *Imbler v. Pachtman*, 424 U.S. 409, 426 (1976), cited by Defendants Doyle and Hoffman, while absolute prosecutorial

immunity may extend "to "actions preliminary to the initiation of a prosecution and actions apart from the courtroom," *Imbler v. Pachtman*, 424 U.S. 409, 431 n. 33, even the Court's opinion in *Imbler* contemplated that administrative and investigative activities by a prosecutor might not be entitled to immunity. *Imbler*, 424 U.S. at 430.

Indeed, the Supreme Court made it clear in *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993), that "[a] prosecutor's ... investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Id.* "When a prosecutor performs the investigative functions normally performed by a detective or police officer," the prosecutor is entitled only to the same qualified immunity already enjoyed by such law enforcement officials." *Buckley,* 509 U.S. at 276. In *Goldstein v. Moatz*, also cited by Defendant Zellinger, the Fourth Circuit noted that "courts are obliged to apply absolute immunity sparingly, because "['t]he presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties.;" *Goldstein v. Moatz*, 364 F.3d 205, 212 (4th Cir. 2004) (quoting *Burns v. Reed*, 500 U.S. 478, 486–87 (1991)).

In *Nivens v. Gilchrist,* 444 F.3d 237, 250 (4th Cir. 2006), the district attorney was named in his individual capacity, and the Fourth Circuit found that the Eleventh Amendment did not bar the claim against him in that capacity, but found that he was entitled to prosecutorial immunity because the plaintiffs did not allege that his actions fell outside of his traditional prosecutorial duties, fabricated evidence, or constituted administrative or investigatory functions, all of which Plaintiff alleges.

In this case, Plaintiff's allegations that Defendants Doyle and Hoffman and on their behalf Defendant Zellinger violated Plaintiff first amendment rights when they exercised administrative and investigative functions in consider whether to pursue the retaliatory referral by the Board and its members of Plaintiff for criminal prosecution are sufficient to negate any argument that Defendants Doyle and Hoffman are entitled to absolute immunity.

In addition, the statute under which the School Board justified its referral for criminal prosecution states as follows in pertinent part:

§ 14-230. Willfully failing to discharge duties.
(a) If any clerk of any court of record, sheriff, magistrate, school board member, county commissioner, county surveyor, coroner, treasurer, or official of any of the State institutions, or of any county, city or town, shall willfully omit, neglect or refuse to discharge any of the duties of his

office, for default whereof it is not elsewhere provided that he shall be indicted, he shall be guilty of a Class 1 misdemeanor. If it shall be proved that such officer, after his qualification, willfully and corruptly omitted, neglected or refused to discharge any of the duties of his office, or willfully and corruptly violated his oath of office according to the true intent and meaning thereof, such officer shall be guilty of misbehavior in office, and shall be punished by removal therefrom under the sentence of the court as a part of the punishment for the offense.

N.C.G.S. §14-230(a). Notably, the part of the statute which details the elements of the Class 1 misdemeanor states that the misdemeanor requires proof that Plaintiff willfully did "omit, neglect, or refuse to discharge any of the duties of his office."

The second sentence of the statute provides that if Plaintiff "after qualification" "willfully and corruptly omitted, neglected or refused to discharge any of his duties of his office" or if he "willfully and corruptly violated the oath of his office according to the true intent and meaning thereof, such officer shall be guilty of misbehavior in office, and shall be punished by removal therefrom under the sentence of the court as a part of the punishment for the offense." "Misbehavior in office" is not defined as a Class 1 misdemeanor as in the first sentence of the statute but stands alone with the separate "punishment" of removal from office.

