UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Civil Action No. 5:23-cv-349

RONALD JOHNSON,                )
                              )
            Plaintiff,        )
                              )
    v.                        )
                              )
TOWN OF SMITHFIELD, et al     )
                              )
            Defendants.       )
                              )

**PLAINTIFF'S BRIEF IN OPPOSITION TO TOWN
DEFENDANTS' MOTION TO DISMISS**

COMES NOW the Plaintiff and shows the Court why the motion

to dismiss by the Town Defendants should be denied:

**SUMMARY OF ARGUMENTS**

Plaintiff's Complaint contains sufficient factual allegations to state

a non-speculative claim under 42 U.S.C. § 1983 for violations of Plaintiff's

constitutional rights (equal protection, liberty interest, first amendment)

against the Town of Smithfield and Defendants Michael Scott, Timothy

Kerigan, Terry West, Keith Powell, and Marlon Lee, in their individual

capacities. Plaintiff's Complaint also contains sufficient factual allegations to state a non-speculative claim under Title VII against the Town. Defendants seek to dismiss Plaintiff's § 1983 claims against the official capacity defendants as duplicative and for failure to state a claim for which relief may be granted. Defendants also seeks to dismiss Plaintiff's Title VII claims against the individual defendants and for failure to state a claim for which relief may be granted.

## STANDARD OF REVIEW ON MOTION TO DISMISS

Our Supreme Court has noted that "[f]ederal pleading rules call for 'a short and plain statement of the claim showing that the pleader is entitled to relief;' they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (quoting F.R.Civ.P. 8(a)(2)). The Court also noted that Rule 8(a)(2) in particular "indicates that a basic objective of the rules is to avoid civil cases turning on technicalities." *Id*. In fact, a plaintiff seeking damages for violations of constitutional rights need not even "invoke §1983 expressly in order to state a claim." *Id*.

Post-*Iqbal* and *Twombly*, the Fourth Circuit has held that "[t]o survive a motion to dismiss, a complaint must state "a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)), and all allegations in the complaint must be accepted as true and all reasonable inferences must be drawn in Plaintiff's favor. *Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 328 (4th Cir. 2014). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Mays v. Sprinkle*, 992 F.3d 295, 299-300 (4th Cir. 2021)(quoting *Iqbal,* 555 U.S. at 663). In this case, Plaintiff's factual allegations about the Town and the actions of its policy makers are sufficient to raise a reasonable inference and make out a plausible claim that they are liable for violating Plaintiff's first amendment rights, along with other Defendants, as well as violations of Title VII, .

I.  **THE 1983 CLAIMS AGAINST THE INDIVIDUAL TOWN DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES AND THE TOWN ARE NOT SPECULATIVE AND ARE PLAUSIBLE BASED ON THE FACTS ALLEGED IN THE COMPLAINT.**

As the Supreme Court explained, "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Id.* at 165 (1985) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 237–238 (1974)). On the other hand, official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Id.* (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978)).

A.    Town Liability

"[A] governmental entity is liable under § 1983 only when the entity itself is a " 'moving force' " behind the deprivation, [citation omitted]; thus, in an official-capacity suit the entity's "policy or custom" must have played a part in the violation of federal law." *Kentucky v. Graham*, 473 U.S. 159, 166 (citing *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) and *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, n. 55 (1978)). Municipal liability "may be imposed for a single decision by municipal policymakers under appropriate circumstances," *Hunter v. Town of Mocksville, N.C.*, 897 F.3d 538, 554 (4th Cir. 2018)(quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)). In *Hunter,* the Fourth Circuit held that the that "a municipal agency or official may have

final authority to make and implement policy despite a municipality's retention of powers of ultimate control over both policy and policymaker." *Id.* at 560-61 (citing *Spell v. McDaniel*, 824 F.2d 1380, 1385 (4th Cir. 1987) "While municipal 'policy' is found most obviously in municipal ordinances, regulations and the like which directly command or authorize constitutional violations, ... it may also be found in formal or informal ad hoc 'policy' choices or decisions of municipal officials authorized to make and implement municipal policy." *Spell*, 824 F.2d at 1386.

B.     Liability of Town Officials in Official Capacity

The Court noted that the distinction between personal capacity and official capacity action suits continues to "confuse lawyers and confound lower courts." *Id.* at 165.     Admittedly, in an abundance of caution, Plaintiff named the individual Town defendants in both their individual and official capacity. Plaintiff concedes, as he must, that "[o]fficial capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky*, 473 U.S. at 165. "Based upon the understanding that it is duplicative to name both a government entity and the entity's employees in their official

capacity, courts have routinely dismissed corresponding claims against individuals named in their official capacity as redundant and an inefficient use of judicial resources." *Monell*, 436 U.S. at 691. *Accord Ridpath v. Bd. Of Governors Marshall Univ.*, 447 F.3d 292, 307 n.13 (4th Cir. 2006)). Nonetheless, Plaintiff brings section 1983 claims against the individual defendants in their individual capacities under section 1983 for violation of his constitutional rights under the first amendment and fifth amendment.

