CONFIDENTIAL

8/26/2022  1400hrs    Conversation with Susan

X Susan stated still did not have enough to pursue criminal at this point and she would not have anything to do with the phone that came from Marsburn. She stated we might could get sheriff's office to Dump phone. She would not contact SBI in regards to phone dump

(X) 8/21/2022    1600hrs
Susan called about media asking about charges on Ronald. I advised her no one from the pd had been in contact with Media. Case is still on going. Susan stated there was a gissilo issue and she would pursue it once we produced her the information.

SMITHFIELD001877

CONFIDENTIAL

| CONTROL NUMBER(S) | SMITHFIELD POLICE DEPARTMENT | OCA NUMBER |
|---|---|---|
| (Evidence Room Use Only) | PROPERTY /EVIDENCE FORM<br>***** ☐ Check if Continuation Page***** | |

*BAG ALL CASH, NARCOTICS, JEWELRY, AMMO & WEAPONS SEPARATELY*   SUBMITTING OFFICER   Lt. T. W. West

OFFENSE                                CASE OFFICER   Lt. T. W. West

| NAME TYPE | (V) Victim (S) Suspect (O) Owner (F) Finder<br>NAME | ADDRESS | Race | Sex | DOB | |
|---|---|---|---|---|---|---|
| O | David Marshburn | 207 N. Third St   Smithfield, NC | W | M | 10/25/75 | (DTM) |
| | | | | | | |
| | | | | | | |

**STATUS CODES** 1. EVIDENCE 2. FOUND PROPERTY 3. RECOVERED PROPERTY 4. SAFEKEEPING

**DISPOSITION CODES** A. Auction B. Return to Owner C. Charity D. Destroy E. Turn Over to PD F. Release to Finder G. Other ___

DOES FINDER OF FOUND PROPERTY WISH TO CLAIM AFTER 180 DAYS? ☐ YES ☐ NO

| Item # | DESCRIPTION | Exact Location | Officer Initials | Status Code | Disp. Code |
|---|---|---|---|---|---|
| 1 | iPhone XR "Salmon" in color in case<br>Serial # F2LYLØSGKXLJ<br>IMEI # 35 306910 9159754<br>Passcode 102060 | Smithfield PD | TW | 1 | (DTM) |
| 2 | Data Extraction from Item #1 | Item #1 | TW | 1 | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**CHAIN OF CUSTODY**

| Item # | RECEIVED BY | RECEIVED FROM | DATE | TIME | Item # | RECEIVED BY | RECEIVED FROM | DATE | TIME |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Lt. T. West | David Marshburn | 7/26/2022 | 1111 | 1 | T.W. West | Kyle Richards | 8/31/22 | 2025 |
| 1 | Kyle Richards (Envista) | | 8/31/22 | 8846 | 2 | T.W. West | Spencer McSwaille (Envista) | 9/7/22 | 1026 |
| | | | | | 1 | (signature) | T.W. West | 9/19/22 | 1138 |
| | | | | | 2 | Richard Hatton DA Official | T.W. West | 10/19/22 | 1048 |

Officer Signature: _____   Supervisor Signature: _____   Date: _____

**FINAL DISPOSITION**

| Item # | Disposal Method | Disposed By | Date | Item # | Disposal Method | Disposed By | Date |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |

*Search Warrant Use Only*                STATE OF NORTH CAROLINA                *Search Warrant Use Only*
                                          COUNTY OF JOHNSTON

I, _____, a Notary Public of the State of NC, do hereby certify that _____ did personally appear before me this day and did swear and subscribe to foregoing instrument.
Signature : _____   Date: _____   Notary Signature: _____   Commission Expires: _____

Copy Received By – Print: _____   Signature: _____   Date: _____

SMITHFIELD001671

CONFIDENTIAL

**EVIDENCE/PROPERTY TRANSFER SHEET**

ADMIN0068

OCA#                            OFFICER

| | Received By | Received From | Date | Time |
|---|---|---|---|---|
| #2 | Capt. Grady | Richard Hoffman | 10/20/2022 | 0900 |
| #2 | Tela West | Capt. Grady | 10/21/2022 | 0800 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

SMITHFIELD001672

CONFIDENTIAL

 **SMITHFIELD POLICE DEPARTMENT**
110 S. Fifth Street • Smithfield, NC 27577
Phone: (919) 934-2121 • Fax: (919) 934-0223

**Interoffice Memorandum**

**Date:** September 8, 2022

**From:** Lieutenant T.W. West

**Officer:** Chief R.K. Powell

**Subject:** Administrative Investigation

On June 27, 2022, I was assigned to investigate Detective R.L. Johnson for allegations brought to the Smithfield Police Department's attention by a video posted by David Marshburn on Facebook. The allegations were made that Det. Johnson had used department issued equipment and resources to record people and conduct investigations to further his political career. It was also alleged that Det. Johnson was having an extra-marital affair and did so while working and using his department issued assigned patrol car. Det. Johnson was on vacation at the time. I contacted Det. Johnson and advised him of the investigation. An interview was setup for June 29, 2022, where he would receive written notification of the allegations.

I had prior knowledge of the extra-marital affair. Det. Johnson told me around the end of May or first of June that Angela McLeod (Barbour) has been stalking him and sending him threatening text messages. He stated the texts were coming from an unknown number, but he knew it was her. I advised him to speak with the Clayton Police Department to have the threats investigated. I also asked him why she would be targeting him. Det. Johnson told me she worked on his campaign and was infatuated with him. I asked him if he ever had sex with her and after initially denying it, he stated he slept with her sometime at the end of 2020 or the beginning of 2021. He stated she instigated the sex and was very controlling and demanding. He stated she repeatedly threatened to tell his wife if he did not continue to see her. I asked him if he ever did anything while on duty and he stated no. Det. Johnson played down his role in the affair and implied they only had sex one time, but she would not let him go. I advised him again to report the threats and told him it would be in his best interests to let his wife know before it comes out in an investigation. He stated he already spoke with Linder of the Clayton Police Department about the threats but had not filed an official report. He stated he would file one the first chance he got and have the texts investigated. He stated his wife knew of the texts and knew McLeod but did not know of the affair. I reiterated he needed to tell his wife and that as long as what he did was not on duty or related to the police department it was his business. I also told him he needed to let Chief Powell know about the texts and his desire to report it to Clayton PD.

*Smithfield, North Carolina • The Heart of Johnston County Since 1777*

CONFIDENTIAL

On June 14, 2022, Det. Johnson contacted me by telephone and stated the school board received an email request from WRAL asking if a restraining order had been taken out on him. He stated he contacted the magistrate's office and Susan Doyle to see if there was an order taken out. He stated there was no paper taken out on him in Johnston County. He asked if he could take some time off to speak with an attorney and take out a no contact order on McLeod. After speaking with Detective Johnson, I immediately contacted Chief Powell and advised him of the possibility of a restraining order on Detective Johnson.

On June 15, 2022, I learned there was never an order taken out on Det. Johnson. I later was contacted by Det. Johnson, and he advised his attorney had drafted a letter to McLeod ordering her to cease and desist. I also learned he had taken out a 50C No Contact Order on McLeod.

On June 25, 2022, Det. Johnson called me and stated he had told his wife everything about the affair. He stated she asked him to leave, and he was currently staying in Smithfield at his cousin's house. He stated he expected this to happen and was doing OK at the time. Det. Johnson was currently on vacation and was not due to return to work until July 5, 2022.

On June 27, 2022, I updated Chief Powell on Det. Johnson's current situation. I later learned from Chief Powell that there were videos circulating on social media about Det. Johnson. The videos were from David Marshburn, and I later located them on Marshburn's Facebook page. In the video Marshburn alleged Det. Johnson had an affair and used police department resources and another officer to do unauthorized investigations. He stated he lied and told Rick Walker Det. Johnson's mistress had taken out papers on Det. Johnson to find the "mole". Det. Johnson filed for a 50C on his mistress, Angela McLeod. In obtaining the 50C, Marshburn alleged Det. Johnson lied about his relationship with McLeod and should have obtained a 50B. Marshburn alleged this is why Det. Johnson had his attorney dismiss the 50C because he did not want to get on the stand. I contacted Det. Johnson and notified him of the investigation and scheduled an interview with him on June 29, 2022.

On June 29, 2022, I gave Det. Johnson his written notification of the internal investigation and had him sign the acknowledgement. I presented him with a written notification of his employee rights (Garrity) and read them to him, making sure he understood. Det. Johnson signed the rights form, acknowledging he understood his rights as it pertained to this investigation. I asked Det. Johnson when did the relationship begin with McLeod. He stated he would not call it a relationship, she used to help him on his campaign and only contacted him about work until November of 2020. He stated on 11/24/2022, after the election, he received a telephone call from her inviting him to Ninas in Clayton with 4 or 5 other females. They asked him to stay for drinks, but he stated he did not really drink. He stated he had 1 drink and left to go to the gym. He stated he later received a lot of calls from her and when he did not answer, a text stating she had broken her foot and some guys had a gun. She stated she was scared and wanted him to give "Allison" and her a ride home. He met them at some address near his residence and gave them a ride to Glenn Laurel. He stated Allison got out of the car, but McLeod said she needed a ride home because her foot hurt. He stated he gave her a ride towards Benson, and she was giving him directions. He stated she told him she liked him and started ripping at her clothing and his gym shorts. He stated she then gave him oral sex while they were traveling down the interstate. She told him she was separated from her husband and led him to a trailer, at an unknown address, where she had the key. Other people showed up, but he did not know anyone there. She was very intoxicated and wanted to have sex, but he did not have sex

*Smithfield, North Carolina • The Heart of Johnston County Since 1777*

CONFIDENTIAL

with her that night.  A couple weeks passed before he heard anything from her.  He was not sure if he instigated the contact or her.  They started talking and she apologized for her behavior that night. I asked him when did they have sex.  He stated he did not remember when exactly, but it was December of 2020 sometime.  He stated she threatened to tell his wife if he did not have sex with her and constantly threatened him with this.  They had sex at Virginia Beach after her threats and demands.  She told him he was going to get her through her divorce then she was going to move on. She told him she wanted to go out, but he stated he never did anything like that with her.  He stated she demanded sex.  I asked how many times did they have sex and he stated he doesn't know exactly but probably around 10 times with the majority of the encounters being her demanding to give him oral sex.  I asked how long did this go on and he stated from November of 2020 to July of 2021.  I asked if he remembered any specific time and place any of this took place.  He stated it was mainly hotels, the Marriott in Raleigh, Sheraton at Virginia Beach, and towards the end, he went to her apartment in Clayton.  I asked when was the last time he went to her apartment and he stated he thinks around October of 2021, he took her some "Ghost shit".  He stated he did not remember anything specific but did not have any intimate relations with her since July of 2021 in her apartment.  He stated he did speak with her outside the gym, since it was near her apartment, around Thanksgiving of 2021, and that seemed to appease her.  I asked him if he met her ever on duty and he responded, "never on my work vehicle".  I asked him when was the last time he spoke to her since everything "blew up", and he stated primary election night of 2022.  He stated she went off on him in front of everyone at a party at Dale Lands' house.  He stated he was ignoring her, and she would constantly threaten him saying, "you're done", and other threats.  He stated she followed him and told him she loved him and wanted them to be together.  He kept telling her no.  She followed him to his car and continued threatening him that she was going to have his ass, and everyone was going to handle him.  I told him as bad as all of this is, I am concerned with what happened while he was on duty.  He responded, "nothing happened while he was on duty, nothing".

During the same interview on June 29, 2022, I asked Det. Johnson if he ever used departmental equipment, resources, or personnel to record or investigate anyone for political gain and outside his duties as a police officer.  He stated, "no, never".  I asked him if he ever used anyone to gather information or record anything for political gain.  He asked at this department or in general for clarification because he did not understand the question.  I told him anyone in general.  He stated she (Angie) asked for a recording device because "these guys" were trying to mess with her.  He stated this was towards the end and he gave her a recording device, trying to appease her and stay friends.  He stated the device did not belong to the Smithfield Police Department.  I asked what type of device was it, and he stated it was a key fob device.  I asked if it was like we had here, and he stated it came from David Tyndall.  He stated it was Tyndall's personal device.  He specifically asked Tyndall to make sure it was not the department's and Tyndall told him it was one he picked up from a gun show or somewhere.  He continued to say it did not even work.  I asked him again why she needed a recording device and he stated she told him it was to record people that were coming on to her and harassing her.  I asked him when did this happen and he responded, "the fuck if I know, I do not remember".  He stated it was towards the end, August or July of 2021.  I asked him if there were any recordings passed from Angie to him and he stated, "no".  I asked him if anyone ever passed videos to him and he stated, "no".  He stated he had people bring stuff to him, but he never asked anyone to make recordings.  I told him I had heard he had girls he sent out to record other people.  He stated they go out and get information and bring back to him, but he has never asked them to do it.  He stated in the political world you just listen to people and that is how he gets his information.  He stated he is not out there doing "covert ops".  He stated they tell me

*Smithfield, North Carolina • The Heart of Johnston County Since 1777*

CONFIDENTIAL

stuff and he recorded them on his personal phone.  He stated he did not send them anywhere.

Det. Johnson asked to speak more about McLeod.  He stated she told him she would not tell anyone about their relationship if he allowed her to suck his dick anytime she wanted to and fuck him at least twice a week.  He stated she said this to other people but knew it would be her word against his.  He also stated Dale Lands would know about this.

I reiterated that we were concerned if he used any departmental resources or people in politics or his job at the school board and if he slept with this girl on duty.  Det. Johnson stated, "to clarify, I never slept with this girl on duty.  I never used anything from the Smithfield Police Department for this girl.  I never used anything at this police department for political gain.  I never ran anything like a spy campaign.  I never done that."  I told him that was what was said or alluded to, and he replied, "that is not true".  He also stated, "in full disclosure I bought this chick some phones before, but they were like Trac phones, and she should still have one."  He stated he did this because she could not figure out how to record on anything else.  I asked him again what she was so concerned about to record someone, and he stated, "Devan Barbour trying to fuck her.  Paul Holcomb trying to fuck her.  A guy named Calvin Holder trying to fuck her.  Dale Lands trying to fuck her.  Everybody was supposedly trying to fuck her.  She wanted to have proof of it because nobody ever believed her."  I asked him again if any of this was at his direction and he stated no.  I also asked him if he ever contacted her husband and he stated he thought about it but never did.  He stated he spoke to Jamey about that, but she said we are worried about ourselves and not them.  I told him again if everything he told me was true, he should be ok.  I also told him he would probably be requested to take a CVSA and he stated he was good with that.  He asked for as much confidentiality as possible and I advised him no information would come from me.  I told him I wanted to get this over with as quick as possible, but I would need to do a follow-up interview with him when I was further along.  He stated he understood.  He then stated we should pull the coordinates from his car.  I told him we would be getting to that, but it is the early stages.  He stated, "I get it, we could be in my patrol car on Finney Drive doing it, but I guarantee you want see that damn patrol car at her apartment."  I told him again we would be getting to that.  I ended the interview and offered him EAP for assistance with counseling.  He stated he and his wife had an appointment already for counseling.  I told him if he changed his mind to contact me and I would get him the number for EAP.  I told him I would be talking to the Chief and see what we need to do going forward but as far as I was concerned, he could return to work Tuesday (July 5).  I told him I would be in touch to let him know what was going on.  He stated you probably need to know she has asked me to run plates and look into people's Facebook and Snapchat.  He stated he never did that and would not do that.  He stated he would not even run a plate or anything for another officer.  I told him that is what I was looking for anything you could only do as a police officer and not a school board member.  He disclosed he did record other board members, but not on a police department device.  I told him again if what he has told me is true, he does not have too much to worry about here.  He stated he is concerned about his job here, but his main concern was his wife.  I asked him if there was anything else he wants to put on the table because I do not want any "ambiguity" going forward.  He stated he was sure something would come out, but he did not know of anything.  He asked if I would be talking to her (McLeod).  I told him, "Yes, you're a detective you know I have to talk to her."  His response was, "shit, it's going to be crazy".  I told him to not contact her, and he stated he would not because it would be tampering.  He continued stating, "she lies like hell".  I ended the interview and told him I would be in touch.

