IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

**FILED**

No. 5:23-CV-349-D

OCT 27 2025

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

RONALD L. JOHNSON, JR., )
        Plaintiff, )
)
     v. )
)
TOWN OF SMITHFIELD, et al., )
        Defendants. )

MEMORANDUM IN SUPPORT
OF MARSHBURN'S MOTION
FOR SUMMARY JUDGMENT

## INTRODUCTION

On 28 March 2024, the Court entered its order dismissing plaintiff's claims, except select claims against the Town of Smithfield ("Smithfield") and one claim against David Marshburn ("Marshburn") for defamation. [D.E. 112] (the "MTD Order").

Plaintiff alleges that certain statements made by Marshburn were defamatory. (MTD Order, pp. 60-62). Of these statements, Plaintiff failed to allege that the following were false:

- Plaintiff was the "golden boy" who exposed a lot of people in 2019 after getting elected to the Board of Education;

- Plaintiff engaged in an extramarital affair;

- Plaintiff preemptively took out papers against his mistress asserting false allegations to silence her;

1

- Plaintiff is a "predator";

- The Town of Smithfield gave Plaintiff the option to resign or be terminated;

- Plaintiff attended therapy.

*Id.* at 60-62.

(the "Unchallenged Statements").

As falsity is a material element of defamation, summary judgment is required as to the Unchallenged Statements.

The remaining statements which Plaintiff alleges are false include:

- Marshburn's statement that plaintiff used government property to record conversations for non-governmental purposes;

- Marshburn's statements in a 7 July 2022 webcast that: (1) plaintiff used government property for personal gain; (2) plaintiff extorted people and could be arrested for extortion; (3) through his influence with the CAAG[1], plaintiff bribed people by promising things in exchange for their support of plaintiff; (4) plaintiff intimidated some people into working the polls for him; (5) plaintiff attempted to have his mistress dig up dirt on people like DeVan Barbour by having sex and securing incriminating pictures and video to use for extortion.

(the "Challenged Statements").

*Id.* at 62.

Summary judgment as to the Challenged Statements is proper because:

1. The Challenged Statements are all true.

---

[1] A subset of the Johnston County Republican Party, with the stated mission of holding government accountable to citizens for their actions. (T p 344).

2. The Challenged Statements were made about a public political figure addressing matters of public concern, and Plaintiff has failed to show that the Challenged Statements were made with actual malice.

3. Plaintiff has failed to show that the Challenged Statements proximately caused him any injury.

ARGUMENT

I. SUMMARY JUDGMENT AS TO THE UNCHALLENGED STATEMENTS IS PROPER BECAUSE PLAINTIFF FAILS TO ALLEGE THAT THESE STATEMENTS ARE FALSE.

"In order to recover for defamation, a plaintiff must <u>allege</u> and prove that the defendant made false, defamatory statements of or concerning the plaintiff, which were published to a third person, causing injury to the plaintiff's reputation." *Taube v. Hooper*, 270 N.C. App. 604, 608, 840 S.E.2d 313, 317 (2020) (citation omitted, emphasis added).

Plaintiff does not allege that the Unchallenged Statements are false. Thus, summary judgment is proper as to the Unchallenged Statements.[2]

---

[2] In any event, Plaintiff concedes that he engaged in an extramarital affair with Angie Barbour (T pp 1015-16, 1069) and purports to have exposed Board of Education members once elected in 2019 (T pp 1044). Truth is thus a dispositive defense to Plaintiff's defamation claim based on the unchallenged statements. *See* discussion in Section (II) below. Nor has Plaintiff demonstrated Marshburn had any actual malice in making the unchallenged statements or damage caused thereby. *See* Sections (III), (IV) below.

## II. THE VERDICT IN PLAINTIFF'S CRIMINAL TRIAL ESTABLISHES THAT THE CHALLENGED STATEMENTS ARE TRUE.

On January 17, 2025, the jury in Plaintiff's criminal trial[3] returned guilty verdicts on charges of felony extortion, two counts of willfully failing to discharge duties, and felony obstruction of justice. The jury spoke the truth with its verdict. *See State v. Rogers*, 355 N.C. 420, 454, 562 S.E.2d 859, 880 (2002) ("the word verdict means ... to speak the truth"). The verdict conclusively determined that the Challenged Statements are substantially true.

