

IN THE NORTH CAROLINA GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
JOHNSTON COUNTY
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

STATE OF NORTH CAROLINA,   :   File No. 23 CRS 003494-500


RONALD LEE JOHNSON, JR.,   :
                Defendant.        Pages:  1220-1228

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
MASTER INDEX

January 6, 2025 through January 17, 2025

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
Transcript of proceedings in the General Court of

Justice, Superior Court Division, Johnston County, 207 East

Johnston Street, Smithfield, North Carolina, at the January 6,

2025, Criminal Session, before the Honorable Joseph

Crosswhite, Judge Presiding.

APPEARANCES:

        Benjamin O. (Boz) Zellinger
        Arneatha James
        Special Deputy Attorney General
        Raleigh, NC 27603
        On Behalf of the State

        Amos G. Tyndall
        Valentin J. Bruder
        Parry Law
        Chapel Hill, NC
        On Behalf of the Defendant

Denise St. Clair, RPR, CRR, CRC
Official Court Reporter
N.C. Administrative Office of the Courts
denise.stclair@nccourts.org

MASTER INDEX

1/6/25

Pretrial motions:

Defense motions                                    4

1/7/25

Judge addresses prospective jurors          71

Jury selection                                    77

Jury impaneled                                   106

WITNESSES

ON BEHALF OF THE STATE:

TODD PARRISH SUTTON

Direct by Ms. James                               88
Cross by Mr. Tyndall                              97
Redirect by Ms. James                            107
Recross by Mr. Tyndall                           114


DEVAN BARBOUR

Direct by Mr. Zellinger                          119
Cross by Mr. Tyndall                             168


DEVAN BARBOUR - continued from 1/9/25

Voir Dire by Mr. Tyndall                         203
Cross by Mr. Tyndall                             209
Redirect by Mr. Zellinger                        224
Recross by Mr. Tyndall                           234


ANGELA MCLEOD BARBOUR

Direct by Mr. Zellinger                          236

1/10/25

DEVAN BARBOUR - continued from 1/9/25

Voir Dire by Mr. Tyndall                    203
Cross by Mr. Tyndall                        209
Redirect by Mr. Zellinger                   224
Recross by Mr. Tyndall                      234


ANGELA MCLEOD BARBOUR

Direct by Mr. Zellinger                     236

1/13/25

ANGELA BARBOUR

Direct by Mr. Zellinger                     329
Cross by Mr. Tyndall                        413
Voir Dire by Mr. Tyndall                    417
Voir Dire by Mr. Zellinger                  420
Voir Dire by Mr. Tyndall                    421
Voir Dire by Mr. Zellinger                  421
Cross by Mr. Tyndall                        422
Redirect by Mr. Zellinger                   469
Cross by Mr. Tyndall                        487
Redirect by Mr. Zellinger                   492
Recross by Mr. Tyndall                      493

CHRIS SULLIVAN

Direct by Ms. James                         497

KEVIN DONOVAN

Direct by Ms. James                         502
Cross by Mr. Tyndall                        537

1/14/25
KEVIN DONOVAN

Cross by Mr. Tyndall                        549
Redirect by Ms. James                       568
Recross by Mr. Tyndall                      579
Redirect by Ms. James                       582
Recross by Mr. tyndall                      583

DR. THOMAS BENNETT JONES

Direct by Ms. James                      584
Cross by Mr. Tyndall                     620
Redirect by Ms. James                    644
Recross by Mr. Tyndall                   650


LYN ANDREWS

Direct by Mr. Zellinger                  654
Cross by Mr. Tyndall                     697
Redirect by Mr. Zellinger                698

APRIL JONES LEE

Direct by Ms. James                      699
Cross by Mr. Tyndall                     706


AMY CAYTON

Direct by Ms. James                      708
Cross by Mr. Tyndall                     712
Redirect by Ms. James                    715

OWEN PHILLIPS

Direct by Ms. James                      716
Cross by Mr. Tyndall                     736


TRACEY FULLER PEEDIN JONES

Direct by Ms. James                      739
Cross by Mr. Tyndall                     746
Redirect by Ms. James                    748
Recross by Mr. Tyndall                   750

1/15/25
RICHARD HOFFMAN

Direct by Mr. Zellinger                  775
Cross by Mr. Tyndall                     907
Redirect by Mr. Zellinger                934
Recross by Mr. Tyndall                   944
Redirect by Mr. Zellinger                946
Recross by Mr. Tyndall                   947

PAUL HOLCOMBE

Direct by Mr. Zellinger                    953
Cross by Mr. Tyndall                       965
Redirect by Mr. Zellinger                  970

1/16/25

RONALD LEE JOHNSON

By the Court - decision to testify        1006

Direct by Mr. Tyndall                     1012
Voir Dire by Mr. Tyndall                  1057
Voir Dire by Mr. Zellinger                1059
Direct by Mr. Tyndall                     1062
Cross by Mr. Zellinger                    1071

MICHELLE ANTOINE

Direct by Mr. Tyndall                     1128
Cross by Mr. Zellinger                    1136
Redirect by Mr. Tyndall                   1139

REBUTTAL WITNESSES

ON BEHALF OF THE STATE

RICHARD HOFFMAN

Direct by Mr. Zellinger                   1140
Voir Dire by Mr. Zellinger                1153
Voir Dire by Mr. Tyndall                  1155
Direct by Mr. Zellinger                   1164

JAMES GRADY

Direct by Mr. Zellinger                   1168
Cross by Mr. Tyndall                      1169

# EXHIBITS

ON BEHALF OF THE STATE

| No. | Description | ID | EVD |
|-----|-------------|-----|-----|
| 1 | Oath of office for Board of Education | 91 | 92 |
| 2 | 50C restraining order | 359 | 361 |
| 3 | 50B restraining order | 363 | 364 |
| 5 | Document of phone contact between defendant and Angela Barbour | 366 | |
| 5A | Document by Angela Barbour's texts with defendant minus columns | 367 | 368 |
| 6 | Screenshot | 385 | 386 |
| 8 | Snapchat conversation | 387 | 389 |
| 9 | Photograph of phone | 390 | 391 |
| 11 | Donovan's Immunity agreement | 516 | 517 |
| 12 | TracFone | 321 | 846 |
| 13 | Text messages between defendant and DeVan Barbour | 137 | 137 |
| 15 | Recording-Dr. Jones and Defendant | 605 | 607 |
| 16 | Recording-Dr. Jones and defendant | 605 | 607 |
| 17 | Recording-Dr. Jones and Defendant | 605 | 607 |
| 18 | Recording-Dr. Jones and Defendant | 605 | 607 |
| 19 | North Carolina G.S. 143-318.11 | 660 | 661 |
| 20 | Policy Code 2120 | 674 | 676 |
| 21 | Policy Code 2121 | 681 | 682 |
| 22 | Policy Code 2122 | 683 | 684 |
| 23 | Policy Code-closed sessions | 686 | 687 |
| 26 | File name 20220424 | 904 | 905 |

| 27 | Recording of Angela Barbour | 904 | 905 |
|----|------------------------------|-----|-----|
| 29 | Email from defendant's MSN records | 890 | 891 |
| 30 | Email attachment | 891 | 891 |
| 33 | Defendant's Pinger records | 857 | 858 |
| 34 | Audio recording | 894 | 895 |
| 35 | Pinger information | 854 | 856 |
| 36 | T-Mobile records | 788 | 789 |
| 37 | Verizon record | 788 | 789 |
| 38 | Spreadsheet of cellphone records | 789 | 790 |
| 39 | Cellphone tower map | 833 | 835 |
| 40 | Video at Planet Fitness gym | 821 | 822 |
| 41 | Photo from Detective Brantley to Hoffman | 825 | 825 |
| 42 | Map of Clayton | 841 | 842 |
| 44 | Angela Barbour's phone number | 395 | 396 |
| 45 | Text exchanges | 396 | 397 |
| 46 | Text exchange | 396 | 397 |
| 47 | Ronald Johnson's contact information | 397 | 398 |
| 48 | Angela Barbour's Facebook post | 398 | 399 |
| 49 | Angela Barbour's texts with defendant | 398 | 399 |
| 50 | Angela Barbour's texts with defendant | 398 | |
| 51 | Angela Barbour's texts with defendant | 398 | 399 |
| 52 | Angela Barbour's texts with defendant | 399 | 399 |
| 62 | Pinger information | 888 | 889 |
| 65 | Defendant's Apple records | 875 | 877 |
| 66 | June 14, 2022 email | 876 | 877 |

| 67 | July 10, 2022 email | 877 | 877 |
| 68 | August 25, 2022 email | 877 | 877 |
| 69 | TracFone call information | 847 | 848 |
| 70 | SpoofCard's website | 879 | 880 |
| 71 | SpoofCard's website-recording calls | 879 | 880 |
| 72 | SpoofCard packages | 879 | 880 |
| 73 | SpoofCard credits | 879 | 880 |
| 74 | SpoofCard's info on phone calls | 879 | 880 |
| 75 | SpoofCard info for  text messaging | 879 | 880 |
| 76 | Message from Dustin Parks | 814 | 830 |
| 76 | Defendant's email address | 1124 | |
| 77 | Pinger message | 1117 | 1140 |
| 78 | Board meeting minutes May 31, 2022 | 1118 | |
| 78 | Motion to move into closed session | 1136 | |
| 79 | SpoofCard printout | 1165 | |

ON BEHALF OF THE DEFENDANT

| No. | Description | ID | EVD |
| 1 | Notebook tab | 189 | |
| 2 | 4/16/22 text exchange between defendant and Mr. Barbour | 189 | |
| 3 | Text message | 189 | |
| 5 | Recorded statement by Angela Barbour | | 1035 |
| 6 | Spreadsheet | | 1023 |
| 7A | Audio of recording | | 1019 |
| 12 | Text message - Donovan to Slay | 564 | |
| 13 | Facebook post re:  Threesome | 714 | |

14      Facebook post re:  Threesome              714

15      Audio recording-after meeting clip        1036    1037

16      May 31, 2022, school board meeting        1050    1050

17      Defendant's timeline chart                1064

COURT EXHIBITS:

1      Charges-lesser included offenses           1182    1182

1/17/25

Jury charge conference                           1177

Jury charge                                      1188

Jury deliberates                                 1199

Verdict                                          1201

Sentencing                                       1204

SENTENCING HEARING TESTIMONY:

Vivian Maynor                                    1207

Rick Walker                                      1208

Gloria Thornton                                  1210

* * *

END OF MASTER INDEX

TRANSCRIPT CONCLUDED

IN THE NORTH CAROLINA GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
JOHNSTON COUNTY
* * * * * * * * * * * * * * * * * *

STATE OF NORTH CAROLINA    :   File No. 23 CR 003494-500

    versus    :

RONALD LEE JOHNSON, JR.,   :
          Defendant.   :   Pages:  1-69

* * * * * * * * * * * * * * * * * *
TRANSCRIPT - VOLUME 1 OF 10

Monday, January 6, 2025

* * * * * * * * * * * * * * * * * *

Transcript of proceedings in the General Court of

Justice, Superior Court Division, Johnston County, 207 East

Johnston Street, Smithfield, North Carolina, at the January 6,

2025, Criminal Session, before the Honorable Joseph

Crosswhite, Judge Presiding.

APPEARANCES:

    Boz Zellinger
    Arneatha James
    Special Deputy Attorney General
    Raleigh, NC 27603
    On Behalf of the State

    Amos G. Tyndall
    Valentin J. Bruder
    Parry Law
    Chapel Hill, NC
    On Behalf of the Defendant

---

Denise St. Clair, RPR, CRR, CRC
Official Court Reporter
N.C. Administrative Office of the Courts
denise.stclair@nccourts.org

1                                    INDEX

2    Pretrial motions:

3    Defense motions                                              3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Denise St. Clair, RPR, CRR, CRC
Official Court Reporter

| | | |
|---|---|---|
| 10:03:11 | 1 | (Court convenes at 10:03 a.m.) |
| | 2 | THE COURT: Good morning. Thank you, all. We had |
| | 3 | some discussion bringing me up to speed, since I was newly |
| | 4 | involved in this. I do know that we have some matters |
| 10:04:03 | 5 | for -- that need to be addressed outside the presence of the |
| | 6 | jury. |
| | 7 | One thing I want to let the clerk know is we did |
| | 8 | talk about the jury. Apparently there's a Monday, Tuesday, |
| | 9 | and Wednesday jury pool. My understanding is that we're going |
| 10:04:20 | 10 | to bring both the Monday and the Tuesday pool in tomorrow. |
| | 11 | Do you know the capacity in this courtroom? |
| | 12 | Assuming 80 people, give or take, are here, can you fit 80 in |
| | 13 | here? |
| | 14 | SHERIFF: Normally we get 45 to 60 in a pool. |
| 10:04:42 | 15 | THE COURT: We're talking about almost a double |
| | 16 | pool. So Monday and Tuesday is going to be tight. That's the |
| | 17 | plan now. If we alter that, I'll let you know. Okay? |
| | 18 | Just for the record, this is State of North |
| | 19 | Carolina vs. Ronald Lee Johnson. The matter has been |
| 10:04:58 | 20 | continued for trial, I believe, a couple times. I do know |
| | 21 | there are some pretrial motions that we need to address. |
| | 22 | Mr. Zellinger, Ms. James, for the State, are there |
| | 23 | any matters that you would like to have addressed at this |
| | 24 | point? |
| 10:05:12 | 25 | MR. ZELLINGER: Your Honor, I believe the matters |

| | |
|---|---|
| 10:05:15 | 1  that have been held for this morning are two motions to |
| | 2  suppress by defendant's counsel.  Both related to sort of |
| | 3  Franks' arguments related to the moving to suppress some of |
| | 4  the search warrants.  I will tell the Court if we're about to |
| 10:05:33 | 5  begin that, that some of these search warrants that defendant |
| | 6  seeks to suppress have previously been challenged and ruled |
| | 7  upon by another Superior Court judge, and a motion to suppress |
| | 8  on those have previously been ruled upon. |
| | 9          I guess to look at the defendant's motion to |
| 10:05:51 | 10 suppress, it's titled Defendant's Motion to Suppress.  The |
| | 11 other one is titled Defendant's Motion to Suppress Warrant, In |
| | 12 Re:  1370 Cameron Way, North Carolina.  Not that one.  The one |
| | 13 that's just motion to suppress.  On paragraph 2A, B, C, D, E, |
| | 14 F, G, H, I have all been previously challenged. |
| 10:06:24 | 15         THE COURT:  Mr. Zellinger, if you don't mind me |
| | 16 interrupting you for a minute, I know you're referring to |
| | 17 those by their numbers.  I don't have a copy of those.  My |
| | 18 understanding is this is an Odyssey county at this point.  Do |
| | 19 you have a hard copy of that motion that I can look at? |
| 10:06:39 | 20         MR. ZELLINGER:  I just have my copy. |
| | 21         MR. TYNDALL:  I've got one, Judge. |
| | 22         THE COURT:  Yes, sir.  Thank you very much. |
| | 23         MR. TYNDALL:  Make sure I got two copies here.  I |
| | 24 think I do. |
| 10:06:56 | 25         Your Honor, I tell you what, I got a disk with all |

| | |
|---|---|
| 10:06:58 | 1 |  the search warrants on it.  Do you want me to give you that? |
| | 2 |  THE COURT:  If you got that.  And I've got my |
| | 3 |  computer.  I just haven't set that up yet. |
| | 4 |  MR. TYNDALL:  I think -- I asked my assistant to |
| 10:07:10 | 5 |  put all the search warrants, because they are like 30, 40, |
| | 6 |  pages each in there.  There's a number of them.  Here's the |
| | 7 |  search warrant that he -- that Mr. Zellinger was just |
| | 8 |  referring to. |
| | 9 |  THE COURT:  Thank you very much. |
| 10:07:18 | 10 |  Yes, sir, Mr. Zellinger, I'm sorry to have to |
| | 11 |  interrupt. |
| | 12 |  MR. ZELLINGER:  I apologize, Your Honor. |
| | 13 |  So, Your Honor, I believe there's two defendant's |
| | 14 |  motions to suppress search warrants.  One is captioned:  In |
| 10:07:36 | 15 |  re:  1370 Cameron Way.  Not that one.  The other one is just |
| | 16 |  the defendant's motion to suppress. |
| | 17 |  We had a prior suppression hearing -- hearings on |
| | 18 |  this, and if you look at paragraph 2 of that suppression |
| | 19 |  motion, items A through I have all previously been attempted |
| 10:07:59 | 20 |  to be suppressed and denied.  And so I'd argue to the Court |
| | 21 |  that there's already been a ruling on that.  It would be |
| | 22 |  inappropriate for this Court to overrule another Superior |
| | 23 |  Court judge on a motion to suppress. |
| | 24 |  J, K, L, and M are the ones that haven't been heard |
| 10:08:15 | 25 |  previously.  But J I think will need to be heard on.  K is a |

10:08:24  1   phone that he gave to somebody else; I don't think he has any

2   expectation of privacy or standing to challenge that.  L is

3   the defendant's Facebook; I think that needs to be heard.  And

4   then M is another person's, Allyson Bond's phone; and so I

10:08:39  5   don't think that the defendant has any standing to challenge

6   that.

7         So I think from this motion to suppress, the only

8   ones that the defendant could be heard on essentially are J

9   and L.

10:08:52  10         THE COURT:  All right.  Mr. Tyndall, do you concur

11   with that?

12         MR. TYNDALL:  The basis for this motion is

13   different than the basis for the prior motions.  So we don't

14   concur.  Now, obviously, if it's someone else's phone or

10:09:07  15   something, we don't have any expectation of privacy.  I would

16   confirm that.  But if that's the case, then we concede that

17   issue.

18         But the basis for this motion is Franks v.

19   Delaware, which is that the investigator, when he presented

10:09:26  20   the motion to the judge, either neglected to tell the judge

21   things that were relevant to the case or misled a judge in

22   some way.  So we do believe that even though the Court may

23   have addressed -- it was before I was involved in it -- but

24   may have addressed certain motions to suppress that based on

10:09:48  25   this new -- based on the Franks v. Delaware that those would

| | | |
|---|---|---|
| 10:09:54 | 1 | still be ripe for disposition. |
| | 2 | THE COURT: Mr. Zellinger, do you wish to be heard |
| | 3 | on that? |
| | 4 | MR. ZELLINGER: Your Honor, I have a prior copy of |
| 10:10:03 | 5 | the defendant's motion to suppress evidence pursuant to search |
| | 6 | warrants. I think those would be appropriate for the Court to |
| | 7 | look at this, and this is where we -- I think the easiest way |
| | 8 | might be to pull it up on e-Courts or I can go make a copy of |
| | 9 | this for the Court. |
| 10:10:21 | 10 | THE COURT: All right. |
| | 11 | MR. ZELLINGER: But the objections to this are -- |
| | 12 | include issues with the veracity of the information and are |
| | 13 | the same issue. And regardless, I think the defendant would |
| | 14 | be precluded even if he didn't raise that for arguing a motion |
| 10:10:38 | 15 | to suppress and then -- I mean, I think it's in here, but even |
| | 16 | if it wasn't, defendant's motion to suppress this on X grounds |
| | 17 | and then now comes back with a new lawyer and is moving to |
| | 18 | suppress on different grounds. The Judge has already looked |
| | 19 | at it and arguments have been made about these sorts of |
| 10:10:55 | 20 | allegations. So I don't know how many times the defendant |
| | 21 | gets to make the same motion attempting to suppress the search |
| | 22 | warrant. |
| | 23 | THE COURT: So it's the State's opinion that that's |
| | 24 | already been heard by a previous Judge, including the Franks' |
| 10:11:10 | 25 | motion; right? |

| | |
|---|---|
| 10:11:11 | 1 |
| | 2 |
| | 3 |
| | 4 |
| 10:11:25 | 5 |
| | 6 |
| | 7 |
| | 8 |
| | 9 |
| 10:15:06 | 10 |

```
10:11:11    1           MR. ZELLINGER:  Correct, Your Honor.  And that for

            2   -- and just on this, the new motion to suppress items A

            3   through I and then J and L, we don't think the defendant has

            4   standing.

10:11:25    5           THE COURT:  Okay.  Thank you.  Let me take a few

            6   minutes.  I'm going to stay right there.  I'm going to look at

            7   this over here.

            8           I did see the orders entered by Judge Pittman

            9   previously.  I would like to look a little bit closer to see

10:15:06   10   what issues that were addressed on this as well.

           11           MR. ZELLINGER:  On that prior motion to suppress

           12   the search warrants filed by defendant's previous attorney, I

           13   will tell the -- just, for instance, paragraphs 14 and 15

           14   alleging that Investigator Hoffman made conclusory statements,

10:15:22   15   paragraph 15, conclusory statements seemingly criminalizing

           16   otherwise lawful conduct and/or based upon unverified and

           17   hearsay information from people whose veracity was not

           18   determined by Investigator Hoffman nor by the Court.  I would

           19   ask the Court to just look at that because I think it treads

10:15:43   20   pretty closely.

           21           THE COURT:  So Mr. Zellinger, just while I'm

           22   waiting on those to be printed, can you sort of point me in

           23   those orders where you say that the Franks' motions were

           24   addressed in that?  Did they specifically --

10:15:55   25           MR. ZELLINGER:  In the orders, they did not.  The
```

|          |    |                                                                 |
|----------|----|-----------------------------------------------------------------|
| 10:15:57 | 1  | orders just summarily sort of deny the defendant's motion to    |
|          | 2  | suppress. I think there were actually two orders. There's       |
|          | 3  | one that said that it couldn't be ruled upon by a Superior       |
|          | 4  | Court judge because the Superior Court had not signed the       |
| 10:16:10 | 5  | search warrant and therefore another Superior Court judge       |
|          | 6  | couldn't overrule another Superior Court judge.                 |
|          | 7  | THE COURT: Right.                                               |
|          | 8  | MR. ZELLINGER: There was then a motion to                       |
|          | 9  | reconsider from the defense and the State; and then the second  |
| 10:16:21 | 10 | order there was a -- I believe Judge Pittman -- I can't         |
|          | 11 | remember the exact language, but he said that the defendant     |
|          | 12 | hasn't met their burden and in proving --                       |
|          | 13 | THE COURT: But you know even though it wasn't                   |
|          | 14 | specified in the order, you do believe that the -- that Franks  |
| 10:16:36 | 15 | was part of what was heard; is that right?                      |
|          | 16 | MR. ZELLINGER: The word Franks wasn't used, but                 |
|          | 17 | looking at the defendant's suppression motion, I would say to   |
|          | 18 | the Court it's the same argument.                              |
|          | 19 | THE COURT: Here's what I'm going to do at this                  |
| 10:16:49 | 20 | point, just to be mindful of our time. I'm going to hold that   |
|          | 21 | open while we get those copies and I can review that.          |
|          | 22 | The other -- Mr. Tyndall, the other motions that              |
|          | 23 | you did want to have heard at this point, J, K, L, and M, I    |
|          | 24 | want to give you a chance and maybe we can go ahead and        |
| 10:17:08 | 25 | address those while I'm getting the information that I need,    |

| 10:17:11 | 1 | if that's okay. |

2   MR. TYNDALL:   Sure.   Your Honor, as we set out in

3   the motion, there's a critical timeline in this case that

4   started in February of 2022 and sort of goes through -- well,

10:17:34   5   it goes throughout '22, but it especially goes til after the

6   election.   And you've heard a little bit about the State's

7   version of this, but I'll tell you, the evidence in this case

8   is going to show that Mr. Johnson broke off a relationship,

9   and it was an extramarital relationship, with this woman named

10:17:55   10   Angie Barbour.   Both were married at the time, and they've

11   been in a relationship for some time.

12   He broke off that relationship some time in

13   February of 2022.   After that, there are a number of

14   allegations about back and forth and disclosure of events and

10:18:25   15   things like that.   The evidence in the case is going to show

16   that -- and this is the evidence that we believe Investigator

17   Hoffman knew when he got a search warrant and that he

18   interviewed a person named DeVan Barbour.

19   Now, Angie Barbour had accused DeVan Barbour of

10:18:47   20   sending her nude photos and possibly more, but at least that

21   was one of the things she had said.   At the time of -- that

22   Investigator Hoffman gets the search warrant, there's a

23   critical timeline to support the allegation that there's

24   extortion in this case, and that critical timeline is really

10:19:13   25   February til after the election.

| | | |
|---|---|---|
| 10:19:16 | 1 | DeVan Barbour told Investigator Hoffman that he |
| | 2 | got, you know, some information about this. The basis of the |
| | 3 | extortion is the argument that my client threatened this |
| | 4 | congressional candidate and told him that he was going to |
| 10:19:45 | 5 | disclose information about a congressional candidates's |
| | 6 | relationship or nude photos or something if he didn't get |
| | 7 | something back from the congressional candidate. That |
| | 8 | supposedly happened in late April, around April 25th. |
| | 9 | One of the critical pieces of the search warrant -- |
| 10:20:07 | 10 | there's a couple things, but one of the critical pieces of the |
| | 11 | search warrant is Mr. Barbour had told Investigator Hoffman |
| | 12 | that he had gotten like a random text from somebody |
| | 13 | threatening to release a recording, and that piece of |
| | 14 | information he connected with the allegations that Ms. Barbour |
| 10:20:29 | 15 | made. And he knew about that. He had some advanced notice, |
| | 16 | and he knew about it, and he connected it; but then he |
| | 17 | couldn't really explain why it happened, because he looked at |
| | 18 | his phone and he told Investigator Hoffman: That random text |
| | 19 | message came to me in April, on April 13th of 2022, before |
| 10:20:53 | 20 | DeVan Barbour had told the investigator that he knew anything |
| | 21 | about these allegations or supposedly a recording. |
| | 22 | The first thing that DeVan Barbour, the |
| | 23 | congressional candidate, the first time he got some notice |
| | 24 | that there might be a problem, according to the -- it's |
| 10:21:12 | 25 | unclear because of the way the interview was conducted, but |

| | | |
|---|---|---|
| 10:21:16 | 1 | it's unclear whether he's saying he didn't know anything about |
| | 2 | it until the 16th of April when at behest of my client one of |
| | 3 | his -- another politician in town called him up and said, |
| | 4 | look, this Angie Barbour woman is going around telling people |
| 10:21:36 | 5 | things about you and you need to know it.  There was some back |
| | 6 | and forth between my client and a congressional candidate |
| | 7 | where they talked about this. |
| | 8 | The problem with the information in the warrant |
| | 9 | about the text is that Investigator Hoffman in the warrant |
| 10:21:57 | 10 | says that the text happened in May, not on April 13th.  That's |
| | 11 | important because of the time period in this case.  As the |
| | 12 | time goes on, they allege a couple weeks after the April 16th |
| | 13 | phone calls that go back and forth between my client and the |
| | 14 | congressional candidate that there's a meeting between my |
| 10:22:19 | 15 | client and a congressional -- and the congressional candidate |
| | 16 | where he plays a recorded statement for the congressional |
| | 17 | candidate and discloses to him that there's an actual |
| | 18 | recording of Ms. Barbour making her allegations and that -- it |
| | 19 | depends on who you believe, but if you take it from the search |
| 10:22:41 | 20 | warrant that he's threatening to release it if he doesn't get |
| | 21 | something in return.  So that's April 25th.  Investigator |
| | 22 | Hoffman puts it at midnight. |
| | 23 | So it sounds really sinister, you know.  You've got |
| | 24 | these -- this meeting supposedly at midnight behind a fitness |
| 10:23:01 | 25 | center and he's threatening to disclose something, and the |

Denise St. Clair, RPR, CRR, CRC
Official Court Reporter

| | |
|---|---|
| 10:23:05 | 1 |
| | 2 |
| | 3 |
| | 4 |
| 10:23:22 | 5 |
| | 6 |

primary for the election is May 17th, I think.  Investigator
Hoffman's warrant puts the random text saying:  The recordings
are about to go out some time in May.  That's not what
Mr. Barbour told him.  Mr. Barbour told him that happened back
in April before my client supposedly called him and warned him
that she was going around saying these things.