The School Board sought the District Attorney's consideration of the School board's investigative reports upon which the censures were based and for Defendant Doyle to "make a determination regarding whether the findings in these reports support his removal pursuant to GS 14-230 since the Board does not have the statutory authority to remove" Plaintiff. DE02-8, p1. The Board also requested that Defendant Doyle review whether the circumstances that led to Mr. Johnson's suspension with and without pay by the Smithfield Police Department, separately or combined with the results of the investigations, support his removal as a Board member pursuant to GS 14-230." *Id.* Finally, the letter concluded that "[s]ince Mr. Johnson did not resign by noon today, I am requesting that you review whether he should be removed from the Board." *Id.*

In *State v. Felts*, 79 N.C. App. 205, 339 S.E.2d 99, *disc. rev. denied*, 316 N.C. 555, 344 S.E.2d 11 (1986), the Court held that the District Attorney could not delegate to the Special Prosecution division the prosecution of an action under a statute which provided for the removal of a sheriff or police office by the General Court of Justice upon a complaint by certain individuals, when the statute required by either the

county attorney or the district attorney. *Id.* at 100-01, 339 S.E.2d at 208-09 (citing N.C.G.S. §128-16-17). The Court reasoned that the statute in question was not a criminal proceeding or a civil proceeding but "an inquiry into the conduct of the officeholder to determine whether he is unfit to continue in office." *Id.* at 101, 339 S.E.2d at 210. Likewise, in this case, Defendant Doyle cannot delegate her responsibility under the portion of the statute dealing with removal from office to Defendant Zellinger because it is not a civil or criminal proceeding.

She can of course delegate the misdemeanor portion of the statute to Defendant Zellinger and her decision to prosecute Plaintiff for extortion, conspiracy to commit extortion, and obstruction of justice, to the extent that she has done so. But discovery is needed to determine the nature of the District Attorney's delegation and her participating in the criminal process instituted against Plaintiff.

In this case, the first sentence of NCGS §14-230 purports to criminalize as a Class 1 misdemeanor for the willful omission, neglect or refusal to discharge any of the official duties. Thus, the only portion of that statute under which Defendant Zellinger had any authority, derived from Defendant Doyle, is whether Plaintiff omitted, neglected, or refused

to discharge any of his duties. The remainder of the statute dealing with removal from office and is, as the *Felts* court held, neither a civil nor criminal proceeding. Defendants Doyle, Hoffman (and Zellinger) cannot be entitled to absolute immunity for any actions taken outside of the limited scope of the consideration as to whether Plaintiff Johnson omitted, neglected, or refused to discharge any of his duties. The addition of the other criminal charges had the result of bolstering Defendants Doyle, Hoffman, and Zellinger's intent to obtain evidence to support the additional criminal charges which they obtained by seizing Plaintiff's property in violation of his Fourth Amendment rights and his rights to due process and to be free from First Amendment retaliation, and for which they finally indicted him on May 1, 2023. Those actions cannot so blatantly outside the scope of what was referred to them by the School Board should not be insulated by absolute immunity.

> B. <u>Defendants Doyle and Hoffman should not be entitled to qualified immunity, at least at this stage of the pleadings.</u>

Though a qualified immunity defense can be presented in a Rule 12(b)(6), as this court has noted, "when asserted at this early stage in the proceedings, 'the defense faces a formidable hurdle' and 'is usually not

successful.'" *Owens v. Baltimore City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014) (quoting *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 191–92 (2d Cir.2006)).

Plaintiff has alleged sufficient facts to create a plausible inference that Defendant Zollinger, along with Defendants Doyle, Hoffman, and the School Board and its members were motivated by a desire to retaliate against Plaintiff based on his protected first amendment activity as a school board member and his speaking out about various issues, including but not limited to, discrimination against school board employees the misuse of county funds. There is no qualified immunity for the initiation of criminal process based on an individual's first amendment activity. "A cognizable First Amendment retaliation claim requires a plaintiff to show: (1) "that [plaintiff's] speech was protected"; (2) "defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech"; and (3) "a causal relationship exists between [plaintiff's] speech and the defendant's retaliatory action." *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (quoting *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685–86 (4th Cir.2000)).

Based on the plaintiff's complaint in *Tobey*, the Court found it was unclear whether the defendants' behavior was reasonably motivated by plaintiff's "disruptive" conduct or unreasonably motivated by his protected protest. "What is reasonable in this context, therefore, requires greater factual development and is better decided once discovery has been conducted. *Tobey*, 700 F.3d at 389 (citing *Republican Party of N.C. v.* Martin, 980 F.2d 943, 952 (4th Cir. 1992) and *DiMeglio v. Haines*, 45 F.3d 790, 795 (4th Cir.1995) ("[W]here there is a material dispute over what the defendant did ... it may be that the qualified immunity question cannot be resolved without discovery.")).