### C.    <u>Liability of Town Officials in Official Capacity</u>

"[U]nder the liberty interest test announced in *Paul,* which has become known as the "stigma-plus" test, a plaintiff asserting a reputational liberty interest protected by the Fourteenth Amendment must show both (i) the infliction by state officials of a "stigma" to plaintiff's reputation and (ii) the deprivation of a legal right or status." *Doe v. Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d 712, 722 (E.D. Va. 2015) (citing *Paul v. Davis*, 424 U.S. 701, 710–11 (1976) and *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 315 (4th Cir.2012) (noting that the 'stigma plus' test is met if the plaintiff's "reputational injury was accompanied by a state action that 'distinctly altered or extinguished' his

legal status"). Not only has Plaintiff suffered reputational injury, but he was terminated from his position which meets the "stigma plus" test and this claim lies against all Town Defendants in their individual capacity.

"[T]he "right of free speech includes ... the right to be free from retaliation by a public official for the exercise of that right." *Hening v. Adair*, 644 F. Supp. 3d 203, 208 (W.D. Va. 2022) (citing *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005) (quoting *Suarez Corp. Indus. v. McGraw,* 202 F.3d 676, 685 (4th Cir. 2000)). Plaintiff has alleged facts showing that he: (1) [he] engaged in protected First Amendment activity; (2) [Defendants] took some action that adversely affected [his] First Amendment rights; and (3) there was a causal relationship between [his] protected activity and [Defendants] actions." *Id.*

"[T]he Equal Protection Clause confers on public employees 'a right to be free from gender discrimination that is not substantially related to important governmental objectives.'" *Wilcox v. Lyons*, 970 F.3d 452, 458 (4th Cir. 2020) (citing *Beardsley v. Webb*, 30 F.3d 524, 529 (4th Cir. 1994) and *Davis v. Passman,* 442 U.S. 228, 234–235 (1979)). "Intentional sex discrimination and sexual harassment against public employees by

persons acting under color of state law violate the Equal Protection Clause and are actionable under Section 1983." *Id.* Plaintiff has alleged that he was subjected to harassment and a hostile work environment by Defendant Powell, and Defendants Kerrigan and Scott took no action when they learned of this and allowed Powell to continue his harassment by continuing his investigation and terminating Plaintiff, which action was ratified by Defendants Scott and Lee.

II.    **PLAINTIFF DOES NOT ASSERT HIS ADA, TITLE VII, OR WRONGFUL DISCHARGE CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS, BUT AGAINST THE TOWN, AND THESE CLAIMS ARE SUFFICIENTLY PLAUSIBLE TO MEET THE PLEADING STANDARDS OF RULE 8 AND SURVIVE A MOTION TO DISMISS UNDER RULE 12.**

Defendants admit that Plaintiff is not required to plead a prima facie case of discrimination in his Complaint, but then argues that he has not alleged sufficient facts to meet his burden under *Iqbal* and *Twombly*, to state facts which show "a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570  (2007)) "In the context of employment discrimination, the Supreme Court has clarified that pleadings need not "contain specific facts establishing a prima facie case of discrimination

under the framework set forth" in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Westmoreland v. Prince George's Cnty., Md.*, No. 09-CV-2453 AW, 2010 WL 3369169, at *3 (D. Md. Aug. 23, 2010) (citing *Swierkiewicz v. Sorema*, N.A., 534 U.S. 506, 511-12 (2002)) The Court noted the importance of this was underscored by the consideration that "a plaintiff without direct evidence of discrimination would need to plead a prima facie case even though she might uncover direct evidence during discovery." *Id*.

In order to survive a motion to dismiss, Plaintiff does not have to allege that he was "treated differently than similarly situated female employees." Since the Supreme Court's opinions in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 236–37 (1989) and *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78–79 (1998), it has been clear t that an "an impermissibly cabined view of the proper behavior of" a sex and concomitant sex stereotyping violate Title VII and that men can discriminate against men. As the *Oncale* court noted, "[w]hatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted "discrimina[tion] ... because

of ... sex." *Oncale,* 523 U.S. at 81. In this case, Plaintiff's complaint alleges facts concerning a number of incidents where Plaintiff's managers treated him differently because of his sex.