*Smithfield, North Carolina • The Heart of Johnston County Since 1777*

CONFIDENTIAL

On June 30, 2022, I contacted Sgt. David Tyndall, who was out in training, to meet me at the police department. I asked Sgt. Tyndall if he ever gave Det. Johnson a key fob recording device. Sgt. Tyndall stated he remembered Det. Johnson asking him for one to help a woman out who was being harassed. He stated he gave Det. Johnson one of his personal cameras to use. He stated he did not remember too much about it, except Det. Johnson gave the camera to the woman behind the police department and could not get it to work. He stated he attempted to help them with it, but it still would not work. He did not remember when this took place. I asked him if the camera was one of the department's cameras and he reiterated it was one of his personal cameras and he would never let anyone use a department camera without a memo, documenting its intended use, and direct permission from the chief.

On July 5, 2022, I met with Angela Barbour (McLeod) and her attorney, Andrew Dickerhoff, at the police department. Dickerhoff and Barbour also provided Barbour's phone records from November 2020 to June of 2022. The records contained numerous calls (inbound and outbound) from Det. Johnson's personal phone (919-320-3337 and another number she advised was his, 919-421-4545). I asked Barbour about her relationship with Det. Johnson, and she described it as a dating relationship, going out to eat, taking vacations, and having sex from as early as November of 2020. She stated she was married at the time and was aware Det. Johnson was married. She stated neither of their respective spouses were aware of the relationship at the time. I asked her to explain her "dating" relationship. She stated they ate out at different restaurants during the day and night. She named off several restaurants in town. She further stated they would park and have sexual relations, also during the day and at night. I asked her if they ever met and had sex while he was working. She stated they had but could not give specific dates. She said the first time he was not on call, but around January of 2021 they started meeting during the day. Sometimes after she left school, but mostly on Wednesdays, since it was during Covid, and it was her asynchronous day. She described Wednesdays as their date day. They did not have a schedule but would meet sometime between 11 AM and 4:30 PM, when he was not busy. She said typically they would go out to eat and then meet at the empty parking lot by Rose Manor Shopping Center. She stated he would leave his patrol car running with the windows cracked and get into her car since the windows were tinted. She stated he left his windows cracked so he could hear the radio. She also stated she would pick him up from the police department when he was working at night. She reiterated she could not remember specific dates. I asked her how often they would do this, and she stated at one point it was even on Sundays, just about every day. I asked her when the sexual relationship began and she stated the first time was November 14, 2020, at Clayton Fitness, but she was drunk at the time and did not remember much. The second time was December 10, 2020, at the Comfort Inn in Clayton. Neither of those dates he was on duty. She stated their last sexual encounter was February of 2022. I asked her if he ever forced himself on her and she stated it was all consensual. I asked her what caused it to end. She stated he started asking her to do things she did not want to do, which caused the relationship to "fracture". I asked her what he asked her to do. She stated he gave her a phone to record her having sex with Devan Barbour. I asked her if this was her idea and she stated it was not hers. She has been friends with Devan Barbour since she was 16 and did not want to have sex with him. She stated Det. Johnson knew she could get him and wanted her to record having sex with him to have leverage so she could get him to do what they want him to do. She stated Det. Johnson constantly asked her if she done it yet and she always gave an excuse for not doing it. She stated she finally told him she was not going to do it. She stated this occurred in October or November of 2021. I asked her if Det. Johnson ever asked her to do this to someone else. She stated, "No", but he would always make comments about someone being a good person to get. She stated a good one was

*Smithfield, North Carolina • The Heart of Johnston County Since 1777*

CONFIDENTIAL

anyone he thought he could have power over.  After this occurred, she stated their relationship
changed to just sex; there was no emotion involved.  I asked her, if at any time, did she record
anyone at Det. Johnson's direction.  She responded he wired her for the GOP convention, March 25,
2021, around 5-5:15 PM.  She stated she met Det. Johnson behind the police department, and he
gave her a key fob recorder and a burner phone.  She stated the key fob recorder did not work and
he went back inside to get another one.  She stated a group of officers were outside in a circle
talking when she drove up.  While trying to get the recorder to work, one of the officers came over
to help and gave advice.  She stated that officer was David Tyndall.  I asked her if Det. Johnson got
the recorder from Tyndall, and she stated he did not get it from Tyndall.  She stated Tyndall was just
there when they were trying to get it to work.  I asked her what Det. Johnson wanted to obtain by
wiring her up.  She stated he wanted to hear what others were saying during the convention and
obtain leverage over them from their conversations.  I asked her if she knew of anyone else that Det.
Johnson put recorders on and sent out for information.  She stated he put a recorder on Michelle
Antoine and had Kevin Donovan record her.  I asked her why Kevin Donovan would record her.
She stated he was recording conversations and he later told her their conversation was on that
recording.  She stated she just happened to be there while he was recording everyone.  She further
stated Donovan told her he learned to do that from Det. Johnson in case he needed it to save himself
one day.  She stated Det. Johnson had Michelle Antoine record Tracey Zukowski but does not know
if she had a recorder or just used her phone.  I asked her if there was anything else about Det.
Johnson she can tell me outside of what we had talked about.  She stated he was following her and
had people taking pictures of her.  She stated he wanted her to sign a nondisclosure agreement, but
she refused to sign.  She also stated he contacted her after filing the restraining order and demanded
a meeting.  She went back to having sex on duty and asked if we could track his car in the parking
lot where they mostly met.  She stated he told her multiple times there was GPS in his car and that is
why he would leave it running.  She further stated at one point he told her he had training dealing
with extramarital affairs and never wanted to do anything in his car because of the likelihood of
getting caught.  I ended the interview at that point and told her I may have to follow-up with her at a
later date.

On July 5, 2022, I updated Chief Powell and Captain Grady on the investigation and the decision
was made to place Det. Johnson on Administrative Leave with pay pending the outcome of the
investigation.  Captain Grady and I went to Det. Johnson's residence to notify him of the decision
and retrieve his firearm, badge, key card, and vehicle.  Det. Johnson was given the written
notification of the Administrative Leave and turned over the requested items.  Det. Johnson was
visibly distraught and wanted to know if the scope of the investigation has changed.  I advised him
the scope has not changed.  He asked if he had been accused of a sexual assault.  I told him there
has been no allegations of that sort made.  He still seemed upset, so I told him I had already
interviewed Barbour and she stated everything was consensual.  This did not seem to calm Det.
Johnson and he remained distraught.  I told him I needed to speak with him again in the near future.
I also told him we would be seeking to do a CVSA or other truth verification at some point.  I asked
him if he had seen his doctor or taken the medication that had been previously prescribed to him
(Alprazolam).  He stated he had an appointment tomorrow with his doctor.

On July 6, 2022, I received a text from Det. Johnson that he was receiving calls from the news
media.  I called Det. Johnson, and he was again distraught, wanting the CVSA as soon as possible.
I told him we were not going to rush the investigation because it needed to be thorough for his sake
and for the department.  I told him we were looking into having someone outside the county to

*Smithfield, North Carolina • The Heart of Johnston County Since 1777*

CONFIDENTIAL

perform the truth verification, but we were not at that point yet. Due to his emotional state, I asked him if he had spoken with his counselor yet and he stated he had an appointment tomorrow. I asked him if he could contact me after his appointment to setup another interview.

On July 7, 2022, at 1252 hours, I texted a reminder to Det. Johnson to call me when he was done with his appointment. He contacted me and stated he had a doctor's note saying he could not return to work or answer any questions about work due to his acute anxiety and emotional state. I told him to send me a copy of the note. Once I obtained the note, I took it to Chief Powell and advised him of the situation. Chief Powell contacted the Town Manager, Mike Scott, and a message was left for HR, Tim Kerrigan. The decision was made to contact Det. Johnson and let him make the decision to come in and talk to me. I called Det. Johnson and apprised him of the situation. I told him there were questions I needed to ask him to clarify some things. He was advised by not answering my questions he would be hindering the investigation and would be placed on Administrative Leave without pay. I told him we could meet at Town Hall away from the police department, but the decision was his. The phone call was ended. Det. Johnson later texted me and stated he would meet me at Town Hall at 1600 hours. Tim Kerrigan contacted us back and stated it would be best not to talk to Det. Johnson until he had a doctor's note allowing him to answer questions. I contacted Det. Johnson and told him I could not question him until he was released from the doctor's note. I advised him I needed to have a note from his doctor releasing him from these restrictions by July 12, 2022, or the leave status would change to without pay.

On July 8, 2022, I met with Kevin Donovan at the Smithfield Police Department. Donovan knows Det. Johnson through the Board of Education and has known him for approximately a year to year and a half. He is currently trying to get elected to the Board of Education. I explained to him about the allegations of Det. Johnson having an affair while on duty and using persons to obtain leverage against political rivals by giving them recording devices. I asked him if he knew of any of this occurring and he stated no. I asked him if he was ever asked to record anyone by Det. Johnson. He stated, "Absolutely not". I asked him if he ever recorded anyone and he stated he had recorded phone calls, not for Det. Johnson but for himself. He stated the person making allegations has come on to him. He stated she justified this by saying she was in a relationship with Det. Johnson. He stated he has respect for Det. Johnson and after she started saying all of this, he started documenting their conversations. He stated she was telling him things that were hard for him to believe such as, she had a sexual relationship with Det. Johnson for 2 years and was spending at least 4 days a week with Det. Johnson. I asked him to clarify who he was talking about, and he said Angie possibly McLeod or Barbour. He stated he knew Angie for approximately the same time as Det. Johnson. He stated when he decided to run for the school board, she was quick to offer help with his campaign. I asked him if Det. Johnson introduced him to her and he stated no but he asked Det. Johnson about her. He stated Det. Johnson told him she was a teacher and was also helping Travis Wheeler with his campaign. He stated she would text him and eventually started making advances towards him and they switched to Snapchat. He stated his wife was aware of his communication with Angie and she was the person who alerted him to Angie's advances. He stated he would take pictures of the Snapchats so Angie would not be notified of the screenshots. He stated he did not believe her allegations of a sexual relationship with Det. Johnson then or to this day. He also stated Angie told him she slept with Det. Johnson, Devan Barbour, and John Bell. All politicians in various levels of state and local government. He stated he told Det. Johnson about all the things and allegations Angie was telling him. He stated he eventually blocked her because she is "certifiably crazy". He stated he believed he saved some of the texts and screenshots that he took on his

*Smithfield, North Carolina • The Heart of Johnston County Since 1777*

CONFIDENTIAL

telephone, but it was at home. I told him I would like to see those if he could provide them. Donovan also stated he had a written statement about seeing Angie at the Mexican Restaurant that he made for Det. Johnson when he was thinking about applying for a restraining order against Angie. I told him if he still had a copy of the statement, I would like to see it also. I told him there were other people I have spoken to that stated he was one of the people Det. Johnson had recording people. Donovan stated, "absolutely not". He stated he has been called "Ronald's puppet and Ronald was controlling me. Absolutely not, that's silly". He stated he had a recording of Angie stating she slept with Devan Barbour but later deleted it. He stated he told Det. Johnson about the allegation and Det. Johnson told him he should contact Devan Barbour and tell him about it. He stated he did call Devan Barbour and told him of the allegation. He stated he regrets it now, but he deleted a lot of the recordings and texts after blocking Angie. He stated he will check when he returns home and send to me what he has. He stated Det. Johnson never asked him to record anyone and he has never seen Det. Johnson with a recording device or heard him speak about a recording device. I asked him if he ever saw anyone give Det. Johnson recordings and he stated no. He further stated he never seen Det. Johnson drive anything but his Challenger and never seen him do anything "shady". Donovan asked me if I knew "Owen" and stated he was unnerved when he saw Owen show up every day at their polling sites after hearing about him from Det. Johnson. He stated he does not know how Owen is related to Angie. He further stated the only thing he has heard about Det. Johnson is that he is an upstanding person and Det. Johnson never asked anything of him that was questionable. Later on this date, Donovan emailed me the statement and screenshots he had previously spoken of. They will be attached to this memo.

On July 11, 2022, I met with Michelle Antoine at the Smithfield Police Department. Antoine stated she has a friendship through politics with Det. Johnson since 2017 when she moved here. I asked her if she knew Angie Barbour and her relationship with Det. Johnson. She stated she only knew Angie and Det. Johnson to be friends on the campaign level. I asked her if she knew of anything inappropriate going on between Det. Johnson and Angie. She stated in July of 2021 she noticed Angie crying at a party and asked her what was going on. She stated Angie told her she was upset because Ronald was not there. She stated she asked Angie if she was having an affair with Ronald, and she shook her head no. She stated that she felt Angie wanted a relationship with Ronald, but he did not. She said she went to Ronald about it and asked him if they were having an affair and he denied it. She said she really did not want to get into their business. I asked her when was the last time she spoke to Det. Johnson, and she stated a couple days ago. She stated she reached out to him after his resignation from the school board. She stated she became closer friends with Angie after the incident in July of 2021 and her relationship with Det. Johnson stayed pretty consistent because of the politics and the Republican party. She said she did not hear anything else about a relationship between the two until around March or April of this year when Angie told her of the relationship while at the Republican Headquarters. She said the conversation was very "bizarre" because Angie told her Det. Johnson was setting her up to use her like he did Angie. Antoine went on to tell me about Angie drinking heavily and making unwise decisions with men. I asked her if she knew of any other political figures Angie may have been involved with. She stated Angie made accusations about a physical relationship with Devan Barbour and receiving inappropriate texts from Kevin Donovan. I asked her if Angie ever said anything about Det. Johnson putting her up to any of that. She stated in their April conversation Angie spoke of Det. Johnson following her and Owen Phillips taking her to the park and wiring her. She was not sure if Angie was talking about Owen trying to catch Ronald at something or what it was. She stated the whole conversation was bizarre. She stated she had never observed any of the things Angie was talking about and she spent a lot of time

*Smithfield, North Carolina • The Heart of Johnston County Since 1777*

CONFIDENTIAL

with both Angie and Det. Johnson at the various political events.  She stated she felt Angie wanted a relationship with Det. Johnson, but he only wanted to be a friend to her.  I asked her if she was still in contact with Angie.  She stated she has distanced herself from Angie because of her comments and behavior.  I asked her if Angie ever told her where she would have sex with Ronald and she stated Angie told her it was at her apartment, and they would also go out to eat all over the county.  I asked her if she ever saw the two together and she stated, "never".  I asked her if she knew anything about Angie recording anything at the direction of Det. Johnson.  She stated Angie told her Det. Johnson wanted her to record Devan Barbour, but she never heard anything else about it.  She believes there was no follow through.  She also stated Angie told her "They wired her up" but she has no clue what Angie was talking about.  She stated she asked who "they" were, and Angie would not say.  She stated Angie was very paranoid and was "up and down", very manic.  Antoine told me her personal opinion is that it's all a setup.  She stated Angie's best friend is April Jones Lee.  Lee is the union representative to the NCAE and hates Ronald Johnson.  She thought it was strange that Angie was marching with the NCAE and then campaigning heavily for the Republican Party.  She also stated Angie did not even vote during the primary she campaigned for.  She feels this is all about getting rid of Ronald.  I asked her if she ever recorded anything at the direction of Det. Johnson or anything related to the board.  She stated, "never".  She stated she knows where that is coming from, and she never recorded anything related to Tracey Zukowsky.  She stated she sat down with Zukowsky in a public place, and she just wrote everything down.  She stated she has never heard of Det. Johnson recording anybody or having anybody record for him.  She stated the closest thing was Angie's "convoluted" story that made no sense to her.