"[I]n order to be actionable, the defamatory statements must be false. The truth of a statement is a complete defense." *Long v. Vertical Techs., Inc.*, 113 N.C. App. 598, 602-03, 439 S.E.2d 797, 801 (1994); *see also A Fisherman's Best v. Rec. Fishing All.*, 310 F.3d 183, 196 (4th Cir. 2002) (substantially true statements are not defamatory).

"When examining an allegedly defamatory statement, the court must view the words within their full context and interpret them 'as ordinary

---

[3] *See State v. Johnson*, Johnston County Superior Court File No. 23CR003494–500, the court file of which is publicly available on North Carolina's electronic filing system (Odyssey) at: https://portal-nc.tylertech.cloud/app/RegisterOfActions/#/8FE25539063D68033B394538397B7289E9381452EDADFD6E8A7D642FB47FCC21D4CDFDE690534BADB8BC9990643CD34E7679C770D8A66CD308658676B5C3BE0DE494EBB0B5D75F3E48E1070A43162CF3/anon/portalembed. Marshburn requests that the Court take judicial notice of this criminal file. *See* Fed. R. Evid. 201.

people would understand' them." *Boyce & Isley v. Cooper*, 153 N.C. App. 25, 31, 568 S.E.2d 893, 899 (2002) (quoting *Renwick v. News and Observer and Renwick v. Greensboro News*, 310 N.C. 312, 319, 312 S.E.2d 405, 409, *cert. denied*, 469 U.S. 858, 83 L. Ed. 2d 121, 105 S. Ct. 187 (1984)).

Further, "[w]ith respect to the issue of falsity," the Court must " 'overlook[ ] minor inaccuracies and focus[ ] on *substantial truth*.' As such, '[m]inor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the [slanderous] charge be justified.'" *Desmond v. News & Observer Publ'g Co.*, 375 N.C. 21, 67, 846 S.E.2d 647, 675 (2020) (internal quotation marks omitted) (quoting *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 516-17, 111 S. Ct. 2419, 115 L. Ed. 2d 447 (1991)).

The following excerpts from the criminal trial transcript establish the truth of each of the Challenged Statements:

## A. Plaintiff used government property to record conversations for non-governmental purposes.

Plaintiff admitted recording a closed session of the Johnston County Board of Education. (T pp 1119-20). The jury instructions identified this as a violation of his official duties: "He willfully omitted, neglected, or refused the discharge of duty of his office by recording a closed session of the Johnston County Board of Education meeting in violation of his board duties." (T p 1192).

School Board member Lyn Andrews confirmed that making secret recordings on school system property is a violation of Board policy. (T pp 681-82). Plaintiff thus used board-controlled recording equipment or his phone during an official meeting for unlawful, non-governmental purposes.

Plaintiff also admitted to making 76 secret recordings of various people on various devices, including government-issued cell phones, some of which were done for personal and not official police purposes (such as recordings of Angie Barbour and school board members), and which he retained on his personal iCloud account after his employment was terminated and he returned the phones to his employer (Smithfield PD). (T pp 1080-82).

**B.    Plaintiff used government property for personal gain.**

Again, Plaintiff used government-issued devices to record people for personal purposes. *See* Section (A) above.

Plaintiff also secretly transported his paramour Angie Barbour to hotels to facilitate their romantic affair in an unmarked police car—government property. (T p 296). Plaintiff also had intercourse with Ms. Barbour while Plaintiff was on duty, in government-issued uniform. (T p 297).

Witness Thomas Bennett Jones ("Dr. Jones") testified that Plaintiff requested him to record various people and share the recordings with Plaintiff to benefit Plaintiff politically. (T pp 619-21).

Johnston County School Board Chair Lyn Andrews testified that Plaintiff violated the Board's conflict of interest policy by advocating a pay raise for his romantic partner, Carolyn Rotondaro, a JCPS central-office employee. (T pp 682-85).