7          So we think that's important to the timeline.  It's
8     something important for the judge to consider; also the fact
9     that, you know, it was midnight.  It turns out that the
10    meeting was in the middle of the day around noon.  And so that
11    is the primary basis of our challenge to the warrants based on
12    the Franks' issue.

13          THE COURT:  Yes, sir.  Thank you.

14          And I guess specifically -- I do have all those
15    orders in my hands now.  But specifically to J, K, L, and M, I
16    think K was the phone, L was the Facebook.

17          Mr. Zellinger, I didn't write quick enough.  What
18    do you say J was about and M?

19          MR. ZELLINGER:  J is one that I think can be
20    litigated.  That wasn't heard previously and it's the
21    defendant's account.

22          K was not heard previously, but it's a phone he
23    gave someone else.  So I don't think he has standing or
24    expectation of privacy.

25          L is defendant's Facebook.  I think he has the

|          |    |                                                                 |
|----------|----|-----------------------------------------------------------------|
| 10:24:32 | 1  | right to litigate that.  And that has not been heard            |
|          | 2  | previously.                                                     |
|          | 3  | And then M is Allyson Bond, who you will hear is                |
|          | 4  | another woman that he's alleged to have an affair with.  That   |
| 10:24:44 | 5  | has not been heard previously, and that's her phone.  So I      |
|          | 6  | don't think that he has any standing to challenge that.         |

7     THE COURT:  Mr. Tyndall, let's go ahead and address
8  specifically those.  I'm going to let you be heard on all four
9  of those, if you would like to, but I understand the State's
10:25:03  10  position that only J and L they believe are relevant, but I'll
11  let you get in any argument on all of them if you'd like to
12  give them, but if you can maybe just identify which ones
13  you're talking about.

14     MR. TYNDALL:  Your Honor, of course we contend that
10:25:21  15  even though the Court considered the prior motion to suppress,
16  that this is a different matter.  So I take the State at its
17  words.  A lot of these search warrants are hard to keep up
18  with and keep track of these.  We had a pretty strict timeline
19  of when we had to file this so I may have overlooked the
10:25:38  20  Allyson Bond and the other thing.  If that's the case, then
21  I'm not -- I'm not going to challenge someone else's stuff.

22     THE COURT:  So at this point just to make sure my
23  records are clear.  M I believe is Allyson Bond's phone.  That
24  is not a motion you wish to proceed on at this point?  That is
10:25:54  25  not something you want to proceed on?

| | | |
|---|---|---|
| 10:25:57 | 1 | MR. TYNDALL: If it's Allyson Bond's phone, I do |
| | 2 | not. |
| | 3 | THE COURT: And then I have K is a -- |
| | 4 | MS. JAMES: Your Honor, that would be the track |
| 10:26:07 | 5 | phone we contend he gave to Angie Barbour. |
| | 6 | MR. TYNDALL: So that is a -- |
| | 7 | THE COURT: Is that one you want to be heard on as |
| | 8 | well? |
| | 9 | MR. TYNDALL: Well, if it was Angie Barbour's |
| 10:26:23 | 10 | phone, then we don't want to be heard on that. |
| | 11 | THE COURT: Is that right? |
| | 12 | MS. JAMES: That is correct. |
| | 13 | THE COURT: Why don't we address then J and L which |
| | 14 | is the ones that I believe the State said had not been |
| 10:26:39 | 15 | previously heard. And I will let you be heard on J whenever |
| | 16 | you are ready. |
| | 17 | MR. TYNDALL: Okay, Your Honor. If I can just -- |
| | 18 | I'm having a little trouble finding these search warrants. I |
| | 19 | thought they were on my disk, but -- |
| 10:26:57 | 20 | THE COURT: Yes, sir. That's fine. |
| | 21 | MR. TYNDALL: Your Honor, there's a lot of stuff in |
| | 22 | here that is preliminary to the issues we're raising. So I'm |
| | 23 | just going to focus on the things that we've raised. |
| | 24 | THE COURT: Yes, sir. |
| 10:30:37 | 25 | MR. TYNDALL: Your Honor, the part that we were |

| | | |
|---|---|---|
| 10:30:39 | 1 | talking about, the text messages, in paragraph 11 at the |
| | 2 | bottom of page 18, and it's where DeVan Barbour received a |
| | 3 | text message after an encounter with Ronald Johnson during the |
| | 4 | month of May. That number had an out of state area code |
| 10:30:57 | 5 | referencing the recordings. Mr. Barbour deleted it but |
| | 6 | paraphrased the contents of the text messages. He states: |
| | 7 | The recordings are getting ready to get out. He believed this |
| | 8 | was linked to Ronald Johnson who told him he had ways to |
| | 9 | create and use anonymous numbers to send stuff. |
| 10:31:16 | 10 | The big problem with that allegation, Your Honor, |
| | 11 | is it's not consistent with what Mr. Barbour told Investigator |
| | 12 | Hoffman, and it's really critical to the timeline because |
| | 13 | he's -- you know, under DeVan Barbour's version of events, he |
| | 14 | tells Investigator Hoffman that he gets that text on |
| 10:31:36 | 15 | April 13th while he's meeting with the mayor of Fuquay Varina. |
| | 16 | After that, he's notified by Kevin Donovan or -- |
| | 17 | and my client. They both have discussions with him about |
| | 18 | allegations that Ms. Barbour is making against him. And that |
| | 19 | was on April 16th. |
| 10:31:56 | 20 | On April 25th is when my client has a meeting with |
| | 21 | him where they have a discussion. The relevance of that text |
| | 22 | message is important because it makes it look like after that |
| | 23 | meeting my client is making a threat to him. They infer that |
| | 24 | it's my client who sent it even though it's anonymous, and |
| 10:32:17 | 25 | then he's making a threat to disclose this recording. |

| | | |
|---|---|---|
| 10:32:22 | 1 | So you know, that's the gist of our -- you know, |
| | 2 | the big issue on the Franks' motion. |
| | 3 | I'm trying to -- if you give me second. I |
| | 4 | appreciate your patience, Your Honor. |
| 10:32:35 | 5 | THE COURT: No, sir. That's fine. On your Franks' |
| | 6 | motion, I've got both the original motions filed and the |
| | 7 | orders by Judge Pittman. When we take a break, I'm going to |
| | 8 | review those in more detail and see what information was |
| | 9 | contained. So any ruling on the Franks' motion I'm going to |
| 10:32:51 | 10 | reserve that til I've had a chance to fully look at that. |
| | 11 | But I guess specifically now while we're here |
| | 12 | before we do take a recess so I can look at those, I just |
| | 13 | wanted to give you a chance to be heard on the motions M, J, |
| | 14 | and L. |
| 10:33:08 | 15 | MR. TYNDALL: Right. And Your Honor, the search |
| | 16 | warrant, the content of those are the same. |
| | 17 | The other things that concerned us about these |
| | 18 | were, you know, Investigator Hoffman knew that when he put |
| | 19 | that information in the search warrant that Mr. Barbour had no |
| 10:33:27 | 20 | basis to believe my client had sent him a random text about a |
| | 21 | recording on April 13th; whereas, if he makes it in May, he |
| | 22 | has every reason to believe it's my client. So by couching it |
| | 23 | that way in the search warrant, it creates for the judge an |
| | 24 | impression that, well, he met with him, he threatened him, and |
| 10:33:48 | 25 | then right before the election he gets this random text. |

| | | |
|---|---|---|
| 10:33:51 | 1 | That's not what Mr. Barbour told Investigator Hoffman.  So |
| | 2 | that's -- |
| | 3 | One of the other things, and these are more in the |
| | 4 | line of things that he did not include in the warrant that |
| 10:34:06 | 5 | would be important, because he didn't specifically say to the |
| | 6 | judge that he would have no basis to know who sent the random |
| | 7 | text.  He actually said the opposite.  He said that he |
| | 8 | believed my client would have sent it because he had the |
| | 9 | meeting and he had some idea that my client could send random |
| 10:34:24 | 10 | texts from fake accounts. |
| | 11 | The affidavits also admit that my client -- and |
| | 12 | that in response to a call from a person named Kevin Donovan |
| | 13 | on April 16th, Mr. Barbour called my client, had a discussion |
| | 14 | with him about the allegations that Ms. Barbour was making. |
| 10:34:56 | 15 | So it's not like my client showed up on the 25th and they just |
| | 16 | had this random conversation. |
| | 17 | Also, it omits a big portion of this, Your Honor, |
| | 18 | is that after the time that they met at the -- behind the |
| | 19 | fitness center and my client played the recording for him, |
| 10:35:26 | 20 | they talked again and he sort of -- he said to my client, you |
| | 21 | know, it sounds a bit like blackmail, and my client was |
| | 22 | offended by that or got defensive.  And he said, well, just |
| | 23 | don't worry about it then.  Just don't worry about it. |
| | 24 | And so he also admitted the fact that Ms. Barbour |
| 10:35:47 | 25 | talked to Mr. DeVan Barbour and denied anything like this, |

| | | |
|---|---|---|
| 10:35:54 | 1 | denied that she made any statements or made a recording and |
| | 2 | that -- and those are the primary distinctions from the |
| | 3 | evidence that we see in the warrant, Your Honor, and we think |
| | 4 | those are relevant and important and apply to these two |
| 10:36:17 | 5 | particular ones. |
| | 6 | THE COURT: Yes, sir. Thank you very much. |
| | 7 | Any response, Mr. Zellinger? |
| | 8 | MR. ZELLINGER: Yes, Your Honor. I guess to start |
| | 9 | with, I'd like to talking a little bit about the case law and |
| 10:36:25 | 10 | then I'd like to come back to the facts. |
| | 11 | I'm sure Your Honor is aware of this -- I have not |
| | 12 | done many Franks' motions, so I apologize if I belabor this |
| | 13 | point with the Court, but I have some cases that I'd like to |
| | 14 | hand up. The first is United States vs. Sanders. This is a |
| 10:36:51 | 15 | 4th Circuit case. |
| | 16 | Your Honor, may I approach? |
| | 17 | THE COURT: Yes, sir. Thank you. |
| | 18 | MR. ZELLINGER: And I've folded over the page that |
| | 19 | is sort of relevant. This kind of lays out the test for a |
| 10:37:05 | 20 | Franks' allegation. |
| | 21 | And it says that: A defendant is entitled to |
| | 22 | attack an otherwise facially valid search warrant affidavit |
| | 23 | under the narrow exception created in Franks. It goes on to |
| | 24 | say: To obtain a Franks hearing, the defendant must make a |
| 10:37:20 | 25 | substantial preliminary showing that the affiant made a false |

| | | |
|---|---|---|
| 10:37:25 | 1 | statement knowingly and intentionally, or with reckless |
| | 2 | disregard for the truth that it was (3) necessary to the |
| | 3 | finding of probable cause. |
| | 4 | I think the defendant has come woefully short in |
| 10:37:36 | 5 | alleging any of those. |
| | 6 | And of course, this is a 4th Circuit case, but I |
| | 7 | think that lays out the test that's at the bottom of page 16. |
| | 8 | To be entitled to a hearing on the truth of the factual |
| | 9 | allegations contained in the search warrant, the defendant has |
| 10:37:56 | 10 | to make this preliminary showing that the affiant knowingly or |
| | 11 | recklessly made a false statement in the affidavit. And that |
| | 12 | comes from State vs. Pellum which is citing State vs. |
| | 13 | Fernandez. If I can hand that up to the Court. May I |
| | 14 | approach? |
| 10:38:16 | 15 | THE COURT: Yes, sir. |
| | 16 | MR. ZELLINGER: And that's on Page 10. And this is |
| | 17 | a North Carolina case from our Court of Appeals. |
| | 18 | So looking at this test, it's not just that there's |
| | 19 | some contradiction in evidence that the defendant finds. It |
| 10:38:42 | 20 | has to be a knowing or reckless -- knowingly or recklessly |
| | 21 | making a false statement. And that case is about a |
| | 22 | confidential informant. The Court ultimately rules on that. |
| | 23 | The last case I kind of wanted to point the Court |
| | 24 | to, in that case, in Pellum, the confidential informant |
| 10:39:04 | 25 | testified at the trial consistent with the information that's |

| | |
|---|---|
| 10:39:09 | 1 |

in the affidavit.  That's the same thing that's going to

2  happen here.  I'll get to that in a moment.

3          The Court says, well, defendant denies what the

4  confidential informant and the officer assert.  This denial is

10:39:21  5  insufficient to make a showing of falsity or recklessness

6  requiring suppression.

7          Essentially what you just heard from defendant's

8  counsel is that they were concerned that there's this April

9  13th text message, and then Investigator Hoffman in the search

10:39:36  10  warrant affidavit puts in a May text message, and the facts I

11  believe you are going to hear from the witness stand, there's

12  two text messages.  And that is accurate as to what DeVan

13  Barbour told him.  Even if that was wrong, I still would argue

14  that that does not rise to the level of reckless falsity.

10:40:01  15          I want to turn you to one more State case before I

16  get more into the facts, and that's State vs. Moore.  If I can

17  approach with that.

18          THE COURT:  Yes, sir.

19          MR. ZELLINGER:  Specifically, page 9 of State vs.

10:40:13  20  Moore:  A defendant may contest the validity of the search

21  warrant.  Reckless disregard for the truth.  I mean, in a

22  hypothetical situation our Investigator Hoffman got something

23  wrong, which I argue he did not.  We're taking essentially one

24  sentence out of a 22-page affidavit in which there's a dispute

10:40:42  25  between the April 13th text message and the May text message.

| | | |
|--|--|--|
| 10:40:48 | 1 | I have listened to the interview of DeVan Barbour |
| | 2 | by Investigator Hoffman. I think the evidence that you're |
| | 3 | going to hear at trial is that there are two text messages. |
| | 4 | It's kicked off with a text message and DeVan Barbour will |
| 10:41:02 | 5 | state that he remembers where he was. And then there's this |
| | 6 | extortion attempt in the car. And then on May 12th, I |
| | 7 | believe, there's another text message that sets off this |
| | 8 | flurry of activity that's reflected in the phone where DeVan |
| | 9 | Barbour is calling defendant, calling Angie Barbour trying to |
| 10:41:21 | 10 | figure out what's going to happen because this is five days |
| | 11 | before the primary. |
| | 12 | The omission -- defendant made sort of a vague |
| | 13 | assertion about Ms. Barbour denying any of this. There |
| | 14 | is -- she does deny any of this. And she denies having a part |
| 10:41:41 | 15 | in the extortion argument, but she told the defendant about |
| | 16 | what DeVan Barbour she alleged had done, and that's |
| | 17 | incorporated in the search warrant affidavit. |
| | 18 | So in terms of a reckless or a falsity, I think |
| | 19 | this falls very short. I'd argue to the Court that there's no |
| 10:41:59 | 20 | inaccuracy. There is confusion about what these witnesses are |
| | 21 | going to say, because there is a little bit of a conflict in |
| | 22 | the testimony between the witnesses, but it's all relayed in |
| | 23 | these affidavits accurately. |
| | 24 | And the difference between this characterization of |
| 10:42:16 | 25 | the evidence and what would constitute warranting a Franks' |

Denise St. Clair, RPR, CRR, CRC
Official Court Reporter

| | | |
|---|---|---|
| 10:42:20 | 1 | hearing and having the veracity be an issue would be a |
| | 2 | situation like arose in State vs. Moore. On that one the |
| | 3 | investigator put in his affidavit that there were drug buys |
| | 4 | that took place at the location in question, which I think was |
| 10:42:38 | 5 | 133 Harriet Lane, and he knew at the time there were no drug |
| | 6 | buys at Harriet Lane. So he alleged that where the search |
| | 7 | warrant was going to be executed there had been drug buys, and |
| | 8 | that was false. So obviously, that's problematic. That is a |
| | 9 | completely different characterization than what we have here. |
| 10:43:01 | 10 | The defense can't really point to anything except a |
| | 11 | dispute with what the evidence is that's contained in the |
| | 12 | affidavit. For that reason, Your Honor, I'd argue to you that |
| | 13 | they don't meet their threshold of showing a recklessness or |
| | 14 | falsity or a reckless disregard of the truth of the matter. |
| 10:43:22 | 15 | So I'd ask you to deny the motion without any |
| | 16 | further evidence because I don't think that even -- and then |
| | 17 | that's the first stage; right? That's the first stage under |
| | 18 | Sanders and our case law about whether it was a false |
| | 19 | statement. I think there was a great question about whether |
| 10:43:39 | 20 | there's a false statement. I don't think they've proven to |
| | 21 | you that there are any false statements. |
| | 22 | And, then two, whether it was done knowingly and |
| | 23 | intentionally. He can make a false statement in the affidavit |
| | 24 | and it could be by accident because there's this sort of muddy |
| 10:43:52 | 25 | waters about what the testimony would say. |

Denise St. Clair, RPR, CRR, CRC
Official Court Reporter

| 10:43:54 | 1 | But then the third part is that it's necessary to |
|---|---|---|

10:43:54    1    But then the third part is that it's necessary to

2    the finding of probable cause. I'd encourage the Court to

3    look at the affidavit because there is a tremendous amount of

4    information in the affidavit from which the Court could find

10:44:06    5    that there is probable cause. Assuming arguendo that this was

6    some sort of error, you could exclude that and it still

7    wouldn't be basically harmless error. There's a tremendous

8    amount of information in this affidavit to warrant looking at,

9    I believe, the Snapchat records -- the defendant's Facebook

10:44:30    10    and defendant's Snapchat. There's a lot of probable cause to

11    go into there.

12    These affidavits contain that, you know, there's

13    this sort of circumstantial evidence about what each witness

14    says, but we also have these pinger messages where the

10:44:46    15    defendant is sending a message that says: I think DeVan is

16    the key. She needs to feel DeVan bob. I mean, that seems

17    especially relevant. That alone, I would argue to you, raises

18    the amount of evidence to the level of probable cause and that

19    DeVan Barbour is the extortion attempt.

10:45:06    20    I'd be happy to answer any questions the Court may

21    have. I think it's clear at this point merely disagreeing or

22    arguing that there's contradicting evidence to what is in the

23    search warrant is not sufficient to get a Franks hearing. It

24    has to be proven by a preliminary showing that there is this

10:45:26    25    false statement knowingly, intentionally made. Essentially

| 10:45:30 | 1 | we're coming down to dates of text messages. I mean, I can't |
| | 2 | remember when we were arguing this morning about a discovery |
| | 3 | issue and what happened last Thursday. These affidavits are |
| | 4 | from December of 2022 related to something that happened in |
| 10:45:49 | 5 | April. So I think the defendant falls woefully short. I'd be |
| | 6 | happy to answer any questions. |
| | 7 | THE COURT: I don't have any now. |
| | 8 | Mr. Tyndall, I'll give you a chance. I did just |
| | 9 | want to read to you, I guess, part of what the Court of |
| 10:46:02 | 10 | Appeals said in State vs. Moore. I'm sure you've read it. |
| | 11 | But it says basically that a claim under Franks is not |
| | 12 | established merely by evidence that contradicts assertions or |
| | 13 | even that shows the affidavit contains false information. |
| | 14 | Rather, the evidence must establish facts from which the |
| 10:46:23 | 15 | finder of fact might conclude that the affiant alleged the |
| | 16 | facts in bad faith. If the defendant establishes by a |
| | 17 | preponderance of the evidence that a false statement knowingly |
| | 18 | and intentionally or with reckless disregard for the truth was |
| | 19 | made, then the false information must be set aside. |
| 10:46:43 | 20 | So I think we're -- I just wanted to give another |
| | 21 | opportunity. I know that we have those different dates for |
| | 22 | the text messages, just -- I guess just what evidence do you |
| | 23 | have now that you think might justify that hearing and what |
| | 24 | gets you over that hurdle. |
| 10:47:00 | 25 | MR. TYNDALL: Your Honor, that is the evidence. I |

| 10:47:02 | 1 | mean, that would be our contention. That's what we put in the |
| | 2 | warrant. I mean, there were some other omissions and things |
| | 3 | like that. We feel like the timeline is misleading, but that |
| | 4 | is -- that is the argument, and that's the basis for it. |
| 10:47:16 | 5 | THE COURT: Thank you. And I appreciate that. I'm |
| | 6 | going to review these cases and also go back and look at this |
| | 7 | other stuff in a minute. |
| | 8 | Mr. Zellinger, anything further for the State on |
| | 9 | this? |
| 10:47:27 | 10 | MR. ZELLINGER: No, Your Honor. I wondered if the |
| | 11 | other motion to suppress for the location at 1370 Cameron Way, |
| | 12 | I think -- is that -- I think that's essentially the same |
| | 13 | argument. |
| | 14 | MR. TYNDALL: No. That's a different argument. |
| 10:47:40 | 15 | That's a more traditional search warrant argument. |
| | 16 | THE COURT: Yes, sir. Do you want to address that |
| | 17 | now? |
| | 18 | MR. TYNDALL: I'm happy to address it right now. |
| | 19 | THE COURT: Which one is it on the sheet that I'm |
| 10:47:52 | 20 | looking at? |
| | 21 | MR. TYNDALL: That's entitled Defendant's Motion to |
| | 22 | Suppress Warrant In re: 1370 Cameron Way. |
| | 23 | THE COURT: Okay. All right. I have that. Thank |
| | 24 | you. |
| 10:48:09 | 25 | Whenever you are ready. |

Denise St. Clair, RPR, CRR, CRC
Official Court Reporter

| | | |
|---|---|---|
| 10:48:11 | 1 | MR. TYNDALL: So Your Honor, there are a number of |
| | 2 | problems with this warrant, and it's very different than our |
| | 3 | argument in other warrants, because this warrant essentially |
| | 4 | relates to the search of Mr. Johnson's office and his car. |
| 10:48:34 | 5 | The allegations are essentially that the |
| | 6 | Investigator Hoffman went by a fitness center where my client |
| | 7 | kept an office for things like podcasts and political |
| | 8 | activity, things like that. And as he -- the owner let him |
| | 9 | in. As he was walking in, he saw a phone on a table, and |
| 10:48:59 | 10 | based on seeing a phone on a table, he went and he left the |
| | 11 | premises. The basis for the warrant is he said that there |
| | 12 | were two iPhones. One, an XS serial number, and he gives the |
| | 13 | serial number. It's in Number 1 under the attachment, |
| | 14 | property evidence to be seized; and number 2, an iPhone SE |
| 10:49:26 | 15 | series, and then he gives the number. |
| | 16 | THE COURT: Yes, sir. |
| | 17 | MR. TYNDALL: Your Honor, this particular warrant |
| | 18 | concludes that the basis for his search would be the crime of |
| | 19 | larceny, failure to discharge the duties of a public official, |
| 10:49:48 | 20 | and obstruction of justice. Now, this is back in January |
| | 21 | 2023, pre indictment. |
| | 22 | The first thing about this warrant, Your Honor, is |
| | 23 | it does not allege a crime. It doesn't allege a crime was |
| | 24 | committed. What it alleges is that Investigator Hoffman saw |
| 10:50:11 | 25 | an iPhone sitting on a table, and he knew that Mr. Johnson had |

|          |    |                                                                |
|----------|----|----------------------------------------------------------------|
| 10:50:23 | 1  | separated from the Smithfield Police Department and that he    |
|          | 2  | had not returned two iPhones.  And they were very specific.    |
|          | 3  | One was of one model, and the other was of a different model.  |
|          | 4  | And based on that, he alleges that he left to go get a search  |
| 10:50:42 | 5  | warrant.  He says that he could identify the model sitting on  |
|          | 6  | the table.                                                     |

The first important thing to remember is there's only one phone on the table.  He says the model matches the phone missing from the Smithfield Police Department.  The problem with that is, according to him, there's two phones. He doesn't identify the model.  He doesn't say which one it is or how he could possibly by looking across the room at a phone see that it matched the model that was missing from the Smithfield Police Department.  Now, that's problematic, but that's all within the four corners of the warrant.

So here's what the other problem is.  You know, there's -- larceny is not committed by failing to return property.  So that's one problem.  So he doesn't allege that a crime occurred.  He doesn't allege the elements of failure to discharge a duty.

The elements of failure to discharge a duty, Your Honor, is a person was an officer of this state, willfully omitted, neglected, or refused to discharge the duties of his office and caused harm to the public.  Nothing in the affidavit alleges that Mr. Johnson omitted, neglected, or

10:52:09 1  refused a duty of the office.  The most he alleges is that he
2  secretly recorded a meeting.  And it never alleges that he
3  violated the duty.

4  Now, as to the obstruction of justice, the elements
10:52:28 5  are the defendant unlawfully and willfully obstructed justice
6  with deceit and intent to defraud.  There's no allegation
7  that -- you know, in the warrant, he alleges that my client at
8  some point after he left, left the building with a white box.

9  So first of all, we don't know how the white box
10:52:56 10  got in the build.  We don't know that there was anything in
11  particular in the white box.  He doesn't identify a white box
12  in the office to be removed.

13  Second of all, it's my client's office.  There's
14  nothing illegal.  There's nothing unlawful about removing
10:53:14 15  something from your own office when it's not secured and no
16  one is telling you not to.

17  There's no -- there's no evidence or inference in
18  the warrant that indicates my client even knew that
19  Investigator Hoffman had been to the gym.  So there's nothing
10:53:32 20  in the warrant that indicates Mr. Johnson would even know that
21  he's under investigation for this.

22  Finally, the search warrant doesn't allege any
23  facts sufficient to show that he might find evidence of a
24  crime at the gym or in Mr. Johnson's car.  He concludes that
10:54:05 25  he's looking for evidence for larceny, obstruction of justice,

| | |
|---|---|
| 10:54:09 | 1 |
| | 2 |
| | 3 |
| | 4 |
| 10:54:25 | 5 |
| | 6 |
| | 7 |
| | 8 |
| | 9 |
| 10:54:44 | 10 |

1   and failure to discharge a duty.  There's nothing about that

2   warrant, the factual support in that warrant that indicates

3   there's a connection between my client's office, a phone in

4   that office and him leaving with a white box to indicate that

5   there's -- that there might be illegal material there.  Other

6   than his conclusion that he could recognize the model of the

7   phone -- I mean, the model of the phone, there's plenty of

8   iPhones out there.  He could not identify -- it's not like

9   saying, well, there's a purple car with a dent in the back and

10  you see a purple car with a dent in the back.  It's an iPhone

11  is what he sees.  But he doesn't connect that to any criminal

12  activity.