Defendants Doyle and Hoffman were originally solicited to become involved in arresting and prosecuting Plaintiff Johnson upon the referral of the matter to Defendant Doyle by the School Board under a statute alleging a misdemeanor violation of N.C.G.S. 114-230. This letter on its face stated that Plaintiff was being referred for his refusal to resign his school board position. Thus, the basis for the referral was a clear desire to retaliate against Plaintiff Johnson for his exercise of his free speech rights criticizing the school board and school system for its concealing and refusing to take action about the sexual harassment of an employee

and the misconduct of its board attorney and for his remarks that the school system was colluding with the county to use funds improperly.

The Supreme Court's latest holding that the existence of probable cause insulates officials from §1983 liability for retaliatory arrests notes that an "unyielding requirement to show the absence of probable cause" could pose "a risk that some police officers may exploit the arrest power as a means of suppressing speech." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1727 (2019) *(*quoting *Lozman*, 585 U.S., at ――, 138 S.Ct. at 1953–1954.)

The *Nieves* Court detailed its consideration, first noting its decision in *Reichle v. Howards*, 566 U.S. 658 (2012) which it decided based on qualified immunity. *Id.* at 1721-22. In *Reichle,* the Court found that a secret service agent was entitled to qualified immunity for arresting suspect for making a materially false statement of a federal official in violation of 18 U.S.C. § 1001 when he falsely denied touching vice president's shoulder because he had probable cause.

Then, the *Nieves* court, by comparison, noted its decision in *Lozman,* where the Court considered what it described as "unusual circumstances" in which the plaintiff was arrested pursuant to a municipal policy of retaliation. In *Lozman,* the Court held that the

plaintiff did not need to prove the "absence of probable cause to maintain a claim of retaliatory arrest" because plaintiff alleged that the impetus for his arrest was criticisms of public officials and his lawsuit against the local government.

Like *Lozman,* Plaintiff has alleged that his prosecution would not have occurred had he resigned, and his resignation was sought because of the investigations conducted in retaliation for his opposing unlawful sexual harassment, discrimination against other employees, the criticism he made of the board's possible misuse of public funds, conflicts of interests among board members, and other issues on which he took a First Amendment position.

In *Lozman*, the Court noted that plaintiff cited a transcript of a meeting of the City Council meeting in which one of its members suggested that the City use its resources to "intimidate" Lozman and other who had criticized the city for using its eminent domain power to seize homes along the waterfront for private development and some of whom had filed a lawsuit against the City. Likewise, here, Plaintiff has alleged and the referral for criminal prosecution shows that the board

members took official action in retaliation for Plaintiff's exercise of his First Amendment rights.

*Lozman* is on point with this case. Here, Plaintiff criticized the council for multiple issues. In fact, the affidavit of Defendant Hoffman used to support a search warrant detailed a recording that Plaintiff made of one of the school board members in which the school board member referred to the need for the school board to "hide" money which Defendant Hoffman referred to as a "large sum of funds" that Plaintiff contended should "have been reverted to the county." DE1,¶320. Defendant Hoffman also cited as a basis for his search warrants the fact that "Plaintiff made several allegations of misconduct involving others where he claimed to possess and, in some instances, produced evidence in the form of recordings of what he described as wrongdoings or corruption." *Id.* This reference in the search warrant affidavit can reasonably be inferred to refer to Plaintiff's recording of a closed session meeting in which the school board members also discussed taking adverse actions against an employee based on age and disability, which he believed to be illegal. DE1,¶304.