Specifically, Plaintiff alleges:

¶148. In mid-May 2022, Plaintiff notified his supervisor, Defendant Smithfield Police Lt. Terry West about the threatening text messages and his previous encounters with McLeod. Defendant West told Plaintiff that he would not tell Defendant Police Chief Powell, because of Powell's previous comments and actions towards Plaintiff which were well known throughout the police department.

¶198. Powell made statements in front of other employees that Plaintiff was engaging in a sexual relationship with Craig Olive, the Register of Deeds.

¶199. Powell made statements in front of other employees that Plaintiff was in a three-way sexual relationship with "Jeff and Dean," two individuals who were known to be acquaintances of Craig Olive.

¶200. Powell made statements in front of other employees that Plaintiff was having or had had a sexual relationship with Jessica Zavala, a former employee, and that one of Zavala's children was fathered by Plaintiff.

¶201. Ms. Zavala overhead these comments and later asked Plaintiff about them.

¶202. Powell made statements in front of other employees that Plaintiff was having sexual relationship with Brandy Galindo/Phelps, by saying on a number of occasions "you are fucking Galindo's wife."

¶203. Powell made statements that Laura Stewart, the former wife of an employee Jeremy Stewart, was part of Plaintiff's "harem" after Laura Stewart, contacted Plaintiff about an alleged domestic assault and Plaintiff followed protocol by contacting Powell about the same.

¶221. Powell also condoned harassing conduct by his officers and engaged in it himself. In 2022, on two occasions, Plaintiff heard Powell discussing an officer's sexuality in front of other employees, making statements that the officer was bi-sexual and watched pornography involving two men engaged in sexual activity. Apparently, the officer had disclosed this information during his background investigation and Powell inappropriately shared this information with other employees.

¶222. The remarks made by Powell to Plaintiff regarding Plaintiff's alleged sexual activity with a variety of individuals, which remarks have been witnessed by many, violated Town policy and were made to Plaintiff based on his sex.

In ¶¶ 212-18, Plaintiff alleges numerous incidents where the Town, through Defendant Powell, failed to investigate allegations of misconduct, as compared to the relatively minor incidents that prompted the investigation against Plaintiff, which Powell and Lt. West minimized when discussing with Plaintiff. Defendants even concede that Plaintiff made allegations against Defendant McLeod Barbour that he was the victim of sexual assault that had he been female, Chief Powell and Lt. West would have credited. DE01,¶¶222-23 Plaintiff alleges facts

showing that he was suffered an adverse action and was treated differently because of his sex and as a result he was damaged. These factual allegations are sufficient to survive a Rule 12 motion. Though Plaintiff is not required to allege a prima facie case in his Complaint, Swier, he has done so. Defendants' contention that there is no causal connection between Plaintiff's termination and his complaints about a variety of issues ignores the opportunistic nature of the investigation which was precipitated by the social media broadcasts which were the product of the collusion of Defendants Lawrence, Marshburn, and McLeod to damage Plaintiff both in his employment and in his position as a school board member. DE01,¶¶225-241.

In addition, in his termination letter to Plaintiff, Defendant Powell cited Plaintiff's obtaining a "no contact order (50-C)" when the "correct order would have been a (50-B)," his "outside involvement with the School Board has brough a negative light on the Department and the Town," and the allegation that Plaintiff's "personal life has brought about Issues with his integrity as a police officer by the agency, citizens of Smithfield, and court officials." DE01-13 The final termination letter by Defendant Scott stated:

Based on my review of the relevant information, including the recommendation of Chief Powell, the documents that you provided to Chief Powell and myself, and the recent news articles, this letter serves as notification that you are being terminated from your Police Department position with the Town of Smithfield effective immediately on Friday, October 14, 2022. The decision to terminate your employment has been made due to the reasons set forth in the first paragraph of this letter as well as for Detrimental Personal Conduct due to the recent allegations reported on October 6 and further discussed with you during our October 12 meeting.

DE01-14. The first paragraph of this letter stated:

During this meeting, you were informed that Chief Powell would be recommending your termination to me based on violations of Town Handbook Section 37(b) and Police Departmental General Orders Section 201 regarding standards of conduct. You were also informed regarding a personal matter in which you obtained a 5OC no contact order when you knew, or should have known based on your years of experience, that the correct order was a 5OB no contact order.

DE01-14. The allegations discussed during the October 12 meeting were described as follows: "On October 6, io22, a news article in the JoCo Report was published regarding allegations that you sent inappropriate texts of a sexual nature about a female school employee." DE01-14 Not only were these allegations unrelated to the matters originally presented to Plaintiff as the focus of the investigation, but they were only arrived at as a result of the social media publications of Defendants Marshburn

and Preston based on information provided by Defendants Lawrence and McLeod Barbour, for the purpose of damaging Plaintiff in his employment and his position as a school Board member. The substantive reasons given by the Town for Plaintiff's termination are not legitimate, nondiscriminatory reasons and even if they are, they are pretext for illegal discrimination and retaliation.