(On August 1, 2022, Antoine contacted me and stated she wanted to update her statement.  She stated she saw a recording from Ronald since she initially spoke to me.  She stated she could not divulge anything about what was on the recording.  I asked her if the recording was of a personal nature, and she again stated she cannot comment on the recording.  I asked her if anything was being held over her and she stated no.  I told her if there was something, I could help her, but she stated nothing was being held over her.  I told her to call me if she had anything else.  It should be noted she sounded completely different than her initial interview.  Her voice was shaking, and she appeared to sound nervous.  On August 8, 2022, a story was posted on Jocoreport.com stating Antoine and Kevin Donovan were in possession of a recording made by Ronald Johnson.  The recording was given to Donovan in May by Det. Johnson.  The recording was from an informal school board meeting where there were discussions of hiding $8 million.  As a side note: the recording was taken out of context from a budget meeting, the money was just moved to a different line item and was discussed openly in public meetings.  The persons caught on audio spoke during a recent meeting (08/09/2022) and are looking into possible defamation lawsuits against Det. Johnson.  I speculate this is the recording Antoine was speaking of and it should be noted Donovan did not disclose this recording to me when interviewed on July 8, in fact he stated he had no knowledge of any recording by Det. Johnson.)

On July 12, 2022, I was advised by Sgt. Blinson, Chief Magistrate Chris Sullivan told him, while applying for a warrant, that he felt Det. Johnson had misled him.  Sgt. Blinson immediately notified me of this, and I went and spoke to Sullivan in his office at the courthouse.  Sullivan stated sometime in either April or May, while attending a High School baseball game, Ronald called him very distraught, seeking advice.  Sullivan stated Ronald told him a girl started randomly showing up at all his board meetings and following him on Facebook.  He told Sullivan he didn't know what to do to keep the girl away from him.  Sullivan stated he told Ronald he could take out a 50C order if

*Smithfield, North Carolina • The Heart of Johnston County Since 1777*

CONFIDENTIAL

he did not have a relationship with the girl. Sullivan said it was very strange because he would think a detective with 17 years experience would know about restraining orders. He said about a month ago, Ronald called him again, even more distraught than the first time and was worried that someone had taken out "charges" on him. Sullivan stated he gave the name Angie McLeod. Sullivan stated he asked his magistrates and there was nothing taken out on Ronald that night in Johnston County. Sullivan told me he had recently heard of the allegations against Det. Johnson that he was having an affair. He stated if the allegations are true, he feels Det. Johnson misled and lied to him when he called seeking advice and not revealing he had a relationship with that girl.

On July 13, 2022, myself and Captain Grady went to Det. Johnson's residence to deliver his notification that his Administrative Leave had been changed to without pay. Det. Johnson was at his residence and appeared to be under the influence of some sort of medication. I explained to him his leave was now without pay until he cooperated with the investigation. I told him the doctor's note, advising him not to talk to anyone about the situation was hindering the investigation. I told him the investigation would continue without his cooperation. I also advised him he needed to contact me daily updating me of his status so an interview can be scheduled. I gave him a copy of the Chief's memo documenting the status change on his Administrative Leave. I knew he had a doctor's appointment on July 12 and asked him about it. Det. Johnson stated he told his doctor we needed to speak to him, but he said the doctor did not feel comfortable releasing him until he had seen a specialist. Det. Johnson did not advise a date for the specialist appointment. I also obtained Det. Johnson's portable radio and turned it over to Captain Grady.

On July 13, 2022, I met with Jimmy Lawrence at his office in Smithfield to view a written statement made by Angie McLeod. The written statement was consistent with the statement she had given me at the beginning of the investigation. I was only allowed to read the document and could not obtain a copy. It should be noted I learned Det. Johnson was using the alias Heather Jones when he contacted McLeod. The Heather Jones alias was later learned to be associated with telephone number (919) 421-4545.

On July 14, 2022, myself, Captain Grady, and Chief Powell met with District Attorney Susan Doyle, ADA Paul Jackson, and ADA Jason Waller concerning Det. Johnson. Susan Doyle's initial statement was about time something was being done with Det. Johnson. He has not turned in any prosecution reports for over 2 years. I told her that was the first I heard of that, and she responded we need to work on communicating with the department better. I advised them of the status of the investigation, specifically about Chief Magistrate Chris Sullivan and the 50C order. I told them Sullivan felt he was misled and lied to by Det. Johnson when he called him about advice and the 50C order. Det. Johnson lied by omission by not disclosing his relationship with Barbour. The 50C specifically states not to be used by anyone who are persons of the opposite sex who are in or have been in a dating relationship. There was some discussion of whether an affair is a dating relationship. I advised Det. Johnson and Barbour were having sex for approximately 2 years, went on vacations together, and went out to eat together. I told them I believe that would constitute a dating relationship. Susan Doyle stated there was no way she could ever put Det. Johnson back on the stand to testify on a case. She stated she still had questions whether the omission on the 50C would constitute a crime. Paul Jackson stated they would look into 50C order and asked for a copy of it. A copy of the 50C was later obtained and forwarded to the District Attorney's Office. The 50C had no mention of the sexual relationship (affair) between Det. Johnson and Angela Barbour (McLeod). It only contained allegations of stalking and harassing Det. Johnson.

*Smithfield, North Carolina • The Heart of Johnston County Since 1777*

CONFIDENTIAL

On July 14, 2022, I spoke with Brian Sutphin at the Smithfield Police Department. Sutphin is the boyfriend of District Attorney Susan Doyle and played racquetball numerous times with Det. Johnson at Clayton Fitness. I outlined the scope of the investigation to Sutphin and asked him if he knew of anything related to the allegations. He said he did not know anything specifically, but Ronald would talk a lot when they played racquetball. He stated Ronald seemed paranoid and spoke of a girl stalking him and gave the name McLeod. He told Sutphin this was in January of 2022 at Clayton Fitness. I asked him if he remembered what vehicle Ronald was driving when he met Ronald at Clayton Fitness. He stated Ronald mostly drove his personal car, a Challenger, but at least twice he was on a Charger. He stated they always played at night after 2100 hours. I asked him if he remembered any specific day Det. Johnson was on his Charger. He stated he did not, but he knew the dates they played because they always texted before playing. Sutphin went through his text messages and provided a list of dates they played from January 31, 2022 to June 1, 2022. Sutphin stated Det. Johnson was very paranoid and worried about people following him and stalking him. He stated the more he played with Ronald the worst it seemed to get. He stated he started coming up with excuses not to play with Ronald. He mentioned that Ronald told him he gave information to people in case something happened to him. Sutphin stated Ronald had a lot of recordings on his phone. Recordings of classrooms and teachers on his phone. I asked him if he remembered any recordings in particular. Sutphin stated Ronald had a reputation for recording people and he was paranoid every time Ronald took out his phone that he was being recorded. Sutphin stated that Ronald told him he had recordings of the School Board and stuff like that. He also stated Bennet Jones in Clayton gave Ronald some recordings of the superintendent or somebody talking trash about Ronald and wanting him off the board. He stated after Jones gave Ronald the recordings, Ronald changed his support of Jones and Clayton High School. Sutphin stated all these guys do is sit around and record one another. I later provided Capt. Grady the racquetball dates to check if Det. Johnson was using his patrol car on those dates while not on duty.

On July 15, 2022, during Det. Johnson's daily update, I requested if he could provide me with his personal phone records, including location data, from the start of the affair, November of 2020 to June of 2022. I told him it could help clear up some of this if he would provide that information. Barbour had previously turned over her phone records during that period showing numerous communications between her and Det. Johnson's personal phone (919-320-3337) and another number (919-421-4545). She described the second number was from Det. Johnson's "burner" phone.

On July 15, 2022, I spoke with Brian Barefoot at the Smithfield Police Department. I asked Barefoot how he knew Det. Johnson. He stated he met Ronald prior to his running for the school board, his wife bowled with him, and he helped him with his campaign through his sign business. He characterized his relationship as more business but a strong acquaintance. I asked him if he knew the person Det. Johnson was allegedly having an affair with and he stated he used to date Angie in college and knew her since high school. He stated they have remained close, and he has a closer relationship with her than Ronald. I asked him if he ever saw Det. Johnson and Angie together and he stated he never saw them together outside of a political event. He stated he heard of the relationship from Angie about a year ago when she separated from her husband and moved to Clayton. She told him she had been in a relationship with Det. Johnson for approximately a year at that time. He stated Ronald in late 2020 asked him if Angie was married. He stated he never directly asked Ronald about the affair until approximately 6 months ago, and Ronald denied it. He

*Smithfield, North Carolina • The Heart of Johnston County Since 1777*

CONFIDENTIAL

stated he never directly saw anything, but Angie told him they used to meet at the police department and in his police car at the gym in Clayton. He stated she told him they had sex in the police department building and in Clayton. He stated he was a member of the Johnston County GOP and in their convention in March of 2021 at the Farm, Angie was asking questions very loudly about who would be supporting Ronald Johnson for the chairman of the school board. She also was asking questions about things she probably should not have known about. He stated at the time, they all knew about the affair. He stated several months later, Angie told him she was wired and recorded everything. I asked him if he knew what kind of wire she had, and he stated he had no idea. He stated he knew Ronald was notorious for recording people on his phone. He stated Ronald would go to his office and would have questions and played things back on his phone of recordings of different school board members or somebody in conversations. He stated he never saw Ronald record anyone but in different conversations Ronald would tell him he had that recorded or he will have someone record this. He stated after hearing about Angie at the convention, he became very concerned, and would not talk with her about anything outside of politics.

On July 18, 2022, I was told by Chief Powell that Det. Johnson had contacted Barbara Johnson by mistake thinking it was his mother (same name). Barbara Johnson is the secretary for Superior Court Judge Thomas Locke. I contacted Barbara by telephone and asked her about the conversation. Barbara stated she received the call Friday (July 15, 2022) at 0918 hours from Det. Johnson. She stated Det. Johnson thought she was his mother and immediately said, upon her answering, "Can you believe these motherfuckers want my phone records? I'm not going to give them anything." She stated Det. Johnson sounded very angry and upset. She stated she told him who she was, and he apologized. She further stated he has called or texted her in the past mistaking her for his mother. After this happened, Barbara stated she was not going to answer his calls again. It should be noted this phone call was immediately after I asked for his phone records on July 15, 2022.

On July 19, 2022, I reached out to ADA Jason Waller and asked him if they had a chance to look into the 50C order. Waller stated they had a conversation and did not think the affair would be considered a dating relationship. I told him I did not agree. Det. Johnson and Barbour were having a sexual relationship, went on vacations, and did other things together. I would consider that a dating relationship. Later on that date, Waller texted me and told me he spoke with a Domestic Violence prosecutor and an affair would be considered a dating relationship. He stated he would be in touch to follow up.

On July 19, 2022, I spoke with Benjamin Ryan Barbour at the Smithfield Police Department. Ryan is the husband of Angela Barbour. He stated he found out about the affair this past Easter Sunday when Angie admitted it to him. She told him it started in the summer or fall of 2020 and they went on vacations together. Ryan stated he did not know anything else about Det. Johnson and Angie. He stated Angie tried to tell him more, but he did not want to know any more about it. He stated he had suspicions prior to her admitting the affair but did not do anything to confirm those suspicions. I asked him if he ever hired a private investigator to look into the affair. He stated he hired a PI to sweep her apartment for listening devices because Angie was scared, and his kids stayed there at times. He stated that was the extent of his use of a PI and Angie knew he had it done. He stated Angie told him some things about the affair and she vaguely mentioned something about the recordings, but he does not remember anything and told me he did not want to know. He stated anytime Angie brought it up, he told her he did not want to hear it. I asked him if he knew of

*Smithfield, North Carolina • The Heart of Johnston County Since 1777*

CONFIDENTIAL

anyone who may know more information about what I was looking for. He stated Angie's neighbor, Brittany, would be a good person to talk to. He stated she lived right next door to Angie in Clayton but had recently moved. He stated she was very close to Angie. He did not know how to get in touch with Brittany.

On July 19, 2022, after speaking with Mr. Barbour, I contacted Angie's attorney, Andrew Dickerhoff, and requested the contact information for Brittany. I also asked if Angie could narrow down a definite date she met Det. Johnson for sex while he was working. Later that date I received an email from Dickerhoff with Brittany Addison's contact number and the date of February 1, 2021. Dickerhoff stated Angie and Det. Johnson met in Smithfield on that date for a sexual encounter near the Mayflower restaurant shortly after 3:27 PM. I provided that date to Capt. Grady to check the GPS on Det. Johnson's patrol vehicle.

On July 21, 2022, I spoke with Brittany Addison at the Smithfield Police Department. Brittany stated she was a neighbor of Angie's from August of 2021 to April of 2022. She stated her apartment shared a wall with Angie's apartment. She also stated they were both teachers and were going through a divorce. She said they hung out a lot because of this. She stated they would go out to eat and Ronald would call or text Angie a lot. She stated on January 27, 2022, Angie received a call from Ronald wanting a ride from the gym. She stated she knew that date because she had a picture of some Amazon packages she received that she was very excited about. On that date she saw Ronald walk into Angie's apartment and heard them having sex through the wall. She said that date was the only date she saw Ronald at the apartment. She stated Ronald would go over to the apartment several times a week and Angie would call or text her to let her know because of her being a teacher in Johnston County and not wanting him to see her. She stated most of the time he came late at night and parked several doors down. She stated he knew he drove a black Challenger but was not sure if he ever was on a 4 door car (Charger). She stated he parked at a neighbor's house because he knew Angie's husband had hired a private investigator. She was not aware of Det. Johnson having Angie record anything.

On July 21, 2022, I contacted our police attorneys, Smith, Rodgers, and Aldridge PLLC to ask about the 50C order. I spoke with attorney, Kevin Smith. I told him the circumstances of the 50C and the nature of Det. Johnson and Barbour's relationship. Smith stated an affair is considered a dating relationship. He stated by concealing the affair the 50C should be considered a falsified document or affidavit in court. He stated the plaintiff had motive to conceal the illicit dating relationship and as a 17 year police officer he would know the difference between a 50C and 50B. He stated the affidavit was misleading and the plaintiff should have obtained a 50B. He added the statement at the bottom of the 50C is a verified pleading and could be considered perjury.

On July 29, 2022, I was given another memo from Chief Powell and another doctor's note from Det. Johnson's doctor extending the date to August 12, 2022 for him to be released to speak with me about the investigation. Captain Grady and I took the memo to Det. Johnson's residence to hand deliver it to him. The note was dated July 15, 2022. I asked him why he waited until now to give us the note and he stated he was waiting for another note from the doctor. I asked him again for his work cellular phone and his tazer. He stated both should be locked in his filing cabinet in his office. I asked him about the phone records, and he stated he went to T-Mobile and the person helping him could not get them. He said he was still trying to get them and would get them. He asked if I needed just the phone calls with her or everything. I told him I needed everything. He stated he did

*Smithfield, North Carolina • The Heart of Johnston County Since 1777*

CONFIDENTIAL

not understand why I wanted his personal phone calls. I asked him if he remembered the scope of the investigation and told him part of it was what he was doing with the time he was supposed to be working. I told him the phone records could help with that. He stated he understood and would get them. It should be noted that I do not believe Det. Johnson was having a hard time obtaining the phone records. As an experienced detective, he has obtained phone and other records throughout the years and has been someone other officers, including myself, have gone to when they had a question about obtaining different records.