Plaintiff also called magistrate Chris Sullivan—a government employee—and lied about not knowing who Angie Barbour was, and response Mr. Sullivan advised him to apply for a 50(c) protective order as opposed to a 50(b) protective order, the proper order in light of Plaintiff's affair with Ms. Barbour. (T pp 364-65; 502-04; 1091-92). The apparent purpose of using the incorrect government-issued form was to conceal Plaintiff's affair with Ms. Barbour.

## C. Plaintiff extorted people and could be arrested for extortion.

Political candidate DeVan Barbour testified extensively about Plaintiff attempting to "blackmail" him by promising to make an allegedly incriminating recording go away in exchange for Mr. Barbour writing a letter refuting Plaintiff's affair with Angie Barbour. (T pp 190, 219, 265). DeVan Barbour testified that Plaintiff's attempted extortion was a "malicious" means to a political end. (T pp 194, 265).

Investigator Richard Hoffman affirmed that in an interview with him DeVan Barbour described Plaintiff's actions as "blackmail". (T p 938).

Plaintiff's alibi was that he was playing the recording for DeVan

Barbour just to help him understand that Angie Barbour was saying

incriminating things about DeVan Barbour. (T pp 1026-31, 1039). Yet,

Plaintiff was unable to explain why he made that recording of Angie Barbour

and why he needed to play this recording to help him, as opposed to merely

calling and telling him about this conversation. (T pp 1095-96).

Based on this information received by Investigator Hoffman, Plaintiff

was charged with felony extortion. (T pp 783-84, 809, 942, 1191-93). The

Jury convicted Plaintiff of felony extortion. (T pp 1201-02).

### D. Plaintiff bribed people by promising things in exchange for their support.

Again, Plaintiff was convicted of extortion by promising to get rid of the

alleged incriminating recording in exchange for DeVan Barbour's support in

writing a letter refuting Plaintiff's affair. *See* Section (C) above.

Moreover, Marshburn testified that Plaintiff falsely accused Dr. Jones

of an affair, and that Plaintiff told Dr. Jones that if he did not do what

Plaintiff wanted, then Plaintiff would disclose the alleged affair. (Marshburn

dep. 158:15–159:11).

Dr. Jones himself testified that Plaintiff used recordings to influence

local politics and exchanged help for support: "He told me he wanted to be

sheriff ... so that was part of why we needed some recordings ... to be able to influence local politics." (T p 644).

While not a traditional monetary bribe, Marshburn's and Dr. Jones' testimony shows quid-pro-quo style political inducement—the essence of a bribe to a lay person. *See Masson v. New Yorker Magazine*, 501 U.S. 496, 517, 111 S. Ct. 2419, 115 L. Ed. 2d 447, 472 (1991) (statement only considered false if so misleading that it produces a different effect on a recipient's mind than would the truth).

### E. Plaintiff intimidated some people into working the polls for him.

Plaintiff directed Owen Phillips to do "iffy" things to assist Plaintiff's campaign, including driving by a house in the middle of the night without explanation, secretly following and photographing Angie Barbour, pressuring Mr. Phillips into dating Ms. Barbour to divert her attention away from Plaintiff, and buying prepaid cell phones for Plaintiff. (T pp 721-33).

Plaintiff's efforts at intimidation were widespread. For example, Plaintiff told Angie Barbour (who worked the polls for him) that he "knew bad people...[I] didn't just get [my] money from regular jobs...you don't think I could have this nice of a house and multiple vehicles on a teacher/cop salary, do you? I know people. People that you do not need to know." (T p 381).

This testimony supports the notion that Plaintiff used intimidation or coercive pressure in the political context—which "working the polls" refers to in everyday parlance.

**F.    Plaintiff attempted to have his mistress dig up dirt on people like DeVan Barbour by having sex and securing incriminating pictures or videos.**

Plaintiff asked Angie Barbour (his mistress) to get information on DeVan Barbour. (T p 300). Plaintiff made Angie Barbour tell him all that happened when, according to her, DeVan Barbour made inappropriate communications to her. (T pp 318-19). Plaintiff admitted to secretly recording this conversation with Angie Barbour. (T pp 1095-96).