13          A big problem with this warrant, Your Honor, is

14  even if it did, it becomes a general warrant.  What he says is

15  he sees evidence there's an iPhone on the table, but then he

16  seeks a warrant for a long list of material, 3 through 11,

17  passwords, associated power cords, digital camera, navigation

18  devices, mobile devices, storage media, that go way beyond the

19  scope of what he would be allowed to do even if he could

20  recognize that the iPhone belonged to the Smithfield Police

21  Department.

22          So essentially what he did was he made a conclusion

23  that iPhone must be the iPhone that belongs to the Smithfield

24  Police Department.  He saw my client leaving his own office

25  which he had every right to do.  And then he asked the Judge

| | | |
|---|---|---|
| 10:55:52 | 1 | to issue a warrant that allowed him to get a huge -- you know, |
| | 2 | a tremendous amount of data that the warrant just simply does |
| | 3 | not support. |
| | 4 | I mean, the warrant has to be based on probable |
| 10:56:10 | 5 | cause that the evidence of a crime that may be found and the |
| | 6 | places to be searched. He doesn't identify a crime. He |
| | 7 | doesn't support the elements of any of those crimes within the |
| | 8 | four corners of the warrant. And then even if it did, it |
| | 9 | certainly wouldn't justify this expansive search. So we would |
| 10:56:34 | 10 | contend that that warrant for different reasons should be |
| | 11 | suppressed and the evidence excluded in this trial. |
| | 12 | THE COURT: Yes, sir. Can you -- and I apologize. |
| | 13 | If you said it, I just didn't pick it up. But the connection |
| | 14 | between that white box and these phones? |
| 10:56:56 | 15 | MR. TYNDALL: Well, there is no connection, Your |
| | 16 | Honor. I mean, here's the problem, and, you know, in a |
| | 17 | warrant the investigator has to connect the dots for the |
| | 18 | Judge. That's the whole point of having a neutral magistrate |
| | 19 | consider the four corners of the warrant. It's not to go back |
| 10:57:16 | 20 | and testify, this is what we think happened. It's to connect |
| | 21 | the dots. And there's no connection. He gets information |
| | 22 | that the office belongs to my client, and he sees an iPhone |
| | 23 | sitting on a table and my client's not there. That's what he |
| | 24 | knows when he goes to get this warrant. |
| 10:57:40 | 25 | I mean, he gets a Clayton police officer to go and |

| 10:57:44 | 1 | sit outside to take a photo of my client walking out of the |
|---|---|---|
| | 2 | building with a white box. There's no indication where the |
| | 3 | white box comes from, whether it had clothes in it, or whether |
| | 4 | it had files in it. There's not an allegation in here that he |
| 10:58:00 | 5 | was keeping files in the office or keeping phones in the |
| | 6 | office in a white box. |
| | 7 | So you know, if you look in the warrant, he uses |
| | 8 | the fact that my client is walking out of there with a white |
| | 9 | box as a basis to support his conclusion, but it's not |
| 10:58:16 | 10 | criminal activity, and it's not evidence of criminal activity |
| | 11 | at this point, based on -- based on the crimes that he's |
| | 12 | alleged. |
| | 13 | So he had every right to go to his office. He had |
| | 14 | every right to remove the items in there. If Investigator |
| 10:58:30 | 15 | Hoffman did not want that to happen, he had the ability to |
| | 16 | post someone and say, you can't go back in your office. He |
| | 17 | doesn't allege in the warrant that my client was on notice |
| | 18 | that he was doing an investigation. He doesn't allege that my |
| | 19 | client had any reason to believe that he couldn't take |
| 10:58:56 | 20 | material from his own office, and certainly, the material he |
| | 21 | took in the white box was -- wasn't contraband or evidence of |
| | 22 | a crime. |
| | 23 | THE COURT: Yes, sir. Thank you very much. |
| | 24 | Mr. Zellinger. |
| 10:59:08 | 25 | MR. ZELLINGER: Your Honor, I'm having a hard time |

| | | |
|---|---|---|
| 10:59:11 | 1 | finding a copy of the search warrant.  May I borrow yours? |
| | 2 | MR. TYNDALL:  It might have comments on there about |
| | 3 | you. |
| | 4 | MR. ZELLINGER:  Your Honor, what I would say is |
| 10:59:26 | 5 | that the -- personally, to start with, the defendant's |
| | 6 | allegation that there's no crime alleged.  Looking at page 2, |
| | 7 | it does allege not just larceny of property, but also |
| | 8 | willfully failing to discharge duties and obstruction of |
| | 9 | justice.  And obstruction of justice was that the defendant |
| 10:59:40 | 10 | was tipped off by an employee of that gym that someone from |
| | 11 | the police -- or somebody from the DA's office was there.  So |
| | 12 | that is part of the relevant information. |
| | 13 | What I wanted to check in here is whether that |
| | 14 | information was specifically included. |
| 10:59:57 | 15 | MR. TYNDALL:  I don't think it's in that one. |
| | 16 | MR. ZELLINGER:  And if it's not in that one -- can |
| | 17 | I have a moment, Your Honor? |
| | 18 | THE COURT:  Yes, sir. |
| | 19 | MR. ZELLINGER:  So yea, that fact is not in this. |
| 11:00:19 | 20 | But isn't in this is that he spoke with Dustin Parks, the |
| | 21 | owner.  And so again, defendant's arguing that the State has |
| | 22 | not proven beyond a reasonable doubt in this affidavit that |
| | 23 | the crime of obstruction of justice has occurred. |
| | 24 | The fact is that what is alleged here is probable |
| 11:00:36 | 25 | cause that there is the potential for the crime of obstruction |

| | | |
|---|---|---|
| 11:00:42 | 1 | of justice to have occurred here. What a tremendous |
| | 2 | coincidence that at 10:00 a.m., January 25th, the investigator |
| | 3 | goes to Clayton Fitness, speaks with the owner to document |
| | 4 | about how long the video was there, and then during the |
| 11:00:54 | 5 | conversation the owner -- and this is on page 5 -- |
| | 6 | acknowledges that Ronald Johnson rented an office inside the |
| | 7 | gym. So immediately, there's relevance there. Because where |
| | 8 | this extortion is alleged to have occurred is behind the |
| | 9 | Planet Fitness, where the defendant rents an office there. |
| 11:01:08 | 10 | Mr. Johnson used the business after hours to work |
| | 11 | out and hold meetings at the gym, according to Mr. Parks. |
| | 12 | Mr. Parks stated that he was friends with Mr. Johnson, but |
| | 13 | didn't speak to him often. In fact, he went on to state that |
| | 14 | Mr. Johnson no longer rented the office space. |
| 11:01:24 | 15 | So again, this is very accurate information. And |
| | 16 | then he's asked to take a look at it, and what's in the four |
| | 17 | corners of this document is: I remained outside the office |
| | 18 | but viewed wrestling figures, a table with an iPhone sitting |
| | 19 | in plain view, and other electronic storage items, as well as |
| 11:01:39 | 20 | a large lighting apparatus for video or photography. I |
| | 21 | requested assistance from Clayton Police Department to observe |
| | 22 | Clayton Fitness while I went to apply for a search warrant. |
| | 23 | And then Mr. Johnson arrives at 10:52 a.m., less than an hour |
| | 24 | after he left. |
| 11:01:54 | 25 | I mean, what a significant coincidence that is that |

| | | |
|---|---|---|
| 11:01:58 | 1 | an hour later -- 52 minutes later, after speaking to the owner |
| | 2 | and looking at the office that Mr. Johnson arrives and then |
| | 3 | leaves Clayton Fitness carrying a large white box in his hand |
| | 4 | and the defendant driving this Dodge Challenger.  That alone |
| 11:02:16 | 5 | raises probable cause that the defendant committed the crime |
| | 6 | of obstruction of justice in that there's an iPhone in that |
| | 7 | office and he gets -- I mean, it's not in the four corners of |
| | 8 | the document so the Court cannot consider that Mr. Parks |
| | 9 | tipped him off.  But even in the absence of that fact, what a |
| 11:02:35 | 10 | tremendous coincidence that at 10 a.m. he's there asking about |
| | 11 | this, looking at the office, talking to Mr. Parks, and then 52 |
| | 12 | minutes later the defendant arrives and removes this |
| | 13 | information from his office.  That is -- that is -- there's |
| | 14 | probable cause there to believe the defendant is destroying |
| 11:02:51 | 15 | evidence.  And so I would argue to you that that alone in and |
| | 16 | of itself constitutes probable cause that obstruction of |
| | 17 | justice has occurred. |
| | 18 | There's also information in this about secretly |
| | 19 | recording a closed session in which administrator salaries |
| 11:03:12 | 20 | were discussed.  And that's in paragraph 2.  That establishes |
| | 21 | probable cause that the attorneys for the school board |
| | 22 | investigated and found that Ronald Johnson secretly recorded a |
| | 23 | closed session during which administrator salaries were |
| | 24 | discussed.  The findings of the school board investigation |
| 11:03:27 | 25 | were shared with the Johnston County District Attorney's |

| | | |
|---|---|---|
| 11:03:29 | 1 | office:  I was assigned to conduct an independent |
| | 2 | investigation in the matter. |
| | 3 | It is not an inappropriate leap to believe that the |
| | 4 | defendant has committed willfully failing to discharge duties |
| 11:03:46 | 5 | based off of that paragraph 2.  And the attachment, attachment |
| | 6 | 1 lists these iPhones that are potential evidence in the case, |
| | 7 | that there's probable cause the defendant was secretly |
| | 8 | recording this.  So the evidence of that secret recording is |
| | 9 | not going to be found in a file cabinet.  It's going to be |
| 11:04:06 | 10 | found in a phone. |
| | 11 | So the reason that the State is seeking to search |
| | 12 | this, the car or the office, is that this information could be |
| | 13 | found on a phone.  And to buttress that, Investigator Hoffman |
| | 14 | does write in here that when he's looking at the office, he |
| 11:04:29 | 15 | sees a table with an iPhone sitting in plain view.  Defendant |
| | 16 | argues, well, how do you know that that's the iPhone that |
| | 17 | could have potential evidence.  That's not the standard before |
| | 18 | the Court. |
| | 19 | The standard is if that could contain evidence, |
| 11:04:42 | 20 | then if there's probable cause to believe the defendant has |
| | 21 | committed a crime.  One, secretly recording meetings which |
| | 22 | would be a willful failure to discharge duties; or two, that |
| | 23 | he's been tipped off and he's destroying evidence.  It's |
| | 24 | incredibly probable that searching these locations will result |
| 11:04:58 | 25 | in these iPhones. |

| | | |
|---|---|---|
| 11:04:59 | 1 | The State does not have to say that this iPhone was |
| | 2 | the iPhone that's alleged.  It's just that there's digital |
| | 3 | media that's in there.  I mean, these things are fungible |
| | 4 | generally, and so I would argue to you that there is probable |
| 11:05:13 | 5 | cause to warrant the search, especially looking at the places |
| | 6 | to be searched.  And I'm just talking about this in the matter |
| | 7 | of 1370 Cameron Way. |
| | 8 | Additionally, an iPhone is on the table.  I mean, |
| | 9 | we know the evidence is there at this point.  And, yes, |
| 11:05:35 | 10 | Mr. -- the allegation is that Ronald Johnson left the gym with |
| | 11 | property, but at this point when this search warrant is being |
| | 12 | filed, the belief is that that iPhone is still on that table. |
| | 13 | It's right there.  Come to find out later, that was not the |
| | 14 | case. |
| 11:05:49 | 15 | So I would argue to you that the search of this car |
| | 16 | and the location of the -- at 1370 Cameron Way is incredibly |
| | 17 | relevant in that the information that is provided in the |
| | 18 | search warrant is sufficient to say that there is probable |
| | 19 | cause.  We don't have to show that there was a certainty that |
| 11:06:07 | 20 | that phone is there.  We don't have to show that there -- you |
| | 21 | know, that we know that the phone has this sparkly case on it |
| | 22 | or something along those lines.  We merely have to show that |
| | 23 | there's probable cause that a crime has been committed.  And |
| | 24 | you have that in paragraph 2, and you have that in paragraph |
| 11:06:22 | 25 | 7, and that the evidence of that will be found in this place, |

| | | |
|---|---|---|
| 11:06:26 | 1 | and that is this digital media. And we know that there's an |
| | 2 | iPhone at that location. |
| | 3 | So I'm happy to answer any questions from the |
| | 4 | Court. |
| 11:06:34 | 5 | THE COURT: I don't think I have any right now. |
| | 6 | Any response, Mr. Tyndall? |
| | 7 | MR. TYNDALL: His argument is what makes this a |
| | 8 | general warrant. I mean, it's, well, there's an iPhone so it |
| | 9 | must be the one he supposedly recorded the session. First of |
| 11:06:47 | 10 | all, the elements of that crime are that he willfully omitted, |
| | 11 | neglected, or refused to discharge a duty, not that he did |
| | 12 | something unethical that he wasn't supposed to do. So I would |
| | 13 | contend that they don't even allege a crime there. |
| | 14 | Secondly, as to the obstruction of justice, Your |
| 11:07:05 | 15 | Honor, it has to be unlawful. It's not unlawful conduct to |
| | 16 | walk into your office and take a box out. And that's what we |
| | 17 | have in the warrant. All this stuff about he was tipped off |
| | 18 | is not in the four corners of the warrant. There's nothing in |
| | 19 | there that indicated that. |
| 11:07:20 | 20 | The Court has to focus directly on the four corners |
| | 21 | of the warrant, and the allegations do not support probable |
| | 22 | cause. And it's not that it could be on there. It's that a |
| | 23 | crime is likely committed and there's likely that the evidence |
| | 24 | is contained in that phone. I mean, there's just |
| 11:07:41 | 25 | no -- there's no connection between the two. Even if it was |

| | |
|---|---|
| 11:07:44 | 1 the phone for Smithfield PD, there's no connection to a crime |
| | 2 because there's not one alleged about that. So I'd move to |
| | 3 suppress that. |
| | 4 THE COURT: Yes, sir. Thank you. That is |
| 11:07:53 | 5 something I do want to review, that motion, so when we take |
| | 6 our break I'm going to look at that. I want to get all these |
| | 7 orders on the record as soon as we come back from the break. |
| | 8 Is there anything else either side wants to get on |
| | 9 the record at this point? |
| 11:08:08 | 10 MR. ZELLINGER: With regard to the motion to |
| | 11 suppress the 1370 Cameron Way, I believe that number 3, the |
| | 12 search warrant, is a white and pink iPhone, and I think that's |
| | 13 the defendant's wife's iPhone. So I don't even know that |
| | 14 there's anything -- I don't know that that's especially |
| 11:08:30 | 15 relevant, but I just wanted to bring that to the Court's |
| | 16 attention. |
| | 17 THE COURT: Other than that, anything else we need |
| | 18 to get on the record? |
| | 19 MR. ZELLINGER: I don't think so, Your Honor. |
| 11:08:40 | 20 Thank you. |
| | 21 MR. TYNDALL: Not from me. |
| | 22 THE COURT: Why don't we take til about 11:30 by |
| | 23 the back room clock. |
| | 24 Mr. Tyndall, I do know based on a previous |
| 11:08:52 | 25 discussion that was off the record about the contents of a |

| | | |
|---|---|---|
| 11:08:56 | 1 | phone, do you -- can you make a call now and you find out more |
| | 2 | information about that? |
| | 3 |     MR. TYNDALL: I can, Your Honor. I'll tell you |
| | 4 | that the gentleman I spoke to said he'd be available probably |
| 11:09:09 | 5 | more like at 12, but I'd be happy to call and see. |
| | 6 |     THE COURT: That's okay. That's something we're |
| | 7 | trying to track. |
| | 8 |     MR. TYNDALL: I'll be happy to make a call right |
| | 9 | now. |
| 11:09:20 | 10 |     THE COURT: We'll be in recess until 11:30. |
| | 11 |     (Recess.) |
| | 12 |     THE COURT: Thank you for your patience. Sorry I |
| | 13 | was a little late. I was sorting through the cases. Anything |
| | 14 | for the record we need to discuss? |
| 11:37:56 | 15 |     These are just verbal orders at this point. My |
| | 16 | intention is to issue written orders in the next couple days. |
| | 17 | I may get the State to maybe assist and prepare some of those, |
| | 18 | but I just wanted to give you something now for the record for |
| | 19 | your planning purposes as we move forward. |
| 11:38:22 | 20 |     With respect to these various motions, the Court |
| | 21 | will find specifically, Mr. Tyndall, your argument under |
| | 22 | Franks to kind of renew and rehear some of the previously |
| | 23 | litigated motions and the order by Judge Pittman, the Court |
| | 24 | will find in that on July 15th, 2024, a 23-page motion was |
| 11:38:55 | 25 | filed by the defendant's then attorney in this matter, that |

| 11:39:07 | 1 | that motion did include all 10 of the search warrants that had |
| | 2 | been filed in the case and that two orders were entered in |
| | 3 | that matter by Judge Pittman, one on August the 20th and one |
| | 4 | on September 26th.  Those orders entered by Judge Pittman |
| 11:39:27 | 5 | specifically denied the defendant's motion to suppress and |
| | 6 | also denied the defendant's motion for reconsideration of the |
| | 7 | prior orders. |
| | 8 | This Court having again heard the arguments on |
| | 9 | those motions is mindful of the rule that one judge cannot |
| 11:39:47 | 10 | overrule -- or overrule the ruling of another judge, |
| | 11 | therefore, in the Court's discretion -- Mr. Tyndall, I |
| | 12 | certainly appreciate your motion on behalf of your client, |
| | 13 | however, at this time any motion is denied as those matters |
| | 14 | were previously litigated and decided by Judge Pittman |
| 11:40:09 | 15 | earlier. |
| | 16 | With respect to the remaining orders, that my |
| | 17 | understanding is have not been heard, J, K, L, and M, the |
| | 18 | Court next considered those by stipulation.  It was my |
| | 19 | understanding, Mr. Tyndall, that the defendant did not wish to |
| 11:40:31 | 20 | proceed on K which was indicated as the TracFone, also did not |
| | 21 | wish to proceed on M which was Allyson Bond's phone, |
| | 22 | therefore, the Court did hear arguments on J and L. |
| | 23 | Specifically reviewing your written motion under |
| | 24 | Franks and the Franks' standard in this matter from the |
| 11:40:59 | 25 | arguments heard in court, this Court will conclude that any |

| 11:41:03 | 1 | discrepancy between the April and May text did not rise to the |
| | 2 | standards addressed in Franks; therefore, in the Court's |
| | 3 | discretion -- again, Mr. Tyndall, I certainly appreciate your |
| | 4 | motion with regard to those two, however, in the Court's |
| 11:41:19 | 5 | discretion, the defendant's motion in those will be denied as |
| | 6 | well. |
| | 7 | I next return my attention to the remaining motion |
| | 8 | which was on the Cameron Way, and I wanted to actually spend a |
| | 9 | little bit more time with that, but I was mindful of the time. |
| 11:41:34 | 10 | I told you I'd be back at 11:30. I was already ten minutes |
| | 11 | late. That's something if you will both allow me -- just |
| | 12 | until after lunch to allow me to continue reviewing that, that |
| | 13 | will be the first thing we address when we come back from |
| | 14 | lunch. I just want to -- I know that's important to both |
| 11:41:51 | 15 | sides, and I don't want to set an arbitrary standard. I feel |
| | 16 | like I'm kind of rushing myself in getting through what I |
| | 17 | consider to be important. |
| | 18 | There are some other matters that I did want to |
| | 19 | discuss with you, mainly with the jury, and all that kind of |
| 11:42:08 | 20 | stuff. We need to do that on the record or in chambers. |
| | 21 | Specifically, the anticipated number of jurors if we do bring |
| | 22 | in both panels. I don't know if we need to do this |
| | 23 | necessarily on the record. We can do that in chambers and |
| | 24 | then come back and put anything on the record we need to. |
| 11:42:23 | 25 | But is there anything right now -- Mr. Tyndall, |

| | | |
|---|---|---|
| 11:42:26 | 1 | I'll start with you on behalf of your client.  Anything |
| | 2 | further, other than my ruling, on your motion regarding |
| | 3 | Cameron Way?  Anything further we need to get on the record? |
| | 4 | MR. TYNDALL:  Your Honor, as to those motions, no, |
| 11:42:40 | 5 | sir. |
| | 6 | Your Honor, I did speak to the computer forensic |
| | 7 | guy.  He answered the phone.  He said he's meeting with |
| | 8 | someone right now and can give me an answer in an hour or two |
| | 9 | as to it.  I didn't get the sense he totally understood what I |
| 11:42:58 | 10 | was asking, but he -- you know, I think he was in the middle |
| | 11 | of something, and I know that he'll get back to me in an hour |
| | 12 | or two.  I probably won't have an answer until I talk -- well, |
| | 13 | I won't have an answer until I talk to him, so... |
| | 14 | THE COURT:  Yes, sir.  And let me ask you to do |
| 11:43:15 | 15 | this.  I realize this is something we had a conversation about |
| | 16 | in chambers, and I do just maybe for the record, if you can |
| | 17 | just kind of go over what the issue is and what your concern |
| | 18 | is and why we're going through this just maybe for the record. |
| | 19 | MR. TYNDALL:  Right.  And just to give you a little |
| 11:43:30 | 20 | background, Your Honor.  I got in this case about 40 days ago. |
| | 21 | I can't remember the exact date.  Judge Brown ordered the |
| | 22 | State to serve discovery directly to me.  We worked to do |
| | 23 | that.  The State did serve discovery.  There was some issues |
| | 24 | with it, but we generally negotiated our way around those. |
| 11:43:54 | 25 | It's a massive amount of information.  We had a full staff |

| | | |
|---|---|---|
| 11:43:58 | 1 | pretty much -- not a full staff, but we had several people |
| | 2 | work on it. |
| | 3 | One thing we realized in our review was that in the |
| | 4 | internal investigation that was conducted by the Smithfield |
| 11:44:15 | 5 | Police Department, a great deal of that information was shared |
| | 6 | with Investigator Hoffman for his investigation on behalf of |
| | 7 | the district attorney. We had a lot of that information in |
| | 8 | our discovery folder that the State had served. At some point |
| | 9 | we realized that the investigator for the Smithfield Police |
| 11:44:46 | 10 | Department Internal Affairs investigator was a person named |
| | 11 | Lieutenant West, who I understand has since retired. |
| | 12 | Lieutenant West gave a very detailed report. It's |
| | 13 | about 27 pages. There was an addendum to that that was -- a |
| | 14 | couple of addendums, actually, and one of those Lieutenant |
| 11:45:05 | 15 | West mentioned that some discovery on a USB was provided and |
| | 16 | gave a very specific number, and then sent -- in addition to |
| | 17 | that, he had delivered to Investigator Hoffman, I think it |
| | 18 | said, a USB drive with a phone extraction of Angie Barbour. |
| | 19 | Your Honor, we looked and we could not find that |
| 11:45:32 | 20 | phone extraction so we contacted the State. The State |
| | 21 | contacted Investigator Hoffman. Investigator Hoffman said, I |
| | 22 | never got that from Lieutenant West. We tried to contact |
| | 23 | Lieutenant West to figure it out. We actually subpoenaed |
| | 24 | Lieutenant West. It turns out the State's subpoena was not |
| 11:45:54 | 25 | served. We don't know whether it was served or not, but we |

| 11:45:57 | 1 | understand Lieutenant West was out of the country. So it |
| | 2 | probably wasn't. |
| | 3 | When we couldn't resolve it, I called |
| | 4 | Mr. Zellinger. I said, look, I'm going to have to raise this |
| 11:46:07 | 5 | issue. I want to give you some advance notice. So he called |
| | 6 | Investigator Hoffman. My understanding is Investigator |
| | 7 | Hoffman originally thought that he never got it, but then upon |
| | 8 | looking realized there is a phone extraction. It's very |
| | 9 | large. We have not looked at it. We don't -- and I don't |
| 11:46:25 | 10 | think I'm qualified really to do -- certainly not a quick |
| | 11 | assessment. |
| | 12 | THE COURT: When did you actually get that phone |
| | 13 | extraction? |
| | 14 | MR. TYNDALL: 9:30. |
| 11:46:39 | 15 | THE COURT: This morning? |
| | 16 | MR. TYNDALL: Yes, this morning. 9:30, 10:00. |
| | 17 | I mean, in fairness, Investigator Hoffman offered |
| | 18 | to deliver it to me last night, but I didn't want him to drive |
| | 19 | two hours when I knew I wasn't going to look at it. So we got |
| 11:46:53 | 20 | it this morning, and my hope is -- I mean, I just don't |
| | 21 | know -- Your Honor, I do not want to start the trial again -- |
| | 22 | put that on the record -- without knowing what's in that |
| | 23 | extraction and whether it's relevant to this case. I mean, |
| | 24 | that's our position. So if it does -- you know, if we can't |
| 11:47:12 | 25 | either get someone to look at it or it has information that |

| | | |
|---|---|---|
| 11:47:17 | 1 | we're going to need more time to assess, then we'll just need |
| | 2 | more time. |
| | 3 | THE COURT: Okay. I know you'll be talking to your |
| | 4 | person hopefully in the next hour or two. That's my |
| 11:47:28 | 5 | understanding. |
| | 6 | MR. TYNDALL: Right. |
| | 7 | THE COURT: And I know, depending on what he says, |
| | 8 | you might wish to be heard further. But anything else that |
| | 9 | you think we should know now or do you think we should put on |
| 11:47:44 | 10 | the record now? |
| | 11 | MR. TYNDALL: Your Honor, just that -- I will tell |
| | 12 | you that everything -- all of this data has taken a lot of |
| | 13 | time to look through. I mean, I'm not optimistic that we can |
| | 14 | look through it in a day or two, but at the same time, I'm |
| 11:47:59 | 15 | sort of in the same position the Court's in. I've got other |
| | 16 | places to be, and, you know, we're happy to try, but I'm just |
| | 17 | not optimistic. So that's all I'll say. |
| | 18 | THE COURT: Okay. Thank you. And we'll give you a |
| | 19 | chance to be heard further. I think once you talk to him, I |
| 11:48:17 | 20 | would just kind of like to know an idea of how long it might |
| | 21 | take you to -- first of all, how long it might take you to |
| | 22 | download; and second of all, how long it might take you to |
| | 23 | look through it. |
| | 24 | Mr. Zellinger, do you have anything on behalf of |
| 11:48:31 | 25 | the State? |