There is no dispute, and Plaintiff alleged, that the school board made allegations of misconduct against Plaintiff Johnson, instigated investigations, and based on the investigations, determined to censure him on three different matters. There is no dispute, and Plaintiff alleged, that the school board then told him if he did not resign, they would refer the censures to the district attorney for prosecution under the "misbehavior in office" statute. There is no dispute, and Plaintiff alleged, that when Plaintiff did not resign, the school board did refer the matters to the Defendant Doyle for prosecution. There is no dispute, and Plaintiff alleged, that the Defendant Doyle admitted that she attempted to delegate to Defendant Hoffman the decision whether to prosecute Plaintiff under N.C.G.S. §14-230. There is no dispute, and Plaintiff alleged that Defendant Hoffman gathered evidence to support Plaintiff's arrest and prosecution on not only that statute, but others far more serious. There is no dispute, and Plaintiff alleged, that Defendants Doyle, Zellinger and Hoffman used their search for evidence to support their indictment of Plaintiff on N.C.G.S. §14-230, but also on additional crimes, namely extortion, obstruction of justice, and conspiracy to commit extortion. These factual allegations all support a more than plausible

inference that Plaintiff was the victim of retaliatory arrest and prosecution in violation of the First Amendment.

Likewise, as in *Lozman*, Plaintiff alleges "more governmental action than simply an arrest." *Lozman,* 138 S.Ct. at 1954. Plaintiff's claim, like Lozman's, is that the County itself, through its employees with decision making ability, "retaliated against him pursuant to an "official municipal policy" of intimidation. *Id*. As in *Lozman,* as noted by the Supreme Court, "[t]he fact that Lozman must prove the existence and enforcement of an official policy motivated by retaliation separates" his "claim from the typical retaliatory arrest claim." *Id*. As the Supreme court explained:

> An official retaliatory policy is a particularly troubling and potent form of retaliation, for a policy can be long term and pervasive, unlike an ad hoc, on-the-spot decision by an individual officer. An official policy also can be difficult to dislodge. A citizen who suffers retaliation by an individual officer can seek to have the officer disciplined or removed from service, but there may be little practical recourse when the government itself orchestrates the retaliation. For these reasons, when retaliation against protected speech is elevated to the level of official policy, there is a compelling need for adequate avenues of redress.

*Id*. Here, the "official policy" is evidenced by the letter from the Board chair to the District Attorney. Plaintiff's "compelling need for [an]

adequate avenue[] of redress" can only be met through his §1983 claim for the violation of his First Amendment rights.

## V. PLAINTIFF'S COMPLAINT STATES A CLAIM UNDER §1983 FOR FIRST AMENDMENT AND DUE PROCESS VIOLATIONS AGAINST DEFENDANTS DOYLE AND HOFFMAN.

"Although the Fourth Circuit has not explicitly analyzed the nature of an abuse of process claim under § 1983, other circuits have held that abuse of process is, in effect, a denial of procedural due process." *Hines v. Johnson*, No. 1:19CV515, 2020 WL 1516397, at *11 (M.D.N.C. Mar. 30, 2020) (citing *Ballock v. Costlow*, Civil Action No. 1:17CV52, 2019 WL 7038263, at *5 (N.D. W. Va. Dec. 20, 2019) Accord 14 C.J.S. Civil Rights § 45 ("In a criminal context, malicious abuse of process is, by definition, a denial of procedural due process, supporting an action under section 1983, as due process under the Fourteenth Amendment forbids the use of legal process for a wrongful purpose; if a complaint sufficient alleges a malicious abuse of criminal process, it also sufficiently alleges the deprivation of procedural due process for purposes of section 1983.)

"A § 1983 abuse of process claim, like a state claim for abuse of process, emphasizes the difference between improper initiation and improper use of process; each requires improper use as a necessary

element." *Hines*, at *11 (quoting *Ballock,* at *5). "[A] malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino v. City of New York*, 331 F.3d 63, 76–77 (2d Cir. 2003) (citing *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir.1994))(also holding that a malicious abuse of criminal process also supports liability under § 1983) *Id.* at 76-77.