Plaintiff's factual allegations of the events for which he seeks to hold the Town responsible are sufficiently plausible and state a viable claim for the Town to be liable for his damages resulting from his termination. These allegations are that the Town relied upon the actions of individuals who acted as the agents of the town, to-wit, Defendants Lawrence, Marshburn, McLeod Barbour, and Preston, who disseminated allegations on social media used by the Town as the basis for instigating an investigation and ultimately terminating Plaintiff. Both the Town's actions as well as the actions of Lawrence, Marshburn, McLeod Barbour, and Preston were discriminatory and/or retaliatory. To the extent that the Town relied upon information reported by Defendants Lawrence, Marshburn, McLeod Barbour, and Preston which was motivated by a

desire to discriminate and/or retaliate against Plaintiff, the Town's decision is also impermissibly motivated by illegal animus.

In *Staub v. Proctor Hosp.*, 562 U.S. 411, 421 (2011), under the cat's paw theory of liability, the Supreme Court explained that liability of the employer: "[t]he employer is at fault because one of its agents committed an action based on discriminatory animus that was intended to cause, and did in fact cause, an adverse employment decision." The Court rejected the idea that an employer's conduct of its own "independent investigation somehow relieves the employer of 'fault.'" *Id.* In this case, the biased reports of Defendants Marshburn, Preston, Lawrence, and McLeod Barbour are a causal factor of Plaintiff's damages because the Town's decision to terminate Plaintiff because the Town's investigation relied upon the allegations without making an independent determination that Plaintiff's termination was otherwise "entirely justified." *Id.*

Moreover, even absent the cat's paw theory of liability, once the Town was on notice on July 27, 2022, DE01,¶253, about Defendant Powell's own discriminatory treatment of Plaintiff and his creation of a hostile work environment based on sex and retaliation, the Town

allowing Defendant Powell to continue his investigation and ultimately terminate Plaintiff means that the Town assumed vicarious liability for Plaintiff's damages under principles established in *Faragher v. City of Boca Raton*, 524 U.S. 775, 807–08 (1998) and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). "Once the employer has notice, it must respond with remedial action reasonably calculated to stop the harassment." *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 118 (4th Cir. 2021) (citing *Amirmokri v. Balt. Gas & Elec.*, 60 F.3d 1126, 1131–32 (4th Cir. 1995). The investigation of Plaintiff by Powell which was another example of the hostile work environment created by Powell, and its resulting adverse action by the Town (termination), result in the Town's liability. "The employer 'may be liable in negligence if it knew or should have known about the harassment and failed to take effective action to stop it.'" *Roberts*, 998 F.3d at 118 (quoting *Hoyle v. Freightliner, LLC,* 650 F.3d 321, 335 (4th Cir. 2011)). Even if the Town can show it began its investigation based on allegations of misconduct which were made on Defendant Marshburn's and Preston's social media site, allowing Defendant Powell to continue the investigation and expand its scope for the purpose of finding some reason to terminate Plaintiff was

-16-

negligent and the Town failed to take reasonable action to ensure that Powell was not involved in the investigation.

The Town's attempt post-termination to bolster its 50B/50C basis for Plaintiff's termination is unpersuasive and does not convert that weak justification into a legitimate, nondiscriminatory reason for Plaintiff's termination. This is especially true given Plaintiff's factual allegations that he was encouraged by both Defendant Powell and West to contact the sheriff's department and obtain the order. In addition, Defendant Powell knew that neither the Town's police department nor Plaintiff in the course and scope of his employment had any involvement or experience in obtaining 50B/50C orders. Thus, holding Plaintiff responsible for the type of Order entered was not legitimate reason to terminate him either and the reasonableness of Defendant Scott and Powell's holding Plaintiff responsible ignores that this reason was a desperate attempt to find something for which to terminate Plaintiff after the original reasons for the investigation could not be substantiated. Likewise, the texts between Plaintiff and Defendant Lawrence occurred in 2018, were not publicized by Plaintiff, but by Defendants Lawrnce, Marshburn and Preston, and any disrepute that came on the Town was

not caused by Plaintiff's actions in 2018. That disrepute, if any, resulted from the dissemination of those texts in 2022 by individuals with discriminatory and retaliatory motivations which were assumed by the Town when they relied on them in terminating Plaintiff. Moreover, considered the other examples of "detrimental personal conduct" that the Town ignored in other police department employees, classifying those texts as "behavior of such a serious nature that the functioning of the Town may be or has been impaired, the safety of persons or property may be threatened, or the laws of any government may be or have been violated" is patently incredible.