On August 2, 2022, I met with Johnston County Assistant Clerk of Court Sherry Augustine at the courthouse. Augustine was the clerk Det. Johnson took the 50C order to file on June 15, 2022. Augustine stated Det. Johnson brought her the 50C and she swore him in. She stated he signed the papers swearing the information it contained was true. She stated Det. Johnson did not give any verbal testimony and did not have an attorney with him. After signing the 50C, she stated she took it and Det. Johnson to the court room to see Judge Mary Wells and the papers were given to another clerk. I asked if his testimony in the court room was transcribed since there was a clerk present. She stated she did not know and had me speak with the Clerk, Michelle Ball. Ball stated there would not be any minutes taken during this sort of filing. She brought in Assistant Clerk Meredith Edwards. Edwards was the clerk in Judge Wells' court that date. Edwards stated she received the papers and swore in Det. Johnson. After swearing him in, she took him into Judge Wells' chambers and did not hear any testimony. She stated she was working on something else and did not hear anything. I asked Ball when Judge Wells would be back in court. She stated she would be back in Domestic Violence court on Thursday (August 4, 2022). I scheduled a meeting with Judge Wells for first thing that morning.

On August 3, 2022, I received a telephone call from the District Attorney's Office. I spoke with ADA Waller, and he stated he consulted with Susan Doyle and Paul Jackson about this case. He stated they would not pursue criminal charges in this matter and felt it would be best handled internally at the police department and through Giglio. He put me in touch with Paul Jackson who stated they did not want to charge criminally because it was a lie by omission and not a "slam dunk" case. He stated the definition of a dating relationship could be an issue in trial.

On August 4, 2022, I met with Judge Mary Wells at the Johnston County Courthouse. Judge Wells stated Det. Johnson told her he needed a 50C because a woman was harassing and stalking him. She stated there never was a mention of their affair or sexual relationship. She stated his only concern was if there would be a hearing. She stated she advised him to speak with an attorney. I believe he was concerned about a hearing because of the likelihood of perjuring himself on the stand.

On August 4, 2022, during Det. Johnson's daily contact with me, I advised him the decision was made to follow the FMLA instructions for weekly contact instead of daily. I told him I had a form from the town he needed to sign signifying a pay increase granted during the last budget. Det. Johnson asked what day of the week would be best for him to contact me and Mondays were agreed upon. He stated he would contact me Monday and setup a time to meet to sign the form.

On August 8, 2022, Det. Johnson contacted me that he was on the way to Smithfield, and I agreed to meet him at the Food Lion on West Market Street. Sgt. Blinson rode with me to meet with Det. Johnson. We met Det. Johnson at the Food Lion, and he signed the salary form. I asked him if the

*Smithfield, North Carolina • The Heart of Johnston County Since 1777*

CONFIDENTIAL

12th was still looking like when the doctor would release him, and he stated it would likely be extended due to recent setbacks. I asked him about his phone records, and he stated his attorney told him to hold off on turning over his phone records.

On August 9, 2022, Allison Bond came to the Smithfield Police Department and requested to speak with me about Det. Johnson. Bond stated she had heard and seen enough and wanted to stop an injustice to Ronald. She stated she is a teacher at McGees Crossroads for 25 years and has known Angie for twenty plus years. She stated she has learned when Angie opens her mouth it's a lie. She stated Angie was obsessed with Ronald and has told her multiple times if she could not have Ronald, she would ruin his life. Bond stated she was with Angie at Ninas in Clayton in November of 2020 when they first met Ronald. She stated Angie referred to Ronald as her crush. She stated Angie had been drinking heavily that night and twisted her ankle. One thing led to another where Angie had Ronald give them a ride to Glenn Lauryl. Bond stated she got out of the car, but Angie did not. She stated Angie asked Ronald to give her a ride home and they left. She later heard they went to another friend's trailer that night and she was told by Angie that "something" went on. She further stated she never saw Ronald be other than a friend to Angie until March of 2021; after then, whenever Angie was around, Ronald acted like he was disgusted and did not want to be around her. Bond stated Angie's family has a history of mental illness, and she believes Angie has mental issues herself to believe there was a relationship between her and Ronald. Bond further stated she is friends with Ronald and his wife, Jamie, and is tired of what they are going through. She has distanced herself from Angie because of her obsession with Ronald. I told Bond the scope of my investigation and asked if she ever heard Angie mention anything suspicious or strange that Ronald asked her to do. She stated she was not aware of anything except Angie's claims of being in love with Ronald and wanting to be with him. She further stated if anything went on it had to be something small in between November 2020 and March of 2021.

On August 10, 2022, I spoke with Johnston County Sheriff's Office Captain Kelly Garner. Captain Garner stated Det. Johnson contacted her about advice on obtaining a restraining order. She stated Ronald told her that a woman would not leave him alone and was causing issues for him and his wife. Captain Garner stated she asked Ronald if he had a romantic relationship with the woman and he denied any relationship; stating it was a stalking situation. She told him if he had a romantic relationship with the woman it would have to be a 50B but if there was no relationship, he could obtain a 50C. Captain Garner did not know anything else about the situation.

On August 10, 2022, I contacted Det. Linder with Clayton PD to ascertain if anything new has come up in his investigation of Det. Johnson's texts. He stated he was still waiting on results from one of the phone numbers, but the other numbers were spoofed and linked to persons outside the state. He also stated he had no evidence linking Owen Phillips or Angela Barbour to each other or the texts. I asked him if by me reaching out to Owen Phillips would affect his investigation and he stated that it would not. I called Phillips but did not receive an answer on his telephone and left him a voicemail to contact me. Phillips later contacted me by telephone and agreed to come to the Smithfield Police Department on August 11, 2022, to speak with me about Det. Johnson.

On August 11, 2022, I met with Owen Phillips at the Smithfield Police Department. I explained the scope of the investigation into Det. Johnson and advised him that his name had been brought up by several people I had interviewed. I asked him if he knew of anything related to the scope of the investigation. He stated he did not know anything about whether the affair happened on duty, but

*Smithfield, North Carolina • The Heart of Johnston County Since 1777*

CONFIDENTIAL

stated he knew something must have happened because Det. Johnson had contacted him about talking to Angie Barbour around 3 or 4 months ago. He stated Ronald told him the woman was crazy and lonely. He stated Ronald introduced them so she would leave Ronald alone. He stated he contacted Angie and found out about the relationship between Ronald and her. She told him they had been having a relationship for about 2 years. Owen stated every time he reached out to Angie, he would receive a text or call from Ronald. Owen stated he met with Angie at a park in Clayton to discuss what was going on. He stated he told her Ronald must have her phone bugged and it was a form of domestic violence. He told her he did not want to be involved in any of it and was done with Ronald. Owen stated he told her he believed Ronald had bugged her phone and knew everything she talked about. He stated Angie told him about meeting a guy from Texas at a bar and the next time she saw Ronald he played a song related to the guy and mentioned it to her. He stated there were other similar incidents she told him about and he told her Ronald had her under his thumb. He stated he has not spoken with Ronald since. He stated he did not want to be one of his pawns. I asked him if Angie mentioned anything to him about recording people. He stated he vaguely remembered her mentioning coming to the police department to be wired to record someone. He said she mentioned some names, but he did not remember any of them. Owen then stated about a year ago, Ronald called and asked him about Freedom of Information Act requests. He stated Ronald played some recordings of phone calls with Dr. Causby (superintendent at the time) and recordings of Tracey Zukowski. He stated Ronald wanted to obtain cell phone records to go along with the recordings he had. I asked him if Ronald ever asked him to do any recordings and he stated Ronald had him take a photo once. He stated Ronald told him there was a teacher seeing one of her teenage students and asked him to go to her apartment and get a picture of them together. The teacher was Angie Barbour, and this occurred 3 or 4 months before Ronald asked him to meet her. Owen does not believe Ronald remembered asking him to do this prior to asking him to attempt to go out with Angie. He stated he did not think the male was a high school student but took two pictures anyway and sent them to Ronald. I asked him if he gave the pictures to anyone else and he stated he gave them to Angie later on after they met at the park. He stated he gave them to her so she would know what Ronald had been doing and prove he had been lying to her. He also stated David Marshburn called him one day and asked for the photos and asked him a bunch of questions he did not know anything about. He stated Marshburn told him Ronald had spoken to Bennett Jones and attempted to remove Owen's children's waivers to attend school in Clayton. He stated he gave the photos to Marshburn and Marshburn questioned him about other recordings, going to Charlotte, and if he ever went to comic book conventions with Ronald. Owen stated he did not know anything about what Marshburn asked him about.

I asked Owen if Ronald asked him to do anything else and Owen stated Ronald asked him to help extort $14,000 from someone who was a political figure. He did not remember who the person was but distinctly remembered $14,000. He stated he told Ronald he was not going to be involved in anything like that with his past. He also stated Ronald asked him to drive down a street three times and take photos of the car he was driving. He stated it was not his car but someone else's. He stated he did not ask any questions but assumes it was to make someone believe they were being watched, but he does not know Ronald's actual reasons. Owen stated the person I needed to speak with was called "TJ". He stated Ronald always said TJ did his "dirty work". Owen did not know anything about TJ except he built campaign signs for Ronald and was possibly current or previous law enforcement. I asked Owen if he heard of a group of girls Ronald would send out for information. He stated Ronald told him he did have a group of girls on Facebook and Snapchat that would solicit photos from political rivals and give them to Ronald to use later on. Owen stated

*Smithfield, North Carolina • The Heart of Johnston County Since 1777*

CONFIDENTIAL

Ronald would brag he had dicks from all over the county. I asked him if he had any idea who any of the girls were. He stated he did not know but assumed Ronald's cousin, Lindsey, was one of them. He did not know her full name but assumes her last name is Johnson. I asked him if he knew if any of those girls were directed to have sex with anyone for information. He stated he did not know, but Ronald did make a comment about going to South Carolina to make a porno. He stated it was Ronald and he did not believe half the stuff Ronald said and always thought Ronald told stuff to make himself bigger than he actually was. I asked him if there was anybody else Ronald asked him to watch or follow. He stated there was one time he asked him to watch a parking lot for a particular vehicle and he waited for approximately ten minutes and left. He stated he did not remember anything else like that. He stated he wonders how much of this was Ronald running his mouth trying to inflate himself. I told him several people had stated they saw him at different locations and polling sites. He stated he does not remember Ronald asking him to follow anyone over the last 3 years, except Angie. As far as being at polling sites, the only times he was at a polling site was in Clayton when Ronald first ran. He stated he only stood there with a "Ron Johnson" sign and ran some flyers to Ronald's dad. I asked him if he ever tried to surveil Ronald and he stated no. He stated he only blocked Ronald and cut ties. He stated about a week or two after he cut ties with Ronald, Ronald would show up at Planet Fitness when he was working out and just stare at him, like he wanted a response. He also said Ronald would drive by his residence, which is out of the way just to ride by. He said this has happened about 6 times since he blocked Ronald. I asked him if he had anymore contact with Angie and he said he still talks with her about every other week but has only physically met her about 3 times. I asked Owen again about "TJ" and he could not remember anything besides him being a W/M, average height, and weight, possibly driving a hatchback. I asked about if all the recordings he heard from Ronald were on Ronald's phone and he stated yes. He then stated Ronald had multiple "throw down" phones he would use. He remembered about a month or two before Ronald asked him to meet Angie, Ronald asked him to go to Clayton and buy him a prepaid phone with cash. He stated Ronald told him he had already bought too many in Smithfield. He stated he did not ask any questions and did it because he was his buddy. He stated if he ever thought it was something crazy, he just would walk away and not do it.

On August 12, 2022, I received a text message from Det. Johnson containing another doctor's note extending his leave from duty to September 1, 2022. It should be noted the note was not on letterhead and did not have a signature from the doctor. I brought this to Chief Powell's attention on Monday, August 15, 2022. Chief Powell stated he would forward it to HR, Tim Kerrigan.

On August 15, 2022, Det. Johnson contacted me and stated his therapist wants him to start transitioning back to regular life and return to JCC to teach. He further stated his doctor told him he may be able to answer my questions after 2 or 3 more sessions. I advised him I will need a written release from his doctor before I could speak with him. Det. Johnson stated he would reach back out to me once he has the release.

On August 17, 2022, Chief Powell advised me the doctor on Det. Johnson's note was no longer employed at the doctor's office and the telephone number on the note for the doctor went to voicemail. The doctor's name was Stefanie Xenakis PA, and the telephone number was 984-225-1991. I researched the name and number and found they were from Durham Family Medicine. Stefanie Xenakis is no longer employed by that office. I found on their Facebook page a post where she left their employ on February 24, 2022. This information was provided to Chief Powell to

*Smithfield, North Carolina • The Heart of Johnston County Since 1777*

CONFIDENTIAL

forward to Tim Kerrigan.

On August 18, 2022, I contacted Det. Johnson and advised him of the Town's policy on secondary employment and FMLA. I told him before he could return to work at JCC, he needed to make a written request for a waiver to the town manager. He asked if he needed to send the request to me or the town manager. I reiterated the town policy requires the request to be made to the town manager in writing. Det. Johnson stated his doctor was in the process of writing a release where he could answer my questions. He stated he will have them include the town manager for consideration for his request to return to work at JCC.

On August 22, 2022, I received a text message from Det. Johnson containing a release from his doctor to speak with me concerning this investigation. I later received Det. Johnson's weekly phone call where he told me he located uniforms at his house and wanted to know if he needed to turn those in when we met. I told him to hold off on that for now. He asked what he needed to bring to the meeting, and I advised him the only thing I had requested were his phone records. He stated his attorney was in contact with the League's attorney about that request. Det. Johnson stated we could go ahead and do the interview before September 1st if I wished. I told him with the attorneys and doctors involved it would be best to stay on schedule and do the date agreed upon.

On August 24, 2022, District Attorney Doyle requested for me to contact her reference Det. Johnson. She wished to know what Judge Wells had told me during her interview. I told her Judge Wells stated Det. Johnson told her he was being harassed and stalked by a woman but never mentioned he had a sexual relationship with that woman. DA Doyle stated it was still a lie by omission and she felt it would be best handled as a Giglio issue and not criminally. She told me to contact her when the investigation was completed.

On August 24, 2022, the Johnston County School Board had a special session with Det. Johnson present to discuss their investigation into 2 allegations: Det. Johnson secretly recorded a closed session discussing administrator salaries on May 31, 2022, and Det. Johnson attempted to interfere with the assignment of 2 special education students, in violation of the school board code of ethics. The investigation was conducted by Tharrington Smith LLP. The findings of the investigation were that Det. Johnson did violate the school board code of ethics by secretly recording the closed session and attempting to have the 2 students moved from their school. The school board voted to censure Det. Johnson and gave him until Friday, August 26, 2022, at noon to resign or they would draft a letter to the District Attorney to have him removed from the board.

On August 26, 2022, I met with David Marshburn at the Smithfield Police Department. He gave me a CD containing information about a female he suspected of helping Det. Johnson and a phone conversation with Rick Walker. I explained to Marshburn the scope of the investigation and that I had seen his podcasts on Facebook. I asked Marshburn to explain how he became involved and started his investigation into Det. Johnson. He stated in June, Rick Walker was at a meeting with Bo Hines and other candidates. Prior to this meeting he thought there was a mole in their group that was feeding information to CAAG. He knew that Det. Johnson was having an affair with Angie. He stated he overheard Angie speaking with Terry Tippet's wife about the affair. He stated Rick Walker told him he was friends with Ronald Johnson and Marshburn believed Walker was the mole. Marshburn stated Walker told him Ronald wanted to speak with him and he had the idea to tell Walker Angie had taken out a restraining order on Ronald. He stated the next day Ronald took out

*Smithfield, North Carolina • The Heart of Johnston County Since 1777*

CONFIDENTIAL

the 50C order on Angie. He then contacted Angie and told her he was the reason Ronald had taken out the papers. He stated Angie was initially mad but eventually told him her story. He stated he wanted to dig into it because Ronald was attacking everybody and different officers. He stated Angie and Owen told him Ronald was having young girls or women text different officers and high up persons to obtain dirt on them. I asked him if he identified any of the women Ronald was allegedly using to do this and he stated it was on the CD. The name was Arianna Mellardo and he stated she was actually having sex with Ronald. He stated Angie told him Ronald received a Snapchat from Arianna telling Ronald what she wanted to do to him (i.e. suck and fuck). Angie told Marshburn Ronald showed her the text to get her mad and asked her if she was upset. Marshburn stated he was not able to speak with Arianna to confirm any of this. He believed she was living in Connecticut and would not take his phone calls or return messages. Marshburn further stated Bennett Jones (principal of Clayton) had recordings of Ronald speaking of recordings of the school board. He stated he did not have those recordings and Jones would not release them without a court order. Marshburn stated he was not sure if it was a crime, but it sounded like insider trading or at least sabotage. I told him I understand there are ethics violations with the school board, but I was interested in things that were criminal, occurred while Det. Johnson was on duty, or related to his position at the police department. Marshburn told me if we could come to an agreement, he would give me everything "on a silver platter". He went on to say he had a phone that belonged to Angela McLeod that contained evidence against Det. Johnson. He stated he bought the phone from Angie and had it on his person. He stated he would give the phone to us if we agreed to give a copy of whatever we located to Angie's attorney. He stated it contained information about who Det. Johnson was targeting and when Det. Johnson and Angie would meet in his car, the dates and times when they met. He stated there was definitely evidence of criminal activity on this phone. I told him I could not make that decision and would have to speak with Chief Powell. I spoke to Chief Powell and brought him into the room with Marshburn to discuss the phone. An agreement was made to give Angie's attorney a copy of the contents of the phone if Marshburn turned it over to me. Marshburn gave me an iPhone XR and an evidence form was filled out showing the change in custody.