Months later, Plaintiff asked Angie Barbour to have sex with DeVan Barbour and catch it on video. (T pp 319-20). Plaintiff gave Angie Barbour a cell phone (trac phone) to see if she could catch DeVan Barbour doing anything inappropriate. (T pp 321-22, 334, 380). Plaintiff explained he wanted her to catch him doing something inappropriate to have leverage. (T p 333).

From the above testimony and other substantial testimony, the jury determined that Plaintiff violated his duties by recording closed-session board meetings, exploited recordings and relationships for political leverage, and engaged in extortionary and coercive acts. The Challenged Statements state the same. The Challenged Statements are therefore substantially true.

III. **PLAINTIFF FAILS TO FORECAST EVIDENCE THAT MARSHBURN MADE THE CHALLENGED STATEMENTS WITH ACTUAL MALICE.**

At minimum, Plaintiff fails to provide any evidence that Marshburn made the Challenged Statements with actual malice.

The First Amendment, incorporated and applied to the states through the Fourteenth Amendment, limits the state remedies available to a defamation plaintiff. *New York Times Co. v. Sullivan*, 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710 (1964).

Under *New York Times Co.*, a plaintiff who is a "public official"[4] may not recover damages for defamation "relating to his official conduct unless he proves that the statement was made with 'actual malice'--that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Hugger v. Rutherford Inst.*, 63 F. App'x 683, 691 (4th Cir. 2003) (quoting *New York Times Co.*, 376 U.S. at 279-80).

"Although the concept of reckless disregard cannot be fully encompassed in one infallible definition, the Supreme Court has made clear

---

[4] Plaintiff remained a public official even after his termination from the Board of Education. *See Varner v. Bryan*, 113 N.C. App. 697, 703, 440 S.E.2d 295, 299 (1994) ("Undoubtedly, a public official's job performance will often continue to be the subject of important public debate and discussion long after the termination of his employment in a public office… Thus, we hold that plaintiff was a 'public official' for purposes of our review of the allegedly defamatory statements made after his termination as Town Manager.").

that the defendant must have made the false publication with a high degree of awareness of probable falsity, or must have entertained serious doubts as to the truth of his publication." *Hugger*, 94 F. App'x at 166 (cleaned up).

> Reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice.

*Id.* at 166 (quoting *St. Amant v. Thompson*, 390 U.S. 727, 20 L. Ed. 2d 262, 88 S. Ct. 1323 (1968)).

"[W]here the factual dispute concerns actual malice, . . . the appropriate summary judgment question will be whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-56, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

Thus, on summary judgment, actual malice exists under the *New York Times* "clear and convincing" evidentiary standard only when the evidence presented is such that a reasonable jury might find that actual malice had been shown with "convincing clarity" *Id.* at 257, 106 S. Ct. at 2514-15.

Whether the evidence presented in a defamation case is sufficient to support a finding of actual malice is a question of law. *Harte-Hanks*

*Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 685, 109 S. Ct. 2678, 105 L. Ed. 2d 562 (1989).

"Judges, as expositors of the Constitution, must independently decide whether the evidence in the record is sufficient to cross the constitutional threshold that bars the entry of any judgment that is not supported by clear and convincing proof of actual malice." *Bose Corp. v. Consumers Union*, 466 U.S. 485, 511, 104 S. Ct. 1949, 1965 (1984).

In this case, plaintiff is clearly a public official and figure. His status as police officer alone made him so, never mind his seat on the Board of Education. *See Phifer v. City of Rocky Mount*, No. 5, 2010 U.S. Dist. LEXIS 103816, at *26-27 (E.D.N.C. Aug. 12, 2010) (concluding a Rocky Mount police officer was a public official for purpose of defamation claim); *Dellinger v. Belk*, 34 N.C. App. 488, 238 S.E.2d 788, 789 (N.C. Ct. App. 1977) (concluding that a Charlotte police officer was a public official for purpose of defamation claim).