| | | |
|---|---|---|
| 11:48:32 | 1 | MR. ZELLINGER: Thank you, Your Honor. |
| | 2 | Your Honor, I just wanted to sort of add details to |
| | 3 | the timeline. When Mr. Tyndall got into the case back in |
| | 4 | December, Judge Brown -- we were in the process of trying to |
| 11:48:44 | 5 | regive him all the discovery that we previously had given |
| | 6 | Mr. Schmidlin, defendant's prior attorney, just out of an |
| | 7 | abundance of caution and to avoid any situations arising. |
| | 8 | We made him physical copies on like a hard drive or |
| | 9 | thumb drive which someone from his office came and picked up |
| 11:48:59 | 10 | from DOJ. And then that was taken -- it took two or three |
| | 11 | days to copy it all. So to avoid that delay and get him into |
| | 12 | the case as soon as possible we gave him a link to -- our |
| | 13 | discovery is on a cloud file and we gave him that. So he's |
| | 14 | looking at exactly what we have. And so that was done in |
| 11:49:19 | 15 | December. |
| | 16 | Last week, if my recollection is accurate, he |
| | 17 | reached out and had like four questions for the State about |
| | 18 | the discovery. And I should say we've had questions about the |
| | 19 | discovery and getting into stuff in the past. I mean, we |
| 11:49:33 | 20 | tried to help him as much as possible, but he had some |
| | 21 | questions, and one of the question was, it seems like you |
| | 22 | should have Angie Barbour's cellphone extraction. Do you have |
| | 23 | that? We contacted Investigator Hoffman and Investigator |
| | 24 | Hoffman said I've never seen it. I don't have it. |
| 11:49:47 | 25 | So then yesterday at about 6:00 or 5:00, defendant |

| | | |
|---|---|---|
| 11:49:52 | 1 | reached out said, hey, look in the discovery. Lieutenant West |
| | 2 | in this section of the discovery says, I handed this -- I gave |
| | 3 | Investigator Hoffman a thumb drive and this extraction and we |
| | 4 | have the thumb drive. So that's where the situation arose. |
| 11:50:11 | 5 | So Investigator Hoffman realizes and said, oh, I need to go |
| | 6 | back and dig through the stuff. |
| | 7 | So the file that is in question is not -- I don't |
| | 8 | think that Investigator Hoffman ever received it from the |
| | 9 | Smithfield Police Department. I think that it was uploaded. |
| 11:50:27 | 10 | Again, this is not part of the criminal investigation. This |
| | 11 | is a civil investigation that has to do with the defendant's |
| | 12 | internal affairs investigation. |
| | 13 | But just to give the Court an idea, the file name |
| | 14 | is: 22 -- 2022-09.01-07-22. So that's the folder that it's |
| 11:50:47 | 15 | in. And then underneath it: Evidence question. So overtly |
| | 16 | it is not real obvious that that's what this is. And then |
| | 17 | there's Cellebrite files within the evidence collection folder |
| | 18 | under that heading. And so when Investigator Hoffman went |
| | 19 | into it, he realized this is the Cellebrite extraction. |
| 11:51:06 | 20 | The background of that phone is somewhat peculiar |
| | 21 | in that the phone was given to a local podcaster who then gave |
| | 22 | the phone to the Smithfield Police Department to have a |
| | 23 | private company that does forensics do an extract of the |
| | 24 | contents of the phone on the condition that the police |
| 11:51:29 | 25 | department give the podcaster a copy of the extraction. |

| 11:51:34 | 1 | Lieutenant West told Investigator Hoffman he could can never |
| | 2 | access the file and was never able to examine the contents. |
| | 3 | It's like 60 gigabits. |
| | 4 | And so last night as soon as we found it, it was |
| 11:51:44 | 5 | copied, and we've offered to provide it to the defense at 7:00 |
| | 6 | at night. Mr. Tyndall said, just bring it to me in morning. |
| | 7 | So we provided it to him now. |
| | 8 | My understanding of this file, though, is that it |
| | 9 | was not Angie Barbour's phone from the time in question, the |
| 11:52:01 | 10 | dates in question related to this trial, that it is her prior |
| | 11 | phone that's from six months earlier. That's information I |
| | 12 | received. And I haven't looked at it. I don't think the |
| | 13 | State -- we do not even have a copy of it. We just provided a |
| | 14 | copy to defense. My understanding is the copy that we |
| 11:52:17 | 15 | provided defense, they can open it. They can look at this |
| | 16 | extraction. |
| | 17 | So we're happy to aid the defense in whatever they |
| | 18 | need in terms of looking at it, but my sense is that it's not |
| | 19 | been -- anything further needs to be done to this extraction. |
| 11:52:33 | 20 | It's in a palatable form which somebody can look at it. The |
| | 21 | issue is that the defense needs to look at it for their own |
| | 22 | purposes. And so, you know, I was wondering if our expert |
| | 23 | could look at it to try to make things faster, but my |
| | 24 | understanding is that they need to look for their terms and |
| 11:52:52 | 25 | their stuff. |

| 11:52:53 | 1 | And so your Honor, I'm happy to help defense in any |
| | 2 | way that I can. I just wanted to put that information on the |
| | 3 | record. |
| | 4 | THE COURT: Yes, sir. I appreciate that. |
| 11:53:00 | 5 | My hope is that we can do anything we can and work |
| | 6 | together to try to keep this trial on track, particularly in |
| | 7 | light of the fact that the jury is coming in tomorrow. |
| | 8 | So Mr. Tyndall, we'll just get maybe an update from |
| | 9 | you right after lunch, if that's okay. |
| 11:53:17 | 10 | MR. TYNDALL: That makes sense. |
| | 11 | THE COURT: Is there anything right now that we |
| | 12 | need to get on the record before we completely break? I would |
| | 13 | just like to talk to you guys one more time in chambers. I |
| | 14 | don't think it's anything we need to do on the record. It's |
| 11:53:31 | 15 | just about scheduling, it's about the jurors, and it's about |
| | 16 | some other administrative matters. We probably don't need a |
| | 17 | court reporter for that. |
| | 18 | MR. ZELLINGER: I got two things. One is that -- |
| | 19 | just to memorialize on the record. I provided the |
| 11:53:42 | 20 | questionnaire, that has been blessed by the defendant, and I |
| | 21 | believe by the Court, to the clerk's office. They just wanted |
| | 22 | the Court to order the questionnaire to be used in this trial, |
| | 23 | and so if the Court would. |
| | 24 | THE COURT: We will. |
| 11:53:54 | 25 | Mr. Tyndall, if there's no objection to that |

| | |
|---|---|
| 11:53:57 | 1 |

request; is that right?

2      MR. TYNDALL:  No, Your Honor.  We went back and

3   forth about a couple questions, and as long as it's the final

4   one, that's fine.

11:54:03   5      THE COURT:  Then without objection, the Court will

6   certainly enter that order.

7      MR. ZELLINGER:  The other issue is that defendant

8   subpoenaed Investigator Hoffman, I think primarily for the

9   Franks' hearing, but I don't know -- but he also in that

11:54:15  10   subpoena, and I haven't looked at the exact subpoena, but I

11   believe that he requested -- Investigator Hoffman's sworn

12   through the Johnston County Sheriff's Office, and I believe

13   that he requested the policies and procedures of the Johnston

14   County Sheriff's Office.

11:54:28  15      The Johnston County Sheriff's Office is represented

16   by an attorney named Ronnie Mitchell, and he filed a written

17   objection to quash or modify or ask for a protective order

18   when it comes to those policies and procedures.  I think that

19   that would be -- he had, I believe, a conflict this morning,

11:54:49  20   and he was going to try to make it here as soon as he can, by

21   like noon or so.  I don't know if that's still relevant.

22      I think -- my question essentially is for the

23   defendant about whether those policies and procedures would be

24   -- if that subpoena is for the policies and procedures for the

11:55:05  25   trial.

| 11:55:08 | 1 | THE COURT: Yes, sir. |
| | 2 | MR. TYNDALL: Well, it's relevant, Your Honor. |
| | 3 | First of all, I didn't subpoena their policies and procedures. |
| | 4 | I subpoenaed the policies and procedures specifically related |
| 11:55:16 | 5 | for securing scenes for search warrants. I think that's |
| | 6 | what's relevant for the trial. I mean, I don't know that that |
| | 7 | would be very much information, but ... |
| | 8 | And you know, I've looked at the motion to quash. |
| | 9 | They said I should have sent it to the records custodian. I'm |
| 11:55:31 | 10 | happy to re-subpoena him if that's the objection. It just |
| | 11 | seems like a thing we ought to be able to work out with a |
| | 12 | protective order if they are concerned about something, Your |
| | 13 | Honor. |
| | 14 | THE COURT: And that is what I was going to ask |
| 11:55:41 | 15 | you. Is that something you need him here to be heard on or is |
| | 16 | that something we can address now? |
| | 17 | MR. ZELLINGER: I would rather do it today and not |
| | 18 | waste the jury's time tomorrow. I just don't know -- I don't |
| | 19 | represent the Johnston County Sheriff's Office. I think that |
| 11:55:58 | 20 | they need to -- |
| | 21 | THE COURT: They do have their own lawyer |
| | 22 | representing them. |
| | 23 | MR. ZELLINGER: They have their own lawyer, and I |
| | 24 | think he needs to be heard on it. So that's why I was |
| 11:56:06 | 25 | wondering if we could have some court time for him and the |

| 11:56:08 | 1 | defendant to litigate that issue, because I don't want to |
| | 2 | interfere with the defendant's subpoena for the -- you know, |
| | 3 | having him here for the policy and procedures. |
| | 4 | Prior to Mr. Tyndall being in the case, there was |
| 11:56:18 | 5 | -- the State requested a pretty significant protective order |
| | 6 | and it kind of got whittled down to -- there is a protective |
| | 7 | order in the case. So I don't know if that would satisfy the |
| | 8 | Johnston County Sheriff's Office, but I just wanted to put |
| | 9 | that on the -- like, I would much rather do that today so that |
| 11:56:35 | 10 | we don't have to waste any of the jury's time tomorrow |
| | 11 | morning. |
| | 12 | THE COURT: I agree completely. |
| | 13 | Who was that attorney? |
| | 14 | MR. ZELLINGER: His name is Ronnie Mitchell. He |
| 11:56:44 | 15 | was hustling to be here by around noon or so. I believe I |
| | 16 | received his cellphone number. |
| | 17 | Your Honor, may I approach with the motion? |
| | 18 | THE COURT: Yes. |
| | 19 | MR. ZELLINGER: And I think I have his cell number |
| 11:56:59 | 20 | so I can text him to see how far away he is. |
| | 21 | THE COURT: Do you mind doing that now? |
| | 22 | MR. ZELLINGER: Sure. Absolutely. I texted him. |
| | 23 | THE COURT: Why don't we do this. We'll be at |
| | 24 | ease. If I can see the attorneys in the back. My intention |
| 11:58:23 | 25 | is if he's close, we can do it right now. |

| | |
|---|---|
| 11:58:28 | 1 |

(Court at ease.)

2      THE COURT:  Welcome back, everybody.  Yes, sir.

3      MR. ZELLINGER:  Your Honor, I think we have the

4 issue we discussed in chambers and previously about this.

13:59:10  5 He'll be here representing Johnston County Sheriff's Office.

6 He's filed a written motion to quash.  I showed him a

7 discovery protective order filed September 14, 2023, and I

8 don't want to speak for him, but I think he might be satisfied

9 by that such that he can hand over the policies that the

13:59:38  10 defendant's -- that the defendant subpoenaed.

11      THE COURT:  Thank you, Mr. Mitchell, for being

12 here.  Anything else?

13      MR. MITCHELL:  First, I apologize I wasn't able to

14 be here earlier this morning.  This all came up quickly.

13:59:58  15      As you can see, I was filing the motion last night.

16 I talked to the DA on Saturday, and our concern was that we

17 did not want to produce the entire evidence manual.  Those

18 investigative matters, as the Court knows, should they become

19 public, it then becomes pretty easy for potential defendants

14:00:28  20 to get ahold of that information and to figure out ways to

21 interfere with investigations.  We do not object, however, to

22 the production of the sections that had been identified.  We

23 believe it to be responsive to the subpoena.

24      If there are any objections or contentions that

14:00:48  25 these are not the relevant portions, then we would like to be

| 14:00:51 | 1 | heard further.  We certainly believe they are -- are the |
| | 2 | relevant portions and they've been identified as such.  Every |
| | 3 | policy dealing with seizure and presentation and preservation |
| | 4 | of evidence obviously is not written.  It's part of the reason |
| 14:01:09 | 5 | I do regular training so those oral policies and that oral |
| | 6 | training cannot be produced, but what we do have we are |
| | 7 | certainly willing to produce pursuant to the protective order. |
| | 8 | We simply do not want these matters to be disclosed outside |
| | 9 | the provisions of this protective order. |
| 14:01:36 | 10 | THE COURT:  Mr. Tyndall, anything you wish to add |
| | 11 | on behalf of your client, I guess?  Do you know what sections |
| | 12 | he's talking about? |
| | 13 | MR. TYNDALL:  I don't.  I'll get them, look at |
| | 14 | them.  If we're not satisfied, I'll call Mr. Zellinger. |
| 14:01:53 | 15 | THE COURT:  Then the protective order, is that |
| | 16 | something you are going to get drafted up? |
| | 17 | MR. ZELLINGER:  It already exists, Your Honor.  The |
| | 18 | State and defendant agreed to this back in December of 20 -- |
| | 19 | the Court ordered it back in September 2023.  It's been |
| 14:02:07 | 20 | binding upon the parties since last December, December 2023. |
| | 21 | So it is at line -- it's in e-Courts.  I believe Mr. Tyndall |
| | 22 | has it. |
| | 23 | THE COURT:  My only concern -- I can look at it in |
| | 24 | e-Courts.  My only concern is -- both sides have looked at it |
| 14:02:28 | 25 | and there's no objection.  There just might be a request to be |

| | | |
|---|---|---|
| 14:02:32 | 1 | heard additionally. |
| | 2 | MR. MITCHELL: I've reviewed it before. And if you |
| | 3 | don't distribute things outside the defense team, then we're |
| | 4 | fine with that. |
| 14:02:44 | 5 | THE COURT: Yes, sir. We'll let you -- give you a |
| | 6 | chance to take a look at it. Hopefully that will satisfy |
| | 7 | that. Thank you very much for being here. |
| | 8 | MR. MITCHELL: Thank you, Your Honor. Again, and |
| | 9 | should the Court need me, I will be at the Court's pleasure. |
| 14:02:55 | 10 | I don't have any medical procedures scheduled. |
| | 11 | THE COURT: That's good. Thank you very much. |
| | 12 | Did you get an update on your person and the |
| | 13 | cellphone data you needed to look at? |
| | 14 | MR. TYNDALL: I haven't heard any more. Ms. James |
| 14:03:15 | 15 | showed us that she can get into it, so I'm going to take it |
| | 16 | and deliver to it somebody to look at it, so then I'll get |
| | 17 | feedback from there. That's all I know at this time. I have |
| | 18 | not heard back from the forensic guy. I hadn't as of when I |
| | 19 | got -- when I walked in. |
| 14:03:36 | 20 | THE COURT: I guess from my standpoint then, |
| | 21 | there's nothing that's going to delay the start of the trial |
| | 22 | for tomorrow morning based on what you know? |
| | 23 | MR. TYNDALL: I don't. I'm fine to come back and |
| | 24 | select the jury. If I give this to somebody, they look at it |
| 14:03:52 | 25 | and say it's going to take me weeks to go through this, then |

| 14:03:56 | 1 | I'll let the Court know that and we'll discuss that ourselves. |
| | 2 | But right now I'm planning to come back and start with jury |
| | 3 | selection. |
| | 4 | THE COURT: Okay. And the only thing I would |
| 14:04:05 | 5 | ask -- I would ask both of you and Ms. James and Mr. Zellinger |
| | 6 | is if it does become an issue, if we can maybe address it and |
| | 7 | get a final answer before the jury is impaneled. |
| | 8 | MR. ZELLINGER: Absolutely, Your Honor. |
| | 9 | Your Honor, we have it pulled up. I'd like to show |
| 14:04:21 | 10 | it to the Court briefly, if we can. I think I can show it on |
| | 11 | the screen. We haven't tried this yet. |
| | 12 | THE COURT: Sure. |
| | 13 | MR. ZELLINGER: Your Honor, so this is the |
| | 14 | extraction, and you can see that the last date of these chats |
| 14:04:49 | 15 | is from like May of 2021. And so it really appears that this |
| | 16 | phone is from a year before the issues in this case, but I |
| | 17 | just wanted the Court to kind of see what this looks like. I |
| | 18 | mean, this is in a palatable form from which defendant can |
| | 19 | look at it. And based on our looking at it during the lunch |
| 14:05:15 | 20 | break, it seems like it is -- it's going to be hard pressed |
| | 21 | to seem like it might be relevant for this case. |
| | 22 | THE COURT: You said the last entry on this phone |
| | 23 | was a year before the earliest date? |
| | 24 | MR. ZELLINGER: So if you look at the highlighted |
| 14:05:29 | 25 | entry right here. I think these are all artifacts, this |

| 14:05:32 | 1 | May 7th of 2021.  But this entry right here appears to be the |
| | 2 | last text message, and that's from May 7th of 2021.  There's |
| | 3 | like some Verizon stuff.  There's one thing on here from |
| | 4 | April 21st of 2022, but I think that's an artifact of like the |
| 14:05:50 | 5 | download.  But all this stuff -- I mean, if you look at the |
| | 6 | phone, all this stuff is from before the relevant time period |
| | 7 | in this case.  So I wanted the Court to see that. |
| | 8 | THE COURT:  Can you tell how many entries are on |
| | 9 | here?  How many we're talking about? |
| 14:06:14 | 10 | MR. ZELLINGER:  Yes.  There's a lot of stuff on |
| | 11 | here.  I mean -- |
| | 12 | THE COURT:  I'm looking at contacts, 478. |
| | 13 | MR. ZELLINGER:  Yes.  And I think those would be |
| | 14 | like the phone book essentially in the phone, call logs, |
| 14:06:27 | 15 | e-mails, instant messaging.  It is -- it's got a lot of |
| | 16 | information, but I mean, it's a phone download, and you can go |
| | 17 | in there, and if we go back to like the chats, there's a |
| | 18 | mechanism at the top here where you can search it for key |
| | 19 | words or anything along those lines.  So I think it's -- it's |
| 14:06:48 | 20 | in a very searchable format, is what I'm trying to say.  It's |
| | 21 | not like somebody has to do a value and download it.  It's in |
| | 22 | a format -- and I don't know, maybe the defendant's expert can |
| | 23 | do something different, but I just wanted the Court to -- |
| | 24 | THE COURT:  Mr. Tyndall, just my quick look it, it |
| 14:07:08 | 25 | does seem to be that it predates the dates here, but I |

| | |
|---|---|
| 14:07:11 | 1 |

certainly know you want to take a look at it.

2          MR. TYNDALL:  Well, just to tell the Court, the

3  State's theory is not just that my client met with this guy,

4  tried to get him to do him a favor, and if he didn't do it he

14:07:25  5  was going to release some information.  Their theory is that

6  my guy hatched this plan long in advance, and it certainly --

7  this includes the period of time of the relationship between

8  my client and Ms. Barbour.  More importantly, there's not a

9  specific date as to when she says Mr. Barbour sent her the

14:07:48  10  messages and all that.

11          So we don't know -- you know, the idea that it

12  predates it, if they want to just limit this trial to that

13  date, it totally changes the face of the case.  It changes the

14  face of their motion for joinder and all that.  So I mean, I

14:08:07  15  don't -- they may be right that there's not much information

16  there that is relevant.

17          I just -- I don't want to say that is correct,

18  because we're not talking about a period of just April and May

19  of 2022, from the State's perspective.  They contend that it

14:08:29  20  goes on much longer than that.  And so -- and even if they

21  didn't, there may be evidence on there that would undermine

22  some of Ms. Barbour's story about this case, so -- or

23  Mr. Barbour's.

24          THE COURT:  We certainly know you want to take a

14:08:52  25  look.

14:08:53  1          Mr. Zellinger, do you have something you want to

2     add to that?

3          MR. ZELLINGER:  Your Honor, I just -- I would

4     disagree with some of the argument there about what the

14:09:02  5     State's theory would show, but I don't want need to be heard

6     at this point.  I just think most of the relevant contact -- I

7     mean, the whole theory of the case is that he's having this

8     affair with this person and at this point they are still

9     having the affair.  I mean, things appear to be -- I don't

14:09:19  10    know, but it seems like things are going well and then the

11    affair sort of turns eight months after this -- or 12 months

12    after this.  That's why I said I don't think it's relevant.

13    But you'll hear the State's theory of the case when the time

14    arises.

14:09:37  15         THE COURT:  Just keep us up with that.  And the

16    issue as far as the jury, I did talk to the people near the

17    courthouse, including the bailiffs and the trial court

18    administrator and people know far better than we do, it seems

19    like there's no place -- they are concerned about the number

14:09:58  20    that might come in here.  If we bring two pools sitting

21    together, there's no other place to store them -- I mean to

22    house them while we go through it.  So their collective wisdom

23    was we got three separate panels coming in, that we just keep

24    them as three separate panels.  The Monday panel will come in

14:10:18  25    and you may have 50, and you might have the same numbers maybe

| 14:10:23 | 1 | the following day.  So that's sort of the way they are |

14:10:23    1    the following day.  So that's sort of the way they are

2    scheduled to come now.

3              Anything else?  I do want to get this final -- the

4    final motion on the Cameron Way on the record, but before we

14:10:38    5    do that, anything else from either side?

6              MR. ZELLINGER:  Your Honor, we make, I think, a

7    joint motion to sequester witnesses.  We would just ask that

8    our witnesses -- that the Investigator Hoffman be excluded

9    from that.  We would ask to sequester witnesses.  I mentioned

14:11:01   10    that we would pursue that.  We will do our best to make sure

11    no one walks in that's on our witness list.

12              THE COURT:  Okay.  Any objection to that?

13              MR. TYNDALL:  We don't object to that, Your Honor.

14              THE COURT:  Okay.  I'll allow that motion.

14:11:13   15              The only thing I would ask you, and this is

16    something I said in chambers, is I anticipate a lot of people

17    unrelated to this trial, just maybe people that are curious

18    might want to come and look.  I don't know who your witnesses

19    are.  So if you would just maybe help me police that, I would

14:11:30   20    appreciate it.  Okay?

21              All right.  In the defendant's final motion to

22    suppress regarding the search of Cameron Way, I read through

23    the motion a second time.  I believe it's pretty clear.

24              Mr. Tyndall, I want to make sure that my facts are

14:11:52   25    absolutely right.  Correct me if I'm wrong on any of this, but

| | | |
|---|---|---|
| 14:11:57 | 1 | the two phones that Detective Hoffman found, they did, in |
| | 2 | fact, belong to the Smithfield Police Department; is that |
| | 3 | correct? |
| | 4 | MR. TYNDALL:  No. |
| 14:12:08 | 5 | THE COURT:  They did not belong to the Smithfield |
| | 6 | Police Department? |
| | 7 | MR. TYNDALL:  First of all, he didn't find two |
| | 8 | phones.  He didn't see them.  So in the -- he didn't |
| | 9 | find -- if you look in the search warrant, Your Honor, he |
| 14:12:23 | 10 | lists two phones that are -- that he contends are property of |
| | 11 | Smithfield Police Department.  Phone one is an iPhone XS, |
| | 12 | Serial No. 356172098919050.  And then the iPhone SE, serial |
| | 13 | number 356842116190385.  So what happens as part of the |
| | 14 | warrant, Your Honor, on Page 2 of 6, that's where Investigator |
| 14:13:23 | 15 | Hoffman points out that an iPhone is on the table without |
| | 16 | identifying the model or anything else about the iPhone. |
| | 17 | THE COURT:  Yes, sir.  When I said he saw them, I |
| | 18 | guess that's what I was looking at is paragraph 24 in your |
| | 19 | motion where he says:  He visited the building where |
| 14:13:46 | 20 | Mr. Johnson maintained an office and saw an iPhone in plain |
| | 21 | view.  And I guess that's what I was thinking.  Detective |
| | 22 | Hoffman did see them; right? |
| | 23 | MR. TYNDALL:  Yes.  According to his warrant, he |
| | 24 | saw an iPhone; one iPhone in plain view. |
| 14:14:05 | 25 | THE COURT:  Okay. |

| | | |
|---|---|---|
| 14:14:05 | 1 | MR. TYNDALL: And then left to type up this search |
| | 2 | warrant. That's the allegation. |
| | 3 | Now, he puts in, in paragraph 3 the iPhones that -- |
| | 4 | the specific iPhones that Mr. Johnson was issued and that he |
| 14:14:24 | 5 | contends the Smithfield PD did not have or that Mr. Johnson |
| | 6 | had not returned. He does not identify them further other |
| | 7 | than by their model. |
| | 8 | And number 8 he says: The iPhone I viewed matched |
| | 9 | the model and description without describing what it was or |
| 14:14:47 | 10 | which iPhone it was, whether it's the SE or the XS. |
| | 11 | So it's not clear from the warrant what he saw on |
| | 12 | the table other than it's just an iPhone, and we would contend |
| | 13 | that's not specific enough. So does that answer your |
| | 14 | question? |
| 14:15:11 | 15 | THE COURT: Yes, sir, I think it does. I was |
| | 16 | wanting to make sure because I read your motion, went back, |
| | 17 | looked at the other documents with it, and I might have maybe |
| | 18 | misread or just read it wrong. But are you saying these |
| | 19 | phones did not belong to the -- I mean, I understand how we |
| 14:15:29 | 20 | saw them, but they did not belong to the Smithfield Police |
| | 21 | Department; is that right? |
| | 22 | MR. TYNDALL: Well, Your Honor, I take the |
| | 23 | warrant -- I think the four corners of the warrant alleges |
| | 24 | that they belong to the Smithfield Police Department. And |
| 14:15:41 | 25 | so I don't contest that that was his information or that's |

| | | |
|---|---|---|
| 14:15:45 | 1 | what's in the warrant.  What our motion simply points out is |
| | 2 | there's no way to connect that iPhone on the table to a -- you |
| | 3 | know, a specific missing iPhone from the Smithfield Police |
| | 4 | Department. |
| 14:16:01 | 5 | THE COURT:  Yes, sir. |
| | 6 | MR. TYNDALL:  Now, of course, if you can, that |
| | 7 | doesn't justify the breadth of the warrant because it doesn't |
| | 8 | justify going out and getting all this other stuff.  So that |
| | 9 | was the central part of our argument. |
| 14:16:13 | 10 | THE COURT:  Okay.  Yes, sir.  And I just wanted to |
| | 11 | make sure I was clear on that. |
| | 12 | Yes, sir, Mr. Zellinger. |
| | 13 | MR. ZELLINGER:  Your Honor, I just wanted to take a |
| | 14 | little bit of an issue with that in that defendant cites State |
| 14:16:25 | 15 | vs. Bradshaw for the proposition that basically when there's |
| | 16 | an original -- at the time that the item is taken, it can't be |
| | 17 | lawfully possessed.  So he's essentially saying that the |
| | 18 | defendant couldn't have committed a larceny because he's given |
| | 19 | these phones, and then, you know, essentially if he didn't |
| 14:16:43 | 20 | give them back in time when he was let go or whatever |
| | 21 | happened, that that wouldn't be a larceny. |
| | 22 | But in looking at State vs. Bradshaw, there's a |
| | 23 | little bit of a distinction there in that it's at the time of |
| | 24 | the taking.  So conceivably the defendant could have been |
| 14:16:58 | 25 | given the phone, and that's fine, he has lawful possession of |

| | | |
|---|---|---|
| 14:17:01 | 1 | it.  But then when his time ends with the Smithfield Police |
| | 2 | Department, he's essentially committing a taking then by |
| | 3 | holding onto that phone and keeping it. |
| | 4 | And so -- and I haven't looked -- I haven't looked |
| 14:17:15 | 5 | into all the case law on that, but Bradshaw says that |
| | 6 | basically the defendant has to be in lawful possession of the |
| | 7 | property at the time of the taking.  I don't -- I mean, |
| | 8 | there's an issue there with that in that it was taken -- and |
| | 9 | just to be clear, there were two phones I think the defendant |
| 14:17:35 | 10 | had from the Smithfield Police Department, and Investigator |
| | 11 | Hoffman sees an iPhone.  The defendant says, well, how can you |
| | 12 | know that that matched with the Smithfield phones.  First of |
| | 13 | all, iPhones used to have like a little button, so conceivably |
| | 14 | it could have done that or conceivably it could have not, but |
| 14:17:51 | 15 | I mean, regardless, we don't have to show it matched the |
| | 16 | phones that were taken.  We don't have to show that |
| | 17 | Investigator Hoffman saw it and said, that's an iPhone SE or |
| | 18 | iPhone XR.  We have to have probable cause that would be a |
| | 19 | facility or tool that he could use that could be relevant to |
| 14:18:09 | 20 | that.  So again, this is equating a different standard.  I |
| | 21 | would say that there is probable cause that that phone would |
| | 22 | be in that office, and so I don't want to belabor the point, |
| | 23 | but I just wanted to make a distinction. |
| | 24 | THE COURT:  Thank you.  Yes, sir. |
| 14:18:25 | 25 | MR. TYNDALL:  Well, that's what makes it a general |

| | | |
|---|---|---|
| 14:18:28 | 1 | warrant if you allow that, Your Honor.  If you just say that, |
| | 2 | you know, it's a car, that it's a Toyota and I saw a Toyota, I |
| | 3 | mean, that's not specific enough.  And he didn't say that |
| | 4 | there was a button or any distinguishing features about the |
| 14:18:41 | 5 | iPhone that made him believe that it was an SE or XR or |
| | 6 | whatever it is.  He simply said that he made the conclusion |
| | 7 | and that's -- that's not what's sufficient. |
| | 8 | As far as the Bradshaw case, it says that there has |
| | 9 | to be some sort of trespass.  There has to be trespass to |
| 14:18:59 | 10 | commit a larceny.  It's not the same as if you give me |
| | 11 | property and I don't return it.  So that's what Bradshaw says. |
| | 12 | I'm just quoting the case law. |
| | 13 | So I think that, you know, the standard for |
| | 14 | probable cause is that it's probably that the item -- or it's |
| 14:19:15 | 15 | probably something that contains or is likely or probably |
| | 16 | going to contain evidence of a crime.  And that's -- this |
| | 17 | warrant doesn't specify that. |
| | 18 | THE COURT:  Yes, sir.  This was a little closer |
| | 19 | than some of the others I've looked at.  In this matter |
| 14:19:51 | 20 | though, however, the Court's review of the pleading, arguments |
| | 21 | of counsel, review of the cited case law, including |
| | 22 | defendant's argument under Brice vs. Delaware and the Bradshaw |
| | 23 | case, the Court did review those. |
| | 24 | In the Court's discretion at this time -- and I'm |
| 14:20:21 | 25 | going to continue to look at these cases more tonight, and I |

| 14:20:23 | 1 | will certainly revisit my decision in the morning if I think I |
| | 2 | have missed something, and I'm going to try to read some other |
| | 3 | cases; however, from my review of these cases and arguments |
| | 4 | we've had, in the Court's discretion -- Mr. Tyndall, I do |
| 14:20:40 | 5 | appreciate the defendant's motion, however, in the Court's |
| | 6 | discretion, that motion will be denied as well. |

            But again, I'm going to continue to look at it a
little bit in a little bit more detail tonight. I hate to
make these decisions that are important decisions to both
sides. I want the opportunity look at it. Okay?