Plaintiff has alleged that Defendant Zellinger used the search warrants to obtain information unrelated to the questions referred by the school board as to whether Plaintiff could be removed under a state statute for the willful omission, neglect or refusal to discharge any of his official duties to obtain a collateral objective, that is retaliation against Plaintiff for exercising his First Amendment rights. These facts state a claim that Defendant Zellinger violated Plaintiff's rights to due process. The case cited by Defendant Zellinger for the elements of an abuse of process claim, *Moch v. A.M. Pappas & Assocs., LLC*, 251 N.C. App. 198, 210, 794 S.E.2d 898, 905 (2016) (quoting *Pinewood Homes, Inc.*, 184 N.C.

App. 597, 602, 646 S.E.2d 826, 831 (2007)) supports Plaintiff's allegations that Defendant Zellinger had an "ulterior motive" when he pursued the additional criminal claims against him unrelated to Plaintiff's fitness for office, which was originally referred to Defendant Doyle by the school board.

Likewise, Plaintiff alleged, and Defendants Doyle and Hoffman admit, that they knew that the School Board sought criminal prosecution of Plaintiff in order to remove him from office in retaliation for his First Amendment activity. Those facts make out a plausible inference that Defendants Doyle and Hoffman effectuated the retaliatory motives of the Defendant School Board and its members made in their request.

## VI. THE FACTS ALLEGED BY PLAINTIFF RELATED TO DEFENDANT DOYLE AND HOFFMAN'S SEIZURE OF PLAINTIFF'S PROPERTY AND DEFENDANT HOFFMAN'S DESCRIPTIONS OF HIS ALLEGED PROBABLE CAUSE BASIS TO JUSTIFY THE SEARCH WARRANTS WERE SO FAR UNRELATED TO PLAINTIFF'S PERFORMANCE OF HIS SCHOOL BOARD DUTIES AND DID STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

The facts alleged by Plaintiff with regard to the conduct of the Defendants Doyle and Hoffman, along with Defendant Zellinger can be easily considered to be "so outrageous in character and so extreme in

degree as to go beyond all possible bounds of decency and should be regarded as atrocious and utterly intolerable in a civilized community." The United States Supreme Court considered whether a public figure, in that case, Jerry Falwell, "a nationally known minister who has been active as a commentator on politics and public affairs" could sue Hustler Magazine and its publisher Larry Flynt for "intentional infliction of emotional distress" for the publication of an ad parody offensive to him. *Hustler Mag., Inc. v. Falwell,* 485 U.S. 46, 50 (1988). The Court found that recovery for the tort was not permissible because Falwell was a public figure. *Id.* at 51. Significantly, the Supreme Court noted

> Generally speaking the law does not regard the intent to inflict emotional distress as one which should receive much solicitude, and it is quite understandable that most if not all jurisdictions have chosen to make it civilly culpable where the conduct in question is sufficiently "outrageous." But in the world of debate about public affairs, many things done with motives that are less than admirable are protected by the First Amendment.

Falwell, 485 U.S. at 53. In this case, the contents of the search warrants which became public records and contained information so far afield from the question of whether Plaintiff had willfully omitted, neglected or refused to discharge any of his official duties or even whether he had engaged in extortion or conspiracy to commit extortion certainly provide

enough evidence at this stage of the pleadings of the outrageous nature of Defendant Doyle's and Hoffman's participation in the conspiracy against Plaintiff instigated by Defendants Lawrence, Marshburn, Preston, and McLeod Barbour, and embraced and encouraged the Town officials and the School board officials sufficient to survive a motion to dismiss.

## VII. PLAINTIFF'S COMPLAINT STATES FACTS WHICH SUPPORT THAT DEFENDANTS DOYLE AND HOFFMAN CONSPIRED WITH OTHER DEFENDANTS TO VIOLATION PLAINTIFF'S RIGHTS UNDER §1983.