## III. PLAINTIFF STATES A CLAIM FOR AN ADA VIOLATION BECAUSE HE ALLEGES FACTS SHOWING THAT THE TOWN DISSEMINATED INFORMATION RELATED TO HIS DISABILITY.

The ADA prohibits the disclosure of information about an employee's disability. *Wiggins v. DaVita Tidewater, LLC*, 451 F. Supp. 2d 789, 801 (E.D. Va. 2006) ("The ADA limits the scope of information that employers may seek and disclose about their employees' medical conditions.") "To assert a violation of § 12112(d), a plaintiff must prove, as a threshold matter, that the improperly disclosed information was

confidential under the pertinent provisions of the ADA, i.e., derived from an employment-related medical examination or inquiry." *Perez v. Denver Fire Dep't*, 243 F. Supp. 3d 1186, 1197 (D. Colo. 2017), aff'd, 724 F. App'x 646 (10th Cir. 2018). *Accord* 2 Americans with Disab.: Pract. & Compliance Manual § 7:226 ("To prove a claim under Americans with Disabilities Act (ADA) Title I based upon the improper disclosure of confidential medical information, a plaintiff must show: (1) that plaintiff's medical information was obtained through employment-related medical examinations and inquiries; (2) that the information obtained through such means was disclosed by the employer rather than treated as confidential; and (3) that the plaintiff suffered a tangible injury as a result of the disclosure of the confidential medical information. A plaintiff must prove, as a threshold matter, that the improperly disclosed information was confidential under the pertinent provisions of the ADA, and derived from an employment-related medical examination or inquiry.") A plaintiff "may recover compensatory damages for tangible injury 'legally and proximately caused' by" a violation of the confidentiality provisions of 42 U.S.C. § 12112(d).

*Garrison v. Baker Hughes Oilfield Operations, Inc.,* 287 F.3d 955, 963 (10th Cir. 2002),

In this case, Plaintiff alleged that he provided his employer with information related to his disability. DE01,¶¶14, 241-42, 253, 257. Plaintiff put Defendants on notice that information about his disability which he provided to Defendants was being publicized on Defendant Marshburn and Preston's social media broadcasts. DE01,¶¶ , 257, 270-72. Defendant Powell admitted that Defendant Lawrence was being provided information about Plaintiff's use of sick leave. DE01,¶¶254-55. Plaintiff's factual allegations support a plausible, non-speculative claim that Defendant Town violated the ADA.

## IV. PLAINTIFF STATES A CLAIM FOR FMLA INTERFERENCE AND RETALIATION BECAUSE HE ALLEGES FACTS SHOWING THAT THE TOWN PLACED HIM ON UNPAID LEAVE AFTER HE SOUGHT FMLA AND WHEN HE HAD PAID LEAVE AVAILABLE TO USE.

When Plaintiff filed his request for FMLA and provided his physician's note on July 6, 2022, indicating that he was suffering from a serious medical condition, the Town refused to allow him to use paid sick leave, and terminated his pay status on July 12, 2022. DE01,¶¶241-44. Moreover, Plaintiff was required to attend multiple meetings with

Defendants West and others while he was out on FMLA. DE01,¶248. This not only interfered with his ability to obtain FMLA but it was retaliation for asking for FMLA. As admitted by Defendants in their memorandum, Town policy permitted Plaintiff to take paid leave if he had it available, which he did. The FMLA protects the entire leave period, regardless of whether it is paid or unpaid, but if an employee has paid leave, consistent with the employer's policy, the employer must allow the employee to use paid leave.

To prevail on a FMLA retaliation claim, Plaintiff must allege evidence that he suffered an adverse employment action because he sought FMLA leave. *Dotson v. Pfizer, Inc.*, 558 F.3d 284, 296 (4th Cir. 2009). In this case, Plaintiff sought FMLA leave on July 6, 2022, after being placed on paid administrative leave, and on July 12, 2022, knowing that he had accumulated sick leave, Defendants placed Plaintiff on **unpaid** leave. These factual allegations are sufficient to survive a motion to dismiss Plaintiff's FMLA retaliation claim.