After receiving the phone from Marshburn, I looked through the phone and found a string of text messages between Angie and "Heather Jones". Heather Jones is the alias for Ronald Johnson I obtained from Angie's written statement she gave Jimmie Lawrence. The text messages were from the time period Det. Johnson's father was in the hospital. The text messages alluded to sex, with comments such as missing parachute time. Det. Johnson had previously told me Angie spoke of their sexual encounters as parachute time.

Due to the SBI's policy on internal investigations, the phone was taken to a private lab, Envista Forensics, for the forensic examination of the iPhone on August 31, 2022. The examination could not be completed before the scheduled interview with Det. Johnson the next day on September 1, 2022.

On September 1, 2022, I met with Det. Ronald Johnson in the conference room at the Smithfield Town Hall. I gave him another copy of his employee rights and read them to him. I made sure he understood his rights and had him sign the form acknowledging he understood. I asked Johnson if he was able to obtain his phone records. Johnson stated his attorney contacted the town attorney, but they never responded back. He stated his attorney contacted Hartzog twice and she told Johnson to respectfully decline the request until she receives clarification. I told him when he previously

*Smithfield, North Carolina • The Heart of Johnston County Since 1777*

CONFIDENTIAL

told me his attorney was working with the league attorney to obtain the phone records, we contacted them to verify. The league attorney said they had not had any contact with Johnson's attorney about phone records. Johnson stated he can pull up the email where his attorney contacted Dan Hartzog about the phone records. I asked to see the email, but Johnson stated he did not have it with him. I asked him what numbers he used to communicate with Angie. He stated 919-320-3337, another number for a phone he does not have anymore, and Snapchat audio. I asked him if Angie or him have an alias for him they used when they spoke. I clarified if he knew if Angie had him in her phone under a different name. He stated he never saw her phone and does not know. I asked him if he ever heard the name "Heather Jones". He stated he never heard of a Heather Jones. I asked him if he remembered having conversations with Angie while his father was in the hospital. Johnson stated he does not remember who all he talked to when his father was sick. Johnson stated his father's sickness and death is very fresh.

I asked Johnson if he needed a moment to collect himself and he said he was fine. I continued by telling him we had tracked the movements of his patrol car over a period of time and noticed on several days it was at Clayton Fitness when he was not working. I asked him if there was any reason why his patrol car would be at Clayton Fitness when he was not on duty. He stated he was working out. I told him he was not on duty, and it was not his personal car. He stated he would stop by there before and after duty to work out and would take it when he was on call. I asked him if he used to car as an excuse to drive it to Clayton Fitness to meet Angie, who lived next to the gym. He stated, "Absolutely not". I asked him why he would do that when he lived such a short distance from Clayton Fitness. I told him it was still using the car for personal use. Johnson responded other people were taking their car before and after work to the gym and during lunch breaks. He said Dale Wood allowed him to do it and did not think to seek prior approval since everyone else was doing it. I asked him if he remembered Sgt Blinson telling him not to take his car to Clayton Fitness once he learned you were doing that. He stated he remembered Blinson telling him he might want to stop going to Clayton Fitness during the day since gyms were open in Smithfield now. He stated Blinson did not outright tell him not do it and would not have known he was going there at night. Johnson stated the unwritten rule was to take your car if you were on call and would be gone an extended amount of time. I told him it would be the same thing as taking your patrol car to Walmart if you needed to pick something up. It is using the patrol car for personal use. I told him he drove his car more than anyone else and while we were looking at his car, we noticed numerous days where he was driving around with the car not being shut off for 6 or 7 hours, with no calls, no investigations, or anything documenting what he was doing. He stated he probably should have checked out, but was backing up other officers, speaking to people, and riding around a lot. He stated he liked to ride around Smithfield and be seen. He stated part of our job is crime prevention and Community Policing. He also stated during that period he was dealing with his grandmother and father and a lot of the time he felt like the walls were caving in and had to get out and ride. I told him that is not one of his duties as a detective and when he is doing that kind of stuff, he is neglecting what he is supposed to be doing. I told him Sgt. Blinson had spoken to him numerous times about his supplements, cases that were left open and should have been closed, and other areas that were affected because of what he was doing. I told him his casework was suffering either because he was out there making positive citizen contacts, driving around because the walls were caving in, or if he was doing something he should not have been doing. I told him that was the other reason why I wanted to see his phone records, to determine what he was doing during these times. I told him his case work, supplements, everything he has put in has been the bare minimum over a long period of time. There had been several times where people have called for information

*Smithfield, North Carolina • The Heart of Johnston County Since 1777*

CONFIDENTIAL

concerning his cases that we had to put together where the work was never shown. These cases were during his administrative leave and ones from before this started. He stated at one time there were a bunch of supplements that were lost, and he has bunch of victims that are proud of the work he has done. He stated it may be difficult for me or Sgt. Blinson to piece together his cases but he guarantees he could have since he has never lost a case in court. He stated he is taken aback on this because over the last 10 years he has been one of the top performers in the detective division and has helped me, Blinson, Tyndall, and everyone. I told him as we have been digging into this investigation the District Attorney's Office has stated over the last few years you had not been cooperating with them and not turning in prosecution reports. He stated he remembered one time where he turned in a prosecution report and they said they did not have it when it was sitting on Leslie's desk. He stated he wanted to know specific cases they said he did not cooperate on because you do not have it because he done his job. I asked him when he turned in his prosecution reports, was he taking them directly over there are turning them into Allison to scan. He stated he turned them into Allison and took them over to the District Attorney's Office. I asked him when he took it over to the District Attorney's Office, did he have them sign for it. He stated sometimes he did and sometimes he did not. He stated he would always go through Allison and sometimes take a copy to them.

I asked Johnson about the restraining order he took out on Angie Barbour. I asked him why he took out a 50C instead of a 50B. Johnson stated, "That's the paperwork they gave me". I asked him if he remembered the telephone call he made to Chris Sullivan in June or May. He stated yes, the magistrate. I told Johnson Sullivan felt like he misled him. Johnson stated he did not tell him everything. I told Johnson Sullivan said he was asked about what could be done about a woman that was harassing him and showing up at board meetings. Sullivan said he told Johnson if he did not have a relationship, he could take out a 50C, but if there was a relationship it would need to be a 50B. Johnson stated he remembered calling Sullivan but does not remember what was said. He stated he does not know about restraining orders and did not disclose the relationship to anyone. I asked him if he remembered talking to Kelly Garner with the Sheriff's Office about the restraining order. Johnson stated he remembered talking briefly to her about it. He stated he told Garner what Angie was doing, that she was crazy, following him, sitting outside the gym, and contacting him when he did not want to be contacted. I told Johnson Garner directly asked him if he had a relationship with this girl and Johnson responded, "No, she did not". I asked him if he disclosed to anyone during this process about his relationship with this girl. Johnson stated, "No, I just told them what was in the order, that she was following me, that she would not leave me alone, that she would not stop calling me, that is all I told them". I asked again if he disclosed his relationship and he stated no, they never asked. I told him with that relationship, he should have not taken out that order. Johnson stated he did not know until he spoke to his attorney and that is why he dismissed it. He stated he was under duress, and nobody ever asked him if he was having sex with her. He stated he never dealt with protection orders before and did not know about them. He stated he was on patrol for 2-3 years and never dealt with them and cannot imagine it being dealt with a lot now. I told him every officer should know about that and he responded, "If I had training on it, it was in BLET". He stated he was under duress at the time and that I knew what his mindset was at the time because he was being attacked. He stated he did not know what to do. He stated he went up there and told them what was happening, and he did not feel like he was obligated to tell Garner anything. He stated he did not think Sullivan asked him if he was having sex, because he would not lie. He stated he was not going to tell them he was having a sexual relationship with that girl but if they would have asked him, he would not outright lie. I asked him if he did not say anything because he

*Smithfield, North Carolina • The Heart of Johnston County Since 1777*

CONFIDENTIAL

wanted to keep the affair secret. Johnson stated, "No, that's not it at all. I did not want to embarrass myself". He stated he did not call Sullivan to get a protection order, he was calling because he heard she was getting one against him.

I reminded Johnson of his previous statement of giving Barbour a recording device to record Devan Barbour at her request. I asked him if he at any other time gave Barbour a recording device to record anyone. He stated he remembered her getting a key fob recorder from Tyndall for something. I asked him if that was for Devan Barbour and he stated he cannot remember, she was all over the place saying what people were trying to do to her. He stated it might have been for Devan but there were so many guys she accused of bothering her. I asked him if he specifically had her record anyone at the GOP Convention. He stated he remembered her saying someone was bothering her at the GOP Convention and he told her to go ahead and record it. I asked him if he gave her the idea to record at the GOP Convention to obtain leverage on anyone. He denied this stating there was nobody to obtain leverage on in that setting, being that it was a public meeting with hundreds of people. I asked him again if he put her up to recording the GOP Convention and he stated he told her if someone was bothering her to yes, go record it, but did not remember exactly. I asked him when the key fob recorder did not work, did he remember giving her something else. He stated he did not remember.

I told Johnson I had spoken to Owen Phillips and told him I did not go into anything Clayton was investigating. I asked Johnson if he ever had Owen do anything for him, such as following anyone, or any kind of surveillance. He stated he contacted Owen and was venting to him about Barbour. He stated Owen was familiar with what Barbour was trying to do to him. He stated Owen told him he would go and find out what she was doing and take a picture. He stated that was once and he never told him to do anything for him for the Board of Education. I asked him if he ever had Owen go to polling sites and he stated Owen worked the sites for him, holding up signs, and helping him campaign. I asked him if there were any other reasons he had Owen out there and he stated no. He stated Owen does things on his own, following Kevin Donovan, Allison Bond, and himself. He stated Owen did Angie's stuff on his own.

Johnson then brought back up the restraining order. He stated he went over there under duress before talking to Walter (attorney), because it was an exigent thing. He stated again he did not know about restraining orders and had not received any training since BLET and did not know anything about civil law. I told him those forms are designed for civilians and not police officers to fill out. He stated as soon as he spoke with his attorney about it, he dismissed the order and sent over a civil consent order. I told him the order was still a legal document and he perjured himself on that document. He stated again he was under mental duress and has been under the care of a doctor because of this. He stated he was told to write what she did here, here, and here, and nobody asked him if he was in a sexual relationship. I told him, regardless it's on the form.

I told him we recently come into possession of an old phone of Barbour's, and we were currently waiting on the extraction. Johnson immediately stated it came from Owen. I told him I wanted to know up front if there will be anything on that phone that supports any of the allegations being brought against him. He stated, "I will tell you this, you will not have me". Johnson stated, "I was told Owen gave her a phone and to say it was mine". I told him now is the time to be completely truthful. He stated he was telling the truth and not lying.

*Smithfield, North Carolina • The Heart of Johnston County Since 1777*

CONFIDENTIAL

I told Johnson I was through with my questions and asked him if there was anything he would like to add before we were done with this. He stated he wanted to ask me some questions if that was OK. He asked if she ever said they had sex in his car. I told him no. He asked if she ever said he extorted her for any money. I told him she never said that. He stated that is why this whole investigation started. I told Johnson she never said they had sex in his patrol car, but she did say they did in her car at Rose Manor near Mayflower. He stated, she knows that's where he meets his family at, and she knows that car is tracked, because Owen probably told her. He stated you get the date and time, and you will see that car was never there. I told Johnson her story makes a lot more sense than what he has told me about basically being raped every time. He stated the whole time she threatened to tell my wife and her husband if I did not do it. He stated, "She created that whole system and I do not care what makes sense to you LT because I'm telling you the damn truth". I told him what's more believable and makes sense. I told him you are a grown man, and she was forcing you to do all this stuff over a long period of time. He interrupted and stated, "Yes, that's what I'm telling you, I did not want my wife to find out". I told him the text messages I had seen do not fall in line with someone that was being forced and show that he was complicit with it. He stated she was forcing him, and she had done it to other people. He stated he was not the only person she has done this to. I asked him who else has she done this to. He stated she tried to do it to Kevin Donovan and thinks she done it to Devan Barbour. I said, "Kevin Donovan, the one who has already lied to me". Johnson stated, "I apologize for bringing up his name, I do not know what he has told you". I told him I am not going to disclose that now, but that is not a very good reference. Johnson stated, I did not lie to you today, I will not lie to you tomorrow, and I did not lie to you the last time". I told him I had already asked him the questions I needed to ask and once I am done, it will be in the hands of the Chief and the Town. I told him I am still waiting for the information from the phone, and he stated, "I'm sure they have set me up in some way or form". He asked me if it was a Trac phone and I told him no. He stated the only phone I ever gave her was a Trac phone. I asked him again if there was anything else he wants to add or tell me. He stated, "No, I'm just kind of in shock". The interview was then concluded.

On September 1, 2022, I received the data extraction from Envista. I could not open up the file due to its size on my computer. The specialist from Envista stated it would take a while for it to open due to its immense size. I left the program open over night but the next morning, September 2, 2022, it had not opened and had frozen up my computer. I took the data to another, higher spec computer, and it still would not open. I contacted Envista and they stated they would look at the data to make sure it was not corrupted. On September 6, 2022, I contacted Envista again and they stated they were able to open the data and would generate a PDF report so I would have access to the data. They stated it would take an extended amount of time to generate the report and would contact me once it was completed.

**Summary of Findings**

The investigation was initiated to determine if Det. Johnson violated policy with the allegations of using Department equipment to investigate people for the furtherance of his political career and in the commission of an extra-marital affair.

After a thorough investigation, I was unable to determine Det. Johnson used any department issued equipment to record anyone or conduct an unsanctioned investigation. Det. Johnson readily admitted to recording Board of Education meetings but was not on duty or using department

*Smithfield, North Carolina • The Heart of Johnston County Since 1777*

CONFIDENTIAL

equipment. He was however in violation of the Board of Education Code of Ethics. I was able to determine Det. Johnson was utilizing his patrol vehicle for personal use. The vehicle was at Clayton Fitness on several occasions outside Det. Johnson's duty hours. There were also numerous days where the vehicle was being driven for an extended amount of time for reasons outside of his duties as an investigator, causing needless wear, fuel consumption, and neglection of his duty. Data shows on those days the vehicle was in constant motion for 6 to 7 hours and only turned off for approximately an hour. Det. Johnson would not provide phone records, and CAD information is not available to determine what he was doing during those days.