Plaintiff must therefore demonstrate by "clear and convincing evidence" with "convincing clarity" that Marshburn made the Challenged Statements with actual malice. This Plaintiff has failed to do.

To the contrary, Marshburn testified that he does not have anything personal against Plaintiff, rather his motivation was simply to hold a public figure accountable to the taxpayers. (Marshburn dep. 316-17).

Furthermore, Plaintiff neither alleges nor proves that Marshburn entertained "serious doubts" about the truth of the Challenged Statements. To the contrary, Marshburn unequivocally stood by the truth of these statements:

(1) *Plaintiff's use of government property for non-governmental purposes*

> Q. Is it your testimony that using government property to have an affair with Angie Barbour is criminal?
> A. Using government property for personal gain is.
>
> Q. Okay. And how did he use government property for personal gain?
> A. Well, after -- it was assumed at that time that he was using his company phone, his vehicle, and the -- his computer at work for personal usage.
>
> Q. And who told you that?
> A. Angie Barbour.
>
> Q. Angie Barbour told you that he was using his personal phone --
> A. His -- his work phone.
>
> Q. -- his work phone, his government computer, and --
> A. His car.
>
> ........
>
> Q. To do what?
> A. To record people and use it with the -- the school board, and personal use, like, recording other people to get an advantage in his political stance.
>
> Q. And you said it was assumed at that time. Was it -- was that later --
> A. Well —

Q. -- proven not to be true?
A. No. It's true.

Q. It's true that he did those things?
A. It is true.

Q. That he used his government – his government
computer --
A. Correct.

Q. -- to -- to do what?
A. On his government computer, he has videos of kids
wishing him well for being -- for – good luck for getting
elected campaign. He has recordings on there of people.
What else is on that file? There were certain things that
the Smithfield Police Department discovered that were on
his work computer.

Q. And how do you know that?
A. Because I saw it.

Q. You saw it when?
A. I saw it on his discovery stuff he sent. Danny Mullins.

Q. You saw it --
A. On Daniel Mullins' discovery.

(Marshburn dep. 129:8–131:8).

### (2) *Plaintiff's use of government property for personal gain*

Again, Marshburn expressly states that Plaintiff used his government
phone, car, and computer "for personal usage" and "for personal gain."
(Marshburn dep. 129:8–17).

### (3) *Plaintiff's extortion*

A: Ronald Johnson was making false accusations that
Bennett Jones was sleeping around on his wife. ... He told

Bennett Jones that if he didn't do something that he
wanted, then he was going to tell that.

Q: When did Bennett Jones tell you that?
A: During one of our meetings. ... I listened to the
recordings. And it was pretty bad.

(Marshburn dep. 158:15–159:11).

### (4) *Plaintiff bribing people by promising things in exchange for their support of his candidacy*

Although no direct testimony about a traditional bribe, Marshburn
testified about how, based on recordings Dr. Bennett Jones provided
Marshburn, Marshburn learned that Plaintiff publicly manipulated his
allegiance first with a Cleveland High School football coach, and later with
Dr. Jones, for political gain. (Marshburn dep. 218-22). This suggests the use
of school system connections for improper electoral advantage.

### (5) *Plaintiff's intimidation into working for him*

Q. Did Jimmy Lawrence resign as a school board attorney?
A. To my knowledge, yes.

Q. And do you know why he resigned as school board
attorney?
A. Yes.

Q. Why?
A. He stated to me he was not getting any support from
anyone....
After what Ronald Johnson did to him and his whole family
and his life and his business, he decided to resign because
he was not getting any support from the people around him
to go against Ronald Johnson. They were afraid of Ronald
Johnson.

Q. Who was afraid of Ronald --
A. Everyone --

Q. -- Johnson?

A. -- was afraid of Ronald Johnson of what he would put in the newspaper about them. Because he wrote his own articles in the newspaper for – about other individuals.

(Marshburn dep. 300: 2–24).

> (6) _Plaintiff attempting to have his mistress dig up dirt on people to use for extortion_

A: ... So while Ronald Johnson is having an affair with Carolyn Rotondaro, he's accusing Jimmy Lawrence of sexually assaulting her. ...