            Anything else we need to get on the record?
Anything else we need to do now?

            At that point, the jury will be here at 9:30
tomorrow; is that right?

            THE CLERK: They'll be ready at 9:30.

            THE COURT: Or reporting at 9:30?

            THE CLERK: Ready at 9:30.

            MR. ZELLINGER: Your Honor, I just would ask, I
think when the jurors come in, they have to fill out the
questionnaire and make copies of them for two parties and the
Court. I'm happy -- we can help make copies and whatever.

            THE COURT: That's right. We have the
questionnaires that you guys agreed to. We just still have
them report here at 9, unless you've got another plan. Just
have them report here at 9 and let them do what your clerk

| | |
|---|---|
| 14:21:51 | 1 |
| | 2 |
| | 3 |
| | 4 |
| 14:22:07 | 5 |

needs to do, show them the video, talk to them, get them

oriented, do the role call, then we can give them the

questionnaires. We might not be ready to bring them in at

9:30. I'd at least like them here at 9:00. Is there any

objection to that?

6    MR. ZELLINGER: No, sir. I think whatever is best

7  for the clerk's office and the Court, we're happy with it.

8    CLERK: The jury introduction takes about an hour.

9         (Clerk and court confer.)

14:22:45  10    THE COURT: We'll have them here at 9:30 tomorrow.

11    Anything else we need to address this afternoon

12  from either side?

13    MR. ZELLINGER: Not from the State, Your Honor.

14  Thank you.

14:23:00  15    MR. TYNDALL: Not for us.

16    THE COURT: Thank you, guys. Would it be asking

17  too much to have you guys here at 9 in the morning? I think

18  you are both coming from Raleigh.

19    MR. TYNDALL: I'm coming from Chapel Hill, but

14:23:11  20  unless there's bad traffic, we ought to be here at 9. We were

21  here at 8:50 today, so ...

22    THE COURT: Plan to be here at 9. It's my

23  understanding there might be a little bit of us sitting here,

24  but at least when they say they are ready to go, we'll be

14:23:24  25  ready to go. Okay.

14:23:25    1                    Sheriff, 9:00 tomorrow.

            2                        (Proceedings adjourned at 2:23 p.m.)

            3                        (END OF VOLUME 1 OF 10.)

            4

            5

            6

            7

            8

            9

           10

           11

           12

           13

           14

           15

           16

           17

           18

           19

           20

           21

           22

           23

           24

           25

                        Denise St. Clair, RPR, CRR, CRC
                            Official Court Reporter

IN THE NORTH CAROLINA GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
JOHNSTON COUNTY

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

STATE OF NORTH CAROLINA,   :    File No. 23 CR 003494-500

     versus             :

RONALD LEE JOHNSON, JR.,   :
           Defendant.        Pages:   70-84

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

TRANSCRIPT - VOLUME 2 of 10

Tuesday, January 7, 2025

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Transcript of proceedings in the General Court of

Justice, Superior Court Division, Johnston County, 207 East

Johnston Street, Smithfield, North Carolina, at the January 6,

2025, Criminal Session, before the Honorable Joseph

Crosswhite, Judge Presiding.

APPEARANCES:

     Boz Zellinger
     Arneatha James
     Special Deputy Attorney General
     Raleigh, NC 27603
     On Behalf of the State

     Amos G. Tyndall
     Valentin J. Bruder
     Parry Law
     Chapel Hill, NC  27517
     On Behalf of the Defendant

---

Denise St. Clair, RPR, CRR, CRC
Official Court Reporter
N.C. Administrative Office of the Courts
denise.stclair@nccourts.org

1                           INDEX

2    Judge addresses prospective jurors              71

3    Jury selection                                  77

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

|        |    |                                                            |
|--------|----|------------------------------------------------------------|
|        | 1  | (Court convenes at 9:10 a.m.)                              |
|        | 2  | THE COURT:  We'll be at ease until the jury is            |
|        | 3  | ready.                                                      |
|        | 4  | (Court at ease.)                                           |
| 09:59:13 | 5 | THE COURT:  Good morning.  I know some of the            |
|        | 6  | charges might have been dismissed or handled some other way. |
|        | 7  | I want to make sure when I do announce it to the prospective |
|        | 8  | jurors.  He's being charged with one count of extortion, two |
|        | 9  | counts willfully failing to discharge duties, one count of |
| 09:59:33 | 10 | obstruction of justice; is that correct?                |
|        | 11 | MR. ZELLINGER:  That's correct, Your Honor.               |
|        | 12 | THE COURT:  Whenever you guys are ready, we can          |
|        | 13 | bring them on in.                                          |
|        | 14 | (Prospective jurors enter.)                              |
| 10:06:18 | 15 | THE COURT:  Good morning, everybody.  This is a        |
|        | 16 | small courtroom.  I apologize you guys are tight as you are. |
|        | 17 | Can everybody hear me okay?                               |
|        | 18 | First thing I want to do is welcome you.  This is       |
|        | 19 | Johnston County Criminal Superior Court.  My name is Joe  |
| 10:06:34 | 20 | Crosswhite.  I am a judge out of Iredale County, which is in |
|        | 21 | the other part of the state.  It is my privilege, my pleasure |
|        | 22 | to be here with you guys today.                           |
|        | 23 | First thing I want to do is just apologize.  I know     |
|        | 24 | you've been here for about an hour and a half.  A lot of that |
| 10:06:51 | 25 | time was spent filling out those questionnaires and we kept |

Denise St. Clair, RPR, CRR, CRC
Official Court Reporter

| 10:06:54 | 1 | you in the back a little bit while they were getting them |
|---|---|---|
| | 2 | organized and distributed, but I promise that's going to help |
| | 3 | expedite what we're about ready to do. |
| | 4 | I want to welcome you, give you an overview, I |
| 10:07:07 | 5 | think, of what you might expect over the next few days here. |
| | 6 | I'm going to try not to repeat everything you heard from the |
| | 7 | clerk or seen in the video. |
| | 8 | I just want remind all of you that you're being |
| | 9 | asked to perform one of the highest duties that can be imposed |
| 10:07:26 | 10 | on any citizen, and that is to sit in judgment on the facts |
| | 11 | which will determine and settle disputes among your fellow |
| | 12 | citizens. |
| | 13 | Trial by jury is the right guaranteed to every |
| | 14 | citizen. After you've been selected as a juror and qualified |
| 10:07:41 | 15 | by taking the oath, you will become the sole judges of the |
| | 16 | weight to be given to any evidence and the credibility of each |
| | 17 | witness. |
| | 18 | It is public policy in North Carolina that all |
| | 19 | qualified citizens, without the exception, serve as jurors. |
| 10:07:57 | 20 | To be eligible to serve, you must be a citizen and resident of |
| | 21 | this county, at least 18 years old, physically and mentally |
| | 22 | competent, able to hear and understand English, not have been |
| | 23 | convicted of a felony or pled no contest to a felony unless |
| | 24 | your citizenship has been restored, and not have served on |
| 10:08:19 | 25 | either a grand juror or trial jury in this state in the last |

| | | |
|---|---|---|
| 10:08:23 | 1 | two years. |
| | 2 | What we're going to do in the next few minutes is |
| | 3 | jury selection, and the way that's going to work is we're |
| | 4 | going to pick a total of 15 of you.  The first 12 we call up |
| 10:08:36 | 5 | are going to be primary jurors, and once we get those 12 |
| | 6 | primary jurors seated, then we'll pick three alternates.  We |
| | 7 | will explain what alternates are in just a minute. |
| | 8 | I will tell you, for those of you who like watching |
| | 9 | some of those TV shows like Law & Order or CSI or something, |
| 10:08:57 | 10 | it's great entertainment, but one thing you never see is the |
| | 11 | jury selection process, and that's really because it's not |
| | 12 | that entertaining.  It's kind of boring.  It's a lot of |
| | 13 | questions back and forth, but it's a very important part of |
| | 14 | the process to make sure we do get jurors that are impartial |
| 10:09:13 | 15 | and can be fair to both sides in this. |
| | 16 | So the way it will work, when you come up here, |
| | 17 | I'll ask about four preliminary questions of each of you and |
| | 18 | then I'll turn it over to the lawyers who will have probably a |
| | 19 | lot more questions to ask you. |
| 10:09:28 | 20 | During the course of this, it could be that you are |
| | 21 | excused either by the Court or by one of the lawyers in this |
| | 22 | case.  If you are excused, please don't think that you've done |
| | 23 | anything wrong or said anything wrong.  The fact that you |
| | 24 | might not be the right juror in this case doesn't mean that |
| 10:09:44 | 25 | you won't be an ideal juror in another case.  They are just |

Denise St. Clair, RPR, CRR, CRC
Official Court Reporter

| | |
|---|---|
| 10:09:48 | 1 |
| | 2 |
| | 3 |
| | 4 |
| 10:10:00 | 5 |
| | 6 |
| | 7 |
| | 8 |
| | 9 |
| 10:10:21 | 10 |

1  looking for people that probably don't know anything about

2  this, that don't know anybody involved in this, and that can

3  be fair and impartial to both sides.

4        I will tell you before we get started, the trial

5  we're getting ready to call is expected to last about two

6  weeks, give or today.  It's going to be -- I know.  I've seen

7  some of you roll your eyes.  It seems like it is long and it

8  is lengthy, but in the course of Superior Court trials, it's

9  really not that out of the ordinary.  A lot of time trials can

10  go on for months or weeks.  So the fact that we have one

11  that's going to take two weeks, it's probably pretty typical

12  for what you can expect in this.

13        A couple rules I want to remind you of before I

14  introduce this case.  Because of your status as jurors, it's

15  important during the time that you are on this jury that you

16  not talk about this case or about anything else you see in the

17  courtroom to anybody else.  That means you can visit with each

18  other during breaks or in the morning, you can talk about

19  anything you want to talk about, but please do not talk about

20  anything that happens in this courtroom with each other.  That

21  also means don't talk about it to anybody else outside this

22  courtroom.  When you go home and you meet with your spouse or

23  a family member or a friend and they might say, well, what are

24  you doing, I want you to not talk about this at all.  Okay?

25        The reason we ask that is we need to make

Denise St. Clair, RPR, CRR, CRC
Official Court Reporter

| | |
|---|---|
| 10:11:18 | 1 |

```
10:11:18    1    absolutely certain that all the information you get in this

            2    trial comes from the courtroom and no other source.  So if

            3    somebody does try to engage you in any conversation at all,

            4    just say we're under -- you can blame it on me.  Just say

10:11:33    5    we're under orders from the Judge not to talk about it.  When

            6    your service is over, you are free to talk about it, but we

            7    ask you don't talk or say anything about it or let anybody

            8    else engage with you in any kind of conversation at all.

            9                 The case that is being called for trial, I will

10:11:51   10    introduce that trial to you now, it is the State of North

           11    Carolina vs. Ronald Lee Johnson, Jr.  The State of North

           12    Carolina is represented by district attorneys.  They are

           13    seated to my left and your right, Mr. Zellinger and Ms. James.

           14    Mr. Johnson is seated to my right and your left with his

10:12:17   15    attorneys, Mr. Tyndall and Mr. Bruder.

           16                 The defendant in this matter has been charged with

           17    four things.  He's been charged with one count of extortion,

           18    two counts of willfully failing to discharge duties, and one

           19    count of obstruction of justice.

10:12:39   20                 After the jury's been selected and impaneled in

           21    this case, you will hear the evidence.  After all the evidence

           22    has been presented and after you've listened to the arguments

           23    of the attorneys, I'll instruct you on the law that you are to

           24    apply to the evidence in this case.  It is your duty to apply

10:12:56   25    the law as I give it to you and not as you think it is or as
```

| | |
|---|---|
| 10:12:59 | 1 |
| | 2 |
| | 3 |
| | 4 |
| 10:13:12 | 5 |
| | 6 |
| | 7 |
| | 8 |
| | 9 |
| 10:13:28 | 10 |
| | 11 |
| | 12 |
| | 13 |
| | 14 |
| 10:13:45 | 15 |
| | 16 |
| | 17 |
| | 18 |
| | 19 |
| 10:14:04 | 20 |
| | 21 |
| | 22 |
| | 23 |
| | 24 |
| 10:14:19 | 25 |

1  you might like it to be.  This is important because justice

2  requires that everyone tried for the same crime be treated in

3  the same way and have the same law applied.

4              At this point, you are not expected to know the

5  law.  The attorneys should not question you about the law

6  except to ask whether you can accept the law and follow the

7  law as given to you by the court.

8              The defendant in this case has entered pleas of not

9  guilty.  Under our system of justice, a defendant who pleads

10  not guilty is not required to prove his innocence but is

11  presumed to be innocent.  This presumption remains with the

12  defendant throughout the trial until the jury selected to hear

13  this case is convinced beyond a reasonable doubt of the guilt

14  of the defendant.

15              The burden is on the State to prove to you that the

16  defendant is guilty beyond a reasonable doubt.  There is no

17  burden or duty of any kind on the defendant.  If State proves

18  guilt beyond a reasonable doubt, then the function of the jury

19  by its verdict is to say guilty.  If the State fails to prove

20  guilt or if you have reasonable doubt, then of course you must

21  saying not guilty.

22              Again, I do thank everybody for being here.  I will

23  just say that I know there are probably other places you want

24  to be.  People get the notice in the mail to come, it's not

25  the most exciting place to be, but I will tell you, your

Denise St. Clair, RPR, CRR, CRC
Official Court Reporter

| | |
|---|---|
| 10:14:23 | 1 service on this jury is important. Most countries do not have |
| | 2 jury trials and we're one of the few that's privileged to have |
| | 3 a jury trial, but it only works with people like you who are |
| | 4 taking your time and are willing come and do this. |
| 10:14:37 | 5 So with my thanks, and I do know the thanks of the |
| | 6 parties, we are ready to call the first 12, if we could. |
| | 7 (Jury selection commences at 10:14 a.m.) |
| | 8 THE COURT: Can you guys approach for a minute. |
| | 9 (Sidebar off the record.) |
| 11:20:23 | 10 THE COURT: Let's talk a 20-minute recess. |
| | 11 Remember what seat you are in. We want you to get back to the |
| | 12 same seat. |
| | 13 Quick rules for everybody to remember as kind of |
| | 14 remainder what you heard this morning. Please do not talk |
| 11:20:36 | 15 about this case among yourselves. Do not talk about it with |
| | 16 anybody else. If you make a phone call or talk to anybody |
| | 17 over the recess, that's fine, please do not engage in any |
| | 18 conversation with them or let them talk to you about anything |
| | 19 associated with this case. |
| 11:20:53 | 20 Thank you very much. See you back by 11:20 by that |
| | 21 clock. |
| | 22 (Prospective jurors exit.) |
| | 23 THE COURT: I believe all the jurors are out. |
| | 24 Anything we need on the record? |
| 11:22:19 | 25 MR. ZELLINGER: No, Your Honor. |

| | | |
|---|---|---|
| 11:22:21 | 1 | THE COURT:  Given the fact that there's people |
| | 2 | coming in and going, if you need anything, meet me in |
| | 3 | chambers. |
| | 4 | We'll be in recess for 20 minutes. |
| 11:22:29 | 5 | (Recess.) |
| | 6 | (Jury enters.) |
| | 7 | THE COURT:  Welcome back. |
| | 8 | (Resume jury selection.) |
| | 9 | THE COURT:  It's 12:30, before you go into that, |
| 12:32:38 | 10 | why don't we take our lunch. |
| | 11 | MR. ZELLINGER:  Can I talk to defense counsel for a |
| | 12 | second? |
| | 13 | (Sidebar.) |
| | 14 | THE COURT:  We're going to take our lunch recess. |
| 12:34:46 | 15 | We'll be in recess until 2:00.  I want to remind all of you, |
| | 16 | you have now heard some about this case, but you have not |
| | 17 | heard any evidence associated with it.  Over lunch you can go |
| | 18 | to lunch with each other, meet somebody else, but please |
| | 19 | remember, do not talk about this case or about anything else |
| 12:35:02 | 20 | that happens in the courtroom with anybody else.  Do not let |
| | 21 | anybody speak with you about it. |
| | 22 | If you happen to see any of the parties or anybody |
| | 23 | connected to this trial at lunch, it's a small town, probably |
| | 24 | limited places to go, please do not talk or engage with them |
| 12:35:17 | 25 | in anything at all, even if it's a simple question like what |

Denise St. Clair, RPR, CRR, CRC
Official Court Reporter

| | | |
|---|---|---|
| 12:35:21 | 1 | time do we need to be back.  If they see you talking to one of |
| | 2 | the lawyers or a witness, it just looks bad.  So we ask you to |
| | 3 | avoid that completely. |
| | 4 | Also, don't do anything on your own to try to learn |
| 12:35:33 | 5 | anything more about this case.  You've heard some talk about |
| | 6 | news and media.  Please don't to anything on your own or try |
| | 7 | to learn anything more. |
| | 8 | See you back here at 2:00. |
| | 9 | (Jurors exit.) |
| 12:37:05 | 10 | THE COURT:  Anything before we recess from either |
| | 11 | side? |
| | 12 | MR. ZELLINGER:  Not from the State. |
| | 13 | MR. TYNDALL:  No, Judge. |
| | 14 | THE COURT:  I'll be back early.  If you need me, |
| 12:37:14 | 15 | come find me in the back. |
| | 16 | (Lunch recess.) |
| | 17 | (Resume at 2:09 p.m.) |
| | 18 | THE COURT:  I want to give you every opportunity to |
| | 19 | question the jurors.  I don't want to unnecessarily waste |
| 15:09:03 | 20 | time.  I'm mindful of the fact we're in the afternoon of the |
| | 21 | second day and don't have the first juror seated yet. |
| | 22 | MR. ZELLINGER:  I'll endeavor to move quickly. |
| | 23 | THE COURT:  That's fine. |
| | 24 | Bring them in -- is there anything to put on the |
| 15:09:27 | 25 | record before they come in? |

Denise St. Clair, RPR, CRR, CRC
Official Court Reporter

| | | |
|---|---|---|
| 15:09:29 | 1 | MR. ZELLINGER:  No, Your Honor. |
| | 2 | MR. TYNDALL:  I don't think so, Judge, no. |
| | 3 | THE COURT:  Okay.  If we can get them in. |
| | 4 | (Jurors enter.) |
| 15:12:08 | 5 | THE COURT:  Welcome back.  Whenever you are ready. |
| | 6 | (Resume jury selection at 2:12 p.m.) |
| | 7 | THE COURT:  Ladies and gentlemen, during the recess |
| | 8 | don't talk about the case among yourselves.  Don't let anyone |
| | 9 | talk to you about the case.  Don't let anybody speak to you |
| 16:27:50 | 10 | about the case.  Don't do any research.  All the rules I've be |
| | 11 | saying apply. |
| | 12 | I'm looking at the clock, and I'm going to ask you |
| | 13 | guys to be ready to go about 3:35, if you will.  Thank you. |
| | 14 | (Jurors exit.) |
| 16:28:02 | 15 | THE COURT:  Anything to get on record?  All right. |
| | 16 | 15 minutes. |
| | 17 | (Recess.) |
| | 18 | THE COURT:  Mr. Tyndall, whenever you are ready. |
| | 19 | (Resume jury selection 3:48 p.m.) |
| | 20 | THE COURT:  I want to remind you again of the |
| | 21 | rules.  Please don't talk about this case with each other.  Do |
| | 22 | not talk about it with anybody else.  Don't do anything on |
| | 23 | your own to try to learn more about it.  That means watching |
| | 24 | news, reading any articles, Googling, Facebook, Snapchat. |
| | 25 | Don't do anything.  Do not express or form any opinion about |

1    anything that you might have heard in the courtroom.  Thank

2    you very much.

3            See you back at 9:30 in the morning.  Come back

4    tomorrow at 9:30.

5                (Prospective jurors excused at 5:19 p.m.)

6            THE COURT:  I want to thank you guys for staying.

7    Here's why I held you back.  At this point you have been

8    selected to be the jury in this case.  Tomorrow morning we'll

9    go through the same procedure with the other people that join

10   us.  We have to get the alternates picked.  We have some

11   things to do tomorrow afternoon outside the presence of the

12   jury.

13           What I'm going to do now, the reason I kept you

14   back, I'm going to release you until Thursday morning.  So I'm

15   telling you guys not to come back tomorrow, but I need every

16   one of you to report back Thursday morning at 9:00.

17           You are the jury in this case so we need to have

18   all of you back at 9:00 in the morning.  We did this -- that's

19   what we were talking about.  It's to be respectful of your

20   time, not to have you just come and sit while we go through

21   this again.

22           So I'm going to let you go.  I want to remind all

23   of you that you have been selected by both sides to be the

24   jury in this case.  I'm just going to give you those rules

25   again.  .

1          Please do not talk about this case amongst

2   yourselves.  When you go home tonight and you talk to your

3   husband or wife or friend, do not talk to them about this

4   case.  Do not let anybody speak with you about the case.  Do

5   not do anything on your own to try to learn more about this

6   case; that means Google, Facebook, any kind of news

7   articles.  I heard there's talk about some of this out

8   there.  I'm telling you just to avoid it.  Avoid anything that

9   gets you information about this trial.  The only place you

10  need to get information about this trial is right from here.

11         So again, when you leave -- have you been given

12  your numbers?  We'll make sure we get your telephone numbers

13  so we can have contact with you if necessary.  If you can help

14  me get those.  I want to make sure nobody has questions.

15         You are to report back Thursday morning at 9:00.

16  Everybody good?  Thank you, guys.

17         She'll get you the notes tomorrow morning.  You

18  need a work note?  Anybody else?  Thank you very much.  We'll

19  see you in the morning.

20              (Jury exits at 5:26 p.m.)