Plaintiff alleged facts showing that Defendants Doyle and Hoffman were well aware of the retaliatory motive of the School Board which sought and resulted in the District Attorney's Defendant's investigation of and the use of the search warrants executed by Defendant Hoffman, the seized property from which was used in the subsequent prosecution of Plaintiff. As stated above, the collective knowledge doctrine provides that "where law enforcement authorities are cooperating in an investigation, ... the knowledge of one is presumed shared by all." *Illinois v. Andreas,* 463 U.S. 765, 772 n. 5, (1983). "To establish a conspiracy claim under § 1983, a plaintiff 'must present evidence that the [defendants] acted jointly in concert and that some overt act was done in

furtherance of the conspiracy which resulted in [the] deprivation of a constitutional right.' " *Penley v. McDowell Cnty. Bd. of Educ.*, 876 F.3d 646, 658 (4th Cir. 2017) (citing *Massey v. Ojaniit*, 759 F.3d 343, 357–58 (4th Cir. 2014) (alterations in original) (quoting *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996)).

In *Hinkle,* the Fourt Circuit noted that "[t]o establish a civil conspiracy under § 1983, [plaintiff] must present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [plaintiff's] deprivation of a constitutional right," in this case the retaliatory actions for engaging in his first amendment rights. *Hinkle v. City of Clarksburg, W.Va.*, 81 F.3d 416, 421 (4th Cir. 1996) (citing *Hafner v. Brown*, 983 F.2d 570, 577 (4th Cir.1992).

Plaintiff has alleged sufficient facts in his complaint to make a reasonable and plausible inference that Defendants Doyle and Hoffman and other Defendants engaged in a conspiracy to commit a violation of Plaintiff's §1983 rights to be free from retaliation for exercising his First Amendment rights and his due process rights to be free from a malicious abuse of process. The information contained in the affidavits used to

support the search warrants asserting probable cause for not only an allegation that Plaintiff had willfully omitted, neglected or refused to discharge any of his official duties but also whether he had engaged in unrelated allegations of extortion or conspiracy to commit extortion is also evidence of the joint action between the numerous Defendants. The relationship between the allegations investigated by the School Board, the Town, and subsequently Defendants Zellinger, Doyle and Hoffman are all dependent on and reliant on communications between themselves and the other individual Defendants Marshburn, Preston, Lawrence, and McLeod Barbour. The facts alleged by Plaintiff are not conclusory, but specific and show that the Town relied on statements published by Defendants Marshburn and Preston, which they obtained from Defendants Lawrence and McLeod Barbour. The facts alleged by Plaintiff also specifically link the School Board's investigations with his First Amendment protected activity related to alleged wrongdoing by the Board. The School Board's own letter to the District Attorney links both Plaintiff's employment by the Town and adverse actions taken against him along with his refusal to resign his position after being threatened with criminal prosecution. These allegations are not conclusory; they

connect each and every defendant and Defendants Doyle and Hoffman cannot escape liability for his part in the retaliation against Plaintiff for exercising his First Amendment rights.

## CONCLUSION

For the foregoing reasons, this Court should deny Defendant Doyle and Hoffman's motion to dismiss.

Respectfully submitted, this 2d day of October 2023.

/s/ VALERIE L. BATEMAN
Valerie L. Bateman
NC State Bar No. 13417
NEW SOUTH LAW FIRM
209 Lloyd Street, Ste 350
Carrboro, NC 27510
valerie@newsouthlawfirm.com
Tel:  919-810-3139
Fax: 919-823-6383

/S/ JUNE K. ALLISON
June K. Allison
NC State Bar No. 9673
NEW SOUTH LAW FIRM
233 S. Laurel Avenue
Charlotte, NC  28207
june@newsouthlawfirm.com
Tel:  704-277-0113
Fax: 919-823-6383

## CERTIFICATE OF COMPLIANCE

This is to certify that the foregoing **MEMORANDUM** complies with the applicable word limit of 8400 words or less as counted by Microsoft's word-processing software.

This the 2nd day of October 2023.

/S/ VALERIE L. BATEMAN
Valerie L. Bateman
NEW SOUTH LAW FIRM

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that I electronically filed the foregoing **MEMORANDUM IN OPPOSITION TO DEFENDANTS DOYLE AND HOFFMAN'S MOTION TO DISMISS** using the CM/ECF filing system which will automatically send email notification of such filing to all counsel of record.

This the 2d day of October 2023.

/S/ VALERIE L. BATEMAN
Valerie L. Bateman
NEW SOUTH LAW FIRM