To make out an interference claim under the FMLA, "an employee must thus demonstrate that (1) he is entitled to an FMLA benefit; (2) his employer interfered with the provision of that benefit; and (3) that

interference caused harm." *Adams v. Anne Arundel Cnty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir. 2015) An interference claim " 'merely requires proof that the employer denied the employee his entitlements under the FMLA[.]' " *Ensor v. Jenkins*, No. CV ELH-20-1266, 2022 WL 703920, at *19 (D. Md. Mar. 8, 2022) (citing *Bosse v. Baltimore Cty.*, 692 F. Supp. 2d 574, 588 (D. Md. 2010) and quoting *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1051 (8th Cir. 2006)). The regulations promulgated under the FMLA provide that an employee may substitute paid leave for unpaid FMLA leave. 29 C.F.R. § 825.207. Plaintiff's factual allegations that he was denied the right to use paid sick leave after he sought FMLA and placed on unpaid leave creates a plausible, non-speculative inference that Defendants "denied [Plaintiff] his entitlements under the FMLA." To the extent that the handbook referenced creates a contrary inference, it must be disregarded.

V.      **THE INDIVIUDAL TOWN DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY AS TO PLAINTIFF'S SECTION 1983 CLAIMS NOR ARE THEY ENTITLED TO PUBLIC OFFICIAL IMMUNITY FOR HIS STATE LAW CLAIMS.**

Though a qualified immunity defense can be presented in a Rule 12(b)(6), as this court has noted, "when asserted at this early stage in the

proceedings, 'the defense faces a formidable hurdle' and 'is usually not successful.'" *Owens v. Baltimore City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014) (quoting *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 191–92 (2d Cir.2006)).  Plaintiff's allegations here were that he was terminated in retaliation for exercising his first amendment rights by opposing the illegal sexual harassment of school board employees and by criticizing potentially improper activities of the school board which states a violation of a clearly established right held by public employees. Likewise, that Plaintiff has a liberty interest in future employment and his reputation that has been affected by Defendants' wrongful termination of him is likewise clearly established. Finally, a public employee's right to be free from discrimination based on his sex is also clearly established.

Defendants Kerigan and Lee are not immune from these claims because they had sufficient personal involvement as officials with decision making authority and they could have opposed or stopped the wrongful action of Defendants Powell and Scott.  Instead of opposing the actions, they facilitated, approved, and ratified those decisions by assisting as HR Director and Town Council Member.  Kerigan was the

HR director and can be presumed to have been involved in and responsible for the oversight of the investigation, the disciplinary action imposed on Plaintiff, the release of confidential personnel information and the application of the FMLA policy to Plaintiff, as just a few examples. Likewise, Defendant Lee is an elected town official who expressed approval on social media of posts disparaging Plaintiff and as a town council member had responsibility for the oversight of the Town Manager, to whom authority to take actions against Plaintiff was delegated and of which he clearly approved based on his post. The cases cited by Defendants are inapposite as they involve summary judgment, not a motion to dismiss. And Defendants argument that Plaintiff's "alleged opposition to alleged sexual harassment by Lawrence was not the 'substantial or motivating factor' in the decision to investigate him," is belied by Plaintiff's factual allegations that he was told by more than one person that his opposition to the sexual harassment was exactly was motivated the investigation upon which his termination was based.

It is well established the public official immunity does not insulate government officials who have

# VI. PLAINTIFF'S WRONGFUL DISCHARGE CLAIMS PASSES MUSTER UNDER A RULE 12 MOTION TO DISMISS.

Plaintiff's complaint alleges that he was terminated in retaliation for opposing improper activity by both Defendant Powell, Defendant Lawrence, and the school board and clearly states a claim for wrongful discharge in violation of public policy. To the extent that *Considine v. Compass Grp. USA, Inc.*, 145 N.C. App. 314, 317, 551 S.E.2d 179, 181, *aff'd per curiam*, 354 N.C. 568, 557 S.E.2d 528 (2001)), requires the actions alleged to violate public policy be recognized as wrongful by the State legislature, it has manifested that public policy in N.C. Gen. Stat. § 126-84 protecting State employers from reporting allegations of governmental wrongdoing:

> It is the policy of this State that State employees shall have a duty to report verbally or in writing to their supervisor, department head, or other appropriate authority, evidence of activity by a State agency or State employee constituting any of the following: (1) A violation of State or federal law, rule or regulation. (2) Fraud. (3) Misappropriation of State resources. (4) Substantial and specific danger to the public health and safety. (5) Gross mismanagement, a gross waste of monies, or gross abuse of authority.

Likewise, N.C. Gen. Stat. § 147-64.6 provides that it is the policy of the General Assembly to provide for the investigation of governmental

wrongdoing "including misappropriation, mismanagement, waste of State resources, fraud, or a violation of State or federal law," § 147-64.6(a)(7), and under § 147-64.6(c)(14), "[i]f the report is the result of an investigation of a unit of local government subject to Article 3 of Chapter 159 of the General Statutes, the Auditor shall notify the Local Government Commission that a report has been published with respect to that unit of local government."