Det. Johnson admitted to me the extra-marital affair at the onset of the investigation. I do not believe he was completely honest in the relationship with his mistress as he described her as blackmailing him to stay in the relationship and stalking him. Text messages observed on her phone show that he did not believe she was stalking him and had a more intimate tone. The duration of the affair (approximately 2 years) also lends credence that it was mutual and not forced. Det. Johnson had kept the affair a secret when he applied for a 50C protective order against his mistress. The application for the 50C explicitly states on the first page to not obtain a 50C if you are involved in a dating relationship and a sexual affair is considered a dating relationship. A 50B should be obtained in those instances. He was told at least twice before applying for the order to obtain a 50B protective order if he was having a dating relationship (sexual affair) by a judicial official and a Sheriff's Deputy in charge of the Civil Division. The deputy (Captain Garner) asked Det. Johnson directly if he had a romantic relationship with the mistress, to which he denied the relationship. The judicial official, Chief Magistrate Chris Sullivan, stated he was misled by Det. Johnson. Det. Johnson failed to disclose the relationship to two Clerks of Court and a Judge, during sworn testimony. A lie of omission is still a lie.

It is my findings Det. Johnson violated Smithfield General Orders Section 201 Standards of Conduct. Det. Johnson ethics violation on the Board of Education (recording closed session) and his unethical conduct by having an extramarital affair brought disrepute to the Department and impaired its operation. It is conduct unbecoming an officer.

It is my findings Det. Johnson violated Smithfield General Orders Section 202 Neglect of Duty. Det. Johnson willfully neglected his duties as an investigator. There were also numerous days where his patrol vehicle was being driven for an extended amount of time for reasons outside of his duties as an investigator, causing needless wear, fuel consumption, and neglection of his duty. Data shows on those days the vehicle was in constant motion for 6 to 7 hours and only turned off for approximately an hour. Det. Johnson would not provide phone records and CAD information is not available to determine what he was doing during those days.

It is my findings Det. Johnson violated Town of Smithfield Personnel Regulations Section 42 Use of Town Supplies and Equipment. Det. Johnson on numerous occasions drove his patrol vehicle to Clayton Fitness outside his duty hours for personal use, despite the close proximity to his residence.

It is my findings there is not enough evidence to support Det. Johnson violated Smithfield General Orders Section 204 Political Activities.

It is my recommendation Det. Johnson be terminated for the violation of the above policies. A police officer's private and professional life should be above reproach and the unethical and

*Smithfield, North Carolina • The Heart of Johnston County Since 1777*



CONFIDENTIAL

dishonest acts perpetrated by Det. Johnson tarnishes this Department and profession as a whole.

*Smithfield, North Carolina • The Heart of Johnston County Since 1777*

CONFIDENTIAL

**Memo to File**

**Date: 10/11/2022**

**From:  Chief R.K. Powell**

**Subject: Ronald Johnson's Court issues**

Richard Hoffman (investigator for the District Attorney) has been to the police department on several
occasions since the Internal Investigation has begun regarding Detective Johnson. Investigator Hoffman
stated he was having to completely review and obtain new search warrants in Detective R. Johnson's
court cases, so that he could testify in court, when the cases go to trial. He stated Detective Johnson
could not provide testimony in any of his court cases at this time.

SMITHFIELD001791

CONFIDENTIAL



# SMITHFIELD POLICE DEPARTMENT
110 S. Fifth Street • Smithfield, NC 27577
Phone: (919) 934-2121 • Fax: (919) 934-0223

**Interoffice Memorandum**

| | |
|---|---|
| **Date:** | **October 11, 2022** |
| **From:** | **Lieutenant T.W. West** |
| **Officer:** | **Chief R.K. Powell** |
| **Subject:** | **Administrative Investigation** |

On October 11, 2022, Richard Hoffman, the investigator with the District Attorney's Office came to the police department to review a case file of Det. Johnson's. Inv. Hoffman has been tasked with reinvestigating some of Det. Johnson's cases because Det. Johnson is not capable of testifying in court. Inv. Hoffman needed information from a Facebook search warrant tied to the case. The information was not contained in the case file, evidence, or Laserfiche. I told Inv. Hoffman I would gain access to Det. Johnson's work computer to see if the results were saved and contact him if I could locate them. I was given access to the computer by Melissa Southerland. During a search of the computer I was not able to locate the information from the Facebook search warrant. I however located 10 recorded audio clips made by Det. Johnson of Angie McLeod, Johnston County School Superintendent Dr. Causby, and possibly other members of the Board of Education. I did not know the identities of everyone on the recordings, but they appeared to be made in secret and covered a range of topics that encompassed his position on the Board of Education. The clip involving Angie McLeod was one of the recordings previously submitted by Det. Johnson during his predisciplinary hearing. I made contact with Inv. Hoffman and advised him of the recordings. The recordings are directly related to his investigation of Det. Johnson's actions on the Board of Education. Inv. Hoffman came back to the police department and I gave him a copy of the recordings. I advised him I could not find the search warrant contents on Det. Johnson's computer, but I had made a request to access Det. Johnson's work email to see if the contents were still available there. Inv. Hoffman stated he still wanted to see what Det. Johnson obtained from the search warrant but he was in the process of obtaining another search warrant for the needed information from Facebook. Det. Johnson had used a magistrate to obtain the search warrant and not a Superior Court Judge, as is required for the service of a search warrant in another state.

I also found documents on the computer directly related to the Board of Education and his teaching position at JCC. The documents appeared to be draft copies of a policy, screenshots of conversations with other board members, documentation of his investigation into Tracie Zukowski, news articles he appeared to be writing for the Joco Report, syllabuses, and a campaign video.

*Smithfield, North Carolina • The Heart of Johnston County Since 1777*

SMITHFIELD001790

**From:** TWWest
**To:** Richard Hoffman
**Subject:** Fwd: Harassment
**Date:** Wednesday, October 12, 2022 7:03:47 PM

Sent from my iPhone

Begin forwarded message:

> **From:** Jason Linder <jlinder@townofclaytonnc.org>
> **Date:** August 30, 2022 at 9:15:56 AM EDT
> **Subject: FW: Harassment**

Johnson stopped by the PD last night to report the following incidents.

From: RONALD JOHNSON <ronjon1983@msn.com>
Sent: Monday, August 29, 2022 7:32 PM
To: Jason Linder <jlinder@townofclaytonnc.org>
Subject: Harassment

Be Advised: This email originated from outside of the Town of Clayton's network. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Carolyn Rotondaro
209 Waverly Drive
Clayton NC 27520
919-219-8742

She blocked Owen Phillips from sending requests on 05/23/2022.

Angie McLeod sent a friend request soon after the July 7th 2022 text message.







CONFIDENTIAL

| | |
|---|---|
| **From:** | TWWest |
| **To:** | Hoffman, Richard E. |
| **Subject:** | Kevin Donovan |
| **Date:** | Thursday, October 27, 2022 9:22:00 AM |
| **Attachments:** | Conversation with Angie McLeod.mp3 |
| | Donovan.jpg |
| | Kevin Donovan Statement to T.W. West.pdf |
| | 220708_1439 Kevin Donovan.mp3 |

This is everything I have on Kevin Donovan.  Let me know if you need anything else

**Lieutenant T.W. West**
**Smithfield Police Department**
**110 South Fifth Street**
**Smithfield, NC 27577**
**Office:  (919) 989-1065**
**Fax:     (919) 934-0223**
**twwest@smithfieldpd.org**

CONFIDENTIAL



# SMITHFIELD POLICE DEPARTMENT

110 S. Fifth Street • Smithfield, NC 27577
Phone: (919) 934-2121 • Fax: (919) 934-0223

**Interoffice Memorandum**

| | |
|---|---|
| **Date:** | **October 27, 2022** |
| **From:** | **Lieutenant T.W. West** |
| **To:** | **Chief R.K. Powell** |
| **Subject:** | **Administrative Investigation** |

On October 12, 2022, I was given access to Detective R.L. Johnson's work email, rljohnson@smithfieldpd.org, by the Town of Smithfield IT Director Eric McDowell, to look for the Facebook search warrant for Investigator Hoffman with the District Attorney's Office. It was immediately apparent that Johnson was using his work email as his personal email address. I located the Facebook search warrant request and noted he never received any information back from Facebook. He submitted the warrant twice, but it was rejected by Facebook for different mistakes on the warrant. The warrant was never submitted again after the second rejection.

It will be noted for future reference, Johnson had linked numerous accounts to his work email: SnapChat, PayPal, Netflix, GNC, Cinemark Theatres, Uber, and Hilton Honors to name a few. There were thousands of unread emails with the majority being personal in nature. Johnson used his work email to setup SnapChat and his username was john_walker2809. He also setup a phone through Straight Talk and was given the telephone number 919-414-3380. There were numerous hotel invoices and dates of stays emailed to this account that were not work related.

On June 26, 2019, Johnson received an email from Carolyn Rotondaro marked confidential and read "Corrections?" with an attached picture. The picture was of an email marked confidential from Rotondaro to Brian Vetrano speaking about what appears to be an internal investigation of Clayton High School and its principal, Bennett Jones. Rotondaro is the Administrative Assistant of Dr. Pierce with Johnston County Public Schools. Brian Vetrano is the head of Human Resources with Johnston County Public Schools. There was also an email from NC State University received on August 16, 2021, asking Johnson for a reference for Rotondaro's son, Garrett Rotondaro. On May 23, 2022, a lease agreement for an apartment in Raleigh for Garrett Rotondaro was sent to Johnson from Garrett. I had previously given Inv. Hoffman information from Johnson's desktop related to Carolyn Rotondaro. There was a file on his computer named "crx40" with photos of Johnson's driver's license, Rotondaro's driver's license, and a Town of Clayton Utility Bill for Rotondaro's address.

*Smithfield, North Carolina • The Heart of Johnston County Since 1777*

CONFIDENTIAL

The PayPal invoices sent to Johnson's email had numerous payments sent to and from various individuals with no transactions detailed. If the details were noted or if it was an obvious purchase from a merchant the payments were disregarded, the other emails were saved for future reference. It should be of note there was only one Smithfield Police Officer who received payments from this account, Sgt. D.A. Tyndall. There were 9 payments made to Sgt. Tyndall from January 16, 2021 until June 14, 2021 for a total of $616.41. There were no notes or details on 8 of the transactions, but the payment of $25 on April 23, 2021 was marked, "Hush money". They were all relatively small payments ranging from $25 to $260.

On October 14, 2022, Det. Johnson was terminated from the Smithfield Police Department.

On October 17, 2022, Chief Powell and Captain Grady cleaned out Det. Johnson's cubicle to pack up his personal belongings. While packing up the belongings they located 2 USB thumb drives and numerous DVD/CDs in his office and turned those over to me for this investigation. There were 4 discs that were not work related. One of the CDs was a CDR marked Irena Forquer July Videos. It contained video clips from various individuals that made a campaign video. The other was a CDR marked RJ Personal. It contained family photos and other personal items. 2 other discs were marked "Freckle" and Mickey Lamm public information requests for Freckle. They contained information for the company former Johnston County Board of Education member, Tracie Zukowski, was employed by. The remaining discs were work related or blank. One of the USB thumb drives was work related but the second contained a mixture of work, personal, and Board of Education related materials to include a folder from a clandestine video camera, most likely a key fob camera from the angle and motion of the video, marked "Video 11-2019". The folder contained 2 screenshots and 9 video clips. The first few clips seemed to be someone trying to learn how to use the camera. Sgt. Tyndall can be heard in the background giving instructions on how to use the camera and the footage appears to be the inside of Johnson's patrol vehicle. There are clips of what appears to be Johnson's desk area in the Smithfield Police Department. The date and time stamps are wrong on the videos (2007/01/01 date). In the clips after Johnson learns how to use the camera you can see the rear of Johnson's patrol vehicle and the legs of a White Female wearing white pants. The female drives to what is later determined to be the rear of Jimmy Lawrence's office in Smithfield. The female enters the office, and it is immediately apparent she is a friend or close acquaintance with Lawrence through their conversations. They discuss the Bennett Jones investigation and other items related to the school system for approximately 30 minutes and at one point he refers to the female as his source. The female leaves the office and after several minutes receives a call from Johnson telling her she is still recording and to go to the graveyard. Johnson's voice is recognized. I contacted Inv. Hoffman and had him watch the videos. Inv. Hoffman recognized the voice of the female and stated it sounded like Carolyn Rotondaro.

Another audio recording was on the USB thumb drive in a file marked 20170501115021. The recording appeared to be of a phone conversation between a Smithfield Selma High School student's mother, Ramona Rodriguez, and a football coach for Clayton High School, Coach Johnson. The context of the conversation was the recruitment of Raquon Rodriguez to play football for Clayton High School. Ramona was asking what Clayton had to offer her son, if they could help him with grades, address requirements, and if her son could get into any trouble.

A copy of the contents of the USB thumb drive was given to Inv. Hoffman and a copy of the phone

*Smithfield, North Carolina • The Heart of Johnston County Since 1777*

CONFIDENTIAL

dump from Angie Barbour's phone was given to him for his investigation.

On October 25, 2022, I had Melissa Southerland, our DCI Tac, perform a DCI audit on Det. Johnson. There were no records found.

On October 26, 2022, I had Sgt. K.B. Smith, our administrator for CJLEADS, perform an audit on Det. Johnson. The audit stated Det. Johnson had not logged in since May 22, 2015.

On October 27, 2022, I summarized the Giglio Issues related to this investigation and will forward to the District Attorney's Office after the Chief's approval.

*Smithfield, North Carolina • The Heart of Johnston County Since 1777*

CONFIDENTIAL

| | |
|---|---|
| **From:** | Hoffman, Richard E. |
| **To:** | TWWest |
| **Subject:** | Re: Hoffman Memo |
| **Date:** | Wednesday, November 2, 2022 3:56:54 PM |
| **Attachments:** | Hoffman Memo.pdf |

This is perfect. Thank you so much.

Sent from my iPhone

> On Nov 2, 2022, at 3:14 PM, TWWest <twwest@smithfieldpd.org> wrote:

> Sorry, disregard the last memo, I had a date wrong and didn't catch it

E-mail correspondence to and from this address may be subject to the
North Carolina public records laws and if so, may be disclosed.

SMITHFIELD006644

CONFIDENTIAL

| | |
|---|---|
| **From:** | TWWest |
| **To:** | Hoffman, Richard E. |
| **Subject:** | Hoffman Memo |
| **Date:** | Wednesday, November 2, 2022 3:11:00 PM |
| **Attachments:** | Hoffman Memo.pdf |

Let me know if this clears up where I obtained the information I passed on to you or if I need to add anything else.  Thanks in advance

**Lieutenant T.W. West**
**Smithfield Police Department**
**110 South Fifth Street**
**Smithfield, NC 27577**
**Office:  (919) 989-1065**
**Fax:     (919) 934-0223**
**twwest@smithfieldpd.org**

CONFIDENTIAL

 **SMITHFIELD POLICE DEPARTMENT**
110 S. Fifth Street • Smithfield, NC 27577
Phone: (919) 934-2121 • Fax: (919) 934-0223

**Interoffice Memorandum**

**Date:**          **November 2, 2022**

**From:**          **Lieutenant T.W. West**

**To:**          **Investigator Richard Hoffman**

**Subject:**          **Items Turned Over Related to Ronald Johnson**

The following is a timeline and list of items and information taken from Ronald Johnson's work computer, work email (rljohnson@smithfieldpd.org), and office desk at the Smithfield Police Department. No personal accounts were searched.

On October 11, 2022, I turned over 10 audio recordings located on Johnson's department issued desktop computer to Inv. Hoffman. The recordings were of Angie McLeod, Johnston County School Superintendent Dr. Causby, and possibly other members of the Board of Education. I did not know the identities of everyone on the recordings, but they appeared to be made in secret and covered a range of topics that encompassed Johnson's position on the Board of Education. I also gave him a copy of a file containing information about Carolyn Rotondaro from his work computer. The file was named "crx40" with photos of Johnson's driver's license, Rotondaro's driver's license, and a Town of Clayton Utility Bill for Rotondaro's address.