[I]t came out in court that Ronald Johnson was having an affair ... [and she] was also the informationist for Ronald Johnson in the administrative office.

(Marshburn dep. 111:3–5; 112:12–16).

Furthermore, the Challenged Statements concern a public political figure in plaintiff. (Marshburn dep. 108:8-10; 137:9-10; 158:4-5; 316:15-25). These statements were made to inform the public of matters of great public concern. (Marshburn dep. 316-17). Our Constitution and the very fabric of our democratic society depend on the willingness of people like Marshburn to inform the public of such matters. Marshburn should be commended, not vilified.

"There is little doubt that public discussion of the qualifications of a candidate for elective office presents what is probably the strongest possible case for application of the _New York Times_ rule, and the strongest possible

case for independent review." *Harte-Hanks Commc'ns v. Connaughton*, 491

U.S. 657, 686-87, 109 S. Ct. 2678, 2695 (1989) (cleaned up).

"As Madison observed in 1800, just nine years after ratification of the

First Amendment:

> Let it be recollected, lastly, that the right of electing the members of the government constitutes more particularly the essence of a free and responsible government. The value and efficacy of this right depends on the knowledge of the comparative merits and demerits of the candidates for public trust, and on the equal freedom, consequently, of examining and discussing these merits and demerits of the candidates respectively."

*Id.* at 687, 109 S. Ct. at 2695 (quoting 4 J. Elliot, Debates on the Federal Constitution 575 (1861)).

"This value must be protected with special vigilance. When a candidate

enters the political arena, he or she must expect that the debate will

sometimes be rough and personal, and cannot 'cry Foul!' when an opponent or

an industrious reporter attempts to demonstrate that he or she lacks the

sterling integrity trumpeted in campaign literature and speeches." *Id.* at 687,

109 S. Ct. at 2696 (cleaned up).

"Vigorous reportage of political campaigns is necessary for the optimal

functioning of democratic institutions and central to our history of individual

liberty." *Id.*

"[D]ebate on public issues should be uninhibited, robust, and wide-open, and ... it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *Bowser v. Durham Herald Co.*, 181 N.C. App. 339, 341, 638 S.E.2d 614, 616 (2007) (citing *New York Times*, 376 U.S. at 270, 11 L. Ed. 2d at 701).

Under these heightened standards, the District Court rejected a similar defamation claim raised by a Rocky Mount police officer in *Phifer v. City of Rocky Mount*, No. 5:08-CV-292, 2010 U.S. Dist. LEXIS 102545 (E.D.N.C. Sep. 28, 2010).

The disgruntled officer in *Phifer* accused his police chief of making defamatory statements about the officer speeding in his patrol car and committing other department rule violations, lying about these events to his superiors, and questioning the officer's honesty and integrity. *Id.* at *4-16.

The officer accused the chief of taking adverse employment action against him in retaliation for the officer revealing an affair the chief was having with another officer. *Id.* at *2, 6-7.

The Court held that the officer did not prove on summary judgment by clear and convincing evidence that the chief knew that his statements were false or made them with reckless disregard of whether they were false, such that a jury could find that he (a public official) acted with actual malice. *Id.* at *24-26.

The Court reasoned that, even if the chief did make the statements in retaliation for the officer's exposure of his affair, other officers independently made similar conclusions about plaintiff, thereby suggesting that the chief had reasonable grounds to doubt plaintiff's truthfulness. *Id.* at *26. The Court found dispositive the independent officer's affidavits suggesting the chief's statements were true, even though the plaintiff offered an affidavit from the other officer allegedly engaged in the affair that the chief threatened to get even with the plaintiff. *Id.*

Plaintiff here offers even less support for actual malice than that deemed insufficient in *Phifer*. Here we have an independent jury of 12 people who unanimously found that Plaintiff was guilty of the very things Marshburn stated. Marshburn clearly had reasonable grounds to believe the Challenged Statements were true. He never wavered from his belief that the Challenged Statements were true.