21         MR. ZELLINGER:  I'm handing Mr. Tyndall our exhibit

22  notebook which will be all the exhibits we seek to admit.  If

23  there's something special we need to litigate, potentially we

24  can do it tomorrow afternoon if we finish the jury by that

25  time.

```
 1                   THE COURT:    That would be a great use of time.

 2    Maybe look at it tonight.    If there's anything you make a

 3    decision on, let us know.    Anything else?

 4                   MR. ZELLINGER:    We have one for the Court and the

 5    clerk as well.

 6                   THE COURT:    Thank you.    Anything else?

 7                   MR. ZELLINGER:    Not for the State.

 8                   MR. TYNDALL:    No.

 9                   THE COURT:    See you at 9:00.

10                        (Adjourned at 5:27 p.m.)

11                        (END OF VOLUME 2 OF 10.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

IN THE NORTH CAROLINA GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
JOHNSTON COUNTY

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

STATE OF NORTH CAROLINA,  :      File No. 23 CR 003494-500

    versus                 :

RONALD LEE JOHNSON, JR.    :
           Defendant.        Pages:  85-89

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
TRANSCRIPT VOLUME 3 OF 10

Wednesday, January 8, 2025
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Transcript of proceedings in the General Court of

Justice, Superior Court Division, Johnston County, 207 East

Johnston Street, Smithfield, North Carolina, at the January 6,

2025, Criminal Session, before the Honorable Joseph

Crosswhite, Judge Presiding.

APPEARANCES:

    Benjamin O. (Boz) Zellinger
    Arneatha James
    Special Deputy Attorney General
    Raleigh, NC 27603
    On Behalf of the State

    Amos G. Tyndall
    Valintin J. Bruder
    Parry Law
    Chapel Hill, NC 27517
    On Behalf of the Defendant

---

Denise St. Clair, RPR, CRR, CRC
Official Court Reporter
N.C. Administrative Office of the Courts
denise.stclair@nccourts.org

State v Ronald Johnson, Jr.

| | | |
|---|---|---|
| )9:26:49 | 1 | (Court convenes at 9:30 a.m.) |
| | 2 | THE COURT:  I don't want to rush you.  I wanted to |
| | 3 | come out and start court on time. |
| | 4 | MR. TYNDALL:  I instructed my guy what to do.  He's |
| )9:31:01 | 5 | going to work on it. |
| | 6 | THE COURT:  Why don't you have a talk and update me |
| | 7 | when you are ready. |
| | 8 | MR. TYNDALL:  Okay. |
| | 9 | THE COURT:  Do you still need three alternates? |
| )9:35:56 | 10 | MR. TYNDALL:  Two is fine with us. |
| | 11 | THE COURT:  I mean, for four days worth of |
| | 12 | evidence, two ought to be fine. |
| | 13 | MS. JAMES:  I know it's supposed to snow this |
| | 14 | weekend, and I'm really worried that some people won't show up |
| )9:36:10 | 15 | on Monday.  So I would like to seat three, if you don't mind. |
| | 16 | We'll leave it in the Court's discretion. |
| | 17 | THE COURT:  We'll see how long it takes us to get |
| | 18 | the next three seated, and then we'll talk privately about |
| | 19 | what we're going to do. |
| )9:36:30 | 20 | MS. JAMES:  But for the weather forecast. |
| | 21 | THE COURT:  You'd be good. |
| | 22 | MS. JAMES:  Right. |
| | 23 | THE COURT:  Let's go ahead and have them come on |
| | 24 | in. |
| )9:36:43 | 25 | (Prospective jurors enter.) |

Denise St. Clair, RPR, CRR, CRC
Official Court Reporter

State v Ronald Johnson, Jr.

| | | |
|---|---|---|
| )9:41:53 | 1 | THE COURT: Good morning, everybody. |
| | 2 | Mr. Zellinger, whenever you are ready. |
| | 3 | (Resume jury selection.) |
| | 4 | THE COURT: Welcome back. We can call the next |
| )9:42:00 | 5 | jurors to proceed. |
| | 6 | (Jury selection continues.) |
| | 7 | THE COURT: We'll take our break now for 15 |
| | 8 | minutes. Remember the rules not to talk about the case. Do |
| | 9 | not do any research into the case. See you in 15 minutes. |
| )9:42:00 | 10 | (Jury exits.) |
| | 11 | THE COURT: We'll be in recess for 15 minutes. |
| | 12 | (Recess.) |
| | 13 | THE COURT: You can bring them in. |
| | 14 | (Jurors enter.) |
| )9:42:00 | 15 | THE COURT: We'll continue with our jury selection. |
| | 16 | (Resume jury selection.) |
| | 17 | THE COURT: It's 12:30. We'll stop and take our |
| | 18 | lunch break. Remember the rules not to talk about the case |
| | 19 | with anyone. Do not do any research. Don't talk to anyone |
| | 20 | about the case or let anyone talk to you about it. See you |
| | 21 | back here at 2:00. Enjoy your lunch. |
| | 22 | (Jury exits.) |
| | 23 | THE COURT: See everyone back at 2:00. |
| | 24 | (Lunch recess.) |
| | 25 | THE COURT: Welcome back. We'll continue with our |

Denise St. Clair, RPR, CRR, CRC
Official Court Reporter

1    jury selection.

2                    (Resume jury selection.)

3              THE COURT:  I want to say thank you very much for

4    your service.  The fact you are willing to be here is what

14:45:13   5    makes your whole system run.  So thank you very much.  You are

6    free to go.

7                    (Remaining prospective jurors excused at

8                    2:45 p.m.)

9              THE COURT:  Special thanks for you guys being

14:45:58  10   willing to serve.  I mean, you get to a certain point and you

11   hear the reasons people can say and you always get concerned

12   somebody might make up reasons.  The fact you are still here

13   and willing to serve, I appreciate it, and I know everybody

14   else does as well.

14:46:13  15        I'm going to excuse you for the rest of the

16   afternoon.  The other nine jurors will be back tomorrow

17   morning at 9:00.  We'll get you together all in a group and

18   then should be ready to start the trial right off in the

19   morning.  Okay?

14:46:30  20        As you go, I want to remind you, you are now

21   members of this jury.  All those rules that you've heard

22   earlier do remain in effect.  Please don't talk about this

23   case with each other.  Do not talk about it with anybody else.

24   Don't do anything on your own to try to learn more about this

14:46:49  25   case.  That means watching news, reading any articles, doing

Denise St. Clair, RPR, CRR, CRC
Official Court Reporter

| | | |
|---|---|---|
| 14:46:52 | 1 | anything.  We need to make sure all the information you get |
| | 2 | comes right from this courtroom. |
| | 3 | Finally, don't do anything.  Do not express or form |
| | 4 | any opinion about anything that you might have heard or seen |
| 14:47:03 | 5 | in this courtroom. |
| | 6 | Thank you very much.  See you back here at 9:00 in |
| | 7 | the morning. |
| | 8 | (Jury excused at 2:47 p.m.) |
| | 9 | THE COURT:  Before we pause for the day, anything |
| 14:48:25 | 10 | from either side that we need to get on the record?  Anything |
| | 11 | we need to do?  I'll be here for the next hour.  I have stuff |
| | 12 | I'm going to do.  I'm not going anywhere.  I'll be here. |
| | 13 | Anything I can do for you?  Anything for the court |
| | 14 | reporter?  Anybody have else?  Is there anything I can do for |
| 14:48:39 | 15 | you? |
| | 16 | MR. ZELLINGER:  Not for the State, Your Honor. |
| | 17 | MR. TYNDALL:  Not at this moment, Your Honor. |
| | 18 | Thank you. |
| | 19 | THE COURT:  9:00 in the morning then. |
| 14:48:47 | 20 | MR. ZELLINGER:  We'll talk about the exhibits to |
| | 21 | see if there's something. |
| | 22 | THE COURT:  I'll be right in the back if you need |
| | 23 | me for anything.  Thank you very much. |
| | 24 | (Court adjourned at 2:48 p.m.) |
| | 25 | |

IN THE NORTH CAROLINA GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
JOHNSTON COUNTY
* * * * * * * * * * * * * * * * * *

STATE OF NORTH CAROLINA    :   File No. 23 CR 003494-500

    versus                     :

RONALD LEE JOHNSON, JR.,   :
         Defendant.     :   Pages:  90-240

        * * * * * * * * * * * * * * * * * *
TRANSCRIPT VOLUME 4 OF 10

Thursday, January 9, 2025
* * * * * * * * * * * * * * * * * *

Transcript of proceedings in the General Court of

Justice, Superior Court Division, Johnston County, 207 East

Johnston Street, Smithfield, North Carolina, at the January 6,

2025, Criminal Session, before the Honorable Joseph

Crosswhite, Judge Presiding.

APPEARANCES:

    Benjamin O. (Boz) Zellinger
    Arneatha James
    Special Deputy Attorney General
    Raleigh, NC 27603
    On Behalf of the State

    Amos G. Tyndall
    Valentin J. Bruder
    Parry Law
    Chapel Hill, NC
    On Behalf of the Defendant

Denise St. Clair, RPR, CRR, CRC
Official Court Reporter
N.C. Administrative Office of the Courts
denise.stclair@nccourts.org

```
 1                          INDEX

 2    Jury impaneled                          106

 3    OPENING STATEMENTS:

 4    On behalf of the State by Ms. James      113

 5    On behalf of the Defendant by Mr. Tyndall 117

 6                        WITNESSES

 7    ON BEHALF OF THE STATE:

 8    TODD PARRISH SUTTON

 9    Direct by Ms. James                      128
      Cross by Mr. Tyndall                     137
10    Redirect by Ms. James                    146
      Recross by Mr. Tyndall                   154
11

12    DEVAN BARBOUR

13    Direct by Mr. Zellinger                  159
      Cross by Mr. Tyndall                     208
14

15                        EXHIBITS

16    ON BEHALF OF THE STATE

17    No.   Description                     ID      EVD

18    1     Oath of office for Board of Education  130  131

19    13    Text messages between defendant and DeVan  177  177
            Barbour
20
      ON BEHALF OF THE DEFENDANT
21
      No.   Description                     ID      EVD
22
      1     Notebook tab                      228
23
      2     4/16/22 text exchange between defendant and  228
24          Mr. Barbour