## VII.    PLAINTIFF'S CLAIM FOR INTENTIONAL INFLICTIONOF EMOTIONAL DISTRESS SURVIVES A MOTION TO DISMISS.

"[W]hether an actor's behavior is 'outrageous and intolerable,' and therefore punishable as intentional infliction of emotional distress, requires an inquiry into whether the actor was legally entitled to act as he or she did." *Foy v. Giant Food Inc.*, 298 F.3d 284, 288 (4th Cir. 2002)(citing *McCormick v. AT & T Techs., Inc.*, 934 F.2d 531, 537 (4th Cir.1991); *Childers v. Chesapeake & Potomac Telephone Co.*, 881 F.2d 1259, 1267 (4th Cir.1989) (holding employer did not commit extreme and outrageous conduct when its actions in disciplining employee were authorized)).

In this case, the actions of Defendants Powell in making statements to other Town employees regarding Plaintiff's sexuality and alleging he had affairs and fathered other employee's children were "outrageous and intolerable." Moreover, his sharing of and sanctioning the sharing of confidential personal information to Defendant Lawrence knowing that such information would be provided to Defendant Marshburn and then broadcast on social media was also "outrageous and intolerable."

Whether he provided other Defendants with other confidential personnel information which was disseminated cannot be ascertained without discovery, but the facts alleged by Plaintiff raise a plausible allegation that Defendant Powell is culpable for the extreme conduct to which Plaintiff has been subjected by many of the Defendants which used information shared by Defendant Powell.

As conceded by Defendant Lawrence, Defendant Powell can not be found to have published any "private facts" which have legitimate public concern, *see Hall v. Post*, 323 N.C. 259, 264, 372 S.E.2d 711, 714 (1988)., because the facts published are confidential under State and federal law. And Plaintiff has alleged that Defendant Powell's conduct resulted in

severe emotional distress," *Waddle v. Sparks*, 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992), sufficient to survive a motion to dismiss.

## VIII. PLAINTIFF'S § 1983 CONSPIRACY CLAIMS ARE SUFFICIENT TO SURVIVE A MOTION TO DISMISS.

Under State law related to conspiracies, if Plaintiff can show an "an agreement between two or more persons to do an unlawful act or to do a lawful act in an unlawful way that results in damages to the claimant" and an "overt act" committed by at least one conspirator in furtherance of the conspiracy, then "all conspirators are jointly and severally liable for damages resulting from an act performed by any one of them in furtherance of the conspiracy." Jackson v. Blue Dolphin Commc'ns of N. Carolina, L.L.C., 226 F. Supp. 2d 785, 791 (W.D.N.C. 2002) (citing Fox v. Wilson, 85 N.C. App. 292, 301, 354 S.E.2d 737, 743 (1987).

Thus, if Defendant Powell fed information to Defendant Lawrence, which indisputably he did, or to any school board members, which is highly likely, and if Defendants Marshburn and Preston obtained confidential personnel information about Plaintiff and broadcast that information, as alleged by Plaintiff, then all of those who engaged in such

actions are jointly and severally liable for damages caused by the actions of any one them in furtherance of the conspiracy to damage Plaintiff in his employment and as a school board member. Plaintiff has alleged sufficient facts to survive a rule 12 motion that he was the victim of a conspiracy to damage him in his employment and in his role as a school board member. Moreover, these facts are also sufficient under § 1983. As the Defendants concede, Plaintiff does not need to allege "direct evidence of a meeting of the minds," and his complaint is replete with "specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." *Hinkle v. City of Clarksburg,* 81 F.3d 416, 421 (4th Cir. 1996)). Plaintiff's factual allegations "reasonably lead to the inference that [the defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Id.* The Town Defendants in their individual capacities can be sued for conspiracy because they did not conspire with one another but with individuals outside the Town. *See Iglesias v. Wolford*, 539 F.Supp.2d 831, 836 (E.D.N.C. 2008). And it cannot be a part of the Defendants' official duties where they shared confidential

personnel information in violation of State law, *see* N.C. Gen. Stat. § 126-22-27, and in violation of the ADA.

By disseminating confidential personnel information about Plaintiff knowing it would be used by Defendants Marshburn and Preston in their broadcasts upon which both the Town and School Board relied in taking their actions against Plaintiff. Those actions were a violation of Plaintiff's first amendment, liberty, and equal protection rights under the Constitution. Plaintiff's allegations are sufficient to allege a civil conspiracy under § 1983, because the allegations allege that the Town Defendants "acted jointly in concert" with other Defendants and that "some overt act was done in furtherance of the conspiracy which resulted in [the plaintiffs'] deprivation of a constitutional right ...." *Nance v. City of Albemarle, N. Carolina*, 520 F. Supp. 3d 758, 801 (M.D.N.C. 2021) (citing *Hinkle*, 81 F.3d at 421).