On October 17, 2022, I gave Inv. Hoffman copies of emails from Ronald Johnson's work email containing PayPal invoices and other information. Johnson used his work email to setup SnapChat and his username was john_walker2809. He also setup a phone through Straight Talk with his work email,and was given the telephone number 919-414-3380. Johnson also used his work email as a recovery email for a Google account, ronaldljohnson1983@gmail.com, an email was sent from Google to his work email. All this information was obtained from Johnson's assigned work email (rljohnson@smithfieldpd.org) and given to Inv. Hoffman.

On October 17, 2022, I gave Inv. Hoffman a copy of an unlabeled USB thumb drive located in Ronald Johnson's office desk. It contained a mixture of work, personal, and Board of Education related materials to include a folder from a clandestine video camera, most likely a key fob camera from the angle and motion of the video, marked "Video 11-2019". The folder contained 2 screenshots and 9 video clips. The first few clips seemed to be someone trying to learn how to use the camera. Sgt. Tyndall can be heard in the background giving instructions on how to use the

*Smithfield, North Carolina • The Heart of Johnston County Since 1777*

CONFIDENTIAL

camera and the footage appears to be the inside of Johnson's patrol vehicle. There are clips of what appears to be Johnson's desk area in the Smithfield Police Department. The date and time stamps are wrong on the videos (2007/01/01 date). In the clips after Johnson learns how to use the camera you can see the rear of Johnson's patrol vehicle and the legs of a White Female wearing white pants. The female drives to what is later determined to be the rear of Jimmy Lawrence's office in Smithfield. The female enters the office, and it is immediately apparent she is a friend or close acquaintance with Lawrence through their conversations. They discuss the Bennett Jones investigation and other items related to the school system for approximately 30 minutes and at one point he refers to the female as his source. The female leaves the office and after several minutes receives a call from Johnson telling her she is still recording and to go to the graveyard. Johnson's voice is recognized. Another audio recording was on the USB thumb drive in a file marked 20170501115021. The recording appeared to be of a phone conversation between a Smithfield Selma High School student's mother, Ramona Rodriguez, and a football coach for Clayton High School, Coach Johnson. The context of the conversation was the recruitment of Raquon Rodriguez to play football for Clayton High School. Ramona was asking what Clayton had to offer her son, if they could help him with grades, address requirements, and if her son could get into any trouble.

On October 19, 2022, I gave Inv. Hoffman a USB thumb drive containing the phone dump from Angela Barbour's iPhone XR obtained from David Marshburn on August 26, 2022. Marshburn stated he had purchased the phone from Barbour at the time he turned it over to the Smithfield Police Department. The phone was returned to Marshburn after the phone's data was retrieved.

*Smithfield, North Carolina • The Heart of Johnston County Since 1777*

| | |
|---|---|
| **From:** | TWWest |
| **To:** | Hoffman, Richard E. |
| **Subject:** | RE: Ronald Johnson Name-Clearing Hearing Audio |
| **Date:** | Thursday, November 3, 2022 12:55:00 PM |

Thanks

**From:** Hoffman, Richard E. <richard.e.hoffman@nccourts.org>
**Sent:** Thursday, November 03, 2022 12:50 PM
**To:** TWWest <twwest@smithfieldpd.org>
**Subject:** Fwd: Ronald Johnson Name-Clearing Hearing Audio

Get Outlook for iOS

**From:** Brian Eaves <brian.eaves@smithfield-nc.com>
**Sent:** Thursday, November 3, 2022 12:21:53 PM
**To:** Hoffman, Richard E. <richard.e.hoffman@nccourts.org>
**Subject:** Ronald Johnson Name-Clearing Hearing Audio

> You don't often get email from brian.eaves@smithfield-nc.com. Learn why this is important

Mr. Hoffman,

Per your request, I am attaching the audio from this morning's hearing for Ronald Johnson.

Thank you,

**Brian Eaves**
*Public Information Officer*
350 East Market Street
Smithfield, NC 27577
Phone: 919-934-2116, ext. 1103
Fax: 919-934-1134
www.smithfield-nc.com

E-mail correspondence to and from this address may be subject to the
North Carolina public records laws and if so, may be disclosed.

CONFIDENTIAL

 **SMITHFIELD POLICE DEPARTMENT**
110 S. Fifth Street • Smithfield, NC 27577
Phone: (919) 934-2121 • Fax: (919) 934-0223

**Interoffice Memorandum**

**Date:**        **November 15, 2022**

**From:**        **Lieutenant T.W. West**

**To:**          **Investigator Richard Hoffman**

**Subject:**     **Items Turned Over Related to Ronald Johnson**

The following is a timeline and list of items and information taken from Ronald Johnson's work computer, work email (rljohnson@smithfieldpd.org), and office desk at the Smithfield Police Department. No personal accounts were searched.

On October 11, 2022, I turned over 10 audio recordings located on Johnson's department issued desktop computer to Inv. Hoffman. The recordings were of Angie McLeod, Johnston County School Superintendent Dr. Causby, and possibly other members of the Board of Education. I did not know the identities of everyone on the recordings, but they appeared to be made in secret and covered a range of topics that encompassed Johnson's position on the Board of Education. I also gave him a copy of a file containing information about Carolyn Rotondaro from his work computer. The file was named "crx40" with photos of Johnson's driver's license, Rotondaro's driver's license, and a Town of Clayton Utility Bill for Rotondaro's address.

On October 17, 2022, I gave Inv. Hoffman copies of emails from Ronald Johnson's work email containing PayPal invoices and other information. Johnson used his work email to setup SnapChat and his username was john_walker2809. He also setup a phone through Straight Talk with his work email,and was given the telephone number 919-414-3380. Johnson also used his work email as a recovery email for a Google account, ronaldljohnson1983@gmail.com, an email was sent from Google to his work email. All this information was obtained from Johnson's assigned work email (rljohnson@smithfieldpd.org) and given to Inv. Hoffman.

On October 17, 2022, I gave Inv. Hoffman a copy of an unlabeled USB thumb drive located in Ronald Johnson's office desk. It contained a mixture of work, personal, and Board of Education related materials to include a folder from a clandestine video camera, most likely a key fob camera from the angle and motion of the video, marked "Video 11-2019". The folder contained 2 screenshots and 9 video clips. The first few clips seemed to be someone trying to learn how to use the camera. Sgt. Tyndall can be heard in the background giving instructions on how to use the

*Smithfield, North Carolina • The Heart of Johnston County Since 1777*

CONFIDENTIAL

camera and the footage appears to be the inside of Johnson's patrol vehicle. There are clips of what appears to be Johnson's desk area in the Smithfield Police Department. The date and time stamps are wrong on the videos (2007/01/01 date). In the clips after Johnson learns how to use the camera you can see the rear of Johnson's patrol vehicle and the legs of a White Female wearing white pants. The female drives to what is later determined to be the rear of Jimmy Lawrence's office in Smithfield. The female enters the office, and it is immediately apparent she is a friend or close acquaintance with Lawrence through their conversations. They discuss the Bennett Jones investigation and other items related to the school system for approximately 30 minutes and at one point he refers to the female as his source. The female leaves the office and after several minutes receives a call from Johnson telling her she is still recording and to go to the graveyard. Johnson's voice is recognized. Another audio recording was on the USB thumb drive in a file marked 20170501115021. The recording appeared to be of a phone conversation between a Smithfield Selma High School student's mother, Ramona Rodriguez, and a football coach for Clayton High School, Coach Johnson. The context of the conversation was the recruitment of Raquon Rodriguez to play football for Clayton High School. Ramona was asking what Clayton had to offer her son, if they could help him with grades, address requirements, and if her son could get into any trouble.

On October 19, 2022, I gave Inv. Hoffman a USB thumb drive containing the phone dump from Angela Barbour's iPhone XR obtained from David Marshburn on August 26, 2022. Marshburn stated he had purchased the phone from Barbour at the time he turned it over to the Smithfield Police Department. The phone was returned to Marshburn after the phone's data was retrieved.

On November 8, 2022, I gave Inv. Hoffman a copy of 4 audio recordings located on Johnson's work computer that were not previously located during the computer's initial search. The recordings were of Tracie Zukowski and also Dr. Causby. Also turned over were 4 bank statements belonging to Johnson that were downloaded on his work computer.

*Smithfield, North Carolina • The Heart of Johnston County Since 1777*

CONFIDENTIAL

| | |
|---|---|
| **From:** | Hoffman, Richard E. |
| **To:** | TWWest |
| **Subject:** | Recording from Bennett Jones |
| **Date:** | Monday, November 28, 2022 12:05:54 PM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |
| | image005.png |
| | RJ on 7_1.m4a |

Start at minute 2:10



**Richard E. Hoffman**

Investigator

District 13, Johnston County

**North Carolina Judicial Branch**

O  919-209-5527

*Justice for all*

**www.NCcourts.gov**



E-mail correspondence to and from this address may be subject to the
North Carolina public records laws and if so, may be disclosed.

CONFIDENTIAL

| | |
|---|---|
| **From:** | TWWest |
| **To:** | Hoffman, Richard E. |
| **Subject:** | RE: iPhones |
| **Date:** | Thursday, December 1, 2022 10:26:00 AM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |
| | image005.png |

---

Hired 6/13/2005 and fired 10/14/2022

**T.W. West
Administrative Lieutenant
Smithfield Police Department
110 South Fifth Street
Smithfield, NC 27577
Office: (919) 989-1065
Fax:     (919) 934-0223
twwest@smithfieldpd.org**

---

**From:** Hoffman, Richard E. <richard.e.hoffman@nccourts.org>
**Sent:** Thursday, December 01, 2022 10:20 AM
**To:** TWWest <twwest@smithfieldpd.org>
**Subject:** RE: iPhones

Can you give me RJ's dates of employment with the PD, start and termination?



**Richard E. Hoffman**
Investigator
District 13, Johnston County
**North Carolina Judicial Branch**
O 919-209-5527

*Justice for all*
**www.NCcourts.gov**



---

**From:** TWWest <twwest@smithfieldpd.org>
**Sent:** Thursday, December 1, 2022 9:52 AM
**To:** Hoffman, Richard E. <richard.e.hoffman@nccourts.org>
**Subject:** iPhones

The dates for the iPhones were the creation dates on the packing slips from US Cellular. I do not have the exact issuance dates but they were issued out the day we received them.

iPhone XS Serial# 356172098919050 was issued to Det. Ronald Johnson around June 22, 2020

SMITHFIELD006570

CONFIDENTIAL

iPhone SE Serial# 356842116190385 was issued to Det. Ronald Johnson around June 4, 2021

The telephone number associated with both phones was 919-796-8642.

The phones were never recovered from Ronald after his termination, despite numerous requests.

As previously discussed, Ronald had been using his work email, rljohnson@smithfieldpd.org, as his personal Apple ID.  This came to light around July or August of 2019 when the Police Department issued iPads to all the detectives.  I used the detectives' work emails to setup their Apple IDs.  Ronald told me he used his email address to setup his personal iPhone and was having trouble unlinking it from rljohnson@smithfieldpd.org.  He stated it was mixing his personal stuff with the iCloud associated with this account.  After a couple of days he stated he had it resolved.  I took him at his word and never checked his iCloud associated with his work email.  Contact me if you have any questions.

**T.W. West**
**Administrative Lieutenant**
**Smithfield Police Department**
**110 South Fifth Street**
**Smithfield, NC 27577**
**Office:  (919) 989-1065**
**Fax:     (919) 934-0223**
**twwest@smithfieldpd.org**

E-mail correspondence to and from this address may be subject to the
North Carolina public records laws and if so, may be disclosed.

CONFIDENTIAL

| | |
|---|---|
| **To:** | Richard E. Hoffman |
| **Subject:** | iPhones |
| **Date:** | Thursday, December 1, 2022 9:54:06 AM |

The dates for the iPhones were the creation dates on the packing slips from US Cellular. I do not have the exact issuance dates but they were issued out the day we received them.

iPhone XS Serial# 356172098919050 was issued to Det. Ronald Johnson around June 22, 2020

iPhone SE Serial# 356842116190385 was issued to Det. Ronald Johnson around June 4, 2021

The telephone number associated with both phones was 919-796-8642.

As previously discussed, Ronald had been using his work email, rljohnson@smithfieldpd.org, as his personal Apple ID. This came to light around July or August of 2019 when the Police Department issued iPads to all the detectives. I used the detectives' work emails to setup their Apple IDs. Ronald told me he used his email address to setup his personal iPhone and was having trouble unlinking it from rljohnson@smithfieldpd.org. He stated it was mixing his personal stuff with the iCloud associated with this account. After a couple of days he stated he had it resolved. I took him at this word and never checked his iCloud associated with his work email.

**T.W. West**
**Administrative Lieutenant**
**Smithfield Police Department**
**110 South Fifth Street**
**Smithfield, NC 27577**
**Office: (919) 989-1065**
**Fax: (919) 934-0223**
**twwest@smithfieldpd.org**

CONFIDENTIAL

**From:** TWWest
**To:** Hoffman, Richard E.
**Subject:** Lesson Plans
**Date:** Friday, December 2, 2022 10:28:00 AM
**Attachments:** 2005 Domestic Violence Investigation - Student.pdf
2005 Legal Update - Student.pdf
2007 Domestic Violence Training - Student.pdf
2007 Legal Update - Student.pdf
2009 Domestic Violence (Traditional Delivery) - Student.pdf
2009 Legal Update - Student.pdf
2010 Legal Update - Student.pdf
2011 DV LGBT - Student.pdf
2013 Legal Update LP - Student.pdf
2016 Legal Update LP - Student.pdf
2017 DV Protecting Victims of Domestic Violence LP - Student.pdf
2017 Legal Update LP - Student.pdf
2019 Domestic Violence Law LP - Student.pdf
2020 Legal Update - Student.pdf
Training_History_Report.pdf
2021 Legal Update - Student.pdf

This is Ronald's training record and lesson plans for everything related to restraining orders.

**Lieutenant T.W. West**
**Smithfield Police Department**
**110 South Fifth Street**
**Smithfield, NC 27577**
**Office:  (919) 989-1065**
**Fax:     (919) 934-0223**
**twwest@smithfieldpd.org**

120 S. THIRD STREET
PO BOX 1809
SMITHFIELD, NC 27577

OFFICE: 919-209-5520

**JOHNSTON COUNTY DISTRICT ATTORNEY'S OFFICE**

FAX: 919-209-5503

## CRIME SCENE EVIDENCE CUSTODY/WORKSHEET

| Date of Incident | Collecting Officer | Victim | OCA Number |
|---|---|---|---|
| N/A | Richard E. Hoffman | N/A | None assigned |

| Type of Crime | Incident Location |
|---|---|
| 14-230 | Johnston County |

| ITEM # | Evidence Description | Examine for/Secure Evidence |
|---|---|---|
| 1 | Seagate Barracuda Computer 500 GB Hardrive | Forensic Digital Examination for files |
| | SN: Z9AWFTHQ, PN: 2F110A-500 | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

| ITEM(S) | RECEIVED BY: (PRINT) | INITIAL | RECEIVED FROM: (PRINT) | INITIAL | DATE | TIME |
|---|---|---|---|---|---|---|
| 1 | Richard E. Hoffman | RH | Lt. T. W. West | RW | 1/13/2023 | 14:01 |
| | | | | | | |
| | | | | | | |

### Notes/Special Instructions

Secured in locked storage at the District Attorney's Office until sent to the State Lab.

| Officer Name & ID: | Signature | Date/Time |
|---|---|---|
| Richard E. Hoffman | RC | 1/13/2023 |

JCSO/199/Crime Scene Evidence Worksheet/02-2009

SMITHFIELD005289

## JOHNSTON COUNTY DISTRICT ATTORNEY'S OFFICE

| *Voluntary Consent to Search* |
| --- |

I, _Lt. T.W. West_ , hereby authorize Officer(s) of the Johnston County District Attorney's Office and/or their designee(s) to conduct a complete and thorough search of the items and/or locations described below. I understand this search will include any place or items that is believed to possess evidence of a crime and/or violations of law. I authorize Officer(s) to seize, and/or collect any evidence discovered during this search.