Public official or not, Plaintiff apparently contends that Marshburn made the Challenged Statements with personal hostility or ill-will. Yet, "evidence of personal hostility does not constitute evidence of 'actual malice' under the *New York Times* standard." *Varner v. Bryan*, 113 N.C. App. 697, 704, 440 S.E.2d 295, 300 (1994) (citing *Rosenblatt v. Baer*, 383 U.S. 75, 86 S. Ct. 669 (1966); *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 115 L. Ed. 2d 447, 111 S. Ct. 2419 (1991)).

Plaintiff chose to enter the public arena with the Board of Education. Plaintiff purported to be a leader and role model for administrators, teachers, and children in Johnston County public schools. He cannot "cry foul" for Marshburn exposing that he was anything but.

## IV. PLAINTIFF FAILS TO FORECAST EVIDENCE THAT ANY OF MARSHBURN'S STATEMENTS PROXIMATELY CAUSED ANY INJURY.

North Carolina law divides slander (oral defamation) into two categories: slander *per se* and slander *per quod*. *Traynham v. Clinard*, No. 7:24-CV-01082-D, 2025 U.S. Dist. LEXIS 87553, at *6 (E.D.N.C. Apr. 1, 2025) (citation omitted). Slander per se involves a statement that is defamatory on its face and "charges a plaintiff with a crime involving moral turpitude, impeaches his or her trade or business, or accuses him or her of having a loathsome disease." *Id.* at *6-7 (cleaned up). Malice and damage are presumed for slander per se. *Id.* at *7.

Slander *per quod*, on the other hand, "relates to false remarks which may 'sustain an action only when causing some special damages . . . in which case both the malice and special damage must be alleged and proved.'" *Id.* (citation omitted). To prove special damages, the plaintiff must show evidence of "pecuniary loss, as distinguished from humiliation." *Id.*

### A.    Plaintiff does not demonstrate any actual damages.

"In order to recover for defamation, a plaintiff generally must show that the defendant caused injury to the plaintiff by making" defamatory statements. *Desmond v. News & Observer Publ'g Co.*, 375 N.C. 21, 37, 846 S.E.2d 647, 658 (2020) (citations omitted).

In the context of an action for defamation, special damage means "pecuniary loss," *Williams v. Freight Lines and Willard v. Freight Lines*, 10 N.C. App. 384, 387, 179 S.E.2d 319, 322 (1971) (citations omitted); "emotional distress and mental suffering are not alone sufficient . . . ." *Id.* at 390, 179 S.E.2d at 324.  Especially in the "political arena", "some thickness of skin is required." *Id.* at 388, 179 S.E.2d at 323.

Plaintiff has not shown any pecuniary loss caused by the Challenged Statements.  Plaintiff's alleged damages, if any, flow from the termination of his employment with the Town of Smithfield and the termination of his seat on the Board of Education.  Marshburn had no role in either organization and thus no vote on either decision. (Marshburn dep. 110, 194-95).

### B.    Plaintiff is not entitled to any presumed damages.

Even if any of the Challenged Statements are slander *per se*, Plaintiff, as a public figure or official, must prove actual malice to recover presumed and punitive damages. *Desmond v. News & Observer Publ'g Co.*, 375 N.C. 21,

70, 846 S.E.2d 647, 678 (2020); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349, 41 L. Ed. 2d 789, 94 S. Ct. 2997 (1974).

For the reasons explained in Section (III) above, Plaintiff fails to prove actual malice. Plaintiff therefore cannot recover presumed or punitive damages.

Furthermore, punitive damages are not an independent cause of action and may only be awarded when a defendant is liable for compensatory damages. *Iadanza v. Harper*, 169 N.C. App. 776, 783, 611 S.E.2d 217, 223 (2006). Because Plaintiff's defamation claim fails, his punitive damages claim fails.

## CONCLUSION

For the reasons stated herein, Defendant David Marshburn respectfully requests this Court grant summary judgment and dismiss Plaintiff's remaining defamation and punitive damages claims against him.

Respectfully submitted, this the *27* day of October, 2025.

David Marshburn, *pro se*