25    3     Text message                      228
```

                Denise St. Clair, RPR, CRR, CRC
                     Official Court Reporter

1              (Court convenes at 9:02 a.m.)

2              (Counsel confer in chambers.)

3         THE COURT:  Good morning.  A couple things we need

4   to get on the record -- do we have all the jurors?

09:22:11    5         SHERIFF:  We have 13.

6         THE COURT:  Who's missing?

7         CLERK:  The alternate.

8         THE COURT:  One main I think we need to get on the

9   record.  Mr. Tyndall, I'm going to let you do that.  I'm just

09:22:37   10   going to summarize briefly, if you don't mind.

11         This originated -- and correct me on anything.

12   This originated Monday morning right before the start of trial

13   when you were provided a cellphone or cellphone data from the

14   State, something that you had not been previously provided.

09:22:57   15   You had asked for some time to have your expert look at it.

16   The Court granted that.  We made the decision to go ahead and

17   select the jury but not impanel them.  That's what we've done.

18         You have been great with providing us reports up to

19   date getting to this point, but my understanding, as of this

09:23:19   20   morning your expert does not have anything to report back; is

21   that right?

22         MR. TYNDALL:  That's right, Your Honor.  Just to be

23   clear, the expert suggested that because we knew the case

24   better that we look through the material.  We sort of sent him

09:23:35   25   our analysis last results last night.  He said basically, my

09:23:42    1   interpretation is, I need to look at it.  So we took it to him
            2   this morning.  He's looking at it.  I don't know how long that
            3   will take.  Bottom line is I just want to have an answer from
            4   him about the significance of the information that we don't
09:23:57    5   know about right now.

            6           We're clearly only so qualified to go through it.

            7           THE COURT:  All right.  Would you relay a message
            8   to him from me, please?  Tell him I certainly don't want to
            9   rush him, but we're going on day four now.  I'm giving him
09:24:18   10   time to go through this.  We've got a jury in place that needs
           11   to get impaneled.  We've got other witnesses lined up.  We are
           12   going to need an answer from him by 2:00 this afternoon.

           13           MR. TYNDALL:  Okay.

           14           THE COURT:  I mean I -- just my opinion.  I think
09:24:36   15   four days should be adequate to at least provide you with an
           16   answer, maybe not everything you need, but at least provide
           17   you an answer of kind of what's there and what might be
           18   relevant.  So if you could just relay that information to him
           19   as well.

09:24:52   20           Anything else on behalf of your client?

           21           MR. TYNDALL:  Your Honor, that's fair enough.
           22   We'll let him know that, and we'll let you know as soon as we
           23   know.

           24           THE COURT:  Mr. Zellinger, anything for the State?
09:25:03   25           MR. ZELLINGER:  No.  I think if this issue -- I

| | |
|---|---|
| 09:25:05 | 1 |

09:25:05    1    mean, I think I put this on the record.  I want to put the

2    full factual scenario behind this.  This was a download of a

3    witness' phone that the State didn't download.  The witness

4    gave this phone to another person, I think, who then brought

09:25:22    5    it to the Smithfield Police Department as part of that

6    internal affairs investigation of the defendant.  And so

7    Smithfield PD had it.  It was not part of the sort of State's

8    investigation up until Smithfield Police Department gave some

9    material, thumb drives, what have you, to the investigator in

09:25:42   10    this case, and the investigator did not believe that he had

11    this download.

12            Mr. Tyndall reached out looking for it, and we said

13    we've never seen it.  The investigator said, I don't have it.

14    And then Mr. Tyndall reached out on Sunday and said, look in

09:25:58   15    this report.  Specifically it says here in this IA report that

16    they turned over not just this part but also the thumb drive

17    of the investigation -- or hard drive of this download of the

18    cellphone.  Our investigator went back to look through all the

19    thumb drives.  It's not labeled a cellphone extraction.  It's

09:26:19   20    labeled with a bunch of numbers and dates and stuff like that.

21    Potentially it was uploaded to the investigator as opposed to

22    being hand delivered to him.  And so he found that.

23            I offered to drive it to Mr. Tyndall on Sunday

24    night.  Of course Mr. Tyndall -- I don't want to disparage

09:26:35   25    Mr. Tyndall, but he might not be the computer expert on the

| | | |
|---|---|---|
| 09:26:37 | 1 | defense team.  And so it was delivered to him first thing |
| | 2 | Monday morning, and then he's endeavored to do everything he |
| | 3 | can to get caught up.  So we appreciate that.  I just wanted |
| | 4 | to sort of lay out the factual scenario. |
| 09:26:49 | 5 | THE COURT:  I guess a couple questions for you. |
| | 6 | When did you first get it from -- did you say Smithfield |
| | 7 | Police Department, I believe it was?  Are they the ones that |
| | 8 | had it? |
| | 9 | MR. ZELLINGER:  So we -- we, the prosecutors in the |
| 09:27:01 | 10 | case, did not get it at all until after defense got it on |
| | 11 | Monday morning. |
| | 12 | THE COURT:  Okay. |
| | 13 | MR. ZELLINGER:  But imputing the investigator to |
| | 14 | the State, which I think would be likely, I mean, he -- I |
| 09:27:13 | 15 | don't know when it was uploaded or shared with him, but it's |
| | 16 | in this Smithfield -- it's a little bit convoluted because it |
| | 17 | was evidence that was acquired as part of this civil |
| | 18 | investigation of the defendant in the IA investigation.  It |
| | 19 | wasn't part of the criminal investigation.  But then that |
| 09:27:32 | 20 | civil investigation was shared, and in that sharing it was |
| | 21 | not -- it was not noticed or was not realized that it had been |
| | 22 | turned over. |
| | 23 | So then when we got stuff from the investigator, we |
| | 24 | didn't get that because it was sort of hidden away on a thumb |
| 09:27:52 | 25 | drive.  And we -- you know, I mean, we have worked with the |

09:27:54  1   defendant.  They have every -- everything that we have.  We've

2   given them a link to our Cloud file.  So they are literally

3   looking at the same discovery that we're looking for.  This

4   wasn't in our discovery, though.  And so that's the sort of

09:28:09  5   flaw in it.

6          To Mr. Tyndall's credit, he reached out on Sunday

7   and said, I really think that your investigator has this.  And

8   then we -- you know, we sort of looked for it more and found

9   it in the sort of an unusual place with an unusual name.  So

09:28:24  10  that's how it sort of came to be.

11         THE COURT:  And without -- I mean, I guess, in the

12  back we discussed options and things we could do.  I know

13  typically in situations like this, information or discovery

14  that's released late there's oftentimes motions to prevent the

09:28:41  15  State from using it, but my understanding is that's not the

16  issue in here because the State intends on not really using

17  anything on it.

18         I think, Mr. Tyndall, it's just you want to look at

19  it to see if there's anything beneficial to your defense.  Am

09:28:54  20  I correct in that assumption?  Mr. Zellinger?

21         MR. ZELLINGER:  Yes, Your Honor.  There's

22  in -- there's -- so in this case the witness that this is

23  related to had the defendant's name in her phone under a

24  different name.  And so this just corroborates that part of

09:29:12  25  it.

| | | |
|---|---|---|
| 09:29:12 | 1 | If the penalty for this is that the State is not |
| | 2 | allowed to use anything off the phone, then we will happily |
| | 3 | accept that. I think that we just want the defendant to be |
| | 4 | able put on whatever case they need and have the evidence they |
| 09:29:26 | 5 | need to be able to cross-examine our witnesses. |
| | 6 | So it really is more of a -- I think on Monday we |
| | 7 | showed the Court a little piece of it. It seems like it's a |
| | 8 | little bit dated from prior to the allegations alleged in this |
| | 9 | case from six months earlier, but I would assume that that's |
| 09:29:42 | 10 | what their computer guy is looking into right now to make sure |
| | 11 | that is in fact the case. |
| | 12 | THE COURT: All right. So let's do this then. |
| | 13 | We're going to -- this Court will be at ease until roughly |
| | 14 | 2:00. But I'm going to ask none of the lawyers to go anywhere |
| 09:29:57 | 15 | because I still have that jury. We're still missing one, as |
| | 16 | far as I know. |
| | 17 | SHERIFF: She's here. |
| | 18 | THE COURT: We've got everybody? |
| | 19 | SHERIFF: Yes, sir. |
| 09:30:04 | 20 | THE COURT: All right. So I'm going to need to |
| | 21 | bring them in and address them, but what I would ask you to do |
| | 22 | in the meantime between now and -- and we're saying 2:00. Can |
| | 23 | we try for 1:00? Is that, I mean -- |
| | 24 | MR. TYNDALL: It's fine with me, Your Honor. |
| 09:30:24 | 25 | THE COURT: I'm just thinking if we do get started, |

| | | |
|---|---|---|
| 09:30:25 | 1 | I'd like to give us as much time this afternoon as we can.  I |
| | 2 | mean, it's -- |
| | 3 | MR. TYNDALL:  I don't object to that. |
| | 4 | THE COURT:  I'm going to have them look to report |
| 09:30:35 | 5 | back at 1:00.  In the meantime, I would ask both sides to kind |
| | 6 | of consider what your options are, what motions might need to |
| | 7 | be appropriate, and have any potential arguments ready at that |
| | 8 | point. |
| | 9 | Can you guys both approach for one minute, please? |
| 09:30:51 | 10 | (Sidebar.) |
| | 11 | MR. TYNDALL:  You asked -- Mr. Zellinger, it |
| | 12 | appears to us that the investigator got this information in |
| | 13 | October of 2022, just to answer that question for you. |
| | 14 | THE COURT:  Yes, sir.  And that will be fine.  I |
| 09:33:06 | 15 | mean, if that -- yes, sir.  And I appreciate you saying that. |
| | 16 | We'll let you guys also make any arguments as far as time you |
| | 17 | need if it becomes relevant. |
| | 18 | Sheriff, if we can go ahead and get our 14 jurors |
| | 19 | in. |
| 09:33:19 | 20 | SHERIFF:  Yes, Your Honor. |
| | 21 | (Jury enters.) |
| | 22 | THE COURT:  Everybody, good morning.  I want to |
| | 23 | thank you all for your patience. |
| | 24 | Just to let you know, I think one of the most |
| 09:40:22 | 25 | important jobs, maybe the most important job I have is to take |

09:40:26   1   care of you guys and to be respectful of your time and to make

           2   sure that we're not wasting your time, because I'm aware of

           3   the sacrifice that you all are making in being here.  However,

           4   sometimes there are things that develop.

09:40:39   5           I think you heard a lot of talk about some of these

           6   TV shows, Law and Order, CSI, and these other things during

           7   jury selection, and I think the implication was that real

           8   court doesn't quite run like TV shows do.  We can't sometimes

           9   get things done during a commercial break.

09:40:59  10           There has been an issue unrelated to either side

          11   that has developed that's going to need to be addressed, and

          12   the attorneys are going to address it this morning.  So

          13   instead of making you guys sit here unnecessarily, I'm going

          14   to release you until 1:00 this afternoon.  Okay?  We should

09:41:26  15   have a definitive answer by then.

          16           Again, I'm so sorry that you are all here and I'm

          17   sending you out, but I do think that's a better solution than

          18   just making you sit in the back until we get an answer.

          19           So I'm going to ask that you all go, that you come

09:41:40  20   back here at 1:00.  We'll be able to give you an update at

          21   that point.  But until you do go, I just want to remind you at

          22   this point, all 14 of you, this is the first time you guys

          23   have all been together, that you are the jury in this case.

          24   So I'm going to give you those rules very briefly.

09:42:00  25           Please remember, do not talk about this case with

| | | |
|---|---|---|
| 09:42:02 | 1 | each other.  Do not talk about anything connected to this case |
| | 2 | with each other.  Do not let anybody else speak with you about |
| | 3 | this.  If somebody approaches you on the street and attempts |
| | 4 | to talk to you, please do not engage with them in any |
| 09:42:16 | 5 | conversation at all.  Okay?  If you meet with somebody over |
| | 6 | lunch and they want to ask you what's going on, please don't |
| | 7 | let them talk to you about this case at all.  Also, don't do |
| | 8 | anything on your own to try to learn more, that's means trying |
| | 9 | to look at any media, news, social media, anything like that. |
| 09:42:33 | 10 | We need to make sure that all the information you get comes |
| | 11 | right from this courtroom. |
| | 12 |         So again, I thank you all for being here.  Please |
| | 13 | accept my apologies that I'm having to send you out until 1:00 |
| | 14 | this afternoon, but we'll let you all be excused until 1:00. |
| 09:42:51 | 15 | Okay?  Thank you very much. |
| | 16 |             (Jury exits.) |
| | 17 |         THE COURT:  I will be here in the courthouse.  I'm |
| | 18 | not going anywhere.  You guys stay close and just update me, |
| | 19 | and then let me know what kind of what direction we're kind of |
| 09:43:31 | 20 | heading in. |
| | 21 |         MR. TYNDALL:  Sure. |
| | 22 |         THE COURT:  I'll just be here.  We'll be at ease |
| | 23 | until 1:00. |
| | 24 |             (Court at ease.) |
| | 25 |             (Court reconvenes at 12:57 p.m.) |

Denise St. Clair, RPR, CRR, CRC
Official Court Reporter

| 12:57:32 | 1 | THE COURT:  It looks like we're waiting on the |
| | 2 | clerk.  Can you give me a headcount? |
| | 3 | While we're waiting for the clerk, is there |
| | 4 | anything to put on the record from either side?  I know we did |
| 12:57:56 | 5 | have some discussion in chambers.  I wanted to give you a |
| | 6 | chance to recreate any of that. |
| | 7 | The main issue, from my concern, your expert is |
| | 8 | still looking at that stuff that got produced on Monday.  I |
| | 9 | want you to report for the record where we stand with that. |
| 12:58:13 | 10 | MR. TYNDALL:  Your Honor, he's not completed |
| | 11 | everything, but it is to the point where we don't feel like we |
| | 12 | need to delay the trial.  We're confident that if there's |
| | 13 | information, that he can use it.  So we're not asking to move |
| | 14 | to continue the case. |
| 12:58:31 | 15 | THE COURT:  Thank you. |
| | 16 | Anything for the State at this point? |
| | 17 | MR. ZELLINGER:  No, Your Honor.  And we talked in |
| | 18 | chambers.  The State is willing to work with Mr. Tyndall to |
| | 19 | make sure that if he has sort of late-breaking evidence so we |
| 12:58:46 | 20 | can help him with that. |
| | 21 | THE COURT:  So then what we'll do when we get a |
| | 22 | report, we'll bring the -- we'll bring the jury in, we'll get |
| | 23 | them impaneled and be ready for opening statements. |
| | 24 | MR. TYNDALL:  Your Honor, there is one issue that |
| 12:58:56 | 25 | we need to renew our motion to sever or our objection to the |

| | |
|---|---|
| 12:59:00 | 1 |

State's motion to join, particularly the misdemeanor offenses

2  that relate to the school board and the -- my client's

3  engagement with one of the principles.  We would contend that

4  has nothing to do with the felony extortion case, and arguably

12:59:22   5  nothing to do with the obstruction of justice case.

6       So we would move to join and object to -- excuse

7  me, move to sever and object to the State's motion to join.

8  We don't feel like there's a common scheme, plan, or

9  commonality of facts sufficient to join those offenses.

12:59:42  10       THE COURT:  Yes, sir.  That's something we've not

11  really talked about.  Has that been addressed?

12       MR. ZELLINGER:  That has.  That was adjudicated by

13  I think our third judge, Judge Brown, who was the last judge

14  in this.  We litigated that back on December 16th, I want to

12:59:59  15  say, or December 18th potentially.  So it's a little bit

16  awkward because he needs to renew that motion, but a different

17  judge heard that, and so now you're sort of hearing it for the

18  first time.

19       I think the basis for Judge Brown's finding was

13:00:16  20  that the extortion case occurs sort of in April of 2025, and

21  it's related to this affair/partner that the defendant had

22  with Angie Barbour, and as part of the sort of circumstances

23  or facts revolving around that affair, Angie Barbour met with

24  the defendant's former friend Owen Phillips.  Owen Phillips is

13:00:40  25  the person who the defendant sort of had a falling out with,

| | |
|---|---|
| 13:00:45 | 1 |

and the falling out was due to Owen Phillips helping Angie

2  Barbour.  So it's all sort of tied to the same stuff related

3  to the affair.

4          So defendant has this falling out with Owen

13:00:57  5  Phillips because he's helping Angie Barbour, and then in

6  retaliation he attempts to remove Owen Phillips' children from

7  one school to another, and those children -- the Court's going

8  to hear this evidence.  Those children I think had special

9  needs, and so this was done in sort of a personal retaliation

13:01:17  10  in violation of his board duties.

11          And then as to the other misdemeanor, the willful

12  failure to discharge duties, defendant's motus operandi in

13  this case was to record people and then use that to his

14  advantage or get other people to sort of record people and

13:01:31  15  then use that to his advantage.  And so these two things are

16  inextricably linked.  The date is -- the extortion is from

17  April 25th of 2022, and the willful failure to discharge

18  duties related to the secret recording is from May 31st of

19  2022.  So it's pretty close in proximity and contemporaneous

13:01:47  20  with when these things were happening.

21          In terms of the felony obstruction of justice, that

22  is the investigation of the extortion.  So the extortion

23  happens, investigator -- we find out about it, and we begin to

24  investigate it.  So while investigating that, that's when the

13:02:03  25  obstruction of justice happens.

| 13:02:04 | 1 | So I'd be happy to supply the Court with more facts |
| | 2 | and more law. We went through all of this with Judge Brown. |
| | 3 | We handed up a bunch of case law and so -- |
| | 4 | THE COURT: Yes, sir. Judge Brown does have a |
| 13:02:14 | 5 | pretty detailed order that was filed December 18th. Some of |
| | 6 | his findings are that the allegations are separated by less |
| | 7 | than nine months. The allegations relate to defendant's |
| | 8 | service on the board of education. Evidence could also be |
| | 9 | useful, 404(b) evidence, with the other allegations contains |
| 13:02:36 | 10 | factual allegations that are similar. |
| | 11 | I guess my only other question, the witnesses that |
| | 12 | you would call, would they be, I mean, different witnesses or |
| | 13 | the same witnesses or? |
| | 14 | MR. ZELLINGER: They are the same witnesses. And |
| 13:02:55 | 15 | we argued this in front of Judge Brown. That the witnesses |
| | 16 | for extortion would inherently involve Owen Phillips and folks |
| | 17 | revolving around that. So the witnesses would be the same. |
| | 18 | The 404(b) would be the same in each trial for each of these |
| | 19 | counts. |
| 13:03:11 | 20 | The obstruction of justice which is the most |
| | 21 | disparate in terms of time, being in January 2023, that one |
| | 22 | you would have to provide the evidence of the extortion to |
| | 23 | talk about the investigation of it. So all of these are woven |
| | 24 | into the same sort of fabric of this indictment. So we'd |
| 13:03:30 | 25 | argue to the Court that all these things, the time proximity, |

| 13:03:35 | 1 | the fact that they involve the same actors in each of these |
| | 2 | cases should be joined. |
| | 3 | THE COURT:  Okay.  Thank you.  Mr. Tyndall, any |
| | 4 | response on behalf of your client? |
| 13:03:45 | 5 | MR. TYNDALL:  No, sir, Your Honor.  Just renew that |
| | 6 | motion. |
| | 7 | THE COURT:  Thank you.  In the Court's discretion, |
| | 8 | having reviewed the file, arguments of counsel, I certainly |
| | 9 | appreciate the motion on behalf of the defendant; however, |
| 13:03:56 | 10 | that motion is denied.  The Court will allow the State's |
| | 11 | motion to join these matters for trial. |
| | 12 | I believe that we are otherwise ready to proceed. |
| | 13 | Mr. Tyndall, before we bring the jury in and |
| | 14 | impanel them, did you need another couple minutes to speak |
| 13:04:14 | 15 | with your client? |
| | 16 | MR. TYNDALL:  I don't believe so, Your Honor. |
| | 17 | THE COURT:  Are you ready to go?  Do we have |
| | 18 | everybody? |
| | 19 | SHERIFF:  Yes, sir. |
| 13:04:22 | 20 | THE COURT:  You can bring them in.  Thank you. |
| | 21 | (Jury enters.) |
| | 22 | THE COURT:  Good afternoon, everybody.  Welcome |
| | 23 | back. |
| | 24 | Thank you for your patience this morning.  I |
| 13:07:00 | 25 | believe the lawyers have been working and all those issues |

| 13:07:02 | 1 | have been resolved. We are now ready to proceed. |

2         We're going to get you impaneled as a group. I'll

3    ask the clerk to do that whenever she's ready.

4              (Jury duly impaneled.)

| 13:07:38 | 5 | THE COURT: Again, ladies and gentlemen, thank you |

6    very much. What I'm going to do is give you a couple brief

7    instructions, kind of let you know how we're going to proceed

8    in this matter and what you can expect over the course of the

9    next couple days.

| 13:07:51 | 10 | At this point you've been selected and impaneled to |

11   serve as a jury in this case. The first thing that's going to

12   happen is the lawyers will have an opportunity to make an

13   opening statement to you if they would like to. They

14   certainly don't have to, but they have that right.

| 13:08:04 | 15 | The purpose of an opening statement is narrow and |

16   limited. It's an outline of what the lawyers think the

17   admissible evidence will be. I just want to remind you that

18   an opening statement is not evidence and must not be

19   considered by you as evidence in this case.

| 13:08:21 | 20 | Following an opening statement, witnesses will be |

21   placed under oath and questioned by the attorneys. It is the

22   right of the attorneys to object to testimony or other

23   evidence that they think is not admissible. If the Court

24   sustains an objection, the jury must disregard the question

| 13:08:38 | 25 | and the answer, if one has been given. If the Court overrules |

| 13:08:42 | 1 | the objection, please do not give that evidence any more |

13:08:42    1   the objection, please do not give that evidence any more

          2   weight than had the objection not been made.

          3          I think you've already seen it this morning with

          4   the delay before the trial even got started, but there will be

13:08:56    5   times in this trial when we need to address matters outside

          6   the presence of the jury.  Again, we're going to be very

          7   respectful of your time.  If there are matters that are going

          8   to take a little bit longer, we'll send you home for the day

          9   or probably give you little longer at lunch, but we're going

13:09:14  10   to be -- do everything we can to be respectful of your time,

        11   because I appreciate what you all are doing here on this case.

        12          However, unlike you watch on television or things

        13   like that, we can't get things done in the course of a

        14   commercial.  Sometimes it takes a little bit longer, and I

13:09:32  15   might think it's going to take about 15 minutes and you are

        16   back there 30 or 45 minutes later.  If that happens, you have

        17   my apologies.  I would like to bring you out here and say,

        18   here's what we're sorting out, here's why it is taking so

        19   long.  Understand, I really have to be careful about what

13:09:50  20   information you get.

        21          So I would just ask one thing of you, and I will

        22   make you one promise in return.  One thing I ask is please

        23   just be patient with us as we go through the process, and

        24   don't try to guess or speculate as to what we are talking

13:10:05  25   about.  We'll get back to you as quick as we can.

13:10:08   1       The one promise that I will make to you is that at

2  the end of this trial, I'll go back in the jury room with you

3  and stay back there with you as long as you want and answer

4  any questions that you have.  But while this trial is under

13:10:20   5  way, just understand I have to be careful.  I'm kind of in

6  some ways the gatekeeper or filter of whatever information you

7  get, and I have to be careful about what you get.  So just be

8  patient with us and understand there's going to be some times

9  when I ask you to step out, and it's just not going to go

13:10:38  10  quite like clockwork, like you see on television.

11       When all the evidence has been completed, at that

12  point the lawyers will make their final statements.  And just

13  before you retire to consider your verdict, I'll give you the

14  instructions on the law that you are to apply to the evidence

13:10:53  15  in this case.

16       You've already heard me give you some rules to

17  follow, and I'm going to give them to you again.  The first

18  rule is, please do not talk about this case among yourselves.

19  You can visit with each other, go to lunch with each other,

13:11:07  20  talk about anything you want to talk about, but please do not

21  talk about this case.  The only time you can talk about it is

22  when you are in the jury room and you have been told to begin

23  your deliberations.  Okay?  That rule also applies to anybody

24  else.

13:11:25  25       When you go home, if you talk to your husband or

| | |
|---|---|
| 13:11:28 | 1 |

13:11:28    1    wife or have dinner with a friend, they might ask you what the

2    trial is about or what you've heard.  There's always a chance

3    they could say, well, have you heard this or have you thought

4    about that?  If that happens, you are getting information

13:11:38    5    about this trial that's not evidence.

6            So if somebody does try to engage you in any kind

7    of conversation at all, please just blame it on me and say we

8    can't talk about it; say the judge has given us instructions

9    not to talk about it.  After the trial is over, you can talk

13:11:54   10    about it, but while the trial is under way, please don't talk

11    about it at all.

12            Third, please do not form or express any opinion to

13    anybody about anything in this case.  Again, the only time you

14    can talk about that is when you are in the jury room and

13:12:10   15    you've been told to begin your deliberations.

16            Again, you've been introduced to the lawyers and to

17    the witnesses in this case.  I'm going to make sure that you

18    don't engage with them about anything, and that is even kind

19    of simple conversation like, where's a good place to go to

13:12:31   20    lunch, how long do we have for a break, or where is the

21    bathroom.

22            The reason we have to be so particular about that

23    is you guys are the jury in this case.  If they see you

24    talking to one of the lawyers or one of the witnesses and it's

13:12:46   25    even something that simple, somebody is going to see that and

13:12:49    1   it just gives that whole appearance of impropriety.  We ask

         2   you completely avoid that at all costs.

         3           You've been given those red juror badges.  I ask

         4   you to keep those on while you are here at the courthouse.

13:13:02    5   That helps to identify you as a juror.  It should keep anybody

         6   from having any inappropriate or unnecessary contact with you.

         7   So just make sure that you keep those on.

         8           The final thing I'm going to ask you to do in this:

         9   You've heard a lot during jury selection about media coverage

13:13:18   10   and things like that.  There may be some.  We've not received

        11   any information yet that any media wants to attend, but they

        12   may.  They are certainly welcome to come if they would like

        13   to.  They might have stories and articles that are published.

        14   I'm going to ask you not to do anything, to read about any of

13:13:38   15   that stuff, don't Google anything, don't do anything on your

        16   own to try to learn anything more about it.  We need to make

        17   sure that all the information you get about this trial and

        18   about this case comes right from the courtroom and no other

        19   source.  So don't do anything on your own to try to find

13:13:54   20   anything about it.

        21           If somebody does try to say, did you see this or

        22   hear that, please shut them down quickly and say, don't talk

        23   about that, I can't talk about that.

        24           Just to let you know how we're going to proceed, we

13:14:06   25   will go today probably until 5:00.  I'm mindful that we're

| | | |
|---|---|---|
| 13:14:10 | 1 | starting a little bit earlier. We might take a couple of |
| | 2 | break early just to make sure you're not sitting there that |
| | 3 | long. Tomorrow we're probably going to start back -- I think |
| | 4 | maybe six hours a day is about all anybody can sit for |
| 13:14:23 | 5 | evidence. We're probably going to start back at 9:30 |
| | 6 | tomorrow. |
| | 7 | I anticipate with the snow and everything coming in |
| | 8 | that tomorrow is going to be a short day. We've got people |
| | 9 | that have driven a distance to get here. We don't want them |
| 13:14:36 | 10 | traveling when that weather gets here. So tomorrow might be a |
| | 11 | short day. Absolutely anticipate, even with the delays that |
| | 12 | we've had, that we are on schedule to get everything finished |
| | 13 | by next week. There's no indication it's going to go beyond |
| | 14 | next week, so I don't think that will be a problem. |
| 13:14:50 | 15 | When we come back Monday, we'll be more on a |
| | 16 | regular schedule. We'll start at 9:30. We'll take a morning |
| | 17 | recess probably around 11. We'll break for lunch between |
| | 18 | 12:30 and 2, afternoon recess around probably 3:15, 3:30, and |
| | 19 | make sure we get you guys out of here at 5:00. I know you got |
| 13:15:11 | 20 | other things planned. |
| | 21 | My promise to you is to get you out of here at |
| | 22 | 5:00, but on the reverse end of that, please make sure you |
| | 23 | guys are all back on time. If one of you is 15 minutes late, |
| | 24 | then the whole trial is going to be delayed by 15 minutes. So |
| 13:15:25 | 25 | we'll make sure that everybody is on time and ready to go. |

State v Ronald Johnson, Jr.                    January 9, 2025

| | | |
|---|---|---|
| 13:15:29 | 1 | Also, I'm going to tell you that I'm not from this |
| | 2 | county. There might be rules about food and drinks in here, |
| | 3 | but I'm going to tell you if you want to bring something in |
| | 4 | here to drink with you, I mean it's -- you know, if you want |
| 13:15:42 | 5 | to bring a bottle of water, coffee, I'm fine with that. |
| | 6 | Whatever you do bring, just make sure you have a lid on it, |
| | 7 | and there's a couple reasons for that. Number one, you guys |
| | 8 | are sitting almost on top of each other. That's a tight jury |
| | 9 | box. But if you spill something, we don't want it to get on |
| 13:15:58 | 10 | your neighbor. And just as important, if you have evidence in |
| | 11 | your hand, we don't want anything to get on that evidence. |
| | 12 | Just make yourselves comfortable, but make sure whatever you |
| | 13 | do have that it has a lid on it. |
| | 14 | You'll notice that there are bailiffs here in the |
| 13:16:12 | 15 | courtroom. They are here for your assistance and to assist |
| | 16 | you in what you need. If you need anything, bring to it their |
| | 17 | attention and let them know. |
| | 18 | The final thing. You'll notice you've each been |
| | 19 | given notepads. They are in your seats. They should have |
| 13:16:25 | 20 | your number -- or your jury number on them. Please make sure |
| | 21 | you keep up with your notes and make sure they don't get |
| | 22 | confused with somebody else's notes. |
| | 23 | I want to give you a quick caution about your |
| | 24 | notes. You can certainly take notes. You can use your notes |
| 13:16:40 | 25 | to refresh your memory of what was said in court. However, |

Denise St. Clair, RPR, CRR, CRC
Official Court Reporter

| | | |
|---|---|---|
| 13:16:43 | 1 | please don't give your notes or the notes of any other juror |
| | 2 | undue significance.  Your notes are not to be considered by |
| | 3 | you as evidence in this case.  And for that reason, you must |
| | 4 | remember in your jury deliberations that notes are not to be |
| 13:16:57 | 5 | given any greater weight than the individual recollections of |
| | 6 | other jurors.  If you take notes, please disclose them only to |
| | 7 | your fellow jurors and no one else. |
| | 8 | Again, thank you very much for your willingness to |
| | 9 | serve on this jury.  We'll do everything we can to make you as |
| 13:17:13 | 10 | comfortable as we can during this process.  I do appreciate |
| | 11 | your patience, and I know that all the lawyers do as well. |
| | 12 | Mr. Zellinger, we are ready for opening statement |
| | 13 | whenever you are ready. |
| | 14 | MS. JAMES:  Thank you, Your Honor. |
| 13:17:26 | 15 | My name is Arneatha James.  This case is not a |
| | 16 | political case.  The defendant just happens to be a Johnston |
| | 17 | County School Board member.  And because these allegations |
| | 18 | were made against him as a school board member in his official |
| | 19 | capacity, it was reported to the school board, and they had a |
| 13:18:07 | 20 | process to follow. |
| | 21 | Now, in jury selection you heard a lot about |
| | 22 | processes.  You heard a lot about standards to follow and |
| | 23 | doing the right thing.  We are here because the defendant did |
| | 24 | not do the right thing.  The defendant broke the law. |
| 13:18:31 | 25 | The defendant has been charged with felony |

| 13:18:34 | 1 | extortion, two counts of willfully failing to discharge his |
| | 2 | duties, and felony obstruction of justice. |
| | 3 | Now, you will hear evidence that DeVan Barbour was |
| | 4 | running for U.S. Congress in the May primary of 2022. And he |
| 13:18:56 | 5 | started getting texts, text messages, and hearing rumblings |
| | 6 | about a recording out there of a person having some |
| | 7 | embarrassing things and saying embarrassing things about him. |
| | 8 | And you will hear that the defendant contacted him and they |
| | 9 | met on April the 25th of 2022. And at that meeting, which was |
| 13:19:24 | 10 | at Clayton Fitness, the defendant got into Mr. Barbour's car, |
| | 11 | or truck, gave him some earbuds, and played a recording for |
| | 12 | him. And the defendant had damaging information on |
| | 13 | Mr. Barbour, and this was the start of the extortion. |
| | 14 | Now, the defendant started taking advantage of |
| 13:19:52 | 15 | Mr. Barbour at that time, and after that, he called him and he |
| | 16 | continued with this plan to extort him. And why, do you ask? |
| | 17 | Because of his affair with Angie Barbour. Now, the affair |
| | 18 | with Angie Barbour was going public, and Ms. Barbour started |
| | 19 | telling people that she and the defendant were together and |
| 13:20:21 | 20 | were in a relationship, and he needed to shut her up. So he |
| | 21 | threatened to release this damaging information against |
| | 22 | Mr. Barbour if he did not convince Angie to recant her |
| | 23 | statement about their affair. This was a violation of the |
| | 24 | law. |
| 13:20:49 | 25 | You will also hear evidence that the defendant |

| | | |
|---|---|---|
| 13:20:52 | 1 | recorded a closed school board meeting on May 31st of 2022, |
| | 2 | and that he played these recordings for others to gain an |
| | 3 | advantage.  This was a violation of his duties, his policies |
| | 4 | as a school board member.  This was in violation of the law. |
| 13:21:22 | 5 | This was willfully -- a willful failure to discharge his |
| | 6 | duties.  This was against his policies.  You will hear how he |
| | 7 | played this recording to other people to get their alliance, |
| | 8 | to get them to do things for him, to convince them that he |
| | 9 | could give them stuff.  And you will hear about Owen Phillips. |
| 13:21:52 | 10 | Now, Owen Phillips and the defendant were good |
| | 11 | friends at one point.  They were both police officers together |
| | 12 | at some point.  And you will hear that Mr. Phillips would do |
| | 13 | things for the defendant.  He would follow people for the |
| | 14 | defendant.  He would get -- he got a TracFone for the |
| 13:22:11 | 15 | defendant.  He even took pictures of other people for the |
| | 16 | defendant.  They were friends.  But at some point that |
| | 17 | friendship changed.  Once Mr. Phillips found out about the |
| | 18 | affair with Angie Barbour, they started having some problems. |
| | 19 | And you will hear from Mr. Phillips what those problems were. |
| 13:22:38 | 20 | So Mr. Phillips stopped helping the defendant.  He |
| | 21 | was no longer his guy to do all these things for him.  So he |
| | 22 | attempted to transfer his special needs children from their |
| | 23 | school.  They were students at Clayton High School.  Their |
| | 24 | principal was Bennett Jones.  And on July 1st of 2022, the |
| 13:23:05 | 25 | defendant called Dr. Bennett Jones and asked him to transfer |

| | | |
|---|---|---|
| 13:23:12 | 1 | these kids. He gave him the names of the children, |
| | 2 | Mr. Phillips' children. This was done as a school board |
| | 3 | member in his official capacity against his policies, duties, |
| | 4 | and the rules that he -- and the oath that he took. And this |
| 13:23:37 | 5 | is the basis for the willful failure to discharge his duties. |
| | 6 | You will also hear evidence of how Investigator |
| | 7 | Hoffman went to Clayton Fitness and spoke to the owner about |
| | 8 | that meeting that happened and wanted to see if he had any |
| | 9 | cameras or anything that would capture that. While he was |
| 13:24:05 | 10 | there, he was like, oh, the defendant has an office here. So |
| | 11 | of course the investigator went back there, looked in and saw |
| | 12 | a phone on the desk of the defendant's office. So of course |
| | 13 | he goes, he gets a search warrant, because that's what he's |
| | 14 | supposed to do. |
| 13:24:27 | 15 | In between the time he leaves Clayton Fitness and |
| | 16 | before he gets back, it's less than an hour; and when he gets |
| | 17 | back, the phone's gone. He looks at the video, and the |
| | 18 | defendant is seen leaving with a white box from that location. |
| | 19 | That phone was never found, and that's the basis for |
| 13:24:53 | 20 | obstruction. Because at the time this investigation was going |
| | 21 | on against the defendant for all those previous crimes I told |
| | 22 | you about, extortion, the willful failures. |
| | 23 | Now, the defendant is a suspect in this matter. So |
| | 24 | Investigator Hoffman starts his investigation with the |
| 13:25:19 | 25 | suspect. That's just police 101. Now, you will hear about |

| 13:25:24 | 1 | all the witnesses he interviewed, the search warrants he |
| | 2 | executed, the records he combed through, and during this trial |
| | 3 | I want you to remember a couple things, that evidence comes |
| | 4 | from the witness stand, and the evidence can be actual |
| 13:25:43 | 5 | evidence or circumstantial evidence. There's two different |
| | 6 | types, but both are very important and both are evidence that |
| | 7 | you should consider. |
| | 8 | I also ask you to listen to each witness and what |
| | 9 | they have to say and judge their credibility from the witness |
| 13:26:06 | 10 | stand. All those things we talked about will be in the |
| | 11 | instructions you will get at the end of this trial. And at |
| | 12 | the end of this trial, we will ask you to find him guilty of |
| | 13 | all charges. Thank you. |
| | 14 | THE COURT: Mr. Tyndall. |
| 13:26:37 | 15 | MR. TYNDALL: Thank you, Your Honor. |
| | 16 | Sometimes actions speak louder than words, or I |
| | 17 | should say in this case sometimes actions do more to interpret |
| | 18 | the words you can't hear. In this case the actions of these |
| | 19 | particular witnesses that Ms. James just talked about, they |
| 13:27:19 | 20 | tell you more than what they say was going on. |
| | 21 | Now, listen closely to their words and how they |
| | 22 | interpret things, but carefully watch their actions. There's |
| | 23 | several witnesses who are extremely important and their |
| | 24 | behavior is extremely important in this case. One is a person |
| 13:27:47 | 25 | named Angie Barbour. You've heard her name. That's the |

Denise St. Clair, RPR, CRR, CRC
Official Court Reporter

13:27:51 1    person my client had a relationship with for a couple of

2    years, and it's an extramarital relationship; both of them

3    were married at the time.

4          The second person is a man named DeVan Barbour who

13:28:05 5    is a candidate for Congress, a friend of my client's, or at

6    least an acquaintance, and at some point in times they were

7    political allies.

8          The third person is a person named Paul Holcombe.

9    He's a Superior Court judge in this county, and it's not only

13:28:26 10    what he'll say to you but the way he reacted and what he

11    didn't hear during conversations with Ms. Barbour.

12          And the fourth person, of course, are the actions

13    of my client during this period of time.

14          So let's talk a little bit about this critical time

13:28:54 15    period that you are going to hear about in this case. You are

16    going to hear about a time before this. But February of 2022

17    to May -- some time in May of 2022 is the critical time

18    period. In February of 2022 my client ended his relationship,

19    his romantic relationship with Angie Barbour. It had been one

13:29:20 20    of those things where it was off and on anyway, but he ended

21    it at that time. And Ms. Barbour was not very happy about

22    that.

23          She left her husband the year before. And she made

24    certain efforts. There were certain things going on. You'll

13:29:41 25    see that she continued to text my client and try to contact

| | | |
|---|---|---|
| 13:29:45 | 1 | him. He wasn't mean, but he was dismissive, and she would say |
| | 2 | things like, so you're avoiding me now? |
| | 3 | And it's important to know Ms. Barbour is very |
| | 4 | involved in Republican politics in Johnston County. She likes |
| 13:30:02 | 5 | politicians. And she likes the political environment, and she |
| | 6 | really liked my client. And once she realized that things |
| | 7 | weren't -- he wasn't going to get back with her, she wasn't |
| | 8 | very happy. |
| | 9 | Some time in March -- it's also important to know |
| 13:30:27 | 10 | that everybody in the community knew about the relationship. |
| | 11 | It wasn't a secret. Many of the witnesses who you will hear |
| | 12 | will say, yea, everybody knew about this. Ms. Barbour knew |
| | 13 | that people knew about it. Mr. Johnson, the defendant, knew |
| | 14 | that people knew about it. |
| 13:30:53 | 15 | It's also important to know that Mr. Johnson wasn't |
| | 16 | a candidate for political office. He was involved in |
| | 17 | campaigns, including the campaign of Superior Court Judge Paul |
| | 18 | Holcombe, including supporting DeVan Barbour, but he wasn't a |
| | 19 | candidate himself. |
| 13:31:15 | 20 | During that period of time, Ms. Barbour has a long |
| | 21 | conversation with a witness I think you'll hear from named |
| | 22 | Kevin Donovan where she discloses to him that DeVan Barbour |
| | 23 | contacted her over some form of media when he was nude and |
| | 24 | propositioned her. |
| 13:31:41 | 25 | Now, at this particular time, she's still |

| | |
|---|---|
| 13:31:47 | 1 |

```
13:31:47    1    contacting my client.  It's not clear to him there's

            2    animosity.  In fact, you'll see from text messages she still

            3    wants to have a relationship, at least it would appear some

            4    type of professional relationship at the very least.  But it's

13:32:03    5    clear from the texts also that she's not very happy he's ended

            6    the relationship.

            7              Now, something happens that's very important on

            8    April 12th of 2022.  Apparently she has a phone call with a

            9    person named Owen Phillips.  Also, instead of just saying that

13:32:26   10    they've had a relationship, word starts to go around the

           11    community that she's saying more than they had a relationship.

           12    She's starting to say things like he was trying to get her to

           13    record people.  She alleges that he asked her to do sexual

           14    favors or have sex with men so he could gain information.

13:32:50   15              So my client contacts her.  Mr. Johnson contacts

           16    her on April 13th and says to her, you've got to stop this.

           17    This is not right.  You know these things aren't true.  You

           18    have created this conspiracy theory about me and that's wrong.

           19    And then they find out about her allegations about

13:33:11   20    Mr. Barbour.