## IX. THE INDIVIDUAL TOWN DEFENDANTS ARE ENTITLED TO PUBLIC OFFICIAL IMMUNITY FOR THE STATE LAW CLAIMS ASSERTED AGAINST THEM.

Defendants argue that they are shielded from liability for Plaintiff's state law claims under the "public official immunity" doctrine because

Plaintiff did not allege, sufficient to survive a Rule 12 motion, that their acts were done with malice or corruption. In *R.A. v. Johnson*, 36 F.4th 537, 544 (4th Cir. 2022), the Fourt Circuit confirmed that "public official immunity is not absolute." *Id.* "Under North Carolina law, public officials' actions are not shielded if they were "1) outside the scope of official authority, (2) done with malice, or (3) corrupt."" *Id* (quoting *Wilcox v. City of Asheville*, 222 N.C. App.285, 288, 730 S.E.2d 226, 230 (2012), disc. rev. denied, 366 N.C. 574, 783 S.E.2d 363 (2013)). Allegations of mere negligence are insufficient to allow a personal capacity suit to survive. *Id.*

In this case, Plaintiff's factual allegations of corruption and malice go far beyond mere negligence, into the realm of malice and corruption. Defendant Powell's acts, of which Defendants Lee, Scott and Kerigan either directly participated in, or were done with their approval, include the following:

- Made statements in front of other employees that Plaintiff was having sexual relationships with other employees, men and women;(DE01,¶¶198-203);

- Solicited Plaintiff to use his influence as a school board to obtain benefits for the Town and particular Town employees and approved the actions of his subordinates doing the same (DE01,¶¶206-09);

- Intentionally allowed police misconduct to go unaddressed but teed up Plaintiff for an investigation for far less serious misconduct at the behest of Defendant Lawrence and possibly others (DE01,¶¶210-220)

- Gossiped to other Town employees about an allegedly bi-sexual police officer's sexuality (DE01¶¶221);

- Lt. West used Plaintiff's father's death as a tactic to induce stress during the investigation which was itself and malicious and corrupt because it was instigated for improper reasons and into alleged conduct far less egregious than conduct Powell had ignored (DE01,¶264);

- When evidence could not be obtained to substantiate the original focus of the investigation, Defendants maliciously an corruptly shifted their focus to allegations which did not constitute valid allegations of either personal misconduct or

inadequate performance sufficient to justify termination (DE01,¶269);

- Intentionally disseminate confidential personnel information to Defendants Lawrence, Marshburn, Preston, or McLeod Barbour, and unknown school board employees or officials knowing that the information would be broadcast to the public and/or used to Plaintiff's detriment (DE01,¶¶270-282, 289);

- Provided false information to Defendants Hoffman, Doyle, and Zellinger regarding Plaintiff's possession of Town property which was used in search warrants which violated Plaintiff's Fourth Amendment rights and which were malicious and corrupt and executed for an improper purposes (DE01,¶¶316-324).

Plaintiff's allegations of intentionally malicious and corrupt actions by the Town Defendants goes well beyond "mere negligence" and is sufficient to defeat a motion to dismiss asserting "public official immunity."

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this

Court deny the motion to dismiss by the Town Defendants.

Respectfully submitted, this 13th day of October 2023.

/s/ VALERIE L. BATEMAN
Valerie L. Bateman
NC State Bar No. 13417
NEW SOUTH LAW FIRM
209 Lloyd Street, Ste 350
Carrboro, NC 27510
valerie@newsouthlawfirm.com
Tel:  919-810-3139
Fax: 919-823-6383

/S/ JUNE K. ALLISON
June K. Allison
NC State Bar No. 9673
NEW SOUTH LAW FIRM
233 S. Laurel Avenue
Charlotte, NC  28207
june@newsouthlawfirm.com
Tel:  704-277-0113
Fax: 919-823-6383

## CERTIFICATE OF COMPLIANCE

This is to certify that the foregoing **BRIEF** complies with the applicable word limit of 8400 words or less as counted by Microsoft's word-processing software.

This the 13th day of October 2023.

/S/ VALERIE L. BATEMAN
Valerie L. Bateman
NEW SOUTH LAW FIRM

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that I electronically filed the foregoing **BRIEF** using the CM/ECF filing system which will automatically send email notification of such filing to all counsel of record.

This the 13th day of October 2023.

/S/ VALERIE L. BATEMAN
Valerie L. Bateman
NEW SOUTH LAW FIRM