Search any and all computer and related peripherals: Property of the Smithfield Police Department. a Seagate

Barracuda Computer 500 GB Hardrive, SN: Z9AWFTHQ, PN: 2F110A-500.

Passcode(s): _____

**I am giving this *WRITTEN PERMISSION* to this Officer(s) *FREELY* and *VOLUNTARILY*, without any *THREATS* or *PROMISES* having been made, and after having been informed by said Officer that he/she is pursuing his/her Official duties in the investigation of an alleged crime and that I have the right to refuse this search and seizure. I understand that I may ask for a receipt of all items turned over. I understand that I have the right to revoke this permission at any time. I have the full ability to make contact with the Requesting Officer in the event that I choose to revoke this consent and I am aware that there could be a reasonable delay in asserting this right.**

I understand that a forensic examination will include any place or item that is believed to possess evidence of a crime and/or other violation of law, to include all contents both physical, digital, encrypted, unencrypted, and cloud based that I own, possess, control, and/or have access.

I authorize the Johnston County Sheriff's Office or other agency designated by the Johnston County Sheriff's Office to make a copy of any information and/or data as indicated above. I understand that any copy made by the Johnston County Sheriff's Office or other agency designated by the Johnston County Sheriff's Office will become the property of the Johnston County Sheriff's Office and that I will have no privacy or possessory interest in the copy.

_Lt. T.W. West_
(NAME PRINT)

(SIGNATURE)

| WITNESS 1 (PRINTED) Mary Crystal Hodge | SIGNATURE | |
| --- | --- | --- |
| REQUESTING OFFICER & ID<br>Richard E. Hoffman | SIGNATURE | DATE/TIME<br>1/13/2023 |

SMITHFIELD005288

| CONTROL NUMBER(S) | SMITHFIELD POLICE DEPARTMENT | OCA NUMBER |
|---|---|---|
| (Evidence Room Use Only) | PROPERTY /EVIDENCE FORM<br>***** ☐ Check if Continuation Page***** | 2021-0005617 |

| *BAG ALL CASH, NARCOTICS, JEWELRY, AMMO & WEAPONS SEPARATELY* | SUBMITTING OFFICER<br>Lt. T.W. West |
|---|---|
| OFFENSE<br>Sex Offense | CASE OFFICER<br>R.L. Johnson |

| NAME TYPE | (V) Victim (S) Suspect (O) Owner (F) Finder<br>NAME | ADDRESS | Race | Sex | DOB |
|---|---|---|---|---|---|
| V | Isabella Leigh Matthews | 2268 Kay Drive Smithfield, NC 27577 | B | F | 05/26/2006 |
| | | | | | |
| | | | | | |
| | | | | | |

**STATUS CODES** 1. EVIDENCE  2. FOUND PROPERTY  3. RECOVERED PROPERTY  4. SAFEKEEPING

**DISPOSITION CODES**  A. Auction  B. Return to Owner  C. Charity  D. Destroy  E. Turn Over to PD  F. Release to Finder  G. Other _____

DOES FINDER OF FOUND PROPERTY WISH TO CLAIM AFTER 180 DAYS?  ☐ YES  ☐ NO

| Item # | DESCRIPTION | Exact Location | Officer Initials | Status Code | Disp. Code |
|---|---|---|---|---|---|
| 3 | USB Flash Drive Containing Forensic Interview of Victim and | 110 South 5th Street | | 1 | |
| | Det. R. Johnson Personal Audio Recordings | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**CHAIN OF CUSTODY**

| Item # | RECEIVED BY | RECEIVED FROM | DATE | TIME | Item # | RECEIVED BY | RECEIVED FROM | DATE | TIME |
|---|---|---|---|---|---|---|---|---|---|
| 3 | Lt. T.W. West | R. Johnson's Cabinet | 04/25/2023 | 1430 | | | | | |
| 3 | R. Hoffman | Lt. T.W. West | 04/26/2023 | 1005 | | | | | |

**Officer Signature:** Lt. T.W. West 1220   **Supervisor Signature:** _[signature]_   **Date:** 04/26/2023

**FINAL DISPOSITION**

| Item # | Disposal Method | Disposed By | Date | Item # | Disposal Method | Disposed By | Date |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

*Search Warrant Use Only*      STATE OF NORTH CAROLINA      *Search Warrant Use Only*
COUNTY OF JOHNSTON

I, _____, a Notary Public of the State of NC, do hereby certify that _____ did personally appear before me this day and did swear and subscribe to foregoing instrument.

Signature : _____  Date: _____  Notary Signature: _____  Commission Expires: _____

Copy Received By – Print: _____  Signature: _____  Date: _____

SMITHFIELD005292



# SMITHFIELD POLICE DEPARTMENT

110 S. Fifth Street • Smithfield, NC 27577
Phone: (919) 934-2121 • Fax: (919) 934-0223

**Interoffice Memorandum**

**Date:**      **April 26, 2023**

**From:**      **Lieutenant T.W. West**

**To:**        **Captain J.F. Grady**

**Subject:**   **Administrative Investigation**

On April 25, 2023, I was cleaning out Det. R. Johnson's old cubicle for the department's remodel. During this process, I was going through his old case files and filing cabinets to make sure all the case files were uploaded into laserfische. During this time, I located five day planners, ranging in dates from 2014-2020, Johnson used to document his schedule and appointments. I also located a USB thumb drive labeled for Isabella Matthews in a box containing a case file not related to Matthews. I knew Inv. Hoffman with the District Attorney's Office was reinvestigating the case involving Matthews. In another box, containing various memos, I located a DVD, with no documentation attached or any writing on it. I secured the planners, thumb drive, and DVD to ensure they did not contain anything related to the internal investigation or any other criminal investigation Johnson was linked to.

The thumb drive contained the forensic interview conducted on Matthews in Georgia. It also contained two audio recordings not related to the Matthews case. I recognized Angie Barbour's voice in one of the recordings and the other sounded like a social gathering or large group of people. Apparently, Johnson used the thumb drive, that was evidence in the Matthews case, to conceal or store the recordings. The DVD contained the videos previously obtained from Johnson's computer when he sent Carolyn Rotondaro into Jimmy Lawrence's office to record their conversation. I contacted Inv. Hoffman and advised him of the items I located.

On April 26, 2023, Inv. Hoffman came to the Smithfield Police Department to view the items. He took custody of the DVD and the thumb drive. The planners and a copy of the evidence sheet related to the thumb drive were secured with the other items from this investigation.

*Smithfield, North Carolina • The Heart of Johnston County Since 1777*

SMITHFIELD005291

CONFIDENTIAL

| | |
|---|---|
| **From:** | TWWest |
| **To:** | Hoffman, Richard E. |
| **Date:** | Monday, May 8, 2023 4:53:00 PM |
| **Attachments:** | EventReport1683579097379.pdf |

This is the CAD call I advised you of.

**Lieutenant T.W. West**
**Smithfield Police Department**
**110 South Fifth Street**
**Smithfield, NC 27577**
**Office:  (919) 989-1065**
**Fax:     (919) 934-0223**
**twwest@smithfieldpd.org**

CONFIDENTIAL

---

# SMPD

## Event Report

Event ID: **2023-089591**     Call Ref #: 519     Date/Time Received: 04/30/23 18:18:51

| | | Services Involved |
|---|---|---|
| Rpt #: | Prime 1140 | |
| Call Source: E911 | Unit: BEYER, JASON S | LAW |

Location: **110 S FIFTH ST**

X-ST:  E MARKET ST     Jur: CAD     Service: LAW     Agency: SMPD

 E JOHNSTON ST     St/Beat: SSTH     District: SSTH     RA: N.T.

Business: SMITHFIELD PD     Phone: (919) 934-2121     GP: SPD5

| Nature: **HARASSMENT** | Alarm Lvl: 1 | Priority: 1 | Medical Priority: |
|---|---|---|---|

Reclassified Nature:

| Caller: TOWN OF SMITHFIELD | | Alarm: |
|---|---|---|
| Addr: 110 S FIFTH ST;SMIT | Phone: (919) 934-7890 | Alarm Type: |

| Vehicle #: | St: | Report Only: No | Race: | Sex: | Age: |
|---|---|---|---|---|---|

| Call Taker: CWOODALL | Console: CON09 | |
|---|---|---|

| Geo-Verified Addr.: Yes | Nature Summary Code: | Disposition: C | Close Comments: |
|---|---|---|---|

Notes: Owen Phillips wanted to report that Former SMPD Officer Ronald Johnson has been following him around town and driving past his kids house on S. Fourth St. This has been occurring throughout Smithfield and Clayton. No contact between the subjects have been made but according to Phillips, Johnson had been making hand gestures towards him when he does see him.
[04/30/23 18:29:41 Unit:1140]
[EPD] Call Aborted:
call box [04/30/23 18:19:42 CWOODALL]
Owen Phillips 10-12 to speak with officer about harassment  [04/30/23 18:19:24 CWOODALL]]

---

### Times

| | | |
|---|---|---|
| Call Received: 04/30/23 18:18:51 | Time From Call Received | |
| Call Routed: 04/30/23 18:19:31 | 000:00:40 | Unit Reaction: (1st Dispatch to 1st Arrive) |
| Call Take Finished: 04/30/23 18:19:31 | 000:00:40 | En-Route: (1st Dispatch to 1st En-Route) |
| 1st Dispatch: 04/30/23 18:20:29 | 000:01:38 (Time Held) | On-Scene: 000:05:56 (1st Arrive to Last Clear) |
| 1st En-Route: 04/30/23 18:20:29 | 000:01:38 | |
| 1st Arrive: 04/30/23 18:20:29 | 000:01:38 (Reaction Time) | |
| Last Clear: 04/30/23 18:26:25 | 000:07:34 | |

---

### Radio Log

| Unit | Empl ID | Type | Description | Time Stamp | Comments (may truncate in portrait) | Close Code | User |
|---|---|---|---|---|---|---|---|
| 1140 | 1140 | D | Dispatched | 04/30/23 18:20:29 | Stat/Beat: SSUP | | AIVEY |
| 1140 | 1140 | E | En-Route | 04/30/23 18:20:29 | Stat/Beat: SSUP | | AIVEY |
| 1140 | 1140 | A | Arrived | 04/30/23 18:20:29 | Stat/Beat: SSUP | | AIVEY |
| 1140 | 1140 | C | Cleared | 04/30/23 18:26:25 | | C | AIVEY |

---

**Report Generated:** 05/08/2023 16:52:06 | **User ID:** TWEST     Note: Comments may truncate in portrait. Use landscape to avoid truncation.

SMITHFIELD005934

CONFIDENTIAL

| Event ID: 2023-089591 | Call Ref #: 519 | **HARRASSMENT at 110 S FIFTH ST** |
|---|---|---|

| **Event Log** |
|---|

| Unit | Empl ID | Type | Description | Time Stamp | Comments (may truncate in portrait) | Close Code | User |
|------|---------|------|-------------|------------|-------------------------------------|------------|------|
| | | TR | Time Received | 04/30/23 18:18:51 | By: E911 | | CWOODALL |
| | | ENT | Entered Street | 04/30/23 18:18:51 | 110 S FIFTH ST;SMIT | | CWOODALL |
| | | CHG | Changed Street | 04/30/23 18:18:53 | 110 S FIFTH ST;SMIT --> 110 S FIFTH | | CWOODALL |
| | | ENT | Entered Remarks | 04/30/23 18:19:24 | | | CWOODALL |
| | | ENT | Entered Nature | 04/30/23 18:19:26 | HARRASSMENT | | CWOODALL |
| | | LPS | Law Pri. Started | 04/30/23 18:19:26 | Case Started | | CWOODALL |
| | | FIN | Finished Call Taking | 04/30/23 18:19:31 | | | CWOODALL |
| | | VEV | Viewed Event | 04/30/23 18:19:34 | User First Viewed Event CAD | | TMEDLIN |
| | | VEV | Viewed Event | 04/30/23 18:19:38 | User First Viewed Event CAD | | AIVEY |
| | | REC | Unit Rec Btn Click | 04/30/23 18:19:39 | 1) Unit recommend for HARRASSMENT | | AIVEY |
| | | ... | Unit Rec Btn Click... | 04/30/23 18:19:39 | 2) ST (B: SMITHFIELD PD) (Caller: | | AIVEY |
| | | ... | Unit Rec Btn Click... | 04/30/23 18:19:39 | 3) SMITHFIELD) | | AIVEY |
| | | REC | Unit Recommendation | 04/30/23 18:19:41 | Recmnd:1132 [PAT] | | AIVEY |
| | | REC | Unit Recommendation | 04/30/23 18:19:41 | Plan: SMPD Cat: 1PAT Lvl: 1 | | AIVEY |
| | | ARM | Added Remarks | 04/30/23 18:19:42 | | | CWOODALL |
| | | RSW | Reset Watchdog Timer | 04/30/23 18:26:19 | Units: 1140 >>> 5Min. | | AIVEY |
| | | ARM | Added Remarks | 04/30/23 18:29:41 | | | Unit:1140 |

| From: | Hoffman, Richard E. |
|---|---|
| To: | TWWest |
| Subject: | Consent form |
| Date: | Tuesday, October 31, 2023 9:29:40 AM |
| Attachments: | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |
| | image005.png |
| | RJ Hard Drive Consent to Search.docx |

Here is a digital copy to facilitate review and any revisions after review.



**Richard E. Hoffman**
Investigator
District 13, Johnston County
**North Carolina Judicial Branch**
O  919-209-5527
F  919-209-5503

*Justice for all*
**www.NCcourts.gov**



E-mail correspondence to and from this address may be subject to the
North Carolina public records laws and if so, may be disclosed.

SMITHFIELD005855

# CONSENT TO SEARCH

**JOHNSTON COUNTY DISTRICT ATTORNEY'S OFFICE – DISTRICT 13**
120 S. Third St. 3rd Floor
Smithfield, NC 27504



**FILE NUMBER: 23CR003494-500**                                           **Date:  10/31/2023**

I, Chief Pete Hedrick, hereby authorize investigator Richard Hoffman, with the Johnston County District Attorney's Office, to request a forensic examination be completed by the North Carolina State Lab and its designated digital evidence forensic examiner of the computer listed below.  This includes taking possession of and copying ( create an image of) and extracting data pertinent to this investigation.  The computer is the property  of the City of Smithfield and assigned to the Police Department.  I understand that a complete search may include the recovery of live and deleted files, completing repairs, and the bypassing or cracking of PIN codes, passwords, and encryption**.**    The forensic image, extraction, or digital copy of this computer will be placed into evidence.

**SEARCH OF COMPUTER HARD DRIVE OWNED BY THE CITY OF SMITHFIELD / SMITHFIELD POLICE DEPARTMENT:**

Seagate Barracuda 500GB hard drive ST500DM009
SN: Z9AWFTHQ :  PN: 2F110A-500 : WWN: 5000C500B25A3B64

**IMAGE OF ACTUAL DEVICE TO BE FORENSICALLY EXAMINED:**

 

1

# CONSENT TO SEARCH

I acknowledge that the digital device will be taken to North Carolina State Laboratory for the forensic examination. I understand that I can revoke consent at any time by calling the investigators phone number: (919) 628-5535.

I have full authority and control over the computer to be forensically examined and I give this consent to search voluntarily without fear, threat, coercion or promises of any kind at the request of this investigator.

This consent to search is given by me this _____ day of _____ 2023.

**Person authorizing search:**

Printed Name: Chief Pete Hedrick                    Signature: _____

Address: 110 S 5th St, Smithfield, NC 27577

Phone: (919) 934-2121

Witness Name: _____            Signature: _____

2