           21              Now, Mr. Johnson doesn't have a formal relationship

           22    with Mr. Barbour, but he is supportive of him.  And he and

           23    Mr. Donovan contact Mr. Barbour on April 16th to warn him that

           24    Ms. Barbour -- and these names are tough because they are the

13:33:29   25    same last name, but they are not related -- that Angie Barbour
```

13:33:33  1    is telling people that DeVan Barbour, who's a candidate for

        2    Congress and has less than a month left or just over a month

        3    before the primary, is telling people that he contacted her,

        4    propositioned her and exposed himself her.  Something she had

13:33:54  5    never told, at least publically, before my client broke off

        6    their relationship.

        7              Now, it is true that my client contacted

        8    Mr. Barbour on April 24th and asked to meet with him on

        9    April 25th.  Keep in mind my client is not running for any

13:34:33 10    office.  And he records a statement.  And he says to him,

       11    look, don't panic.  Ms. Barbour is saying these things, but

       12    don't panic.  We can work through this.  I'll help you work

       13    through it.  I would ask you to talk to her.  She respects

       14    you.  You have influence with her.  I would ask you to talk to

13:35:08 15    her, ask her to stop saying these things about me.  And so

       16    that Mr. Barbour would know that he's telling the truth about

       17    this, he said there is a recording of her saying these things

       18    about you.  And he plays that recording for Mr. Barbour.  And

       19    he says, people are trying to get this recording.

13:35:31 20              And what you are going to hear, in this community

       21    people somehow get recordings.  Recordings that are played at

       22    school board meetings later end up on a podcast, on Facebook a

       23    few hours later.  And he warns Mr. Barbour, some people want

       24    this, and I'll do everything I can to keep it from ever being

13:35:55 25    released.  But please, please help me.  Ask her to stop saying

| 13:36:01 | 1 | these things about both of us.  She respects you. |
| | 2 | Now, when the actions speak louder than words part, |
| | 3 | what does Mr. Barbour do?  He calls Ms. Barbour.  They have a |
| | 4 | conversation.  Then he calls Mr. Johnson back a few days later |
| 13:36:23 | 5 | and he says, it sounds like you're trying to use leverage |
| | 6 | against me or blackmail me.  And Mr. Barbour gets offended and |
| | 7 | gets defensive, and they have a conversation about it.  And |
| | 8 | what happens is Mr. Johnson says, well, forget it then.  I |
| | 9 | won't help you.  I won't do anything. |
| 13:36:45 | 10 | And Mr. Barbour, as he tells Investigator Hoffman |
| | 11 | some time later, he said, I never heard another word about it. |
| | 12 | And it's interesting that Mr. Barbour does not go out -- he's |
| | 13 | a candidate for Congress now, not, you know, the local county |
| | 14 | commissioner or something.  He's a candidate for Congress.  He |
| 13:37:08 | 15 | doesn't tell one of his consultants, hey, we've got a problem |
| | 16 | here.  We've got to manage this.  I'm worried that Mr. Johnson |
| | 17 | is going to release this information.  None of that happens. |
| | 18 | He just behaves like he always behaves.  And he goes through |
| | 19 | the primary.  Mr. Johnson never mentions the conversation.  He |
| 13:37:29 | 20 | never mentions that Ms. Barbour has said these things about |
| | 21 | Mr. Barbour.  He never releases a recording. |
| | 22 | It's important to know, and you'll hear evidence in |
| | 23 | this case, that Mr. DeVan Barbour never tells a soul that |
| | 24 | Mr. Johnson threatened him.  Now, he does tell people about |
| 13:38:16 | 25 | the conversation.  He does tell people that Mr. Johnson had a |

| | | |
|---|---|---|
| 13:38:24 | 1 | recording and said it wouldn't go out. |
| | 2 | He interviews with Investigator Hoffman. |
| | 3 | Investigator Hoffman says, what did Mr. Johnson want in |
| | 4 | exchange for you agreeing to talk to Angie Barbour?  He says, |
| 13:38:40 | 5 | I have no idea.  And then Mr. Hoffman tells him, he wanted you |
| | 6 | to cover up for his affair.  Now, Mr. Barbour's never said |
| | 7 | that until then. |
| | 8 | And then time passes from May 22nd to the current |
| | 9 | time.  Ronald Johnson never releases a recording, but |
| 13:39:13 | 10 | Ms. Barbour continues to make public statements about him. |
| | 11 | And in response he says nothing about Mr. DeVan Barbour. |
| | 12 | What's more is Investigator Hoffman predicted to him, he said, |
| | 13 | I'm afraid he's going to use this information against you |
| | 14 | forever.  But that didn't happen.  Except who did do that? |
| 13:39:40 | 15 | Angela Barbour did that. |
| | 16 | Mr. DeVan Barbour ran for Congress again. |
| | 17 | Mr. Johnson supported him.  Angie Barbour dropped a story to a |
| | 18 | website not long before the primary accusing him of |
| | 19 | propositioning her to have sex.  She said, he blew up my phone |
| 13:40:06 | 20 | trying to get me to come over. |
| | 21 | Now, I want to talk to you a little bit about my |
| | 22 | client.  You need to hear a little bit of background about |
| | 23 | him.  He's not exactly -- he didn't grow up as a political |
| | 24 | insider.  He wasn't a rich kid.  In fact, he wasn't a very |
| 13:40:35 | 25 | good student.  And then he met a person name Tracey Peedin |

13:40:38   1  Jones, who was very important in his life.  She basically

2  taught him to read in the 6th grade.  And he would go on and

3  get a college degree, become a police officer, and he becomes

4  a school resource officer at the school where she was the

13:40:54   5  principal.  While he was there, she encouraged him to run for

6  the school board.  She said, we need people like you.  You

7  care about the children.  So Mr. Johnson did that.

8            Now, listen, tactics are one thing.  We don't

9  always behave the way we should and not every tactic

13:41:19  10  Mr. Johnson uses is appropriate.  But that doesn't mean it's

11  illegal either.

12            And you will hear in the State of North Carolina

13  recording people on your phone, as long as you know it's being

14  recorded, is not an illegal act.  It might not be a very nice

13:41:34  15  thing to do, might not be what we like, but it does happen.

16  And in this county, it happens a lot in the political circles,

17  and you'll hear a good bit about that.

18            2019, Mr. Johnson gives an interview on a podcast

19  that was extremely unpopular to the political establishment in

13:41:56  20  Johnston County.  He accused members of the school board of

21  hiding funds.  He accused them of -- and the big accusation

22  that caused a lot of problems, he accused the school board

23  attorney of sexual harassment.

24            Now, a small town school board attorney, that's a

13:42:22  25  good gig.  They don't put it out for bid and say, hey, who

| | | |
|---|---|---|
| 13:42:26 | 1 | comes in at the lowest price. And what happened was there was |
| | 2 | a woman there named Carolyn Rotondaro who said she was being |
| | 3 | harassed by the local school board attorney named Jimmy |
| | 4 | Lawrence who works with a law firm in town led by a person |
| 13:42:43 | 5 | named Leo Daughtry who was a long-time legislator. And when |
| | 6 | Mr. Johnson -- she said, nobody will stick by me. Nobody will |
| | 7 | believe what I say. Mr. Johnson believed her, and he helped |
| | 8 | her prove that that was happening. And Mr. Johnson -- |
| | 9 | Mr. Lawrence left his job as the school board attorney. |
| 13:43:08 | 10 | Since that time Mr. Johnson's life, my |
| | 11 | Mr. Johnson's life as a school board member has been |
| | 12 | difficult, to say the least. Now, he hasn't made it easy for |
| | 13 | everybody else either. When they wanted a big raise for the |
| | 14 | administrator, he stood up to them and said no. When they |
| 13:43:27 | 15 | wanted to reduce the salary of -- it was actually Ms. Peedin |
| | 16 | Jones when she was out on disability, he said no. And that's |
| | 17 | one of the recorded conversations you're going to hear about |
| | 18 | in this particular case. He was not a popular person with |
| | 19 | most of the people on the school board, but a lot of the |
| 13:43:48 | 20 | public appreciated the fight that he brought for the students, |
| | 21 | for the teachers. |
| | 22 | Now, so they initiated an investigation. They sent |
| | 23 | a letter to the district attorney here, a person named Susan |
| | 24 | Doyle, who immediately said, it's about time someone took him |
| 13:44:23 | 25 | down. And her investigator, Mr. Hoffman -- there was not a |

13:44:26  1  police investigation.  It's the sheriff's department.  But

2  it's the sheriff's department through Mr. Hoffman who

3  initiated this investigation.  But you're going to hear a lot

4  about this investigation.

13:44:37  5          As you may know, we're all under surveillance all

6  the time.  We walk down the street and there's videos.  We

7  walk in the courthouse and there are videos.  And as you

8  mentioned, sometimes during an investigation you have to

9  consult with those things.  Mr. Hoffman is going to admit to

13:44:53  10  you that the main witnesses in this case, he didn't collect.

11  He did 23 search warrants against -- you know, seeking

12  information from Mr. Johnson, phones, computers, data.  Not

13  one of the other main witnesses did he ask to get their

14  phones, any computers, or anything to back up or support their

13:45:26  15  allegations.  He got some phone records, but no iCloud

16  accounts, no actual phones to extract, except for one, which

17  you'll hear about later, that the Smithfield Police Department

18  provided to him.

19          As I said, sometimes actions speak louder than

13:46:01  20  words.  You'll hear a lot about the back and forth between

21  Ms. Angie Barbour and DeVan Barbour.  But you won't hear

22  anything about my client making allegations about DeVan

23  Barbour.  What you will hear is that he supported him.  And

24  then when Mr. Johnson ran for school board again, they would

13:46:32  25  often appear at the same event.  And you'll hear about one

13:46:37  1    event where Mr. Johnson stands up and he talks about these

      2    allegations and he talks about standing up to them.  And

      3    Mr. Barbour follows, and he says, I can't say it any better

      4    than Ronald just said.  They are going to be sorry they came

13:46:53  5    to Johnston County and messed with some Johnston County

      6    Republicans.  Those aren't exactly the actions of a man who's

      7    been extorted.

      8          And the other actions that the State will present

      9    evidence about in this case -- they might not always be

13:47:18 10    pretty, but they are legal.  There's nothing illegal about

     11    taking a box from your own office.

     12          At the end of this case, the State will fail to

     13    rule out these reasonable alternatives to their theories, and

     14    that's called reasonable doubt.  And we will ask you to find

13:47:42 15    him not guilty of these offenses.  Thank you.

     16          THE COURT:  Mr. Zellinger, whenever you are ready.

     17          MS. JAMES:  Your Honor, the State will call Todd

     18    Sutton.  Our assistant is getting him.

     19          THE COURT:  Yes, ma'am.

13:48:12 20          MS. JAMES:  Your Honor, may I approach the witness

     21    bench and put the exhibit notebook?

     22          THE COURT:  Yes, ma'am.

     23          TODD PARRISH SUTTON,

     24    having been called as a witness for the State and being duly

13:48:18 25    sworn at 1:48 p.m., testified as follows:

| | | |
|---|---|---|
| 13:48:18 | 1 | DIRECT EXAMINATION BY MS. JAMES: |
| | 2 |     Q.   Good afternoon, Mr. Sutton.  Can you please state |
| | 3 | your name for the jury. |
| | 4 |     A.   Todd Parrish Sutton. |
| 13:49:02 | 5 |     Q.   And what part of the county do you live in? |
| | 6 |     A.   In the north Johnston community, right outside |
| | 7 | Kenly, North Carolina. |
| | 8 |     Q.   Okay.  What do you do for a living? |
| | 9 |     A.   I'm self-employed. |
| 13:49:14 | 10 |     Q.   What kind of business do you run? |
| | 11 |     A.   It's insurance inspections, as well as real estate |
| | 12 | appraisals. |
| | 13 |     Q.   At some point were you a member of the Johnston |
| | 14 | County School Board? |
| 13:49:23 | 15 |     A.   Yes, ma'am. |
| | 16 |     Q.   When did you serve? |
| | 17 |     A.   2017 -- January of 2017 to December 2022. |
| | 18 |     Q.   And can you just talk about your role on the school |
| | 19 | board when you served in your career? |
| 13:49:44 | 20 |     A.   I was a board member and then was elected chair in |
| | 21 | December of 2019 and remained chair until I came off the board |
| | 22 | in '22. |
| | 23 |     Q.   And when you served as the chairperson, what were |
| | 24 | your duties? |
| 13:50:06 | 25 |     A.   Basically to help set the agenda for the board |

| | | |
|---|---|---|
| 13:50:09 | 1 | meetings, to discuss items with the superintendent, as well as |
| | 2 | discuss items with our board attorney. |
| | 3 | Q. Who was your board attorney at the time that you |
| | 4 | served? |
| 13:50:21 | 5 | A. We had two different board attorneys. Mr. Jimmy |
| | 6 | Lawrence was our attorney for part of my career there, and |
| | 7 | then Tharrington Smith out of Raleigh, and then Mrs. Katie |
| | 8 | Cornetto came on at the very end of my term. |
| | 9 | Q. And do you know the defendant, Ronald Johnson? |
| 13:50:45 | 10 | A. Yes, sir. |
| | 11 | Q. How do you know the defendant? |
| | 12 | A. From being a board member. |
| | 13 | Q. How long have you known him? |
| | 14 | A. I met Mr. Johnson in January of 2016 at Archer |
| 13:50:57 | 15 | Lodge on the 1st of January for their breakfast for candidates |
| | 16 | and elected officials. |
| | 17 | Q. Was that your first time meeting with him? |
| | 18 | A. Yes, ma'am. |
| | 19 | Q. Okay. And how was it when you were serving on the |
| 13:51:19 | 20 | board with the defendant? How was your relationship? |
| | 21 | A. I tried to have a relationship with Mr. Johnson to |
| | 22 | make it cordial and be professional; however, a lot of |
| | 23 | differences came about, and I tried to be as professional as |
| | 24 | possible. |
| 13:51:49 | 25 | Q. Now, as a board member, did you take an oath of |

| | | |
|---|---|---|
| 13:51:53 | 1 | office? |
| | 2 | A.    Yes, ma'am. |
| | 3 | Q.    And would Mr. Johnson have taken the same oath of |
| | 4 | office? |
| 13:51:59 | 5 | A.    Yes, ma'am. |
| | 6 | Q.    I'm going to ask you to turn into the notebook up |
| | 7 | there to tab 1, please. |
| | 8 | A.    Tab -- I'm sorry? |
| | 9 | Q.    Tab 1. |
| 13:52:10 | 10 | (State's Exhibit Number 1 marked for |
| | 11 | identification.) |
| | 12 | Q.    That's State's Exhibit Number 1.  Do you recognize |
| | 13 | that? |
| | 14 | A.    Yes, ma'am. |
| 13:52:31 | 15 | Q.    What is the State's Exhibit Number 1? |
| | 16 | A.    Oath of office for Johnston County Board of |
| | 17 | Education. |
| | 18 | Q.    And how are you able to recognize that? |
| | 19 | A.    It's the same one I took as well. |
| 13:52:44 | 20 | Q.    Does that appear to be a true and accurate copy of |
| | 21 | the oath of office that was taken by the defendant? |
| | 22 | A.    Yes, ma'am. |
| | 23 | Q.    And what is the date on that oath of office? |
| | 24 | A.    December 8th, 2020, it was filed. |
| 13:53:09 | 25 | Q.    And has there been any changes to State's Exhibit |

| | | |
|---|---|---|
| 13:53:12 | 1 | Number 1? |
| | 2 | A.    Not to my knowledge, no. |
| | 3 | MS. JAMES:   Your Honor, at this time the State |
| | 4 | would ask to admit State's Exhibit Number 1, the defendant's |
| 13:53:22 | 5 | oath of office. |
| | 6 | MR. TYNDALL:   No objection. |
| | 7 | THE COURT:   So allowed. |
| | 8 | (State's Exhibit Number 1 entered into |
| | 9 | evidence.) |
| 13:53:35 | 10 | Q.    At some point when you served as a chairperson, did |
| | 11 | you have the occasion to have closed sessions? |
| | 12 | A.    Yes, ma'am. |
| | 13 | Q.    Why would you have a closed session? |
| | 14 | A.    For attorney/client privilege, basically discussing |
| 13:53:49 | 15 | personnel. |
| | 16 | Q.    And would personnel matters include salaries? |
| | 17 | A.    Yes, ma'am. |
| | 18 | Q.    And are individuals allowed to record those |
| | 19 | meetings? |
| 13:54:03 | 20 | A.    No, ma'am. |
| | 21 | Q.    Do you guys have a rule against that? |
| | 22 | A.    Yes, ma'am. |
| | 23 | Q.    On or about May 31st, 2022, was there a school |
| | 24 | board meeting for which you went into closed session? |
| 13:54:22 | 25 | A.    Yes, ma'am. |

| | | |
|---|---|---|
| 13:54:23 | 1 | Q. And in that meeting, what did you discuss? |
| | 2 | A. It was personnel matters. |
| | 3 | Q. Would those personnel matters included the salary |
| | 4 | of Tracey Peedin? |
| 13:54:38 | 5 | A. Yes, ma'am. |
| | 6 | Q. And just for the record, that was a virtual meeting |
| | 7 | so we were not all in one room. We were on Zoom with our |
| | 8 | board attorney. |
| | 9 | Q. And even when you are on Zoom for those meetings, |
| 13:54:54 | 10 | are they still closed? |
| | 11 | A. Yes, ma'am. |
| | 12 | Q. And when you have a Zoom meeting and it's a public |
| | 13 | meeting, how does that look? Can you explain that to the |
| | 14 | jury. |
| 13:55:08 | 15 | A. As far as the Zoom meeting for the public? |
| | 16 | Q. Uh-huh. |
| | 17 | A. It's basically -- the only time we would have those |
| | 18 | was during COVID, or in that matter, but basically whoever was |
| | 19 | not there would -- we would have a TV set up where they |
| 13:55:22 | 20 | basically -- you could see their face and they could |
| | 21 | participate in the meeting as well. |
| | 22 | Q. When you are on a closed session with Zoom and it's |
| | 23 | just the members, do you still have that prohibition against |
| | 24 | recording? |
| 13:55:37 | 25 | A. Yes, ma'am. |

| | | |
|---|---|---|
| 13:55:37 | 1 | Q. Individuals recording. |
| | 2 | And can you describe the context of that salary |
| | 3 | discussion involving Ms. Tracey Peedin Jones. |
| | 4 | A. Yes, ma'am. We were discussing a lot of different |
| 13:55:51 | 5 | contracts that were up for salary, and Ms. Jones was one of |
| | 6 | them. And I made -- I actually commented about her current |
| | 7 | contract because she was not in the same role as she was |
| | 8 | previously when she was under that contract. At that time |
| | 9 | Mr. Johnson stated that she was on medical leave and why were |
| 13:56:14 | 10 | we discussing somebody on medical leave, which at that point |
| | 11 | Ms. Sessoms basically told him, we were not under that |
| | 12 | impression. We were not trying to change anybody's contract |
| | 13 | that was on medical leave. |
| | 14 | Q. Now, did you continue the discussion or questioning |
| 13:56:31 | 15 | her salary at that point? |
| | 16 | A. The board attorney advised us to basically, you |
| | 17 | know, no more discussion needed to be made at this time. |
| | 18 | Q. And at some point did you have another meeting to |
| | 19 | discuss her salary? |
| 13:56:48 | 20 | A. Not to my knowledge. She was still on medical |
| | 21 | leave. |
| | 22 | Q. And did you know she was on medical leave when you |
| | 23 | had that discussion? |
| | 24 | A. Not prior to that meeting, no, ma'am. |
| 13:57:06 | 25 | Q. And the purpose of that discussion you said was |

| 13:57:10 | 1 | because she changed positions? |

13:57:10  1   because she changed positions?

2          A.   Yes, ma'am.  She was on cabinet for a

3    superintendent, and cabinet members do have a little bit of a

4    higher salary than other individuals within the central

13:57:24  5    office.  And there was changes to the cabinet, and she came

6    off of the cabinet but remained under that salary because she

7    was still under contract.

8          Q.   So essentially, she went from one position to the

9    other, and the position that she was previously at made more

13:57:43  10   than the position she was currently in?

11         A.   Correct.

12         Q.   Now, at some point did you receive information

13   about someone recording that closed session?

14         A.   Yes, ma'am.

13:57:59  15        Q.   And what information did you receive?

16         A.   I received information that Mrs. Jones had reached

17   out to somebody in the central office and let them know that

18   Mr. Johnson played a recording for her in regards to the

19   conversation we had recording her salary.

13:58:17  20        Q.   And she contacted the central office essentially?

21         A.   She mentioned that to one of her colleagues in the

22   central office, and one of our board members was in the office

23   in passing and was notified and they notified me immediately.

24         Q.   And once you received that information that

13:58:37  25   Mr. Johnson had played this for Ms. Peedin, what did you do

Todd Parrish Sutton - Direct by Ms. James

| | | |
|---|---|---|
| 13:58:40 | 1 | with that? |
| | 2 | A. I turned it over to our board attorney. |
| | 3 | Q. And why did you turn it over to the board attorney? |
| | 4 | A. Because that was the proper channel to go to. |
| 13:58:54 | 5 | Q. And once the matter goes to the board attorney, |
| | 6 | explain to the jury what process it goes through. |
| | 7 | A. The board attorney investigates the information for |
| | 8 | us and then brings back recommendations on how we need to |
| | 9 | proceed. |
| 13:59:08 | 10 | Q. How did the board proceed with the matters against |
| | 11 | Mr. Johnson in this recording? |
| | 12 | A. We censured him. |
| | 13 | Q. And did you receive any other complaints against |
| | 14 | Mr. Johnson? |
| 13:59:22 | 15 | A. In regards to? |
| | 16 | Q. The allegations here today that he's been charged |
| | 17 | with. |
| | 18 | A. Yes, ma'am. |
| | 19 | Q. Once you received those allegations, what did you |
| 13:59:32 | 20 | do with that information? |
| | 21 | A. I turned it over to our board attorney as well. |
| | 22 | Q. Did your board attorney follow the same process? |
| | 23 | A. Yes, ma'am. |
| | 24 | Q. Now, at some point was this information turned over |
| 13:59:44 | 25 | to the district attorney's office? |

Denise St. Clair, RPR, CRR, CRC
Official Court Reporter

| | | | |
|---|---|---|---|
| 13:59:46 | 1 | A. | Yes, ma'am. |
| | 2 | Q. | And who was that by? |
| | 3 | A. | That was by me. |
| | 4 | Q. | Okay.  And at the time you turned the investigation |
| 13:59:55 | 5 | over to the DA's office, were you the chairperson? | |
| | 6 | A. | Yes, ma'am. |
| | 7 | Q. | Explain your role as a chairperson when you have |
| | 8 | these complaints against another board member. | |
| | 9 | A. | Basically I discuss it with our board attorney on |
| 14:00:08 | 10 | how we need to proceed.  The board attorney then investigates | |
| | 11 | it, discusses information with any board member that may be | |
| | 12 | the cause, and then he reports back on recommendations to the | |
| | 13 | entire board in a closed session meeting. | |
| | 14 | Q. | And today you are under subpoena; correct? |
| 14:00:30 | 15 | A. | Yes, ma'am. |
| | 16 | Q. | You are under subpoena to testify about this |
| | 17 | information; correct? | |
| | 18 | A. | Yes, ma'am. |
| | 19 | | MS. JAMES:  May I have just one moment, Your Honor? |
| 14:00:46 | 20 | | THE COURT:  Yes, ma'am. |
| | 21 | | MS. JAMES:  No further questions at this time, Your |
| | 22 | Honor. | |
| | 23 | | THE COURT:  Cross. |
| | 24 | | MR. TYNDALL:  Thank you, Your Honor. |
| | 25 | | |

| | | |
|---|---|---|
| 14:01:17 | 1 | CROSS-EXAMINATION BY MR. TYNDALL: |
| | 2 | Q.   Mr. Sutton, who is Angie Barbour? |
| | 3 | A.   She's a school teacher for Johnston County Public |
| | 4 | Schools. |
| 14:01:22 | 5 | Q.   Did she contact you in May of 2022? |
| | 6 | A.   Possibly, yes, sir. |
| | 7 | Q.   Did you have numerous conversations with her in May |
| | 8 | of 2022? |
| | 9 | A.   I do not recall but one specific conversation. |
| 14:01:35 | 10 | Q.   I'm sorry? |
| | 11 | A.   I do not recall but one specific conversation with |
| | 12 | her in May. |
| | 13 | Q.   Now, it's fair to say that you were not aligned |
| | 14 | with Mr. Johnson on the school board in general; is that |
| 14:01:48 | 15 | right? |
| | 16 | A.   That's correct. |
| | 17 | Q.   Did you have a contentious relationship with him? |
| | 18 | A.   Mr. Johnson and I didn't see eye to eye, but we |
| | 19 | were very professional when it came to the board. |
| 14:02:01 | 20 | Q.   You were -- you both tried to be professional to |
| | 21 | each other? |
| | 22 | A.   Correct. |
| | 23 | Q.   But you had a different sort of way of viewing |
| | 24 | things; is that fair to say? |
| 14:02:10 | 25 | A.   That's fair to say. |

Denise St. Clair, RPR, CRR, CRC
Official Court Reporter

| 14:02:13 | 1 | Q. Now, some of the causes that Mr. Johnson championed |
|---|---|---|

14:02:13    1        Q.   Now, some of the causes that Mr. Johnson championed

            2   were not popular in the community; is that fair to say?

            3        A.   That's correct.

            4        Q.   One of those would be the ultimate resignation of

14:02:32    5   Jimmy Lawrence; is that right?

            6        A.   That he championed him?

            7        Q.   Well, I mean, the allegations of sexual harassment

            8   were not very popular with some of the board members; is that

            9   fair to say?

14:02:45   10        A.   I wouldn't say it was not popular.  If it was true,

           11   then we wanted to find out exactly what was going on.

           12        Q.   Had those allegations surfaced before 2020 when

           13   Mr. Lawrence actually resigned?

           14        A.   Those allegations were brought to our attention

14:03:06   15   right before he resigned, yes, sir.

           16        Q.   So that was the first you had heard about it?

           17        A.   Yes, sir.

           18        Q.   You mentioned Ms. Tracey Peedin Jones in the closed

           19   session.  Was her salary on the agenda that night in the

14:03:19   20   closed session?

           21        A.   No salaries were on the agenda.  Basically it was

           22   the other contracts that were up.

           23        Q.   And her contract wasn't up; was it?

           24        A.   I do not recall that, but I believe it was coming

14:03:33   25   up very soon, yes, sir.

14:03:35  1        Q.   But that particular night in the closed session,

       2   there was no agenda item that said Tracey Peedin Jones'

       3   salary?

       4        A.   I do not recall that, no, sir.

14:03:45  5        Q.   You recall bringing that up; right?

       6        A.   Yes, sir.

       7        Q.   Did you ever ask Mr. Johnson to resign?

       8        A.   I did.

       9        Q.   And did you tell him if he resigned that you

14:04:12 10   wouldn't take certain actions against him?

      11        A.   I do not recall that piece, no, sir.

      12        Q.   Okay.  Do you recall a closed session meeting in

      13   October of 2022?

      14        A.   We had a lot of closed sessions, so I'm sure we had

14:04:29 15   one, yes, sir.

      16        Q.   Do you know a former principal named Bennett Jones?

      17        A.   I do.

      18        Q.   And did -- do you remember around the time when

      19   Mr. Jones resigned from his job as principal?

14:04:45 20        A.   Yes, sir.

      21        Q.   Do you remember that he had a contract that

      22   required him to give 60 days notice?

      23        A.   Yes, sir.

      24        Q.   Do you remember that he did not want to give

14:04:53 25   60 days notice so he could start his new job?

| | | |
|---|---|---|
| 14:04:56 | 1 | A.   Yes, sir. |
| | 2 | Q.   And did you tell him that if he would come to the |
| | 3 | closed session and air some of the grievances against |
| | 4 | Mr. Johnson that you would support him getting out of his |
| 14:05:11 | 5 | contract? |
| | 6 | A.   No, sir. |
| | 7 | Q.   You never did anything like that? |
| | 8 | A.   No, sir. |
| | 9 | Q.   Now, did Mr. Jones actually come? |
| 14:05:18 | 10 | A.   Yes, sir. |
| | 11 | Q.   To a meeting? |
| | 12 | A.   He came to that meeting, yes, sir. |
| | 13 | Q.   Did he come to a closed session meeting? |
| | 14 | A.   Yes, sir. |
| 14:05:24 | 15 | Q.   And did he play some recordings he had made about |
| | 16 | Mr. Johnson? |
| | 17 | A.   Our board attorney would not allow any recordings |
| | 18 | to be played. |
| | 19 | Q.   Did he turn over some recordings? |
| 14:05:34 | 20 | A.   Yes, sir. |
| | 21 | Q.   Were those recordings later played on a podcast by |
| | 22 | a person named David Marshburn? |
| | 23 | A.   I don't know.  I heard they were, but I didn't |
| | 24 | physically hear them, no, sir. |
| 14:05:46 | 25 | MS. JAMES:  Objection, Your Honor.  Motion to |

| | | |
|---|---|---|
| 14:05:48 | 1 | strike since it's hearsay. |
| | 2 | THE COURT: I'll overrule the objection. Let that |
| | 3 | answer stand. |
| | 4 | Q. Let me ask you a question. Did you ever initiate |
| 14:05:58 | 5 | an investigation to determine how recorded statements turned |
| | 6 | over to the board might have ended up in the hands of a |
| | 7 | podcaster? |
| | 8 | A. No, sir. |
| | 9 | Q. So but you heard that something like that had |
| 14:06:14 | 10 | happened? |
| | 11 | A. Yes, sir. |
| | 12 | Q. And you did not initiate an investigation? |
| | 13 | A. No, sir. |
| | 14 | Q. You didn't call the folks at Tharrington Smith for |
| 14:06:21 | 15 | that; did you? |
| | 16 | A. Not to my knowledge, no, sir. |
| | 17 | Q. Did Bennett Jones speak at that closed session? |
| | 18 | A. Yes, sir. |
| | 19 | Q. And it is unusual for a principal to come to a |
| 14:06:38 | 20 | closed session and address the board; isn't that right? |
| | 21 | A. We've had it before, but in this case he wanted to |
| | 22 | just say his farewells to the superintendent. |
| | 23 | Q. Is that necessary in a closed session? |
| | 24 | A. Not necessarily, no, but we allowed it that night. |
| 14:07:11 | 25 | Q. Did you ever tell Mr. Johnson that unless he |

Denise St. Clair, RPR, CRR, CRC
Official Court Reporter